# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **WAYLAND COLLINS, CANDY KELLY , ALVING POLK** | * | **CIVIL ACTION NO. 2:18-cv-07465** |
| *Plaintiffs* | * | |
| | * | **DISTRICT JUDGE:** |
| | * | **NANNETTE JOLIVETTE BROWN** |
| **VERSUS** | * | |
| | * | **MAGISTRATE JUDGE:** |
| | * | **MICHAEL B. NORTH** |
| **JOHN C. BENTON d/b/a Q&M MOTOR TRANSPORTS, MARK INGLE, AND NORTHLAND INSURANCE COMPANY** | * | |
| *Defendants* | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE OF COURT TO FILE COUNTERCLAIM [REC. DOC. 31] AND MOTION FOR LEAVE OF COURT TO FILE SUPPLEMENTAL AND AMENDING ANSWER AND AFFIRMATIVE DEFENSES [REC. DOC. 32]

MAY IT PLEASE THE COURT:

Plaintiffs Wayland Collins, Candy Kelly, and Alvin Polk respectfully submit this combined memorandum in opposition to two near-identical motions filed by Defendants John C. Benton d/b/a Q&M Motor Transports, Mark Ingle and Northland Insurance Company (collectively, the "Defendants"). Defendants now seek leave of Court to file a counterclaim of fraud [Rec. Doc. 31] and to supplement and amend their answer with a new affirmative defense based on those same allegations. [Rec. Doc. 32]. For the reasons outlined below, Plaintiffs respectfully request that this Court deny Defendants' requests to inject fraud into this case because their counterclaim fails to state a valid claim and the proposed amended answer is grounded in purely speculative and generic accusations that fall well short of this Court's pleading requirements.

## INTRODUCTION

The Defendants are attempting to borrow a familiar, yet largely unsuccessful, playbook in an effort to defend against Plaintiffs' personal injury claims without proper due diligence and without regard to the reputation of Plaintiffs, their legal counsel, and other non-parties.  Defendants assert that Plaintiffs unequivocally and intentionally staged the accident at issue in order to perpetuate fraud upon each of the defendants. Recently, within this district, various defendants and their attorneys have likewise attempted to inject fraud into virtually every traditional side-swipe case as a counterclaim and as an affirmative defense by relying on the same sort of speculative, conclusory allegations, scandalous insinuations, and tenuous and unsubstantiated connections between members of the New Orleans East community.  Those past efforts have failed in recent months; Defendants' similar tactics should suffer the same fate.

Defendants' motions for leave to file a counterclaim as well as a supplemental and amending answer should be denied for the following reasons.  First, Defendants' proposed counterclaim fails to plead sufficient facts to state a lawful claim of fraud under Louisiana law.  Specifically, Defendants have failed to allege that they justifiably relied on any alleged misrepresentation of material fact by any Plaintiff to their detriment.  In fact, Defendants do not even allege any facts to explain what lie or misrepresentation they relied upon, which plaintiff lied or misrepresented information upon which some defendant relied, or which particular defendant relied on the lie or misrepresentation. When a party fails to plead sufficient facts to satisfy just one of the requisite elements of a claim, that claim fails as a matter of law.  In fact, Plaintiffs' opposition essentially seeks the very same result previously reached by Judge Vance – not once but twice – over the past few months in dismissing claims based on the same sort of allegations of fraud.

Second, even if Defendants' counterclaim somehow satisfies the minimum pleadings

standards under Federal Rule of Civil Procedure 8, their fraud claim still fails to meet the necessary heightened pleading requirements under Rule 9(b).  The Fifth Circuit interprets Rule 9(b) strictly, requiring the complaining party to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent. *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009). In other words, "Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003).

Defendants' counterclaim of fraud and the affirmative defense based upon a "cut and paste" of the same counterclaim fail to meet Rule 9(b)'s pleading standard.  Defendants rely not on factual allegations that support even a hint of fraud but, instead, cite only to conclusory, speculative allegations combined with a laundry list of tenuous facts that have nothing to do with fraudulent conduct.  Defendants attempt to turn basic friendships, business relationships, and other common acquaintances and coincidences within a tight-knit community into something sinister. As Judge van Meerveld held earlier this year in denying a similar motion premised on fraud, coincidences and speculation are not sufficient to give rise to the inference of fraud.  Much more is required. *Reff v. Werner Enterprises, Inc.,* No. 18-8350-MLCF-JVM, Rec. Doc. 32 (March 20, 2019). When each allegation is fully examined and exposed, it is clear that Defendants' fraud claim and affirmative defense fail to satisfy this Court's pleading requirements.

## RELEVANT FACTUAL BACKGROUND

This case stems from an automobile accident occurring near the exit connecting Interstate 510 with Interstate 10  in New Orleans, Louisiana on August 9, 2017 during 5 o'clock traffic.  Rec. Doc. 1.  Wayland Collins was lawfully operating a 2015 Nissan Juke on I-10 eastbound heading towards his home in New Orleans East with passengers Candy Kelly and Alvin Polk.  He remained

3

in the far-right lane and continued to enter the exit curve on the I-510 when an 18-wheeler owned by Defendant, Q&M Motor Transports, and operated by Defendant, Mark Ingle, merged into Mr. Collins' lane and struck the driver's side of the Collins vehicle causing property damage. Rec. Doc. 1. After conducting an investigation, interviewing witnesses at the scene of the accident, and noting the damage to both vehicles, the investigating officer for the New Orleans Police Department cited the Defendant with Failure to Use Reasonable Vigilance. *See* Uniform Motor Vehicle Traffic Crash Report attached hereto as Exhibit A at p. 7. The investigating officer confirmed that Defendant Ingles admitted that he "was not certain if he cleared [plaintiff's] vehicle resulting in his vehicle striking [plaintiff's] vehicle." Ex. A at p. 7.  Mr. Collins  and his two passengers suffered injuries as a result of the accident. Ms. Kelly was transported from the scene by EMS personnel to New Orleans East Hospital.  Ex. A at pp. 6-7.

Plaintiffs timely filed suit on August 7, 2018 against all Defendants. Rec. Doc. 1. On September 10, 2018, Defendants John C. Benton d/b/a Q&M Motor Transports and Northland Insurance Company filed their original Answer. Rec. Doc. 7. On October 11, 2018, Defendant Mark Ingle filed his original Answer.  Rec. Doc. 15. The Court conducted an initial scheduling conference on November 13, 2018.  Trial was originally set to begin on October 21, 2018.  Rec. Doc. 17.  Due to Plaintiffs' surgery and treatment status, the parties mutually agreed to request a brief continuance of the trial.  Judge Brown granted the parties' request on June 11, 2019.   Rec. Doc. 25.  Ultimately, a revised Scheduling Order was issued on June 20, 2019, setting a new trial date for January 27, 2020.  Rec. Doc. 27.

On July 19, 2019, almost nine (9) months after the filing of their original Answers, Defendants filed two near-identical motions seeking leave to file a counterclaim [Rec. Doc. 31] and a supplemental and amended answer [Rec. Doc. 32].  The proposed supplemental and amended

answer is a mirror image of the proposed counterclaim. Through these two motions, Defendants are attempting for the very first time to inject fraud into this case based upon information made known to them months ago  by accusing Plaintiffs of intentionally conspring to cause and/or stage the accident in an effort to present a fraudulent claim against Defendants.  Rec. Doc. 31-4; Rec. Doc. 32-4.[1]  This Court has scheduled oral argument on Defendants' two motions for Wednesday, August 21, 2019.  Rec. Doc. 37.

## **LEGAL ARGUMENT**

In an attempt to satisfy their pleading obligations, Defendants make speculative accusations and cast aspersions of fraud and collusion on the accident victims, unnamed medical personnel, their attorney, and even their attorney's fiancé despite the fact that the allegations stop well short of identifying any actual wrongdoing.  For the most part, Defendants accusations are broken down into two categories:  (1) generic, generalized conclusions that lack sufficient factual support; and (2) unrelated, attenuated accusations and speculative connections that will require the factfinder to make extraordinary leaps in judgment to support Defendants' counterclaim.  None of these allegations come close to stating a valid claim of fraud under Louisiana law, particularly when the allegations are properly viewed under Rule 9(b)'s heightened standard of review.

As such, Defendants' motion for leave to file a counterclaim of fraud should be denied. Because an affirmative defense of fraud must also satisfy the pleading standard of Rule 9(b), Defendants' motion for leave to file a supplemental and amending answer with new affirmative defenses grounded in fraud must also be denied.

---

[1] The conclusory allegations and untenable accusations forming the basis of Defendants' counterclaim and any related affirmative defense are outlined, assessed, and placed in their proper context throughout this memorandum.  As a result, such allegations will not be repeated here.

I.    **Defendants' Proposed Counterclaim Fails to State a Valid Claim of Fraud.**

Plaintiffs' motion to dismiss Defendants' counterclaim is brought under Federal Rule of Civil Procedure 12(b)(6).  To survive a Rule 12(b)(6) motion, a party must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the party pleads facts that allow the court to "draw the reasonable inference that the [opposing party] is liable for the misconduct alleged." *Id.* at 678. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the nonmoving party. *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). However, "[t]he plaintiff must plead enough facts to state a claim to relief that is plausible on its face." *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007).

Critically, a legally sufficient counterclaim must establish more than a "sheer possibility" that the party's claim is true.  *Iqbal*, 556 U.S. at 678.  The counterclaim must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Id.* In other words, the face of the complaint or counterclaim must contain enough factual matter to raise a reasonable expectation that discovery will reveal relevant evidence of each element of the party's claim. *Lormand*, 565 F.3d at 257.  The claim must be dismissed if there are insufficient factual allegations to raise a right to relief above the speculative level or if it is apparent from the face of the complaint or counterclaim that there is an insuperable bar to relief.  *Twombly*, 550 U.S. at 555; *Jones v. Bock*, 549 U.S. 199, 215 (2007).

A.    **The Proposed Counterclaim Fails to Sufficiently Allege That Defendants "Justifiably Relied on Plaintiff's Alleged Misrepresentations."**

There is no dispute that Defendants' counterclaim asserts a claim for fraud.  See Rec. Doc. 31-1 at p. 3; Rec. Doc. 31-4 at ¶ 13.  Louisiana law defines a claim of fraud as "a misrepresentation

or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. Civ. Code art. 1953. The elements of a Louisiana fraud and intentional misrepresentation claim are: 1) a misrepresentation of a material fact; 2) made with intent to deceive; and 3) causing justifiable reliance with resultant injury. *Kadlec Med. Ctr. v. Lakeview Anesthesia Assoc.*, 527 F.3d 412, 418 (5th Cir. 2008).  *See also Boutain v. Radiator Specialty Co.*, No. CIV.A. 11-1907, 2011 WL 6130754, at *2 (E.D. La. Dec. 8, 2011) (quoting La. Civ. Code. Art. 1953). When a party fails to plead sufficient facts to satisfy just one of the requisite elements of a claim, that claim fails as a matter of law.  *Iqbal*, 556 U.S. at 678-79.

Here, Defendants have failed to satisfy the basic Rule 12(b)(6) pleading standard because they do not sufficiently allege that they justifiably relied on an alleged misrepresentation by any particular Plaintiff. *See Iqbal*, 556 U.S. at 678.  Defendants fail to allege any facts to explain what lie or misrepresentation they relied upon, which plaintiff lied or misrepresented information upon which some defendant relied, or which particular defendant relied on the lie or misrepresentation.

Instead, Plaintiffs – and now this Court – are left to guess as to how Defendants may have "justifiably relied upon a misrepresentation of material fact" by any Plaintiff in this case. In paragraphs 14-18 of Defendants' proposed counterclaim, they purport to suggest that Defendants have been injured by Plaintiffs in either "misrepresenting" or "staging the accident and/or the injuries" without addressing the element of justifiable reliance. For example, Defendants appear to assert that being forced to defend against what they see as a fraudulent claim for damages is somehow equivalent to "justifiable reliance" on Plaintiffs' claim.  Rec. Doc. at ¶14.  This contention defies rationale thought.  Defendants are indeed contesting Plaintiffs' allegations in this very litigation. It defies logic how defendants have justifiability relied upon plaintiffs' representations when they are challenging Plaintiffs' claims before this Court.

Similarly, Defendants appear to assert that Plaintiffs are now to blame for the decision by Defendant Northland Insurance Company to sever its relationship with Defendant John C. Benton d/b/a Q&M Transports. Rec. Doc. 31-4 at ¶ 17. Any decision made by either the insured or the insurer to sever such a meaningful relationship as described by Defendants in their counterclaim was made at their own discretion and well in advance of final adjudication of this case. Plaintiffs have uncovered no case in Louisiana or beyond that stands for the absurd proposition that a defendant justifiably relies on a plaintiff's claim when it severs it relationship with its insurance company. None; whatsoever. Again, both the insured and the insurer are contesting Plaintiffs' allegations in this very litigation. If a decision was made by either defendant prematurely, that decision cannot be placed at the feet of the Plaintiffs.

Finally, to the extent Defendant Mark Ingle is attempting to allege some form of justifiable reliance through paragraph 18 of their counterclaim, those efforts should also fail. Defendants seem to infer that Defendant John C. Benton d/b/a Q&M Transports may have fired Defendant Mark Ingle as a truck driver because of the accident. Rec. Doc. 31-4 at ¶ 18. Defendants offer no factual allegations as to when they terminated the driver or why they did so. However, any suggestion that Ingle's termination was based on Q&M Transports' reliance on Plaintiff's representations is refuted by Defendants' own proposed counterclaim. Defendant Q&M Transports has repeatedly represented to this Court that it's representatives do not believe Plaintiffs' representations and, instead, state that "Mark Ingle vehemently disputes that an accident occurred" as alleged by Plaintiffs. Because Defendant Q&M Transports candidly admits it does not believe Plaintiffs' version of the accident, it once again defies logic how it could have relied on any misrepresentation by any plaintiff in terminated Mr. Ingles.

Because they have failed to properly allege an essential element of their fraud claim through sufficient factual allegations, the Court should deny outright Defendants' motion for leave to file a counterclaim without the need for any further analysis. Dismissal with prejudice is warranted as Defendants' fraud claim is not legally cognizable since they cannot allege justifiable reliance sufficiently under the set of facts they have presented. *See Thomas v. Chambers*, No.18-4373-SSV-KWR, Rec. Doc. 20 at pp. 7-9 (October 24, 2018) (dismissing fraud claim based on similar set of allegations). *See also Dumas v. Jefferson Par. Sewerage Dep't*, No. 00-2993, 2001 WL 699045, at *3 (E.D. La. June 21, 2001) (dismissing complaint with prejudice when plaintiff's state law claims were not cognizable).

**B.    Judge Vance Has Definitively Resolved This Same Issue in Recent Months.**

Defendants are not the first to try and assert a dubious counterclaim of fraud against accident victims based upon a similar set of allegations. Those defendants did not succeed; these Defendants should fare no better.  In fact, Judge Vance addressed this very issue – ***not once but twice*** – over the past few months.

In *Thomas v. Chambers*, No. 18-4373-SSV-KWR, Rec. Doc. 20 (October 24, 2018), the plaintiffs alleged that they were involved in an automobile accident whereby the defendant driver merged his tractor-trailer into the path of the plaintiffs' vehicle and collided with the plaintiff's car causing serious injuries to the plaintiff driver and her passengers.  Rec. Doc. 20 at p. 2.  Just as the Defendants have done in this case, the defendants in *Thomas* filed a counterclaim of fraud under Louisiana law alleging that plaintiffs intentionally caused the collision by staging the accident.  *Id*. at p. 3.  And, just as the Defendants have done in this case, the defendants in *Thomas* alleged that they have suffered damages as a result of the plaintiffs' misrepresentations.  *Id*.

The *Thomas* plaintiffs filed a motion to dismiss the counterclaim.  Judge Vance first recognized the heightened pleading standard under to which a claim of fraud must be subjected. Rec. Doc. 20 at p. 6. The court then outlined the three legal elements required in order maintain a claim of fraud under La. Civ. Code art. 1953 (a misrepresentation of a material fact; made with intent to deceive; causing justifiable reliance with resultant injury).  *Id*. at p. 5 (citing *Kadlec Med. Ctr.*, 527 F.3d at 418).  Judge Vance ultimately found that the defendants failed to satisfy even the less stringent Rule 12(b)(6) pleading standard because they did not allege that they justifiably relied on plaintiffs' alleged misrepresentations. Rec. Doc. 20 at p. 7 (citing *Iqbal*, 556 U.S. at 678).

In an effort to satisfy Judge Vance's concerns, the defendants argued that that plaintiffs' alleged misrepresentations were "used to deceive" them into "defend[ing] a meritless claim . . . in justifiable reliance." *Id*. at p. 7.  Judge Vance noted that the *Thomas* defendants appeared to assert that being forced to defend against what they see as a fraudulent claim for damages is equivalent to "justifiable reliance" on that claim.  This is precisely what the Defendants are doing now in this case.  The district court found that this sort of contention misconstrues the definition of "reliance," which Black's Law Dictionary defines as "dependence or trust by a person." *Black's Law Dictionary* (10th ed. 2014).

Judge Vance ultimately granted the *Thomas* plaintiffs' motion to dismiss defendants counterclaim holding:

> Any assertion that defendants depended upon or trusted plaintiffs' alleged misrepresentations is facially absurd, because defendants are contesting them in this litigation. It therefore defies comprehension how defendants have justifiably relied on plaintiffs' representations and been injured as a result.

*Id*. at p. 8.  Additionally, Judge Vance also found that defendants failed to allege any facts in support of their conclusory allegation that plaintiffs intentionally caused the automobile collision noting that "[d]efendants thus fall well short of their obligation to 'set forth specific facts to support

an inference of fraud.'  Rec. Doc. 20 at p. 8 (citing *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d at 1068; Fed. R. Civ. P. 9(b))).

Dissatisfied with Judge Vance's decision, the defendants effectively sought a rehearing in an effort to try to circumvent the necessary requirement of justifiable reliance under Louisiana law. The *Thomas* defendants also sought leave to file an amending counterclaim to offer additional allegations based upon "newly discovered evidence."  This so-called "newly discovery evidence" in the *Thomas* case serves as the basis for the Defendants' allegations in this case.

The *Thomas* defendants sought to allege the following:  that the defendant truck driver did not experience any type of impact; that defendants have connected plaintiffs to approximately fifteen other lawsuits where the plaintiffs alleged they were side-swiped by an 18-wheel truck on interstate 10; that plaintiffs in those other accidents were represented by the same legal counsel; that the plaintiff's claims were staged and fabricated; and that other circumstantial evidence supports in inference that the plaintiffs' claims are fabricated.  Again, these are the same sort of allegations relied upon by Defendants in their counterclaim against Plaintiffs in this case.

On rehearing, the defendants argued that Louisiana law does not require a showing of justifiable reliance when alleging a claim for delictual fraud. Judge Vance rejected this argument and confirmed once again that defendants failed to state a valid claim of fraud under Louisiana law.  *See Thomas v. Chambers*, No. 18-4373-SSV-KWR, Rec. Doc.  37 at p. 10 (February 7, 2019). Critically, Judge Vance first noted that "[n]one of defendants' new evidence is relevant to the Court's analysis" as to whether the *Thomas* defendants could state a cognizable claim for fraud. *Id.* at pp. 7-8.

Next, Judge Vance properly confirmed that federal courts applying Louisiana law routinely include justifiable reliance as a distinct element of the claim.  She further noted that the defendants'

emphasis on the fact that they state a claim for delictual, rather than contractual, fraud is irrelevant. Rec. Doc. at pp. 8-9 and fn 34. Judge Vance concluded that "[t]here has never been any confusion that defendants' claim is for delictual fraud. Indeed, in both its order dismissing defendants' counterclaim and, in this order, the Court has applied the Louisiana standard for alleging delictual fraud." *Id.* (citing to *Kadlec*, 527 F.3d at 418; *Abbott v. Equity Grp., Inc.*, 2 F.3d 613, 624 (5th Cir. 1993); *Abell v. Potomac Ins. Co.*, 858 F.2d 1104, 1131 n.33 (5th Cir. 1988).

The district court denied the *Thomas* defendants' motion to alter the judgement and/or motion for relief from judgment as well as their motion to file an amended counterclaim. Judge Vance concluded:

> Defendants assert that they have been damaged by being forced to spend money on "attorney's fees and litigation expenses" to defend themselves from plaintiffs' alleged lies. If defendants can prove their allegations, there are other avenues by which they can recover the relief they seek. *See* Fed. R. Civ. P. 11(b)(1), (b)(3), (c)(1), (c)(2). ***But defendants' factual assertions are incompatible with a claim for delictual fraud under Louisiana law, and their motions must therefore be denied***.

Rec. Doc. 37 at p. 10. The similarities between the counterclaim presented in *Thomas* and the proposed counterclaim now presented by the Defendants in this case are obvious and overwhelming. Judge Vance's thorough and well-reasoned decisions rendered earlier this year should guide this Court in resolving Defendants' motion for leave to file an identical counterclaim.

### C.    Defendants' Fraud Claim Fails to Meet the Heightened Pleading Requirement of Federal Rule of Civil Procedure 9(b).

Even if Defendants' counterclaim somehow satisfies the minimum pleadings requirements as outlined by Judge Vance as well as those standards required by *Iqbal*, *Twombley*, and the like, their fraud claim still fails to meet the necessary *heightened* pleading requirements under Federal Rule of Civil Procedure 9(b). There should be no dispute that Defendants' fraud claim is subject to Rule 9's heightened pleading requirement. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333,

338–39 (5th Cir. 2008) ("[S]tate-law fraud claims are subject to the pleading requirements of Rule 9(b)"). Defendants admit in their motions that Rule 9(b) applies. *See, e.g.*, Rec. Doc. 31-1 at p. 3.

Under Rule 9(b), a party "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Fifth Circuit "interprets Rule 9(b) strictly, requiring the [complaining party] to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009). In other words, "Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003) (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)). *See also U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010).

"[A]lthough scienter may be 'averred generally,' . . . pleading scienter requires more than a simple allegation that a [party] had fraudulent intent. To plead scienter adequately, a [complaining party] must set forth specific facts that support an inference of fraud." *Tuchman*, 14 F.3d at 1068 (5th Cir. 1994) (quoting Fed. R. Civ. P. 9(b)). This standard "ensures the complaint 'provides defendants with fair notice of the plaintiffs' claims, protects defendants from harm to their reputation and goodwill, reduces the number of strike suits, and prevents plaintiffs from filing baseless claims then attempting to discover unknown wrongs.'" *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009) (quoting *Melder v. Morris*, 27 F.3d 1097, 1100 (5th Cir. 1994)).

Finally, group pleading is impermissible under Rule 9(b). "[A] complaint alleging fraud may not group the defendants together." *Boutain v. Radiator Specialty Co.*, No. 11-1907, 2011 WL 6130754, at *2-3 (E.D. La. Dec. 8, 2011). Plaintiffs must plead specific facts as to each defendant separately for each of the Rule 9(b) requirements." *Id.*

1.   **Defendants' counterclaim is based on nothing more than conclusory statements and a myriad of irrelevant and speculative allegations unrelated to the accident at issue.**

The crux of Defendants' counterclaim is that that Plaintiffs, *as a group*, intentionally made some sort of misrepresentations that rose to the level of fraud.  As an initial matter, Defendants provide no factual support for these allegations. Defendants did not (1) specify the statement contented to be fraudulent; (2) explain why or how the statements were fraudulent, (3) provide the specific time of the alleged fraud; (4) specify the location of the alleged fraud; or (5) identify by name which plaintiff or plaintiffs actually perpetrated the alleged fraud. In other words, Defendants have failed to state a claim for fraud since they have not set forth the "who, what, when, where, and how" as required by Rule 9 and the case law interpreting it. *See, e.g., Boutain,* 2011 WL 6130754 at *1–3; *Steury,* 625 F.3d at 266; and *Peaker Energy*, 2015 WL 4879415 at *6–7. Defendants also improperly grouped the three Plaintiffs together in alleging fraudulent conduct. Since group pleading is impermissible under Rule 9(b), this too constitutes failure to state a claim.

Instead, Defendants make broad, generalized (often mistaken) allegations without any supporting facts or any effort to uncover the truth while making speculative, unsubstantiated accusations and insinuations that undermine the particularized pleading standard. When each allegation is fully examined and exposed, it is clear that Defendants' counterclaim fails to state a valid claim of fraud against any of the three plaintiffs in this case.

a.   **Genuine dispute as to who caused the accident.**

Defendants assert in their counterclaim that the Plaintiffs as a group (including those who were passengers and, thus, were not driving) intentionally caused the accident. *See, e.g*., Rec. Doc. 31-4 at ¶¶ 13 and 19. Defendants fail to allege any facts to support their conclusory allegation that plaintiffs intentionally caused and/or staged the automobile collision. This sort of generic

allegation is nothing more than a genuine dispute as to causation which arises in virtually every motor vehicle accident. And, in no way, does this allegation remotely support an inference of fraud. Instead, Defendants suggest only that the defendant driver, Mark Ingle, "vehemently" disputes that the accident occurred as alleged by Plaintiffs. Rec. Doc. 31-4 at ¶ 13. Critically, Defendants fail to inform the Court that NOPD cited Mr. Ingle as the cause of the accident and that Mr. Ingle the subsequently pled guilty and paid the fine[2] associated with the violation. Traffic Crash Report, Ex. A at p. 7. *See also* Responses of Mark Ingle to Plaintiffs' Requests for Admission attached hereto as Ex. B at p. 2. Again, at best, Defendants' conclusion is nothing more than a genuine dispute as to how the accident occurred rather than a basis of fraud.

In addition, Defendants' counterclaim is contradicted by their own discovery responses to date. Defendants assert in their counterclaim that the Plaintiffs "intentionally caused the accident." *See, e.g.*, Rec. Doc. 31-4 at ¶¶ 13, 19. This allegation implies that a collision did occur but that Mr. Collins intentionally initiated the contact with the tractor-trailer. However, in various discovery responses, Defendants deny that any collision occurred. *See* Answers of John C. Benton d/b/a Q&M Motor Transports to Plaintiffs' First Set of Interrogatories attached here to as Ex. C. Defendant Ingles repeatedly admits in other discovery responses that "he has no personal knowledge that he was involved in a collision with another vehicle on August 9, 2017." Ex. B at pp. 1-2. Quite simply, Defendants' own discovery responses belie their claim that Plaintiffs intentionally caused the collision.

### b.    Allegation of "minor" damage.

Next, Defendants try to bolster their fraud claim by relying on the accident report. Defendants allege that "the investigating officer noted very minor damage to the rear passenger

---

[2] Undersigned counsel has confirmed with NOPD via telephone communications that Defendant Ingles pled guilty and paid the fine. Plaintiffs has requested the certified documentation from NOPD regarding Ingles' citation.

side of the Q&M 18-wheeler." Rec. Doc. 31-4 at ¶ 13. Defendants go on to represent to this Court that the officer "noted that the extent of damage to [plaintiff] Kelly's vehicle to be minor/moderate" before boldly declaring that the accident was ultimately classified as "minor." *Id.* As an initial matter, Defendants' characterization of the accident report is misleading at best. Second, even if Defendants' summary of the accident was accurate, the accident report in no way supports a counterclaim of fraud. Instead, the report confirms that an accident indeed occurred causing, in part, "moderate" damage to plaintiff's vehicle and requiring EMS transportation of Ms. Kelly to a nearby hospital.

In the Uniform Motor Vehicle Traffic Crash Report, the investigating officer confirmed that Defendant Ingles admitted that he "was not certain if he cleared [plaintiff's] vehicle resulting in his vehicle striking [plaintiff's] vehicle." Traffic Crash Report, Ex. A at p. 7. The investigating officer noted that he "observed damage to both vehicles" including "trailer damage to the left rear right side about a foot in length" on the 18-wheeler. *Id.* at p. 7. Similarly, the investigating officer observed "frontal damage to the left headlamp and fender wheel and front left side of the hood crumple zone" of Ms. Kelly's vehicle. *Id.* at p. 7. The investigating officer also noted "moderate" damage to the left side of plaintiff's vehicle and "minor/moderate" damage to the left front and rear of plaintiff's vehicle. *Id.* at p. 5. Finally, the officer confirmed that Ms. Kelly was transported by EMS called to the scene to New Orleans East Hospital as result of her injuries. *Id.* at p. 7. The officer cited Defendant Ingle as a result of the accident. *Id.* at p. 7. Mr. Ingle subsequently pled guilty and paid the fine associated with the violation. Not only are Defendants' allegations of lack of impact refuted by the official traffic crash report, but the allegations fail to support any inference of fraud with particularity as to any of the plaintiffs.

### c.    Allegation of "minor" injuries.

Defendants next allege that "[d]espite the alleged accident being classified as a "minor" accident, Collins, Kelly, and Polk each obtained surgical recommendations and have undergone surgery since the alleged accident in question." Rec. Doc. 31-4 at ¶ 10.  Without expressly stating so, Defendants can only be implying that each Plaintiff received false diagnoses from medical providers and then underwent unnecessary surgeries to falsify and bolster a personal injury claim. By doing so, Defendants have expanded their speculative conspiracy theory to include unnamed licensed physicians. Again, such vague and speculative innuendos cannot support a claim fraud.

It is quite common for medical examiners to disagree as to the extent of a particular victim's injury or to question pre-existing injuries.  Such is the case with the assessment of Mr. Collins and Mr. Polk.  These differences in opinion go to heart of the damage portion of most personal injury claims.  If such allegations were sufficient to support an allegation of fraud, virtually every personal injury claim would be defended on such a basis. More importantly, however, Defendants conveniently fail to inform the Court that Ms. Kelly, who was transported to the hospital following the accident, underwent an Independent Medical Examination *by Defendants' own expert*, Dr. Everett G. Robert.  Dr. Robert connected the accident with Ms. Kelly's injuries by concluding "I believe that if the accident did coincide with her onset of spinal pain and she truly had no pain prior to this accident, then I would say that the accident is causative of her annular tear at L5-S1." *See* IME Report of Candy Kelly dated July 15, 2019, attached hereto as Ex. D.  It is inconceivable how Ms. Kelly, Mr. Collins, and Mr. Polk can be accused of fraud by staging an accident that the Defendants' own expert concluded likely caused Ms. Kelly's injuries.  Defendants' counterclaim should be denied on this basis alone.

### d.    Reliance on unrelated accidents.

Next, Defendants borrow the same allegations made in several side-swipe cases pending in the Eastern District of Louisiana or in Civil District Court for Orleans Parish in an effort to direct a fraud claim to Plaintiffs.  Defendants allege that, "through their own investigation," they have uncovered over 20 accidents in which side-swipe allegations were made in other matters with similar factual scenarios to the accident at issue. Rec. Doc. 31-4 at ¶ 6.  Defendants further allege that, in some of those cases, the claimants were represented by counsel whose office was located at 525 Clay Street in Kenner, Louisiana.  *Id*. at ¶ 8.  Based upon these other, unrelated accidents, Defendants accuse Plaintiffs collectively of fraud without connecting these prior accidents to any of the Plaintiffs, let alone alleging that they were involved in some prior scheme to defraud anyone.

Claimants involved in other trucking collisions are irrelevant and immaterial to the claims in this case. Allegations that some prior side-swipe accidents occurred on the interstate or that some of the claimants may be represented by the same lawyer are wholly irrelevant and should not be permitted. Defendants fail to explain how another accident occurring months or years before (or, in many cases, ***after***) Plaintiffs' accident could somehow possibly have any bearing on this litigation, let alone substantiate a claim of fraud.  Defendants also fail to explain how each of the claimants in those other cases relate to any Plaintiff in this case. The fact that some prior accidents occurred in Orleans Parish or that some of the claimants may be represented by the same lawyer are wholly insufficient to state a plausible claim for fraud given the heightened pleading requirement in Federal Rule of Civil Procedure 9(b). Defendants must not only state with particularity the circumstances constituting fraud or mistake, but must also set forth specific facts that support an inference of fraud. *See Flahrety*, 565 F.3d at 207 (explaining that the party pleading fraud must "specify the statements contended to be fraudulent, identify the speaker, state when

and where the statements were made, and explain why the statements were fraudulent"); *Tuchman*, 14 F.3d at 1068 (explaining that "[t]o plead scienter adequately, a [complaining party] must set forth specific facts that support an inference of fraud).

In *Weiskopf v. Bond*, 739 F.Supp. 1084 (E.D. La. 1990), a defendant sought to "introduce evidence both of similar accidents involving the plaintiffs and of similar accidents involving people other than the plaintiffs." 739 F.Supp. at 1085. The court bifurcated the admissibility analysis, and considered similar accidents involving the plaintiffs and similar accidents involving other people separately. *Id.* at 1085–87. The court excluded the introduction of testimony of the disputed witnesses to the extent it would be used as evidence of fraud. *Id.* at 1087. It reasoned:

> The defendant in the present case seeks to call witnesses that will testify as to accidents in which none of the parties to the suit were involved. Although similar act evidence would be relevant were the plaintiffs charged with committing the past similar acts, such extrinsic act evidence is not relevant when it is parties unrelated to this litigation that are charged with committing the past acts. Even if relevant, the prejudicial impact of introducing evidence of acts by other people as evidence of the plaintiffs' modus operandi clearly outweighs any possible probative value. *Id.*

*Weiskopf* supports the conclusion that "extrinsic act evidence is not relevant when it involves parties unrelated to this litigation that are charged with committing the past acts." Here, the extrinsic act evidence at issue is allegedly-similar trucking collision cases involving parties unrelated to this litigation. These unrelated acts are insufficient to substantiate a claim of fraud.

### e.    Relationships Between Mr. Collins and Raphus Adams and Ryan Harris.

Similarly, Defendants suggest that Plaintiffs have staged the accident because Mr. Collins, the driver of Mr. Kelly's vehicle at the time of the accident, was in contact with Raphus Adams and Ryan Harris for several days prior to and following the accident. Rec. Doc. 31-4 at ¶ 8. To be clear, neither Mr. Adams nor Mr. Harris was a passenger, driver, or witness to the accident at issue. Defendants go on to speculate that those communications must demonstrate fraud on

Plaintiffs' collective part simply because Mr. Adams and Mr. Harris have filed lawsuits in which they allegedly claim personal injuries from unrelated, prior accidents on I-10. *Id*. Yet, Defendants fail to allege any factual support to explain how a phone call between these individuals support a claim of fraud under Louisiana law. Defendants fail to allege the nature of any relationship between Mr. Adams, Mr. Harris, and Mr. Collins, the purpose of the calls, and, critically, the subject matter of the phone conversations that Defendants now point to as evidence of fraud. Instead, this Court is simply asked to trust Defendants in their speculative assertion that some other claimants in unrelated cases are somehow tied to a conspiracy to Plaintiffs' alleged efforts to now defraud Defendants in this case. Even if Defendants could explain the nature of the phone calls between other claimants and Mr. Collins, that information has no bearing on a counterclaim of fraud under Louisiana law; none whatsoever.

Defendants should not be rewarded for simply speculating on the nature and characterization of the relationship between Mr. Collins and Mr. Adams and Mr. Harris. If Defendants had bothered to ask Mr. Collins in his deposition, he would have explained why he was in contact with both individuals. First, Mr. Adams and Mr. Collins have been best friends since grade school. As the phone records confirm, they speak to each other almost daily and certainly on a regular basis. *See* Phone Records attached to Defendants Counterclaim [Rec. Doc. 31-4]. There is nothing unusual, let alone fraudulent, about speaking with one's best friend following an accident or any other time. Second, Mr. Collins has both a professional and personal relationship with Mr. Harris. Mr. Collins owns and operates Devine Graphix & Printing Company, a company specializing in graphic printing on t-shirts and other medium. On August 8, 2017, one day prior to the accident, Ryan Harris placed an order on behalf of RJ's Landscaping, LLC with Mr. Collins for printed t-shirts. *See* Order and Invoice dated August 8, 2017 attached hereto as

Ex. E.  The phone calls between Mr. Harris and Mr. Collins at a time when Mr. Harris had placed an order with Mr. Collins were neither unusual nor illustrative of illegal conduct.  Defendants' efforts to insinuate otherwise should not stand.

### f.    Attempts to connect Plaintiffs to Cornelius Garrison.

Next, Defendants rely again on accusations against and insinuations related to another unrelated individual, Cornelius Garrison, who was neither a passenger, driver, nor witness to the accident at issue.  Defendants try to somehow connect a series of speculative dots to infer fraud on the part of the Plaintiffs as a collective group.  Critically, at the end of the day, Defendants fail to allege, let alone explain in any way, how a connection to Mr. Garrison could give rise to any inference of fraud under Louisiana law.

According to Defendants' proposed counterclaim, Mr. Garrison, a known businessman in the New Orleans East community, called Mr. Collins several times on August 9, 2017 following the accident, the first call coming four hours after the accident.  Rec. Doc. 31-4 at pp. 3, 7-8.  To be clear, not once did Mr. Collins call Mr. Garrison.  *Id*.  Mr. Garrison also made one call to Mr. Polk on August 10, 2017.  *Id*. at p. 8.  Based on these calls alone, Defendants make the leap – and ask the Court to do the same – that these conversations must evidence fraud because Mr. Garrison himself was involved in two accidents in 2011 and 2015 involving a Hotard bus and a tractor trailer, both resulting in personal injury lawsuits.[3]  *Id*. at ¶ 6.  Not only is Defendants' conjecture misplaced, such speculation is wholly insufficient to state a valid claim of fraud.

First, Mr. Collins does not deny that he knows Mr. Garrison.  In fact, Mr. Collins is one of Mr. Garrison's numerous business customers.  Mr. Garrison supplies and sells shirts to Devine

---

[3] Defendants fail to allege whether or not Mr. Garrison was accused of fraud in either of those cases or the resolution of those matters let alone explain how personal injury claims made in 2011 and 2015 could somehow related to Plaintiffs' claims in this unrelated case.

Graphix & Printing Company, the printing company owned and operated by Mr. Collins.   As discussed above, on August 8, 2017, one day prior to the accident, RJ's Landscaping, LLC placed an order with Mr. Collins for printed t-shirts.   *See* Ex E. In order to fulfill the order, Mr. Collins contacted Mr. Garrison to purchase t-shirts on which to apply the printed graphics for Mr. Harris and his landscaping company.   *Id.*

Furthermore, Defendants fail to allege or describe the content or purpose of the phone calls. Defendants simply assume the phone calls were made for nefarious reasons to further some far-ranging conspiracy to defraud the Defendants without supplying any supporting factual allegations as required by Rule 9(b).   In reality, Mr. Collins and Mr. Garrison had legitimate business reasons for the communications now questioned by Defendants.

Second, despite having every opportunity to do so, Defendants have failed to genuinely investigate Mr. Collins' relationship with Mr. Garrison.   Defendants received the phone records at issue on April 18, 2019.   Defendants then deposed Mr. Collins on April 25, 2019.   Despite having the phone records for a week prior to the deposition, Defendants failed to ask Mr. Collins a single question regarding his relationship with Mr. Garrison, the phone calls at issue, or Mr. Collins' knowledge of Mr. Garrison's relationship to other personal injury cases.   Defendants have also failed to seek the deposition of Mr. Garrison himself.   Defendants should not be permitted to bootstrap fraud to this case in order to expand their fishing expedition into further irrelevant areas of discovery.

### g.    Targeting Vanessa Motta as counsel of record.

In other sections of their proposed counterclaim, Defendants attempt to link Plaintiffs' lawyer, Ms. Motta and her firm, to other claimants in unrelated cases.   *See, e.g.*, Rec. Doc. 31-4 at ¶¶ 7-8  By doing so, Defendants are intentionally insinuating that Ms. Motta is somehow involved

in the filing of questionable actions and a conspiracy to defraud corporate clients. Such insinuations should not be condoned. If Defendants wish to accuse Ms. Motta of something improper, Defendants should do so with sufficient factual support and competent evidence instead of casual insinuations as a means of linking this case to other unrelated cases. They should not be permitted to insinuate something unethical by repeatedly and vaguely mentioning that Ms. Motta represented other claimants. *See Pigford v. Veneman*, 215 F.R.D. 2, 4–5 (D.D.C. 2003) (noting that court have liberal discretion to disregard accusations against an attorney as scandalous when they were unsupported by facts or evidence); *Murray v. Sevier*, 156 F.R.D. 235, 258 (D. Kan. 1994) (disregarding unsubstantiated allegation that a defendant and his legal counsel "bought off" prospective witnesses with "hush money."); *Magill v. Appalachia Intermediate Unit 08,* 646 F. Supp. 339, 343 (W.D. Pa. 1986) ("allegations reflect[ing] adversely on the moral character of an individual who [was] not a party to [that] suit" are irrelevant and should be excluded).

The fact that a lawyer represents a separate claimant in a separate personal injury matter is neither improper nor relevant to Defendants' purported counterclaim. If anything, Ms. Motta's professional history speaks to her excellent reputation as a trucking attorney. These are exactly the type of aspersions that the heightened pleading standard for fraud is designed to prevent. *Melder v. Morris*, 27 F.3d 1097, 1100 (5th Cir. 1994) (citing *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1067 (5th Cir.1994)); *U.S. ex rel. Kress v. Masonry Solutions Intern., Inc.*, 2015 WL 365835, at *2 (E.D. La. 2015); *see also*, *City of New York v. Cyco.Net, Inc.*, 383 F.Supp.2d 526, 539 (S.D. N.Y. 2005).

### h.    Targeting Sean Alfortish and Total Medical Concepts, LLC.

Defendants' personal attacks do not end there. Similarly, they go so far as to imply that Ms. Motta's fiancé, Sean Alfortish, is also somehow involved in a conspiracy to perpetrate fraud.

Defendants' proposed counterclaim contains a series of allegations that are intended to, once again, insinuate some nefarious behavior on the part of Plaintiffs and others rather than alleging sufficient facts to substantiate a claim of actual fraud.

For example, Defendants first allege that Mr. Polk, one of the plaintiff passengers, contacted Mr. Alfortish on August 9, 2017, approximately one hour prior to the accident. Rec. Doc. 31-4 at ¶ 7. That is the extent of the allegation. Defendants, critically, fail to allege the purpose of the call, the subject matter discussed, or how the call is connected in any way to fraudulent conduct. If Defendants would have properly investigated the matter, they would quickly learn that Mr. Polk is in a relationship with the sister of Mr. Alfortish's best friend. They know each other through that relationship. On the day of the accident, Mr. Polk called Mr. Alfortish to obtain the phone number of Lionel Sutton, a lawyer who was representing Mr. Polk in an unrelated claim based upon a referral by Mr. Alfortish. Mr. Polk's phone records confirm Mr. Polk did in fact call Mr. Sutton immediately after speaking with Mr. Alfortish. See Ex. F attached to Rec. Doc. 31-1. Defendants cite to no other phone calls between Mr. Alfortish and Mr. Polk and offer no further explanation of how any call between the two are linked to fraudulent conduct.

Next, Defendants reference highly irrelevant and unrelated matters involving Mr. Alfortish's personal life with Plaintiffs' counsel and a trust established for his daughter. *Id*. The fact that Mr. Alfortish is engaged to Plaintiffs' counsel or that he is the grantor of a trust associated with his daughter has no bearing on this case let alone supports Defendants' counterclaim of fraud.

Finally, Defendants allege that "[u]pon information and belief, Sean Alfortish is/was a principal of Total Medical Concepts, LLC," a third-party funding company which "operates out of the building owned by The J.A. Trust and located at 525 Clay Street in Kenner, Louisiana, the

same address as counsel for plaintiffs." Rec. Doc. 31-4. It is difficult, if not impossible, to infer, what Defendants are trying to imply with this sort of allegation. Again, Defendants provide no other information as to how a building, an unrelated trust, and Mr. Alfortish's interest or lack thereof, in Total Medical Concepts has anything to do with the accident at issue or any purported misrepresentations allegedly made by Plaintiffs in this case. Those accused of fraud should not have to guess as to the specific allegations made against them. More importantly, unsubstantiated and speculative accusations reflecting adversely on Mr. Alfortish's character have no place in this case. *Magill,* 646 F. Supp. at 343 (W.D. Pa. 1986) (holding that "allegations reflect[ing] adversely on the moral character of an individual who [was] not a party to [that] suit" are irrelevant and should be excluded).

> **2.    Other judges in this district have assessed and rejected claims of fraud based on the same sort of allegations relied upon by Defendants in this case.**

As mentioned at the outset, various defendants and their attorneys have recently attempted to inject fraud into virtually every traditional side-swipe case as a counterclaim and as an affirmative defense by relying exclusively on generic, conclusory allegations, scandalous insinuations, illogical and unsubstantiated connections between members of the New Orleans East community, and overzealous investigators. As demonstrated below, those recent efforts have failed; Defendants' attempts to borrow from those past efforts should as well.

For example, in *Reff v. Werner Enterprises, Inc.,* No. 18-8350-MLCF-JVM, Rec. Doc. 32 (March 20, 2019), plaintiffs alleged that Lynisha Reff was driving eastbound in the right lane of Interstate 10 in her 2005 Chrysler PT Cruiser, when a tractor-trailer driven by defendant Jackie Brown, an employee of Werner Enterprises, Inc. ("Werner"), merged into plaintiffs' lane of travel causing a collision between the two vehicles. Brown was cited by the NOPD for failure to yield.

*Reff,* Rec. Doc. 32 at p. 1.

Defendants sought to file a counterclaim and to amend their answer to add a new affirmative defense based upon defendants' allegation that the plaintiff fraudulently and intentionally staged the accident. In support of their counterclaim and affirmative defense, the *Reff* defendants alleged that the defendant driver did not feel a collision, that there was no damage to the Werner vehicle and minimal damage to Reff's vehicle, that Reff's vehicle was in a side-swipe accident before and after the accident alleged here, and that three similar accidents involve individuals who live on the same block as one of the plaintiffs here and one similar accident involves an individual who lives on the same block as another one of the plaintiffs here. As to the other similar accidents, defendants speculated that some of the individuals may be related to one of the plaintiffs here or they provide street addresses for other plaintiffs who live on the same street but many blocks away from one of the plaintiffs here.  *Reff*, Rec. Doc. 32 at pp. 7-8.  It is clear that the *Reff* defendants' allegations are similar to those by Defendants in this case.

Based upon these allegations, Judge van Meerveld denied the defendants' motion to file a counterclaim and any new affirmative defense premised on fraud.  The court also properly relied on Judge Vance's recent rulings in *Thomas* finding that these type of accusations could not rise to the inference of fraud.  *Id*. at 8.  Judge van Meerveld explained:

> None of these facts have been alleged here, just some coincidences, several of which are not that striking. As stated by Judge Vance in *Thomas v. Chambers*, a case where the defendants sought to assert a similar fraud claim against the plaintiffs:
>
>> Defendants fail to allege any facts in support of their conclusory allegation that plaintiffs intentionally caused the automobile collision. Defendants thus fall well short of their obligation to "set forth specific facts that support an inference of fraud." (citations omitted).

> This is equally true here. The court finds that the facts alleged by Werner at this time are insufficient to state a plausible claim for fraud given the heightened pleading requirement in Federal Rule of Civil Procedure 9(b). Werner must not only state with particularity the circumstances constituting fraud or mistake, but must also set forth specific facts that support an inference of fraud. *See Flahrety*, 565 F.3d at 207 (explaining that the party pleading fraud must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent"); *Tuchman*, 14 F.3d at 1068 (explaining that "[t]o plead scienter adequately, a [complaining party] must set forth specific facts that support an inference of fraud).

*Reff*, Rec. Doc. 32 at pp. 8-9.

Judge Vance and Magistrate Judge van Meerveld are not the only judges of this district to deny similar defense tactics of injecting fraud into a side-swipe case. Just last year, Judge Fallon likewise denied defendants' efforts to file a counterclaim and an affirmative defense based on the same sort of fraud alleged in this case. *See Reese v. Great West Casualty Co*., No. 18-cv-8336-EEF, Rec. Doc. 40 at p. 1 (April 18, 2019) (denying defendants' motion to bring a "proposed fraud counterclaim" and denying defendants' motion for leave to assert the affirmative defense of fraud).

## II.     The Court Should Deny Defendants' Request for Leave to File a Proposed Supplemental and Amending Answer Based the Same Allegations of the Proposed Counterclaim.

In their proposed Supplemental and Amending Answer, Defendants identify only one new affirmative defense as follows:

> Defendants plead the affirmative defense of conspiracy to commit fraud, as these Defendants continue to obtain evidence that the alleged subject accident in this case was intentionally caused and/or staged by the Plaintiffs, and that Plaintiffs suffered no injury due to the fault of Defendants.

*See* Rec. Doc. 32-4 on p. 2 (Twelfth Defense). In support of this new affirmative defense, Defendants cut and paste the entirety of their proposed counterclaim. Compare Rec. Doc. 31-4 with Rec. Doc. 32-4. Therefore, for the very same reasons why Defendants' counterclaim fails, so to should their affirmative defense based on the exact same allegations.

Like a claim for fraud, an affirmative defense of fraud must satisfy the pleading standard of Rule 9(b). *Hebert v. Specialized Envtl. Res*., LLC, No. CIV.A. 12-0071, 2013 WL 1288219, at *5 (E.D. La. Mar. 27, 2013); see Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). *See also Reff*, Rec. Doc. 32 at pp. 10-11 (March 20, 2019).  If the answer fails to state fraud with sufficient particularity, the affirmative defense should be stricken and/or dismissed from the case.

Like their proposed counterclaim, Defendants' amended answer provides no factual support for these allegations. As outlined above, Defendants did not (1) specify the statement contented to be fraudulent; (2) explain why or how the statements were fraudulent, (3) provide the specific time of the alleged fraud; (4) specify the location of the alleged fraud; or (5) identify by name which plaintiff or plaintiffs actually perpetrated the alleged fraud. In other words, Defendants have failed to state a claim for fraud since they have not set forth the "who, what, when, where, and how" as required by Rule 9 and the case law interpreting it. *See, e.g., Boutain,* 2011 WL 6130754 at *1–3; *Steury,* 625 F.3d at 266; and *Peaker Energy*, 2015 WL 4879415 at *6–7.  Instead, Defendants make allegations without any supporting facts based on speculative, tenuous accusations and insinuations that undermine the particularized pleading standard. As a result, the affirmative defense fails to meet the Rule 9(b) standard.  This is the exact conclusion reached by Judge van Meerveld in the *Reff* matter. *See  Reff*, Rec. Doc. 32 at pp. 10-11 (denying defendants' motion for leave to file a counterclaim and a new affirmative defense premised on allegations that the plaintiffs committed fraud and staged the accident at issue).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' motions for leave to inject fraud into this case because their counterclaim fails to state a valid claim

and the proposed supplemental and amending answer and affirmative defenses are grounded in baseless and speculative accusations of fraud that have no place in this case.

Respectfully submitted,

MOTTA LAW, LLC

/s/ *Vanessa Motta*
Vanessa Motta (#36915)
3632 Canal Street
New Orleans, Louisiana 70119
504-500-7246 (telephone)
504-513-3122 (facsimile)
COUNSEL FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that the following pleading has been delivered to all counsel of record, either through the CM/ECF system, or by depositing a copy of same in the United States mail, first class postage prepaid at their last known address of record, or by hand delivery, or by e-mail or by facsimile transmission on August 13, 2019.

*/s/ Vanessa Motta*