UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WAYLAND COLLINS, CANDY KELLY AND ALVIN POLK<br><br>                    **Plaintiffs**<br><br>VERSUS<br><br>JOHN C. BENTON d/b/a Q&M MOTOR TRANSPORTS, MARK INGLE AND NORTHLAND INSURANCE COMPANY<br><br>                    **Defendants** | CIVIL ACTION<br><br>NO. 2:18-CV-07465<br><br>JUDGE: NANNETTE JOLIVETTE BROWN<br><br>MAGISTRATE: MICHAEL B. NORTH |

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE OF COURT TO FILE COUNTERCLAIM AND SUPPLEMENTAL AND AMENDING ANSWER AND AFFIRMATIVE DEFENSES**

**MAY IT PLEASE THE COURT:**

      Defendants, John C. Benton d/b/a Q&M Motor Transports, Mark Ingle, and Northland Insurance Company, submit this Reply Memorandum in response to Plaintiffs' Memorandum in Opposition and in further support of Defendants' Motion for Leave of Court to File a Counterclaim against Plaintiffs, Wayland Collins, Candy Kelly, and Alvin Polk and Defendants' Motion for Leave of Court to file a Supplement and Amending Answer and Affirmative Defenses to include the defense of fraud.

      Plaintiffs' *Opposition,* Rec. Doc. 43, is devoid of any arguments that Defendants' Counterclaim is procedurally defective. Plaintiffs' arguments are centered around the contention that that Defendants' proposed *Counterclaim* fails to state a valid claim of fraud

and that the *Supplemental and Amending Answer* fails to state the defense of fraud with particularity.

In *Peaker Energy Group, LLC, v. Cargill, Inc.,* CIV.A. 14-2106, 2015 WL 4879415, at *6 (E.D. La. Aug. 14, 2015), Judge Englehardt noted:

> …courts must realistically observe that "there is no single construction of Rule 9(b) that applies in all contexts." *Grubbs,* 565 F.3d at 188. Indeed, the Fifth Circuit has explained that the " 'time, place, contents, and identity' standard is not a straitjacket for Rule 9(b)." *Id.* at 190. "Rather, the rule is context specific and flexible...." *Id.* On the other hand, a relator cannot bypass Rule 9(b)'s pleading requirements simply by premising its allegations "on information and belief." *Thompson,* 125 F.3d at 903. To the contrary, though fraud may be alleged on information and belief if the "facts relating to the fraud are peculiarly within the perpetrator's knowledge," the complaint nevertheless "must set forth a factual basis for such belief." *Id.*

Here, there are certain facts that are peculiarly within the Plaintiffs' knowledge, but the Defendants have set forth particular allegations along with allegations based upon information and belief that set forth a factual basis for Defendants' beliefs.

### I. Defendants justifiably relied on the Plaintiffs' Misrepresentations that resulted in injury

Plaintiffs' *Opposition* misrepresents the allegations contained in Defendants' counterclaim by citing only four words of paragraph 13. *See* Rec Doc. 43, p. 15 and Rec. Doc. 31-4. Defendants have maintained that they dispute that the accident occurred as alleged by Plaintiffs and that if one did occur it was intentionally caused by the Plaintiffs. Despite these beliefs, both Northland and John C. Benton d/b/a Q&M Motor Transports acted in reliance on plaintiffs' misrepresentations. Plaintiffs' actions in staging this

2

accident have resulted in a trickle-down effect. Mark Ingle went from having a flawless driving record to having an (alleged) accident and a citation on his driving record that made him effectively uninsurable by any insurer, not just Northland. As a result, John C. Benton fired Ingle in reliance on the Plaintiffs' misrepresentations as to how the accident occurred. Furthermore, Northland relied on Plaintiffs' misrepresentations as to how the accident occurred and cancelled coverage to Q&M Motor Transports based on these misrepresentations. Just because the Defendants dispute how the accident occurred does not mean that the actions taken by Defendants were not in reliance on the Plaintiffs' misrepresentations. In fact, the Defendants only took those actions because of plaintiffs' misrepresentations regarding the accident.

## II. Plaintiffs' reliance on Orders issued by other Judges in this District is misplaced

Despite what plaintiffs argue in their *Opposition*, Defendants' allegations in their *Counterclaim* are distinguishable from the respective defendants' allegations in *Thomas, et al v. Chambers, et al,* Docket No. 18-4373, *Reef v. Werner, et al*, Docket No. 18-8350 and *Reese v. Great West, et al,* Docket No. 18-8336. Here, Defendants' fraud allegations contained in their Counterclaim and the affirmative defense of fraud set forth in their Supplemental and Amending Answer are pled in more detailed specifics than those that were alleged in *Thomas, Reef* and *Reese.* In paragraph 9 of the *Counterclaim*, the Defendants outlined the contact between Wayland Collins with Raphus Adams, Ryan Harris and Cornelius Garrison along with Alvin Polk's contact with Cornelius Garrison

and Sean Alfortish setting forth with particularity the date and times that supports Defendants allegations that the alleged accident was actually staged.

Defendants' allegations in the *Counterclaim* when read in its entirety sufficiently specifies "the who, what, when, and where" as required by the Fifth Circuit in *Williams v. WMX Techs, Inc.,* 112 F.3d 175, 178 (5th Cir. 1997). In particular, Defendants allege that Collins, as the driver, and Polk and Kelly, as the passengers, misrepresented the accident and/or staged the accident on August 9, 2017, that occurred on Interstate 10 near the 510 South exit. Furthermore, Defendants have alleged real damages in terms of increased policy premiums and lost wages that they have experienced as a result of Plaintiffs' misrepresentations regarding the accident.

Also, Plaintiffs' reference to Judge Fallon's *Order* in *Reese v. Great West Casualty Co., et al,* No. 18-cv-8336 is not accurate. The *Order* did not address a counterclaim filed by the Great West defendants but a Motion for Leave to file Amended Answer. Moreover, plaintiffs conveniently omitted that the part of the *Order* where the Court noted "that Defendants' right to bring fraud claims against Plaintiffs in connection with this case are reserved." See Rec. Doc. 40.

### III.  Plaintiffs' Phone Calls Support Inference of Fraud

Plaintiffs submit that the numerous phone calls between Wayland Collins and Raphus Adams, Ryan Harris and Cornelius Garrison, respectively, occurred because they are friends or business acquaintances. Defendants specifically outlined Wayland Collins' call history with Raphus Adams, Ryan Harris and Cornelius Garrison, as well as Cornelius

Garrison's call to Alvin Polk after the accident to establish the volume of calls and the timing between these calls with these individuals. All of these phone calls support the inference of fraud by Collins and Polk in staging the accident.

Additionally, Plaintiffs claim that Ryan Harris purchased t-shirts on August 8, 2017 from Wayland Collins' business, Divine Graphix and Printing, for RJ's Landscaping, LLC, and that this purchase is the basis for the increased volume of calls between Collins and Harris after the accident. However, a search for RJ's Landscaping, LLC and Ryan Harris on the Louisiana Secretary of State website indicates that there are no records to support that RJ's Landscaping, LLC even exists.[1] The search results for RJ's Landscaping, LLC return: 1) RJ Lawn Care and Landscaping managed by Ryan Williams, Jr. in Laplace, Louisiana, and 2) RJL Landscaping Services, LLC with sole member Raymond Jason Little in St. Francisville, Louisiana. *See* Exhibit A, Louisiana Secretary of State search results. Moreover, Wayland Collins and Alvin Polk admitted that they are business partners in Divine Graphix & Printing.[2] However, Alvin Polk denied knowing Ryan Harris in his deposition.[3]

Plaintiffs argue "[t]o be clear, not once did Mr. Collins call Mr. Garrison."[4] Despite this assertion, Wayland Collins in fact called Cornelius Garrison on August 9, 2017 at 9:13 p.m., shortly after he contacted Raphus Adams.[5] After contacting Cornelius Garrison,

---

[1] *See* Exhibit A, Louisiana Secretary of State search results.
[2] *See* Exhibit B, pgs. 15-16 from the Deposition of Wayland Collins and Exhibit C, pgs. 89-90 from the Deposition of Alvin Polk.
[3] *See* Exhibit C, pg. 92, l. 14-15 from the Deposition of Alvin Polk.
[4] *See* Rec. Doc. 43, pg. 21.
[5] *See* Rec. Doc. 31-6.

Wayland Collins proceeded to contact Alvin Polk. The timing and the sequencing of these phone calls is highly suspicious and supports the inference of fraud regarding the accident. Moreover, Plaintiffs' call history with these individuals in connection with the similar lawsuits filed by these individuals provide facial plausibility that allows this "court to draw the reasonable inference that the [defendants-in-counterclaim are] liable for the misconduct alleged," the staged accident. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Also, plaintiffs admit that Cornelius Garrison called Alvin Polk on August 10, 2017.[6] There are two interesting points regarding this phone call. First, the timing of Garrison's phone call at 12:07 a.m. to Polk was during Polk's visit to New Orleans East Hospital for treatment of his alleged injuries. *See* Exhibit D, NOEH Discharge Orders. Second, Polk denied knowing Garrison in his deposition and specifically stated that he has no idea if Collins knows Garrison, as reflected in the following testimony:

> Q. Okay. What about Cornelius Garrison; do you know him?
> A. No.
> Q. You don't know him?
> A. No.
> Q. Do you if Mr. Collins knows him?
> A. No. I don't know. No.
> …
> Q. Have you ever heard Mr. Collins mention the name Cornelius Garrison?
> A. No.[7]

Defendants find it highly suspicious that Polk would deny knowing Garrison since he received a phone call from Garrison after the accident. Moreover, Plaintiffs argue that

---

[6] See Rec. Doc. 43, pg. 21.
[7] *See* Exhibit C, pg. 91, l. 24-25 and pg. 92, l. 1-5; 16-18 from the Deposition of Alvin Polk.

6

Garrison supplies t-shirts to Divine Graphix, the same business in which Polk is partners with Collins, yet Polk denied knowing Garrison and denied ever hearing Collins mention Garrison's name. *See* Exhibit C. It is also interesting that Polk denies knowing his business partner's best friend, Raphus Adams.[8]

## CONCLUSION

Defendants, John C. Benton d/b/a Q&M Motor Transports, Mark Ingle and Northland Insurance Company, have asserted a valid claim for fraud in their *Counterclaim* with particularity and upon information and belief that was made in good faith against Plaintiffs. Furthermore, Defendants have asserted a valid affirmative defense of fraud in the *Supplemental and Amending Answer*. Therefore, Defendants, John C. Benton d/b/a Q&M Motor Transports, Mark Ingle and Northland Insurance Company, pray that their Motion for Leave be deemed good and sufficient and that leave to file their Counterclaim and Supplemental and Amending Answer be granted.

---

[8] *See* Exhibit C, pg. 92, l. 11-13.

        Respectfully submitted,

**LARZELERE PICOU WELLS**
   **SIMPSON LONERO, LLC**
3850 N. Causeway Boulevard
Suite 500 – Two Lakeway Center
Metairie, Louisiana 70002
Telephone: (504) 834-6500
Facsimile: (504) 834-6565
E-mail: mwells@lpwsl.com
        kfonte@lpwsl.com

**BY:**    */s/ Morgan J. Wells, Jr.*
**MORGAN J. WELLS, JR. (#18499)**
**KRISTINA J. FONTE (#30910)**

**ATTORNEYS FOR DEFENDANTS,
JOHN C. BENTON d/b/a Q&M MOTOR
TRANSPORT, MARK INGLE, AND
NORTHLAND INSURANCE COMPANY**

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of August, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel registered for electronic service. I further certify that I have served a copy of the foregoing pleading on all parties to this proceeding not registered for electronic service, by e-mailing, faxing, and/or mailing the same by United States Mail, properly addressed and postage prepaid.

        */s/ Morgan J. Wells, Jr.*