## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WAYLAND COLLINS, CANDY KELLY, and ALVIN POLK,**  <br> **Plaintiffs** | **CIVIL ACTION NO. 18-7465** <br><br> **SECTION: G(5)** |
| **VERSUS** | **JUDGE NANNETTE JOLIVETTE BROWN** |
| **JOHN C. BENTON d/b/a Q&M MOTOR TRANSPORTS, MARK INGLE, and NORTHLAND INSURANCE COMPANY,** <br> **Defendants** | **MAGISTRATE JUDGE MICHAEL NORTH** |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE OR LIMIT THE TESTIMONY UNDER DAUBERT STANDARDS OF DR. RICHARD BARATTA

**NOW INTO COURT**, through undersigned counsel, come defendants, John C. Benton d/b/a Q&M Motor Transports, Mark Ingle, and Northland Insurance Company, and for the reasons set forth below, oppose plaintiffs' *Motion to Exclude or Limit the Testimony Under Daubert Standards of [Dr.] Richard Baratta* (R. Doc. 99) and respectfully request that this Honorable Court enter an Order denying plaintiffs' Motion.

## BACKGROUND

Plaintiffs, Wayland Collins, Candy Kelly, and Alvin Polk, allege that on August 9, 2017, an accident occurred I-10 in Orleans Parish near the merge with I-510 southbound.[1] Plaintiffs contend that an 18-wheeler owned by John C. Benton d/b/a Q&M Motor Transports and operated by Mark Ingle collided with the vehicle driven by Wayland Collins with Candy Kelly and Alvin Polk as passengers.[2]

---

1  See R. Doc. 1.
2  *Id.*

On November 8, 2019, defendants submitted expert disclosures, including reports, *curriculum vitae*, fee schedules, and testimony history of Dr. Baratta, an expert in the fields of biomechanical engineering and accident reconstruction, to plaintiffs.[3] On November 14, 2019, counsel for plaintiffs expressly declined to take the depositions of Dr. Baratta or any other of defendants' experts in this matter.[4] However, plaintiffs now seek to limit or exclude the trial testimony of Dr. Baratta even though they have not cross-examined him regarding his background, qualifications, methodology, or conclusions.

This *Memorandum in Opposition*, together with the attached reports,[5] Affidavit of Dr. Richard Baratta, *curriculum vitae*, and other materials, will indisputably establish that the opinions set forth in Dr. Baratta's reports are premised on reliable, testable methodologies that are generally accepted in the scientific community, and that Dr. Baratta is qualified to issue those opinions. For these reasons, Dr. Baratta's opinions meet the standards of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, (1993). Therefore, his testimony and opinions should be admitted in their entirety at the trial of this matter.

## LAW AND ANALYSIS

1.  FEDERAL RULE OF EVIDENCE 702 AND THE *DAUBERT* STANDARD

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

**(a)**   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

---

3   **Exhibit A**, email of November 8, 2019.
4   **Exhibit B**, email of November 14, 2019.
5   Dr. Baratta prepared his initial Report of Findings on August 12, 2019 (RIMKUS-0001 - 0048). Dr. Baratta prepared a Supplemental Report of Findings on October 7, 2019 (RIMKUS-0049 - 0059), and, after receipt of plaintiffs' biomechanical engineering expert's report, a Second Supplemental Report of Findings on October 28, 2019 (RIMKUS-0060 - 0113). These reports, together with their exhibits, are attached hereto *in globo* as **Exhibit C**, Bates numbered RIMKUS-0001 – 0113.

**(b)**    the testimony is based on sufficient facts or data;

**(c)**    the testimony is the product of reliable principles and methods; and

**(d)**    the expert has reliably applied the principles and methods to the facts of the case.[6]

In *Daubert*, the U.S. Supreme Court interpreted Rule 702 as requiring the trial judge to ensure that an expert's testimony is both reliable and relevant to the case at hand.[7] "Reliability," as discussed in *Daubert*, refers to evidentiary reliability, *i.e.*, trustworthiness, rather than scientific reliability, which asks whether application of the principle produces consistent results, a distinction often blurred in debates surrounding the admissibility of expert opinions.[8]

The Supreme Court identified several non-exclusive factors a court should consider in determining whether proffered scientific opinion testimony is sufficiently reliable to permit admission into the record.[9] Those factors are: 1) whether the expert's theory can be or has been tested; 2) whether the theory has been subject to peer review and publication; 3) the known or potential rate of error of a technique or theory when applied; 4) the existence and maintenance of standards and controls; and 5) the degree to which the technique or theory has been generally accepted in the scientific community.[10]

In *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167 (1999), the U.S. Supreme Court revisited the reliability analysis, at which time it clarified that a court must have "considerable leeway" in deciding, in a particular case, how to go about determining whether

---

6   Fed. R. Evid. 702.
7   *Rushing v. Kansas City Southern Ry. Co.,* 185 F.3d 496, 506 (5th Cir. 1999), citing *Daubert*, 509 U.S. at 590-93, 113 S.Ct. at 2795-97.
8   *Daubert*, 509 U.S. at 590 n. 9, 113 S.Ct. at 2795.
9   *Id.*, 509 U.S. at 594-95, 113 S.Ct. at 2796-97.
10   *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 275 (5th Cir. 1998).

particular expert testimony is reliable.[11] The test of reliability is flexible and there is no necessary or exclusive list of factors that must exist in order for a particular opinion to be admissible:

> *Daubert* makes clear that the factors it mentions do not constitute a "definitive checklist or test." *Id.*, at 593, 113 S.Ct. 2786. . . . "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." Brief for United States as *Amicus Curiae* 19. The conclusion, in our view, is that we can neither rule out, nor rule in, for all cases and for all time the applicability of the factors mentioned in *Daubert*, nor can we now do so for subsets of cases categorized by category of expert or by kind of evidence. Too much depends upon the particular circumstances of the particular case at issue.[12]

Trial courts have wide discretion to decide whether or not a witness qualifies as an expert.[13] The exclusion of an expert is the exception, not the rule.[14] The test of reliability under *Daubert* is flexible and the list of specific factors in *Daubert* neither necessarily nor exclusively applies to all experts or in every case.[15] Plaintiffs' arguments, at best, may go to the weight of Dr. Baratta's testimony; they certainly do not go to the admissibility of such testimony. The degree of weight given to a reliable expert's testimony is a question for the jury.[16] The court's role as a gatekeeper does not replace either the traditional adversary system, or the jury's place within the system.[17] As the Supreme Court observed in *Daubert*, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[18]

In this instance, Dr. Baratta's methodology and the opinions he reached using that methodology are far from "shaky." They are based on peer-reviewed processes and studies and

---

11  *Id.* at 150-52, 119 S.Ct. at 1175-76.
12  *Kumho Tire*, 526 U.S. at 150, 119 S.Ct. at 1175.
13  *Johnson v. Samsung Electronics America, Inc.*, 277 F.R.D. 161, 163 (E.D. La. 2011).
14  *Id.* at 165.
15  *Id.*
16  *U.S. v. 14.38 Acres of Land, More or Less Situated in Leflore County*, 80 F.3d 1074, 1077 (5th Cir. 1996).
17  *Scordill v. Louisville Ladder Group, L.L.C.*, 2003 WL 22427981 at *3 (E.D. La. 2003).
18  *Daubert*, 509 U.S. at 596, 113 S.Ct. at 2798.

4

sufficient facts and data, and consequently are reasonably reliable. Those opinions will assist the jury in understanding the rest of the evidence to be introduced at trial. Dr. Baratta's opinions satisfy the *Daubert* standard; therefore, his testimony should be admitted at the trial of this matter.

2.   DR. BARATTA IS QUALIFIED TO PROVIDE THE OPINIONS ASSERTED IN HIS REPORT

Dr. Baratta is a qualified expert in the fields of traffic accident reconstruction and biomedical engineering with an emphasis in the biomechanics of human injury. Dr. Baratta holds a Ph.D. in Biomedical Engineering from Tulane University.[19] He also holds a B.S. and a M.S. in Biomedical Engineering and Mathematics from Tulane University.[20] Dr. Baratta also is a Certified Accident Reconstructionist (ACTAR # 1683), a Bosch Certified Crash Data Retrieval Technician and Analyst, and a Registered Professional Engineer in eleven (11) states, including Louisiana (License No. 34792).[21] He is the author or co-author of 100 scientific journal articles and over 150 additional publications in various book chapters, proceedings, and transactions.[22] These include publications regarding basic, applied, and clinical orthopedic topics.[23] Additionally, he has taught biomechanics to orthopedic surgeons seeking recertification.[24]

In his practice as a biomedical engineer, Dr. Baratta is "regularly called to assist triers of fact and other interested parties with answering questions regarding the speeds, accelerations, and forces present within accidental events, the biomechanics and mechanisms involved in damaging human tissue (i.e., injury), and injury consistency."[25] From 1984 until 2004, Dr. Baratta worked at the Bioengineering Laboratory for the Department of Orthopedic Surgery at the Louisiana State

---

19   **Exhibit C**, Appendix D, *Curriculum Vitae* of Dr. Baratta, (RIMKUS-0045 – 0048).
20   *Id.*
21   *Id.*
22   *Id.*
23   *Id.*
24   *Id.*
25   **Exhibit D**, Affidavit of Dr. Richard Baratta, p. 2.

University School of Medicine in New Orleans.[26]  From 1988 until 2004, he was a member of the faculty, starting as an "Instructor of Orthopedic Surgery" and eventually attaining tenure and an academic title of "Full Professor."[27]  In this position, Dr. Baratta "participated in countless studies regarding musculo-skeletal biomechanics, which resulted in more than 100 peer-reviewed articles in the peer-reviewed medical and biomedical engineering literature."[28]  Applying his extensive training and experience, Dr. Baratta joined Rimkus Consulting Group in 2005 as a consultant in Accident Reconstruction and Injury Biomechanics. In this position, Dr. Baratta applies his extensive "knowledge of physics, and particularly those physics applied to the human body, to help others understand the mechanical behavior of tissues when exposed to external forces as would occur in a vehicle accident."[29]

Dr. Baratta's testimony as a biomechanics expert with respect to injury causation analysis on behalf of plaintiffs and defendants has been admitted in numerous courts of law, in numerous states, including Louisiana, on many occasions. He has been qualified and has offered expert witness testimony regarding accident reconstruction and injury causation "in more than one hundred trials in [his] career."[30]  Dr. Baratta has been accepted as an expert witness on matters relating to biomechanics and accident reconstruction, including the forces in the accident, the damages to the vehicles, and the injury causation forces in the accident and their effect on the human body.[31]  Dr. Baratta also has been found to use generally accepted peer reviewed scientific

---

26  *Id.* at p. 1-2.
27  *Id.* at p. 2.
28  *Id.*
29  *Id.*
30  *Id.* at p. 2-3.
31  *See e.g.*, *Onofre v. C.R. England, Inc.*, No. 5:15-CV-425-DAE, 2017 WL 3167325 (W.D. Tex. Jan. 27, 2017); *Shaw v. United Airlines, Inc.*, No. CV H-17-267, 2018 WL 4362092 (S.D. Tex. Sept. 13, 2018); *Wright v. Selective Ins.*, No. CV 15-3544, 2016 WL 11083337 (E.D. La. Oct. 4, 2016).

methodology.[32] (An outline of Dr. Baratta's testimony history is attached hereto for the Court's reference.)[33]

Defendants submit that Dr. Baratta is suitably qualified to testify as an expert in his specified field of Biomedical Engineering.

3.    DR. BARATTA'S METHODOLOGY AND OPINIONS SATISFY THE *DAUBERT* STANDARD

In this case, Dr. Baratta conducted a biomechanical analysis of the accident in question, in which he calculated the forces and accelerations exerted on the plaintiffs' bodies in the subject collision and compared those forces to the forces that are experienced in everyday activities. The methodology he employed in this matter is generally accepted within the field of biomechanical engineers and based on published biomechanical research studies. Biomechanics is the application of principles and methods of engineering mechanics to the study of problems arising in biology and medicine and development of solutions thereto. It is a discipline widely accepted within the scientific community and in forming the basis for the safety aspects of vehicle interior design as well as for the rules and regulations that govern the crashworthiness of vehicles. In this matter, the application of biomechanics principles explains plaintiffs' motions within the vehicle upon impact, the nature of the loads and accelerations experienced by the tissue, and the potential for those loads and accelerations to lead to tissue damage or failure, resulting in injury. These methods have been tested and yielded consistent results in the articles cited by Dr. Baratta in his report.[34]  The methods used can be verified experimentally by using the same methodologies.[35]

---

32  *Wright v. Selective Ins.*, No. CV 15-3544, 2016 WL 11083337 (E.D. La. Oct. 4, 2016).
33  **Exhibit D-2**, Testimony History of Dr. Richard Baratta.
34  **Exhibit C**, RIMKUS-0018 - 0022.
35  *Id.*

In the instant matter, Dr. Baratta performed a biomechanical analysis and found that the application of biomechanics principles could explain the plaintiffs' motions upon impact, the nature of the loads and accelerations experienced by various tissues, and the potential for those loads and accelerations to result in damage. Dr. Baratta determined that this collision was a sideswipe.[36] This vehicle motion results in limited rocking on the suspension system of plaintiffs' vehicle with a peak lateral occupant acceleration within the range experienced during activities of daily living.[37] Moreover, there would not have been any measurable longitudinal change in speed ("delta-V") of the vehicle's occupants during this event.[38] Significantly, the event data recorder on plaintiffs' vehicle did not return any "events" when imaged after the accident, indicating that the body of the vehicle did not experience an event that surpassed the federally mandated trigger threshold of a five (5) miles per hour change in speed (delta-V) within a timeframe of 150 milliseconds.[39]

To develop this opinion, Dr. Baratta used methods and cited approximately 40 studies that are relevant to the biomechanics of human motion and injury mechanisms resulting from accidental events.[40] The methods used in Dr. Baratta's reports can be verified experimentally by using the same methodologies noted in those scientific studies and involving similar sideswipe impacts.[41] Dr. Baratta notes that the subject accident was far less severe than those performed in the referenced studies; therefore, the vehicle's motions and the load exposure would have been less severe.[42]

---

36  *Id.* at RIMKUS-0014 - 0017.
37  *Id*. at RIMKUS-0004.
38  *Id.*
39  *Id*.
40  **Exhibit C**, RIMKUS-0019 – 0022 and **Exhibit D**, p. 3.
41  *Id.* at RIMKUS-0016 - 0017.
42  *Id.* at RIMKUS-0014.

Moreover, the subject accident presented loads to the plaintiffs' spines that were less than those likely to be experienced during their everyday lives, including plopping into an office chair, bending over, running, or lifting a small child.[43]  Thus, any structural damage or aggravation to the condition of plaintiffs' spines was unlikely a result of the subject accident.[44]

Based on his knowledge, skill, experience, training, and education, Dr. Baratta ultimately reached eleven specific conclusions, which he should be allowed to present at trial.[45]  These conclusions were reached by Dr. Baratta by applying methodologies that are repeatable, well-accepted, and established within the field of biomechanics as applied to the facts established by plaintiff's respective testimony and medical records.[46]

4.   THE MATERIALS AND METHODOLOGY USED BY DR. BARATTA ARE RELIABLE

Biomechanics is a discipline widely accepted within the scientific community and forms the basis for the safety aspects of vehicle interior design and for the rules and regulations that govern the crashworthiness of vehicles.[47]  In this particular case, the application of biomechanics principles explains the motions of plaintiffs within the vehicle upon impact, the nature of the loads and accelerations experienced by the tissues, and the mechanisms and potential for those loads and accelerations to result in damage or failure to tissue resulting in injury. These methods have been tested and yielded consistent results in the studies upon which Dr. Baratta relied, including approximately 40 peer-reviewed articles that form the basis of the methodologies, data, calculations, and injury mechanisms used within his analysis of this case.[48]  These methodologies

---

43  *Id*., at RIMKUS-0031 – 0036.
44  *Id*. at RIMKUS-0004.
45  *Id*., at RIMKUS-0063 – 0064.
46  *Id*. at 00025
47  **Exhibit D**, p. 3-4.
48  **Exhibit C**, RIMKUS-0019 – 0022.

are peer-reviewed, repeatable, well-accepted and established within the field of biomechanics.[49]

For example, Dr. Baratta "applied the principles and methodologies of traffic accident reconstruction to determine the characteristics of the interaction between [Ingle's] tractor-trailer and [plaintiffs'] Nissan Juke, the changes in their respective speeds in response to these vehicle contacts (i.e. delta-Vs), and the directions in which the forces of impact were applied for each vehicle…"[50] Dr. Baratta reviewed extensive vehicle data and photographs (employing a method accepted by the Society for Automotive Engineers) and published studies, in tandem with an analysis that is generally accepted in his scientific field to arrive at his conclusions and opinions.[51]

Moreover, in contrast to plaintiffs' arguments, Dr. Baratta relied on plaintiffs' physicians' own diagnoses and opinions as to plaintiffs' alleged injuries.[52] Instead, he assumes the conclusions are correct and incorporates those diagnoses into his analysis[53] Dr. Baratta specifically does not render any opinions on medical causation. Instead, the opinions he provides are within the accident reconstruction and biomechanical realm.[54] "Specifically, opinions regarding occupant motions and forces all use the words dynamic and mechanisms – these are words that are firmly within the context of biomechanics, and outside the purview of medical causation."[55] Mechanisms of injury are "firmly within the scope of injury biomechanics, and these themes are studied by individuals with similar training as [Dr. Baratta], but rarely the same type of research experience that [he has]."[56] As he explains, "[p]hysicians address diagnosis, treatment and prognosis, but do not

---

[49] *Id*. at RIMKUS-0016 – 0017.
[50] **Exhibit D**, p. 4.
[51] *See* **Exhibits C** and **D**.
[52] **Exhibit C**, RIMKUS-0008 – 0017.
[53] *Id.*
[54] **Exhibit D**, p. 4.
[55] *Id.*
[56] *Id*. at p. 6.

necessarily address the questions of mechanisms of injury."[57] Thus, plaintiffs' purported attacks on Dr. Baratta should not deter this Court from admitting Dr. Baratta's testimony.

Dr. Baratta's report lists the extensive materials he relied upon, and, in his Affidavit, he explains that the use of those materials has been tested and accepted by the scientific community. Thus, his opinions are based on a sufficient and reliable dataset which is generally accepted among the community of biomechanical engineers, which supports the admission of his opinions.

5.    DR. BARATTA'S METHODOLOGY IS SOUND, IS BASED ON A RELIABLE DATASET, AND APPLIES TECHNIQUES THAT ARE ACCEPTED AMONG HIS PEERS

In determining an expert's reliability, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate."[58] Here, Dr. Baratta calculated the forces and accelerations that the occupants sustained and compared them to everyday activities the occupants would have experienced, based on reliable published biomechanical research studies.[59]

Dr. Baratta specifically chose and relied on research papers that best demonstrate what occurred in this sideswipe collision.[60] The methodology applied in this analysis is accepted in the engineering and biomechanical field, as is Dr. Baratta's use of published studies in his research. The analysis underlying his opinions has been tested, yielded consistent results, and can be verified experimentally by using the same methodologies.[61] In short, his analysis determines whether an injury mechanism was present in the subject collision; that is: 1) the forces must be applied to a specific place on the human body; 2) the forces must be applied in a specific direction; and 3) there must be sufficient force to exceed the structural strength of the specific tissue in question, thereby

---

57  *Id.*
58  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 2790, 125 L.Ed.2d 469 (1993).
59  **Exhibit C**, RIMKUS-0031 – 0036.
60  *E.g., Id.*, at RIMKUS-0019 – 0022.
61  **Exhibit C**, at RIMKUS-0016 - 0017.

resulting in structural damage.

Despite plaintiffs' repeated refrain that Dr. Baratta should be precluded from offering opinions on medical causation, the simple fact is that Dr. Baratta does not attempt to render any medical causation opinions in this matter. As set forth above, Dr. Baratta relied upon the medical findings and diagnoses provided by plaintiffs' treating physicians as the starting point of the biomechanics analysis.[62] He determined the specific forces and motions involved in the accident and compared them to those required for the specific injuries claimed by plaintiffs, noting that plaintiffs' treating physicians provide only general details of the collision and offer no analysis whatsoever.[63]

Plaintiffs cite various cases from this and other courts in an effort to have Dr. Baratta's testimony excluded. Specifically, plaintiffs rely on a 2016 ruling of this Court in *Wright v. Selective Insurance, supra*. However, in *Wright*, Judge Eldon Fallon expressly permitted Dr. Baratta to offer the very same type of testimony sought to be introduced in this matter. The Court's ruling simply limited any testimony that strayed into medical opinions (of which Dr. Baratta does not seek to offer here).[64] However, the Court also held as follows:

> This Court disagrees with Plaintiffs' contention that Dr. Baratta is not qualified to testify as a biomechanical engineer or accident reconstruction expert. This case is distinct from *Wilson v. Woods* in which the expert had not ever performed accident reconstruction and had little to no experience in the field. 163 F.3d 935 (5th Cir. 1999). **Dr. Baratta has both experience and training in the fields of biomechanical engineering and accident reconstruction, and is sufficiently qualified to testify as an expert in those fields**. **Further, Dr. Baratta uses generally-accepted and peer-reviewed methodology**. The weight of his testimony and the reliability of his analysis is up to the jury to determine.[65]

---

62  **Exhibit C**, RIMKUS-0008 – 0017.
63  *Id.*
64  *Wright*, 2016 WL 11083337 at *5.
65  *Id.* (Emphasis supplied.)

A similar ruling was issued more recently by Judge Sarah Vance of this Court in *Thomas v. Chambers*.[66] In *Thomas*, a strikingly similar matter which has been stayed by the Court due to ongoing criminal investigations involving the parties involved, plaintiffs asserted arguments identical to those set forth in this matter. In that case, plaintiffs sought to exclude the testimony of a qualified biomechanical expert (Dr. Torrence Welch) on grounds identical to those asserted here (*i.e.* that the expert in that case was biased and unqualified, his methodology was unreliable, and his opinion was irrelevant).[67]  But for a single limitation on "specific medical causation opinions," which are not offered by Dr. Baratta in this matter, Judge Vance denied plaintiffs' Motion in *Limine*, finding that the biomechanical expert's opinions were reliable and admissible. Specifically, Judge Vance held that the expert was qualified to and would be permitted to testify regarding "the type of collision…experienced, the force of impact that the human body would typically sustain in that type of collision, and how a hypothetical person's body would typically respond to that force of impact."[68]

In other federal courts, Dr. Baratta has been permitted to testify on the same areas of expertise and matters addressed in his reports in this matter. In *Ochoa v. Mercer Transportation Co., Inc.*, No. 5:17-CV-1005-OLG, 2018 WL 7505640 (W.D. Tex. Dec. 10, 2018), plaintiff sought to exclude Dr. Baratta's testimony and report for similar reasons as sought by plaintiffs in this matter. In *Ochoa*, Dr. Baratta was retained by defendants to "reconstruct the dynamics of the accident and to determine the motions and mechanics [Plaintiff] would have experienced in relation to the injuries he has claimed."[69] Plaintiff sought to exclude the testimony on the basis that

---

66  *Thomas v. Chambers*, No. CV 18-4373, 2019 WL 1670745 (E.D. La. Apr. 17, 2019).
67  *Id*. at *1.
68  *Id*. at *3.
69  *Ochoa*, 2018 WL 7505640, at *3.

Dr. Baratta's methodology was unsound "because he relied upon accounts of spinal injuries suffered by other individuals and 'presumes that all individuals are affected equally and similarly by trauma[,]' and that he lacks the qualifications to render an opinion regarding medical causation because he 'is not a medical doctor and has no expertise that would allow him to' claim that Plaintiff's spinal injuries were not caused by the collision."[70]

The Court in *Ochoa* disagreed with plaintiff's arguments and joined "other Courts in this division in finding that, in light of Dr. Baratta's specialized education and experience and in light of Rule 702 of the Federal Rules of Evidence, Dr. Baratta 'is qualified to testify about all matters relating to biomechanics and accident reconstruction, including the forces in the accident, the damage to the vehicles, and the injury causation forces in the accident and their hypothetical effect on the human body.'"[71] The Court concluded that Dr. Baratta's methodology was scientifically valid and could properly be applied, as well as holding that "the conclusions announced by Dr. Baratta's report—which go to the forces generated during the accident and the consistency of certain categories of injuries with the experience of those forces—appear appropriately limited to Dr. Baratta's biomechanical expertise, and that Dr. Baratta does not appear to offer opinions regarding the specific medical causes of this Plaintiff's injuries."[72]

Dr. Baratta's opinions concerning the potential for injury to plaintiffs in this sideswipe accident are not an expression of a medical opinion. He does not offer a medical diagnosis, but rather his report and testimony concern whether the injury mechanism necessary for the diagnoses issued by plaintiffs' treating physicians were sufficiently present to cause the alleged injuries.

---

[70] *Id.*

[71] *Id.* at *4, citing *Herrera v. Werner Enterprises, Inc.*, SA-14-CV-385-XR, 2015 WL 12670443, at *3 (W.D. Tex. Sept. 28, 2015).

[72] *Id.*

Because the opinions he generated are based on a biomechanical analysis that has been peer-reviewed and accepted in the field, Dr. Baratta's opinions should be admitted.

6. RECENT RULINGS AND JURISPRUDENTIAL TRENDS SUPPORT THE ADMISSION OF BIOMECHANICAL ENGINEER TESTIMONY BECAUSE IT IS RELEVANT AND WILL ASSIST THE JURY

Lastly, plaintiffs argue that Dr. Baratta's testimony should be excluded because the science is allegedly not reliable and/or will not assist the jury. However, Louisiana state courts have routinely found that expert testimony like Dr. Baratta's assists juries in deciding whether the physical forces involved in the impact were significant enough to cause the alleged injuries.

A. Louisiana state courts allow biomechanical testimony.

Recently, and in conformity with trends across the country, Louisiana's Fourth Circuit Court of Appeal found that biomechanical engineering analyses can be relevant and may be considered by a jury in determining whether a plaintiff was injured in an accident, although it is not determinative.[73] Therefore, an expert's opinion of speed, rate of acceleration, force of impact, and the correlation to possible injuries as exemplified in reliable published studies would assist the jury in its determination of medical causation.[74]

In *Pratt v Culpepper*, the Louisiana Second Circuit held that "as the force of impact in a collision lowers, and the seriousness of the injury rises, expert testimony becomes more relevant. An expert's commentary on speed, rate of acceleration, force of impact, and the correlation to

---

[73] **Exhibit E**, *Newman v. Savage*, 2017-0078 (La. App. 4 Cir. 2/1/17).

[74] *Id. See also See Pratt* v. *Culpepper*, 49,627, p. 25 (La. App. 2 Cir. 2/27/15), 162 So.3d 616, 630 ("As the force of impact in a collision lowers, and the seriousness of the injury rises, expert testimony becomes more relevant"); *Fussell* v. *Roadrunner Towing & Recovery, Inc.,* 99-0194, p. 4 (La. App. 1 Cir. *3/31/00),* 765 So.2d 373, 376; *Delahoussaye* v. *State Farm Mut. Auto Ins. Co.,* 520 So.2d 891 (La. App. 3d Cir. 1987). *See also Fisher* v. *Knight,* 381 So.2d 968, 969 (La. App. 4th Cir. 1980) ("jury could logically conclude from the testimony that plaintiff suffered no injuries nor damage from this accident, which consisted of minimal impact between the vehicles"); *Fletcher* v. *Langley,* 631 So.2d 693, 695 (La. App. 3d Cir. 1994) ("minimal or minor nature of an automobile accident is a fact which may be considered by the jury").

injuries suffered as exemplified in reliable published studies would become an integral part of the defense of plaintiff's case."[75]   The court reasoned that a party cannot be deprived of the right to offer a reasonable presentation of issues by the rigid, artificial application of a jurisprudentially created aid for the proof of causation, and that each case must be reviewed on its own facts.[76]

Similarly, in *Fussell v. Roadrunner Towing and Recovery, Inc*., plaintiffs brought suit for injuries allegedly sustained in a low-impact rear-end vehicular collision.   The trial court excluded an expert who would have testified that the force of the collision was insufficient to cause the injuries claimed.[77] On appeal, the Louisiana First Circuit held it was error to exclude the expert, stating:

> As the force of impact in a collision lowers, and the seriousness of the injury rises, expert testimony becomes more relevant. An expert's commentary on *speed, rate of acceleration, force of impact, and the correlation to injuries suffered as exemplified in reliable published studies would become an integral part of the defense or plaintiff's case*. ... Each particular case must be reviewed on its own facts.[78]

In this matter where there is a dispute over liability and causation as well as the extent of plaintiffs' injuries, the jury should have before it all of the evidence and testimony, including that of plaintiffs' treating physicians and experts, as well as the rebuttal and impeachment evidence and expert testimony presented by defendants. The Court in this matter should not decline to allow the jury to consider and evaluate all the evidence.[79]

---

75   *Pratt v. Culpepper*, 49,627 (La. App. 2 Cir. 2/27/15), 162 So.3d 616, 629–30, *reh'g denied* (Apr. 9, 2015).
76   *Id*., citing *Fussell v. Roadrunner Towing & Recovery, Inc*., 1999–0194 (La. App. 1st Cir.3/31/00), 765 So.2d 373, *writ denied,* 2000–1264 (La.6/23/00), 765 So.2d 1042.
77   *Fussell v. Roadrunner Towing and Recovery, Inc*., 765 So.2d 373 (La. App. 1st Cir.), writ denied, 765 So.2d 1042 (La. 2000).
78   *Id*., 765 So.2d at 376, emphasis added.
79   *See Pratt*, 162 So.3d at 631.

**B.      Force of Impact testimony has been accepted by this Court.**

Additionally, this Court has found that "the minimal impact of an automobile accident is a factor, albeit not a determinative one, which may be considered by the jury."[80]  Plaintiffs cite two federal court cases to support their argument that Dr. Baratta's testimony should be excluded, both of which involve issues distinguishable from this matter. In *Brown v. Regions Ins., Inc.*[81]  and *Oaks v. Westfield Ins. Co.*,[82] the Court found that the expert's opinion was unreliable based on the expert's reliance on insufficient facts and data.   It also found that the expert's opinion would confuse the trier of fact. As established above, Dr. Baratta's conclusions are based on a dataset that is considerable, wide-ranging, and generally accepted among the community of biomechanical engineers.[83] Moreover, the referenced cases complain that the expert's medical opinions are unreliable. Here, Dr. Baratta relied on the opinions of plaintiffs' physicians and assumes they are accurate.[84]

Similar to the holding in *Pratt*, which was followed by the Western District in *Turner v. Knight Transportation, Inc.*, in which the Court concluded that the force of a collision "is a factor that may be considered in determining the causal connection between the accident and the injury,"[85] this Honorable Court should deny plaintiffs' motion and order that Dr. Baratta's testimony should be admitted.

---

80   *Fortier v. State Farm Mut. Auto. Ins. Co.*, No. CIV.A. 99-2136, 2000 WL 1059772, at *1 (E.D. La. July 31, 2000). *Simon v. United States*, 51 F.Supp.2d 739, 747 (W.D. La. 1999) ("the force or degree of the impact is a relevant or material factor for the court to consider.")
81   *Brown v. Regions Ins., Inc.,* No. CV 14-813, 2016 WL 4703978, at *3 (E.D. La. Sept. 8, 2016).
82   No. CIV.A. 13-1637, 2014 WL 198161, at *2 (E.D. La. Jan. 16, 2014).
83   *Id*. at pp. 6-8.
84   *Id.* at pp. 11-12, 13-14, and 17-18.
85   *Turner v. Knight Transportation, Inc.,* No. CV 1:13-02864, 2016 WL 8233916, at *1 (W.D. La. Apr. 8, 2016); see also *Simon v. United States,* 51 F.Supp.2d 739, 747 (W.D. La. 1999) (The court finds that the force or degree of the impact is a relevant or material factor to consider.)

## CONCLUSIONS

Dr. Richard Baratta is well qualified as an expert in Biomedical Engineering and Accident Reconstruction. His methodology, and the opinions he reached using that methodology, are based on peer-reviewed processes and studies, in addition to sufficient facts and data regarding these plaintiffs and the underlying collision. The research studies forming the basis of his opinions have been performed by multidisciplinary teams of engineers, scientists, and medical doctors, and the results of this research have been published in peer-reviewed journals. They also are widely accepted among the scientific, engineering, and medical communities, and they can be replicated through the methodologies outlined within the published manuscripts. Consequently, Dr. Baratta's methodology and opinions are sound and reasonably reliable.

In this matter, Dr. Baratta determined the forces involved in the subject collision and then compared that information to reliable published studies in order to assist the jury by elucidating the speed, rate of acceleration, force of impact, and the correlation of possible injuries as exemplified in those studies. His opinions will assist the jury in understanding other evidence to be introduced at trial in this matter involving disputed liability, causation, and alleged injuries.

Considering the above, defendants submit that Richard V. Baratta, Ph.D. is sufficiently qualified by his knowledge, skill, experience, training, and education as a Biomedical Engineering and Accident Reconstruction expert to testify at trial regarding his analysis and the opinions provided in his expert report in this matter. Therefore, defendants respectfully request that the Court deny plaintiffs' *Motion to Exclude or Limit the Testimony Under Daubert Standards of Mr. Richard Baratta* (Doc. 99), and allow the testimony, report and opinions of Dr. Baratta to be considered by the jury at the trial of this matter.

Respectfully submitted,

**LARZELERE PICOU WELLS**
    **SIMPSON LONERO, LLC**
3850 N. Causeway Boulevard
Suite 500 - Two Lakeway Center
Metairie, Louisiana 70002
Telephone: (504) 834-6500
Facsimile: (504) 834-6565
E-mail: mwells@lpwsl.com
        egodofsky@lpwsl.com

**BY:**        *_/s/ Evan J. Godofsky_*
          **MORGAN J. WELLS, JR. (#18499)**
          **EVAN J. GODOFSKY (#32471)**

          **ATTORNEYS FOR DEFENDANTS,**
          **JOHN C. BENTON d/b/a Q&M MOTOR**
          **TRANSPORTS, MARK INGLE, AND**
          **NORTHLAND INSURANCE COMPANY**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 26th day of November, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel registered for electronic service. I further certify that I have served a copy of the foregoing pleading on counsel for plaintiff and all parties to this proceeding not registered for electronic service, by e-mailing, faxing, and/or mailing the same by United States Mail, properly addressed and postage prepaid.

           *_/s/ Evan J. Godofsky_*