UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WAYLAND COLLINS, CANDY KELLY, and ALVIN POLK,<br>　　　　Plaintiffs<br><br>VERSUS<br><br>JOHN C. BENTON d/b/a Q&M MOTOR TRANSPORTS, MARK INGLE, and NORTHLAND INSURANCE COMPANY,<br>　　　　Defendants | CIVIL ACTION NO. 2:18-cv-07465<br><br>JUDGE NANNETTE JOLIVETTE BROWN<br><br>MAGISTRATE JUDGE MICHAEL NORTH |

### AFFIDAVIT OF RICHARD V. BARATTA, PH.D., P.E.

STATE OF TEXAS

COUNTY OF HARRIS

BEFORE ME, the undersigned authority, personally appeared

### RICHARD V. BARATTA

who upon being duly sworn, avers as follows:

1. My name is Richard V. Baratta. I am an adult resident of Texas. I am of sound mind, capable of making this affidavit and I have personal knowledge of the matters contained in this Affidavit.

2. By way of my knowledge, formal education, training and experience, I am an expert in traffic accident reconstruction and biomedical engineering with an emphasis in the biomechanics of human injury. I hold a Bachelor of Science in Engineering (BSE), with a double-major in Biomedical Engineering and Mathematics awarded by Tulane University *magna cum laude* with Departmental Honors, a Master of Science degree in Biomedical Engineering awarded by Tulane University, and Doctor of Philosophy in Biomedical Engineering, awarded by Tulane University.

3. I am a fully accredited Traffic Accident Reconstructionist, registered with the Accreditation Commission for Traffic Accident Reconstruction (ACTAR) as number 1683. I am also a registered Professional Engineer in the State of Louisiana as number 34792.

4. From 1984 to 2004, I worked at the Bioengineering Laboratory of the Department of Orthopedic Surgery at Louisiana State University School of Medicine in New Orleans. From 1988 to 2004, I was a member of the faculty, starting as an Instructor of Orthopedic

**EXHIBIT D**

Surgery, and eventually attaining tenure and an academic title of Full Professor. Within this appointment, I participated in countless studies regarding musculo-skeletal biomechanics, which resulted in more than 100 peer-reviewed articles in the peer-reviewed medical and biomedical engineering literature. Some of these publications were in highly esteemed journals such as Spine, Journal of Bone and Joint Surgery, Orthopedics, IEEE Transactions on Biomedical Engineering, Journal of Applied Physiology, etc. Among the musculoskeletal systems that I was involved in studying was the spine; the pinnacle of our research efforts received the prestigious "Volvo Award for Low Back Research" in 1999. Yet other publications, performed with neurosurgeons and with orthopedists, explored other aspects of spinal mechanics, including the effects of procedures used by surgeons to treat spinal conditions. The record of my peer-reviewed publications is attached to this Affidavit as **Exhibit D-1**.

5. Parts of my responsibilities as a faculty member at the Louisiana State University School of medicine involved giving seminars to Orthopedic Residents (physicians who are in the 5-year training process to become Orthopedic Surgeons). Topics within these seminars included Biomechanics, Biomaterials, and Research Methods. In fact, after I left my faculty appointment, I was asked to assist in providing the same type of information to practicing orthopedic surgeons who needed to renew their board accreditation. In addition, I served as a research mentor to many orthopedic residents, as well as medical students aspiring to become orthopedic surgeons, and also residents within Neurosurgery and Otorhinolaryngology who had questions that pertained to biomechanics. Finally, I was expected to attend Grand Rounds conferences twice a week and provide insight regarding biomechanics whenever appropriate. This included addressing biomechanics of surgical techniques, mechanisms of injury, and the mechanical properties of native biomaterials as well as the materials used in the treatment of orthopedic problems.

6. In 2005, I joined Rimkus Consulting Group as a consultant in Accident Reconstruction and Injury Biomechanics. This allowed me to use my extensive knowledge of physics, and particularly those physics applied to the human body, to help others understand the mechanical behavior of tissues when exposed to external forces as would occur in a vehicle accident.

7. In my practice as a biomedical engineer, I am regularly called to assist triers of fact and other interested parties with answering questions regarding the speeds, accelerations, and forces present within accidental events, the biomechanics and mechanisms involved in damaging human tissue (i.e., injury), and injury consistency. I have been qualified and have offered expert witness testimony regarding accident reconstruction and injury causation in more than one hundred trials in my career, including eight (8) trials in the State of Louisiana. My testimony history is attached hereto as **Exhibit D-2**. Additionally, I have served as a consulting expert in nearly two thousand matters involving human injury, and have performed thousands of accident reconstruction and injury consistency analyses.

8. In plaintiffs' Motion in Limine to Exclude my testimony, plaintiffs make several arguments based on unfounded and unsubstantiated assumptions regarding the nature and basis of my expected testimony without having made any attempt to inquire or determine what my

testimony would be, and without discussing with me the exact bases of my opinions and how they were formulated. At the request of defendants, I composed an expert report which shared my opinions in this matter, and was signed and sealed on August 12, 2019, a supplemental report, signed and sealed on October 7, 2019, and a Second Supplemental Report of Findings signed and sealed on October 28, 2019. At that time, plaintiffs were also offered the opportunity to take my deposition, during which I would have gladly further detailed my methodologies and the bases for my findings in this specific matter. However, plaintiffs declined to take my deposition. As a result of this lack of discovery efforts, plaintiffs' Motion contains many incorrect assumptions, misinterpretations of the factual bases of my opinions, improper comparisons, misleading characterizations, and poorly-formed conclusions regarding my opinions, the methodologies used to develop them, and the factual bases thereof.

9. A true and accurate copy of my expert reports, are incorporated herein by reference. I affirm that the statements found within these expert reports are true, correct, and accurate in the application of the principles of traffic accident reconstruction and injury biomechanics to the facts of this case that were available at the time of its authoring. Prior to its publication, Ian Zeller, Ph.D., performed a technical review of my analysis and expert report, and assisted in the review of materials and the development of the analysis. This process ensured that all if the methodologies used within the development of the report and the results arising from these analyses were consistent with what is commonly accepted by the scientific community that performs similar analyses. Additionally, within my expert report, I have cited approximately forty (40) peer-reviewed publications that form the basis of the methodologies, data, calculations, and injury mechanisms used within my analysis of this case.

10. In developing my opinions in the above-captioned case, I have performed both traffic accident reconstruction and injury causation analyses using the facts and evidence available at the time of my analysis. These analyses utilized the established and undisputed principles of Newtonian physics, dynamics, mechanics, materials science, tissue mechanics, anatomy, and physiology, in which I have received formal educational training to the Ph.D. level, and in whose application I have extensive experience. I have outlined the methodologies and philosophies that form the basis of injury consistency analysis in a document titled, "Injury Consistency Analysis," which is attached hereto as **Exhibit D-3**, and is incorporated herein by reference. These methodologies are peer-reviewed, repeatable, well-accepted and established within the field of biomechanics, and have been supported by the American Medical Association in determining the causation and relatedness of injuries (see Barth, 2012 and Melhorn, et al., 2014).

11. In the above-captioned case, I have applied the principles and methodologies of traffic accident reconstruction to determine the characteristics of the interaction between the subject tractor-trailer and the Nissan Juke, the changes in their respective speeds in response to these vehicle contacts (i.e., delta-Vs), and the directions in which the forces of impact were applied for each vehicle (principal directions of force, or PDOFs). The practices and principles applied to form these opinions were used in a way that conformed to common, established, repeatable, and widely-accepted practices within the field of

traffic accident reconstruction, and are based on the undisputed laws of Newtonian physics and engineering mechanics. Sufficient data and evidence were provided and gathered to form these opinions to a reasonable degree of certainty within the engineering and accident reconstruction fields.

12. In their Motion in Limine, plaintiffs indicate that I am not a licensed and/or board-certified physician, and that opinions concerning medical causation is outside the scope of my expertise as a biomechanical expert. Indeed, I am not a physician. The opinions I have provided in the instant case ARE NOT opinions on MEDICAL CAUSATION; they are clearly within the accident reconstruction and biomechanics realm. Specifically, opinions regarding occupant motions and forces all use the words dynamic and mechanisms – these are words that are firmly within the context of biomechanics, and outside of the purview of medical causation.

13. In their Memorandum in Support of Plaintiffs' Motion in Limine, plaintiffs complain that an inspection was performed of the repaired vehicle. This vehicle was inspected when we were afforded the opportunity to do so, as this was not the case immediately after the accident. Importantly, the data contained within the Airbag Control Module of the Nissan was not perishable, and would have contained an accurate record of the dynamics of the accident had the accident risen to the level of triggering a recording event.

14. In their Memorandum in Support of Plaintiffs' Motion in Limine, plaintiffs complain that only the compression forces were calculated, with no mention of lateral forces. The explanation for this is simple: as is explained in detail in the Biomechanical Analysis section of the report of August 12, 2019, only compressive loads in the presence of hyperflexion have been shown to cause intervertebral disc structural damage absent other damages to the surrounding structures of the spine. Lateral forces are relevant to other injuries – namely to ligaments and the facet joints; however, these were not diagnosed within the occupants of the accident. It is incumbent upon an expert to understand not just the magnitude of forces applied to tissues, but the appropriateness of those forces in specifically inducing the damages to tissues that are subsequently diagnosed by physicians as injuries. It would be absolutely irrelevant to calculate lateral accelerations or loads when the injuries diagnosed subsequent to the subject accident are not associated with lateral accelerations or loads.

15. In their Memorandum in Support of Plaintiffs' Motion in Limine, plaintiffs complain that I relied almost exclusively on documentary evidence to prepare my reports. This is generally false. A host of scientific articles are used and the knowledge gleaned from them are applied to the facts of each case as given by the documentary evidence. The use of the type of information that was used in this case was typical of what is available and used in the majority of cases in which lawsuits are filed years after the subject event. These methods are validated within the accident reconstruction community (see Bartlett et al., and Happer et al.).

16. In their Memorandum in Support of Plaintiffs' Motion in Limine, plaintiffs complain that I did not do any accident reconstruction. The accident reconstruction performed in this accident is, as was stated in the report, a reconstruction of the dynamics of the accident, not a reconstruction of the entire circumstances. The reconstruction was aimed at understanding parameters that were germane to the accident-induced motions of the vehicle which would engender occupant motions and consequently internal tissue forces.

17. In their Memorandum in Support of Plaintiffs' Motion in Limine, plaintiffs complain about a number of things that I did not do. Given the basis of my analysis and opinions, the use of which is supported by the literature within the accident reconstruction and biomechanics communities, none of these things that they complain about would have added any insight into the dynamics of the accident. Simply put, the complaint is that I did not perform tasks that were wholly unnecessary for the scope of my engagement.

18. In their Memorandum in Support of Plaintiffs' Motion in Limine, plaintiffs indicate that my opinions regarding "mechanisms for causing spinal strains..." were outside of my expertise. This is obviously and patently incorrect. Mechanisms of injury firmly within the scope of injury biomechanics, and these themes are studies by individuals with similar training as I, but rarely the same type of research experience that I have.

19. Plaintiffs' repeated complaints that "mechanism associated with acute damage to intervertebral discs were not in effect in this accident" is a **medical causation** opinion is baffling. Physicians address diagnosis, treatment and prognosis, but do not necessarily address the questions of mechanisms of injury. In fact, orthopedic residents are compelled during their training to understand biomechanics and consequently mechanisms of injury from biomechanists. This is exactly one of the roles I fulfilled at in my various capacities at LSUHSC from 1984 to 2004.

20. In their Memorandum in Support of Plaintiffs' Motion in Limine, plaintiffs discuss cases in which myself or some of my colleagues (specifically Dr. Charles Bain) have been excluded or limited. However, they fail to point out that in comparison to the times in which a member of our community is excluded or limited, the vast majority of well-qualified experts in the field, such as myself (or Dr. Bain) are allowed to give testimony within the purview of their expertise. Although Dr. Bain's testimony record is not available to me, my own testimony record – provided as an attachment to the original Report of Findings of August 12, 2019, and the updated versions, give faith that this field and the practitioners within it, are largely accepted in state and federal courts in Louisiana and indeed all over the country.

21. Indeed, courts have not allowed me to give opinions on medical causation. These are not limitations on the opinions that I have offered in numerous cases, nor in the opinions I intend to offer in this specific case. The opinions I am offering in this case are strictly within the realm of accident reconstruction and biomechanics.

**FURTHER, AFFIANT SAYETH NAUGHT.**

_____
RICHARD V. BARATTA, AFFIANT

SUBSCRIBED AND SWORN to before me, this 25th day of November, 2019.

_____
NOTARY PUBLIC

SEAGEN A LEGER
Notary ID #131747270
My Commission Expires
October 3, 2022

Printed Name: Seagen Leger

Notary/Bar No.: 131747270

Commission Expires: October 3, 2022