```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


*****************************************************************
WAYLAND COLLINS, CANDY KELLY
AND ALVIN POLK                        CIVIL ACTION NO. 18-7465
                                      SECTION "G" (5)
                                      NEW ORLEANS, LOUISIANA
VERSUS                                WEDNESDAY, NOVEMBER 20, 2019

JOHN C. BENTON D/B/A
Q&M MOTOR TRANSPORTS, MARK INGLE
AND NORTHLAND INSURANCE COMPANY
*****************************************************************

            TRANSCRIPT OF MOTION HEARING PROCEEDINGS
         HEARD BEFORE THE HONORABLE MICHAEL B. NORTH
                 UNITED STATES MAGISTRATE JUDGE


APPEARANCES:


FOR MARK INGLE,                 MORGAN J. WELLS, JR., ESQ.
Q&M MOTOR TRANSPORT,            LARZELERE, PICOU, WELLS,
NORTHLAND INS. CO.:                SIMPSON, LONERO
                                3850 N. Causeway Boulevard
                                Suite 500
                                Metairie, Louisiana  70002



FOR CRESCENT VIEW               L. ADAM THAMES, ESQ.
SURGERY CENTER:                 TAYLOR, PORTER, BROOKS & PHILLIPS
                                450 Laurel Street
                                8th Floor
                                Baton Rouge, Louisiana  70801


Official Court Reporter:        Alexis A. Vice, RPR, CRR
                                500 Poydras Street, HB-275
                                New Orleans, LA  70130
                                (504) 589-7777


*PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
PRODUCED BY COMPUTER.*

                        OFFICIAL TRANSCRIPT
```

```
 1                        P R O C E E D I N G S
 2                     (WEDNESDAY, NOVEMBER 20, 2019)
 3                        (Court called to order.)
 4
 5              DEPUTY CLERK: Civil Action 18-7465, *Wayland Collins,
 6   et al versus John Benton, et al*.
 7              Counsel, could you please make appearances for the
 8   record?
 9              MR. WELLS: Good morning, Your Honor.  Morgan Wells
10   here for the defendants Mark Ingle, Q&M Motors, and Northland
11   Insurance Company.
12              THE COURT: All right, good morning.
13              MR. THAMES: Good morning, Your Honor.  Adam Thames on
14   behalf of the nonparty Crescent View Surgery Center.
15              THE COURT: All right.  So first things first, I'd
16   like to take a look at the contract that's in dispute for in
17   camera review.
18              MR. THAMES: Yes, Your Honor.  I've brought a copy.
19   May I approach?
20              THE COURT: All right, sure.
21              Well, this is going to take me a while.
22              MR. THAMES: Yeah.
23              THE COURT: I'm going to look at that later.
24              So this is not, this is not the first time I've been
25   down this road on, you know, similar issues.  And without
```

1  really going into a great deal of depth as to the 70-some-odd
2  areas or topics in these subpoenas, the two questions that I
3  have to answer, as I see it, are these: Whether the defendants
4  are entitled to discover how much was paid for these
5  receivables, Question No. 1; Question 2 is whether they're
6  entitled to a copy of this contract.
7           I'm not ready to make a call on the contract. But I
8  do think that, I think in terms of information that is relevant
9  and proportional to the case, I think the defendants are
10 entitled to the information regarding what was paid and by whom
11 to Crescent City for the, I call it "receivables," for the
12 various receivables that are at issue in this case.
13          I don't know if there's a protective order in this
14 case or not yet, but I'm happy to sign one along the lines of
15 my model protective order that I use to address any concerns
16 about confidentiality or trade secrets, business secrets, that
17 sort of thing.
18          But I'll say this for your benefit, Counsel, for your
19 client. I don't believe that this is -- I don't believe this
20 is currently teed up as a fight over whether the collateral
21 source rule applies or what the plaintiff is entitled to put on
22 the board at a trial. We're not there yet. That's an argument
23 to be made as an evidentiary argument between the parties at
24 trial. That argument can't be made if the defendant does not
25 have the information to inform its view as to what the

OFFICIAL TRANSCRIPT

1  appropriate measure of damages are in the case.
2           So I think from the standpoint of what's
3  discoverable, I think that information is discoverable.  At
4  this point, I will only tell you-all that I'm going to order
5  Crescent City to produce that information to the defendant.
6           I'm somewhat concerned as to what the preexisting
7  documents in your file might look like and whether they would
8  otherwise have to be redacted.  I would be satisfied if a
9  person with knowledge to make an affidavit provides that
10 information in affidavit form to the defendant as opposed to
11 producing documents that may or may not have to be redacted for
12 other purposes.
13          Mr. Wells has already received the total amount of
14 the, I guess, charged amounts.  The only gap in information is
15 what was paid for those by the third party, and I think that
16 information is easily provided in an affidavit as opposed to
17 un-redacting documents or having to present documents in
18 partially redacted form to refine a fact.
19          So unless you've got some objection to me doing it
20 that way?
21          MR. WELLS: Well, I do have a request, Your Honor, and
22 it's specific to that because CVSC did produce a document.
23 They've produced a few different documents of which I have
24 questions.  But they did produce one document that itemizes --
25 it's a Visit Charge Detail, and there was one for each of the

1 two plaintiffs that are involved in their treatment, Alvin Polk
2 and Wayland Collins.
3         It's Exhibit D to Alvin Polk's response, and it's a
4 Visit Charge Detail dated October 8th, 2019.  It has an
5 itemized listing of all the charged amounts, and then it has a
6 transaction history which references Commercial Billing with a
7 date of January 16, 2018, and the amount is redacted.  And then
8 Attorney, slash, Legal Payment, February 9, 2019, that's
9 redacted.  So you're familiar with that, okay.
10         THE COURT:  Right, you raise a good point.  Those
11 documents need to be produced in un-redacted form.  I'm aware,
12 because I've seen these documents before, this bill of sale
13 document with the listing, with the single listing of all of
14 these charges and the redacted amount on the bottom, I don't
15 even think the redacted amount is necessarily what was paid.
16         As to those documents, those are the ones I'm
17 going -- I mean you'll probably get the same information in two
18 forms.  But as to the documents where the bottoms are redacted
19 on the documents that Mr. Wells just referred to, I'm going to
20 order y'all to produce those in un-redacted form.
21         As to the other ones, and I'll go back and look to
22 make sure that the minute entry is clear, I'm inclined to just
23 have you-all submit an affidavit with the information.
24         I'm going to take a look at this contract.  I'll tell
25 you-all that my instinct is that it's probably not

                        OFFICIAL TRANSCRIPT

```
 1  discoverable, but I got to take a look at it.
 2          MR. THAMES: Can I ask a point of clarification,
 3  Judge?
 4          THE COURT: Sure, sure.
 5          MR. THAMES: I think Mr. Wells mentioned one for --
 6  can we put on the record the exact documents, Mr. Wells, that
 7  you want?  I understand I have to do it for both plaintiffs.
 8          So I want to make sure before we get off the record,
 9  I think for Mr. Collins, it would be, what you're referring to
10  would be C2?
11          MR. WELLS: That's correct.
12          MR. THAMES: And then for Mr. Polk, I missed the?
13          MR. WELLS: Exhibit D as in dog.
14          THE COURT: Collins is C2?
15          MR. WELLS: That's correct.
16          THE COURT: Polk is D.  I looked at them, but they're
17  not tabbed in my binder.  So I got to go dig them up.
18          MR. WELLS: Actually, there are two for Collins, C1
19  and C2.
20          THE COURT: Okay.
21          MR. WELLS: And I think there's just -- and then for
22  Polk, it's just D.
23          MR. THAMES: And Judge, obviously, one of the points
24  that I'm sure, although I'm not Medport, but one of their
25  issues is because they may have a certain discount with
```

1 Crescent View, they may have a certain discount with other
2 people, that they would like to keep that proprietary or trade
3 secret; so it's not out there.
4     My understanding is that I can submit this affidavit
5 under some protective order so that information doesn't go any
6 further than Mr. Wells.
7     THE COURT: So on your way out, there's two stacks of
8 documents on the table on your way out.  One of them is just a
9 copy of my form protective order that I use.  You can also
10 access it on the court's website in Word format.  You-all work
11 that out.
12     Make sure that you submit that to me first.  I'll
13 sign it, put it in the record, and then you can produce the
14 information and documents subject to that protective order.
15     MR. THAMES: Mr. Wells, do you have any problem, any
16 objection?
17     MR. WELLS: No, that's fine, Your Honor.
18     THE COURT: All right, very good, thank y'all.
19     MR. THAMES: Do you need us to stay here while you
20 look at that?
21     THE COURT: No, I'll do this separately.
22     MR. THAMES: Okay.
23     MR. WELLS: Is there a time frame within which the
24 documents are to be produced?
25     THE COURT: I'm going to say -- well, I want y'all

OFFICIAL TRANSCRIPT

1 to -- we've got to deal with the protective order first.  So
2 let's get the protective order to me.  I'll put a time frame in
3 there.  It will probably be within two or three days of the
4 protective order being issued.
5          MR. WELLS: Okay.
6          THE COURT: All right.  And so that will be up to
7 you-all to agree on the protective order which should not be a
8 problem.
9          MR. THAMES: Sure.  And I think there was some fee
10 request in either motion.  Are those granted or denied?
11          THE COURT: No, I'm going to pass on that.  I think
12 this is a legitimate discovery dispute, and I am partially
13 granting the motion.  So we're going to keep it there.
14          MR. WELLS: And Counsel has been working in good
15 faith.  And so we're primarily interested in the documents, not
16 in the costs and fees.
17          THE COURT: All right, thank y'all.
18          MR. THAMES: Thank you, Your Honor.
19          MR. WELLS: Thank you.
20      (Whereupon this concludes the motion proceedings.)
21
22
23
24
25

OFFICIAL TRANSCRIPT

**CERTIFICATE**

1
2
3
4       I, Alexis A. Vice, RPR, CRR, Official Court
5  Reporter for the United States District Court, Eastern
6  District of Louisiana, do hereby certify that the
7  foregoing is a true and correct transcript, to the best of
8  my ability and understanding, from the record of the
9  proceedings in the above-entitled and numbered matter.
10
11
12                              */s/Alexis A. Vice, RPR, CRR*
                               Alexis A. Vice, RPR, CRR
13                              Official Court Reporter
14
15
16
17
18
19
20
21
22
23
24
25

OFFICIAL TRANSCRIPT