UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WAYLAND COLLINS, et al.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-7465** |
| **JOHN C. BENTON, et al.** | **SECTION: "G"(5)** |

## ORDER AND REASONS

Before the Court is Crescent View Surgery Center, LLC's ("CVSC") "Expedited Objections and Motion for Review/Appeal of Magistrate's November 20, 2017 [sic] Order."[1] Defendants John C. Benton d/b/a Q & M Motor Transports, Mark Ingle, and Northland Insurance Company (collectively, "Defendants") oppose the motion.[2] Having considered the motion, the memorandum in support and in opposition, the record, and the applicable law, the Court denies the motion and affirms the Magistrate Judge's November 20, 2019 Order.

## I. Background

On August 7, 2018, Plaintiffs Wayland Collins, Candy Kelly, and Alvin Polk (collectively, "Plaintiffs") filed a complaint against Defendants in this Court, seeking recovery for injuries and property damages Plaintiffs allegedly sustained in an automobile accident.[3] According to the Complaint, on August 9, 2017, Plaintiff Wayland Collins was operating a vehicle on Interstate 10 and, while exiting onto Interstate 510, collided with an 18-wheeler driven by Defendant Mark

---

[1] Rec. Doc. 88.

[2] Rec. Doc. 125.

[3] Rec. Doc. 1 at 3.

1

Ingle.[4] Plaintiffs allege that Defendant Mark Ingle was turning onto Interstate 510 and negligently misjudged his clearance, resulting in the motor vehicle incident at issue.[5] Plaintiffs further allege that Defendant Mark Ingle was cited for an "improper lane change."[6] Plaintiffs bring a negligence claim against Defendant Mark Ingle and Defendant Q & M Transport, who is allegedly Defendant Mark Ingle's principal under the doctrine of respondeat superior.[7] Plaintiffs also bring claims against Defendant Northland Insurance Company, who purportedly insured the 18-wheeler operated by Defendant Mark Ingle.[8]

On July 19, 2019, Defendants filed a Motion for Leave of Court to File Counterclaim, seeking leave of Court to file a fraud claim against Plaintiffs,[9] and a Motion for Leave of Court to File Supplemental and Amending Answer and Affirmative Defenses, seeking to amend their Answer to assert the affirmative defense of conspiracy to commit fraud.[10] These motions were referred to the Magistrate Judge for decision pursuant to Local Rule 72.1. Plaintiffs opposed both motions.[11] On August 21, 2019, the Magistrate Judge denied the Motion for Leave of Court to File Counterclaim, finding that Defendants had not pleaded fraud with particularity.[12] The Magistrate Judge granted Defendants leave to amend the Answer to conform the pleading to the

---

[4] *Id.*

[5] *Id.*

[6] *Id.* at 4.

[7] *Id.* at 5.

[8] *Id.*

[9] Rec. Doc. 31.

[10] Rec. Doc. 32.

[11] Rec. Doc. 43.

[12] Rec. Doc. 50 at 1.

evidence developed during the course of discovery, including the following allegations: (1) Plaintiffs conspired to stage the alleged subject accident and that the alleged subject accident in this case was intentionally caused and/or staged by the Plaintiffs, and that Plaintiffs suffered no injury due to the fault of the Defendants; (2) certain Plaintiffs were in cellphone contact with Cornelius Garrison, Raphus Adams, and Ryan Harris within the hours after the alleged accident and that these three individuals are former and/or current clients of Plaintiffs' counsel in this matter in cases involving alleged accidents similar to those alleged in this matter; (3) Garrison's cellphone number has appeared on several other Plaintiffs' phone records near the time of their respective alleged accidents in over 20 different cases; (4) Plaintiff Polk was in cellphone contact with Plaintiffs' counsel's fiancé, Sean Alfortish, approximately one hour before the alleged subject accident; and (5) Mr. Alfortish is a principal of Total Medical Concepts, LLC., a third-party funding company that is the guarantor on several Health Claim Forms submitted by medical providers who treated Plaintiffs, Collins and Polk, for their alleged injuries resulting from this alleged accident and which operates out of the building located at 525 Clay Street in Kenner, Louisiana, the same address used by counsel for Plaintiffs at the time this lawsuit was filed.[13] Neither party sought review of the Magistrate Judge's ruling by this Court.

On October 14, 2019, Defendants served subpoenas duces tecum on CVSC for production of records of the charges, payments, contracts with third-parties, and other documentation concerning the amounts of the medical expenses charged by CVSC for medical procedures performed at that facility on Plaintiffs Wayland Collins and Alvin Polk.[14] In response, CVSC produced some medical records and billing information, but refused to provide any

---

[13] *Id.* at 2.

[14] Rec. Docs. 65-4, 65-5.

3

documentation reflecting the payments it received in connection with the medical bills charged for the treatment provided at CVSC to Collins and Polk.[15] On November 5, 2019, Defendants filed a "Motion for Contempt Against Crescent View Surgery Center, LLC for Failure to Adequately Respond to Subpoena Duces Tecum and to Compel Production of Documents."[16] CVSC opposed the motion.[17] The motion was referred to the Magistrate Judge for decision pursuant to Local Rule 72.1.

On November 20, 2019, the Magistrate Judge conducted a hearing on the motion.[18] The Magistrate Judge order production of the "Master Purchase Agreement" ("Agreement") between Medport and CVSC for purposes of an in camera inspection.[19] The Magistrate Judge further ordered the parties to agree to a protective order to be submitted to the Magistrate Judge for approval.[20] Within three days of the issuance of a protective order, the Magistrate Judge ordered CVSC to provide Defendants with an affidavit from an appropriate corporate official attesting to the specific dollar amounts that Medport paid for the receivables in this case and the identities of the individuals who made such payments.[21] The Magistrate Judge further ordered CVSC to provide Defendants with unredacted copies of records showing the amount Medport paid for the receivables, which were previously disclosed with redactions.[22] The Magistrate Judge reasoned

---

[15] Rec. Doc. 65-6.

[16] Rec. Doc. 65-1.

[17] Rec. Doc. 70.

[18] Rec. Doc. 86 at 1.

[19] *Id.*

[20] *Id.*

[21] *Id.* at 2.

[22] *Id.*

that the Master Purchase Agreement was relevant to a determination of whether the collateral source rule applies to the difference between the amounts "billed" by Plaintiffs' medical providers ("receivables") and the amounts paid by Medport to those providers in satisfaction of those receivables.[23] The Magistrate Judge also reasoned that the Master Purchase Agreement may be relevant as evidence of potential bias of those of Plaintiffs' medical providers who sold their receivables to Medport at a discount.[24]

On November 25, 2019, CVSC filed the instant "Expedited Objections and Motion for Review/Appeal of Magistrate's November 20, 2017 [sic] Order."[25] The same day, the Court granted an expedited hearing on the motion, and set the motion for oral argument on December 4, 2019 at 10:00 a.m.[26] On December 2, 2019, Defendants filed an opposition to the motion.[27]

## II. Parties' Arguments

### A.    *CVSC's Arguments in Support of the Motion*

CVSC moves this Court to vacate the Magistrate Judge's November 20, 2019 Order because CVSC asserts the Order is clearly erroneous or contrary to law.[28] In support, CVSC cites three decisions decided by judges in the Eastern District of Louisiana denying a personal-injury defendant's motion to compel healthcare providers to produce funding agreements between Medport and the healthcare providers.[29] CVSC contends that this Court should follow these non-

---

[23] *Id.* (citing *Williams v. IQS Insurance Risk Retention*, No. 18-2472 c/w 18-6113, 2019 WL 937848 (E.D. La. Feb. 25, 2019)).

[24] *Id.* (citing *Thomas v. Chambers*, No. 18-4373 (E.D. La. Apr. 26, 2019)).

[25] Rec. Doc. 88.

[26] Rec. Doc. 90.

[27] Rec. Doc. 125.

[28] Rec. Doc. 88-1 at 1, 21.

[29] *Id.* at 1–2, 7–11 (citing *Dupont v. Costco Wholesale Corp., et al*, No. 17-4469, 2019 WL 5959564 (E.D.

5

binding decisions and find that the actual amounts received by CVSC from Medport for the purchase of its accounts receivable are not relevant when Plaintiffs still owe the full amount of their medical bills.[30] CVSC asserts that this information does not affect Plaintiff's ability to recover as damages the full amount of their incurred medical bills, making the information inadmissible and irrelevant.[31]

CVSC asserts that *Williams v. IQS Insurance*, the case relied upon by the Magistrate Judge, is distinguishable because there the plaintiff's attorney contracted with a litigation funding company that engaged the medical providers to render services at a pre-negotiated discounted rate.[32] According to CVSC, *Williams* is plainly inapplicable here, as CVSC does not have any contracts, agreements, or guarantees with any attorney related to this litigation, nor do Defendants even allege any such agreement.[33]

Additionally, CVSC argues that the Magistrate Judge's reliance on *Thomas v. Chambers* to support the assertion that the Master Purchase Agreement may be relevant to show bias was clearly erroneous.[34] CVSC asserts that *Thomas* is distinguishable because Medport is not involved in the treatment rendered by CVSC and does not make referrals of patients to CVSC.[35] Instead,

---

La. Nov. 13, 2019); *Dupont v. Costco Wholesale Corporation, et. al.*, No. 17-4469, slip. op. (E.D. La. Oct. 15, 2019); *Reese v. Great W. Cas. Co.*, No. 18-8336, 2019 WL 4930233 (E.D. La. Oct. 7, 2019)).

[30] *Id.* at 2, 11–14 (citing *Whitley v. Pinnacle Entm't, Inc. of Delaware*, No. 15-595, 2017 WL 1051188 (M.D. La. Mar. 20, 2017); *Howard v. Offshore Liftboats, LLC*, No. 13-4811, 2016 WL 232252, (E.D. La. Jan. 19, 2016)).

[31] *Id.* at 16.

[32] *Id.* at 17 (citing No. 18-2472, 2019 WL 937848 (E.D. La. Feb. 26, 2019)).

[33] *Id.* at 18.

[34] *Id.* (citing No. 18-4373 (E.D. La. Apr. 26, 2019)).

[35] *Id.* at 20.

CVSC contends that Medport merely purchases CVSC's accounts receivable at an amount less than the billed amount, and then has the right to recover the full billed amount of those receivables from Plaintiffs.[36] Furthermore, even if bias were an issue, CVSC contends that the discovery ordered here would be disproportional because the amount that MedPort paid for the accounts receivable would not affect this issue.[37] Finally, CVSC contends that a confidentiality agreement does not transform information that is not proportional or not discoverable into discoverable information.[38] Therefore, CVSC asserts that the Magistrate Judge's Order should be vacated because it is clearly erroneous and contrary to law.[39]

### B. *Defendants' Arguments in Opposition of the Motion*

In opposition, Defendants assert that the Magistrate Judge's Order should be affirmed because the requested payment information is discoverable and proportional to the needs of the case.[40] Defendants contend that this case is similar to *Williams v. IQS Insurance* and production of any and all contracts between CVSC and MedPort (or any other litigation funding company) and/or between CVSC and counsel for Plaintiffs relative to payment of Plaintiffs' medical expenses is critical to the defense of this matter and is discoverable.[41] Additionally, Defendants assert that the information is relevant to show bias on the part of the medical providers, who may have an incentive for Plaintiffs to win their case.[42] Accordingly, Defendants contend that there is

---

[36] *Id.*

[37] *Id.*

[38] *Id.* at 21.

[39] *Id.*

[40] Rec. Doc. 125 at 4.

[41] *Id.* at 8 (citing No. 18-2472, 2019 WL 937848 (E.D. La. Feb. 26, 2019)).

[42] *Id.* at 8–9 (citing *Thomas v. Chambers*, No. 18-4373 (E.D. La. Apr. 26, 2019)).

7

no basis to conclude the Order was clearly erroneous or contrary to law.[43]

Defendants assert that CVSC's argument that Plaintiffs remain responsible for the full amounts billed for their medical treatment is not supported by the evidence because both Collins and Polk testified during their depositions that their attorney was "taking care of" the medical bills.[44] Additionally, Defendants note that CVSC did not produce a copy of the contract for consideration by Defendants, but following in camera review the Magistrate Judge concluded that the Master Purchase Agreement was discoverable.[45] Consequently, Defendants argue that the evidence currently shows that the collateral source rule does not apply to allow Plaintiffs to recover their difference between the amounts charged by CVSC (or any other healthcare provider) and the amounts they received in payment from MedPort.[46]

Defendants further submit that the MPA between CVSC and MedPort is discoverable on the basis that Defendants are entitled to consider the contractual agreements between CVSC and MedPort relative to the purchase by MedPort of CVSC's accounts receivable and the extent to which recovery by MedPort is contingent on either settlement or a judgment in favor of Plaintiffs in this matter.[47] Defendants assert that "the business model of MedPort in this matter (via CVSC) is to match a purportedly injured and uninsured plaintiff who has a viable tort claim with a treating physician (or healthcare facility) with whom MedPort has a contractual interest."[48] Consequently,

---

[43] *Id.* at 10.

[44] *Id.* at 11–12.

[45] *Id.* at 13.

[46] *Id.*

[47] *Id.* at 13–14.

[48] *Id.* at 16.

Defendants argue that CVSC has "a vested economic interest in ensuring that the plaintiffs recover, so that the business models of both the healthcare providers and MedPort can remain viable."[49] Accordingly, Defendants assert that the Court should affirm the Magistrate Judge's November 20, 2019 Order.[50]

### III. Legal Standard

*A.    Standard of Review of a Magistrate Judge's Order*

With certain exceptions not applicable here, a district judge "may designate a magistrate judge to hear and determine any pretrial matter pending before the [district] court."[51] When objections are raised to non-dispositive pretrial matters, a district court must consider them and "modify or set aside any part of the order that is clearly erroneous or contrary to law."[52] Under this highly deferential standard, the court will reverse only when "on the entire evidence [it] is left with a definite and firm conviction that a mistake has been committed."[53]

*B.    Legal Standard on a Motion to Compel Compliance with a Subpoena Duces Tecum Issued to a Non-Party*

"Subpoenas duces tecum are discovery devices which, although governed in the first instance by Rule 45 [of the Federal Rules of Civil Procedure], are also subject to the parameters established by Rule 26."[54] Rule 26 governs the scope of discovery, stating: "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and

---

[49] *Id.* at 17.

[50] *Id.*

[51] 28 U.S.C. § 636(b)(1)(A).

[52] Fed. R. Civ. P. 72(a).

[53] *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

[54] *Sines v. Kessler*, 325 F.R.D. 563, 565 (E.D. La. 2018) (internal citations and quotation marks omitted).

9

proportional to the needs of the case. . ."⁵⁵ "Information within this scope of discovery need not be admissible in evidence to be discoverable."⁵⁶ The scope of discovery must be proportional to the needs of the case, which takes into account the following considerations: (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit.⁵⁷ Under Rule 26(b)(2)(C), the Court must limit the frequency or extent of discovery if it determines: (1) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery had ample opportunity to obtain the information; or (3) the proposed discovery is outside the scope of Rule 26(b)(1).⁵⁸

Federal Rule of Civil Procedure 45 provides additional protections when subpoenas duces tecum are issued to non-parties. Rule 45(d)(1) requires that the party issuing a subpoena to a non-party "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."⁵⁹ On timely motion, the court for the district where compliance is required must quash or modify a subpoena that: (1) fails to allow a reasonable time to comply; (2) requires a person to comply beyond the geographical limits specified in Rule 45(c); (3) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (4) subjects a person

---

⁵⁵ Fed. R. Civ. P. 26(b)(1).

⁵⁶ *Id.*

⁵⁷ *Id.*

⁵⁸ Fed. R. Civ. P. 26(b)(2)(C).

⁵⁹ Fed. R. Civ. P. 45(d)(1).

to undue burden.[60] However, the person filing the motion to quash has the burden of proof to demonstrate that compliance would impose undue burden or expense.[61] "Whether a burdensome subpoena is reasonable must be determined according to the facts of the case, such as the party's need for the documents and the nature and importance of the litigation."[62] To determine whether the subpoena presents an undue burden, the Fifth Circuit instructs courts to consider the following factors: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed.[63] "Further, if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party."[64]

### IV. Analysis

In the instant motion, CVSC contends that the Magistrate Judge's Order requiring it to produce evidence of the actual amounts received by CVSC from Medport for the purchase of its accounts receivable and the Master Purchase Agreement is clearly erroneous and contrary to law.[65] CVSC asserts that this information does not affect Plaintiff's ability to recover as damages the full amount of their incurred medical bills, making the information inadmissible and irrelevant.[66] In opposition, Defendants contend that any and all contracts between CVSC and

---

[60] Fed. R. Civ. P. 45(d)(3).

[61] *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

[62] *Id.* (internal citations and quotation marks omitted).

[63] *Id.* (internal citations omitted).

[64] *Id.* (internal citations omitted).

[65] Rec. Doc. 88-1 at 2, 11–14.

[66] *Id.* at 16.

MedPort (or any other litigation funding company) and/or between CVSC and counsel for Plaintiffs relative to payment of Plaintiffs' medical expenses is critical to the defense of this matter and is discoverable.[67] Additionally, Defendants assert that the information is relevant to show bias on the part of the medical providers, who may have an incentive for Plaintiffs to win their case.[68] Accordingly, Defendants contend that there is no basis to conclude the Order was clearly erroneous or contrary to law.[69]

The Magistrate Judge conducted an in camera review of the Master Purchase Agreement and determined that it was discoverable as it was relevant to a determination of whether the collateral source rule applies to the difference between the amounts "billed" by Plaintiffs' medical providers and the amounts paid by Medport to those providers in satisfaction of those receivables.[70] "Under the collateral source rule, a tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be reduced, because of monies received by the plaintiff from sources independent of the tortfeasor's procuration or contribution."[71] "Hence, the payments received from the independent source are not deducted from the award the aggrieved party would otherwise receive from the wrongdoer, and, a tortfeasor's liability to an injured plaintiff should be the same, regardless of whether or not the plaintiff had the foresight to obtain insurance."[72]

The Louisiana Supreme Court has explained that where a plaintiff's "patrimony has been diminished in some way" to obtain collateral source payments, as is the case with private

---

[67] Rec. Doc. 125 at 8.

[68] *Id.* at 8–9 (citing *Thomas v. Chambers*, No. 18-4373 (E.D. La. Apr. 26, 2019)).

[69] *Id.* at 10.

[70] Rec. Doc. 86 at 2.

[71] *Bozeman v. State*, 2003-1016 (La. 7/2/04), 879 So.2d 692, 698.

[72] *Id.* (internal citations omitted).

insurance or Medicare, then a plaintiff is entitled to the benefit of the bargain and may recover the full value of the medical services, including the "write-off" amount.[73] Thus, a plaintiff may not recover "write-off" amounts as damages where no consideration is provided by the plaintiff for the benefit.[74]

In *Hoffman v. 21st Century North American Ins. Co.*, the Louisiana Supreme Court declined to apply the collateral source rule to an attorney-negotiated medical discount.[75] The court reasoned that "allowing the plaintiff to recover an amount for which he has not paid, and for which he has no obligation to pay, is at cross purposes with the basic principles of tort recovery in our Civil Code."[76] Recently, in *Simmons v. Cornerstone Investments, LLC,* the Louisiana Supreme Court held that the collateral source rule does not apply to a discount in the amount of medical expenses paid by workers compensation because "any recovery in addition to the reduced amount of medical bills would be a windfall to Plaintiff and against the rationale behind the collateral source rule."[77]

In *Dupont v. Costco Wholesale Corporation*, another district judge in the Eastern District of Louisiana affirmed a magistrate judge's order denying a motion to compel the plaintiff's healthcare provider to produce evidence of the funding agreement and the actual amounts it received from a funding company for purchase of its accounts receivable.[78] The Court reasoned

---

[73] *Id.* at 705–06.

[74] *Id.* at 705.

[75] 14-2279 (La. 10/2/15), 209 So. 3d 702.

[76] No. 18-735 (La. 5/8/19), 2019 WL 2041377, at * 9–10.

[77] *Id.* at 707.

[78] *Dupont v. Costco Wholesale Corp.*, No. 17-4469, 2019 WL 5959564, at *3–4 (E.D. La. Nov. 13, 2019).

that the funding agreement was not relevant nor probative of any issue in the case because "[t]he providers assigned to Medport the right to recover the full amount billed to plaintiff, and plaintiff remains personally liable for the full amount billed."[79]

Conversely, in *Williams v. IQS Ins. Risk Retention*, another district judge in the Eastern District of Louisiana held that the collateral source rule did not apply to the difference between the charged amount of plaintiffs' medical expenses and the amounts paid by a third-party litigation funding company to acquire the accounts receivable from plaintiffs' healthcare providers.[80] The court reasoned that the plaintiffs could not "establish that they paid any benefit or suffered any diminution in their patrimony in order to obtain the discounted medical payments. The discounts were obtained via a series of contractual agreements that apparently triggered no obligations on [the] [p]laintiffs' part."[81] Therefore, the court determined that the collateral source rule did not apply to the difference.[82]

CVSC asserts that this case is similar to *Dupont* because Plaintiffs remain responsible for the full amounts billed for their medical treatment.[83] In support, CVSC relies on a declaration of Kenneth Fust, a principal of Medport, who declares that Medport holds $201,641.34 in accounts receivables related to treatment, care, testing, and/or medications provided to Polk and $501,915.25 in accounts receivables related to treatment, care, testing, and/or medications

---

[79] *Id.* ("Plaintiff is bound by her initial agreement with the providers to pay the full amounts billed by them, which happen to now be owned by Medport."). *See also Reese v. Great W. Cas. Co.*, No. 18-8336, 2019 WL 4930233 (E.D. La. Oct. 7, 2019) ("[W]hether Dr. Lonseth engages a factoring company for his account receivables is neither relevant nor proportional to the needs of the case.").

[80] No. 18-2472, 2019 WL 937848, at *3 (E.D. La. Feb. 26, 2019).

[81] *Id.*

[82] *Id.*

[83] Rec. Doc. 88-1 at 2.

provided to Collins.[84] Fust further declares that no one has made any payments to Medport toward these balances.[85] In response, Defendants assert that CVSC's argument that Plaintiffs remain responsible for the full amounts billed for their medical treatment is not supported by the evidence because both Collins and Polk testified during their depositions that their attorney was "taking care of" the medical bills.[86] Consequently, Defendants argue that the evidence currently shows that the collateral source rule does not apply to allow Plaintiffs to recover their difference between the amounts charged by CVSC (or any other healthcare provider) and the amounts they received in payment from MedPort.[87] Therefore, this case is distinguishable from *Dupont*, where the court found that the funding agreement was not relevant of any issue in the case, because here there is evidence that Plaintiffs' attorney was paying the medical bills, and the documents are relevant to show whether the collateral source rule applies to the difference between the amounts billed by Plaintiffs' medical providers and the amounts paid by Medport in satisfaction of the accounts receivables. Additionally, for the reasons discussed below, the documents may be relevant to show bias on the part of Plaintiffs' medical providers.

The Magistrate Judge conducted an in camera review of the Master Purchase Agreement and determined that it was discoverable as it was relevant to a determination of whether the collateral source rule applies to the difference between the amounts "billed" by Plaintiffs' medical providers and the amounts paid by Medport to those providers in satisfaction of those

---

[84] Rec. Doc. 88-2 at 2–3.

[85] *Id.*

[86] Rec. Doc. 125 at 11–12.

[87] *Id.* at 13.

receivables.[88] There is conflicting evidence in the record as to who is responsible for the medical bills of Plaintiffs Collins and Polk. This issue is relevant to the defense and to the amount of damages that will be recoverable by Plaintiffs. Accordingly, CVSC has not met its burden of showing that the Magistrate Judge's decision was clearly erroneous or contrary to law.

The Magistrate Judge also found that the Master Purchase Agreement may be relevant as evidence of potential bias of those of Plaintiffs' medical providers who sold their receivables to Medport at a discount. In *Thomas v. Chambers*, a district judge in the Eastern District of Louisiana found that a financial arrangement between the plaintiffs' healthcare providers and the third-party funding companies was admissible for the purpose if impeaching the credibility of the plaintiffs' treating physicians who would testify at trial.[89] The court reasoned that the financial arrangement between the plaintiffs' healthcare providers and the third-party funding companies could create an incentive for the plaintiffs' treating physicians to want the plaintiffs to win their case, because a victory could result in more referrals from the healthcare provider and Medport.[90] The court found that such an incentive could lead a jury to question the treating physicians' testimony regarding causation.[91] The court in *Thomas* considered this issue on a motion in limine, and determined that the evidence was admissible to show bias.[92] Here, the Magistrate Judge was applying a lower standard to find that the documents are relevant to the case and, therefore, discoverable. Like *Thomas*, Defendants argue that the medical providers in this case may have an

---

[88] Rec. Doc. 86 at 2.

[89] No. 18-4373, at *12 (E.D. La. Apr. 26, 2019).

[90] *Id.*

[91] *Id.*

[92] *Id.*

incentive for Plaintiffs to win the case.[93] Therefore, the Magistrate Judge's finding that the evidence may be relevant to establish bias was not clearly erroneous or contrary to law.

CVSC contends that even if bias were an issue, the discovery ordered here would be disproportional because the amount that MedPort paid for the accounts receivable would not affect this issue.[94] Pursuant to Federal Rule of Civil Procedure 45(d)(3), a Court must quash or modify a subpoena that: (1) fails to allow a reasonable time to comply; (2) requires a person to comply beyond the geographical limits specified in Rule 45(c); (3) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (4) subjects a person to undue burden.[95] Rule 45(d)(1) requires that the party issuing a subpoena to a non-party "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."[96] The person challenging a subpoena has the burden of proof to demonstrate that compliance would impose undue burden or expense.[97]

CVSC does not argue that the subpoena fails to allow a reasonable time to comply or requires it to comply beyond the geographical limits specified in Rule 45. During oral argument, counsel for CVSC admitted that although they are contractually obligated to keep the documents confidential, the documents are not privileged. The Magistrate Judge ordered the parties to agree to a protective order to be submitted to the Magistrate Judge for approval. Therefore, the confidentiality of these documents will be maintained by the protective order. Additionally,

---

[93] Rec. Doc. 125 at 8–9.

[94] Rec. Doc. 88-1 at 20.

[95] Fed. R. Civ. P. 45(d)(3).

[96] Fed. R. Civ. P. 45(d)(1).

[97] *Wiwa*, 392 F.3d at 818.

CVSC has not shown that producing evidence of the amount of the payment received would impose an undue burden or expense. Accordingly, CVSC has not shown that the Magistrate Judge's Order was clearly erroneous or contrary to law.

### V. Conclusion

Based on the foregoing, the Court denies the motion and affirms the Magistrate Judge's November 20, 2019 Order because CVSC has not shown that the Order was clearly erroneous or contrary to law. Accordingly,

**IT IS HEREBY ORDERED** that Crescent View Surgery Center, LLC's ("CVSC") "Expedited Objections and Motion for Review/Appeal of Magistrate's November 20, 2017 [sic] Order"[98] is **DENIED** and the Magistrate Judge's November 20, 2019 Order is **AFFIRMED.**

**NEW ORLEANS, LOUISIANA,** this 12th day of December, 2019.

_Nannette Jolivette Brown_
**NANNETTE JOLIVETTE BROWN
CHIEF JUDGE
UNITED STATES DISTRICT COURT**

---

[98] Rec. Doc. 88.