UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WAYLAND COLLINS, CANDY KELLY AND ALVIN POLK** <br> **Plaintiffs** <br> **VERSUS** <br><br> **JOHN C. BENTON d/b/a Q&M MOTOR TRANSPORTS, MARK INGLE AND NORTHLAND INSURANCE COMPANY** <br> **Defendants** | **CIVIL ACTION** <br> **NO. 2:18-CV-07465** <br><br> **JUDGE: NANNETTE JOLIVETTE BROWN** <br><br> **MAGISTRATE: MICHAEL B. NORTH** |

**PLAINTIFF'S EX-PARTE TO ENLARGE THE TIME FOR THE FILING FOR AMENDED PLEADINGS, MOTION TO JOIN ADDITIONAL PARTIES TO THE COMPLAINT AND MOTION FOR SANCTIONS TO COVER PLAINTIFFS FUTURE COSTS**

**NOW INTO COURT,** comes Plaintiff, Wayland Collins et al, who hereby provides the following information to the Court in order to assess the dilatory tactics which have now jeopardized Plaintiff and the Defendant individually as well and blatant disregard for Rule 33 disclosures and Rule 45 discovery. From the inception, Plaintiffs were led to believe there were additional coverages on this claim and there were no coverage issues in this matter.The actions of the Defendant and their counsel have now caused substantial prejudice to the Plaintiff and has placed defense counsel in a conflicting situation to his client, John Benton. Each issue will be explained below with accompanying exhibits to show the court the unprofessional manner in which the defense of this case has been handled.

1. **Defendant did not disclose the existence of nor any coverage issue with the excess/umbrella policy with General Star Insurance Company**.

Defendant purposely misled and did not disclose the existence of an excess or umbrella policy of insurance with General Star Insurance Company until a denial letter was sent to Plaintiff counsel, after discovery ended. Defendants knew of this information well prior to any discovery

cut-off and purposely withheld the information. The contents of the letter clearly allowed Plaintiff to go back and pull each and every answer Defendant misled Plaintiff during discovery concerning the contents of information they knew concerning the facts of this accident but purposely failed to disclose. It is for these reasons that the Court must sanction Defendant for its purposeful misrepresentations.

There was never any issue regarding coverage in this matter. As a general rule any excess policy follows the provisions of the underlying insurance company. Plaintiff has relied on the discovery responses and representations of the Defendant and will go through such representations as made by the Defendant in this matter.

Initially, in the Defendant's Rule 33 disclosures, Defendant responded as follows:

"4.   Insurance Agreement:

A copy of the Northland Insurance Company policy issued to John Benton for the applicable policy period is attached, with all confidential and proprietary information redacted (NL _0001-0070 "

**(See attached as Plaintiffs Exhibit "A")**

Next, Discovery was sent to Defendant Benton which asked the following:

"**Interrogatory No. 11**:

Please identify all insurer, **primary and excess**, providing any type of coverage for the vehicle involved on the date of the subject collision and state the name of the insurer, the type of coverage provided, its address, your policy number, your effective dates of coverage, and your policy limits for any policy covering any damage as a result of the subject collision."

On January 23, 2019, Defendant Benton, through their attorney Mr. Morgan Well responded as follows:

"**Answer to Interrogatory No. 11**:

This interrogatory is objected to on the basis that is assumes a collision occurred, which is denied by this defendant. Subject to this objection, defendant previously produced its primary

policy of liability insurance with Defendants' Initial Disclosures.  Pursuant to Federal Rule of Civil Procedure 33 (d), plaintiffs are referred to this policy to obtain the information requested in this Interrogatory."

**(See attached as Plaintiff Exhibit "B")**

Plaintiff also requested the following from Defendant Benton in the Request for Production of Documents:

**Request for Production of Documents No. 2**

Certified copies of any and all insurance policies**, primary and excess** – providing liability coverage for MARK INGLE and/or JOHN C. BENTON D/B/A Q&M MOTOR TRANSPORTS for the subject collision.  The declaration page may be produced while a certified copy is being processed.

Again, on January 23, 2019, Defendant Benton, through their attorney Mr. Morgan Well responded as follows:

**Response TO Request for Production No. 2:**

John Benton objects to this request on the basis that it assumes that an accident occurred, which is denied.  Subject to this objection, he has produced a certified copy of his primary insurance with Defendant's Initial Disclosures in this matter.  He has requested information concerning any excess insurance policies that may provide coverage for plaintiff's claims and will supplement this response upon receipt of this information.

**(See Plaintiff's Exhibit "C")**

Plaintiff also did a Rule 30(b)(6) Deposition of John Benton d/b/a Q & M Motor Transports through their attorney, Mr. Morgan Wells. As part of that 30(b)(6) deposition, the following Exhibits were attached to be answered by the corporate representative.  Defendant John Benton was assigned as the corporate representative.

On **September 30, 2019**, *more than nine months past the original request*, Defendant Benton, through his attorney, Mr. Morgan Wells and his associated, Kristina Fonte, answered the following Exhibits which were to be produced:

21. Each insurance agreement, policy, contract or endorsement arguably covering the truck and trailer involved in the accident of August 9, 2017, even if the vehicles are not specifically designated therein, including MCS-90 and all other endorsements, riders, amendments and application documents referred to therein, and all excess or umbrella liability insurance policies covering BENTON which cover incidents occurring on August 9, 2017.

**Answer:**

John Benton refers plaintiffs to Bates No. NL _ 0001-0070 provided in responses to Northland's Initial Disclosures.

**(See Plaintiff's Exhibit "D").**

Again, Defendant was in litigation in this matter **for more than a year and still did not provide any information nor even state that any information exists on an umbrella policy** when Defendant knew that Plaintiff had made a request to settle this matter for more than the $1 million in policy limits and continued to refer Plaintiff to the Initial Disclosures despite full knowledge that an excess policy of insurance existed.

Finally, on December 13, 2019, more than a year after initially requesting the information from the Defendants, taking the corporate deposition of John Benton and being repeatedly referred to Defendant's Rule 33 disclosures, **after discovery on this matter ended**, Defendant sent a copy of a letter from General Star Insurance Company to their insured that they were denying excess coverage in this matter. **(See Plaintiff's Exhibit "E")**.

It was in the contents of Exhibit "E" that Plaintiff, **officially** learned that Defendant had an excess or umbrella policy with General Star Management Company since May 20, 2017. Defendants have refused to produce any other information other than the letter attached as Exhibit E, despite the outstanding discovery on this matter.

The letter from the excess carrier, General Star Insurance Company to Mr. Benton dated December 13, 2019, discusses that a Loss Notice **was sent on December 3, 2019** by Defendant.

Defendant obviously made this claim in the hopes of bringing in a new party to undermine this Courts not granting continuances in this matter. **However, Defendant intentionally withheld the fact that an excess policy existed when supposedly the claim was made for the first time on December 3, 2019**. It was not until the denial come from Gen Star that Defendant informed Plaintiff of this excess policy.

The letter from General Star Insurance Company also indicated that the policy was written to Defendant on **May 20, 2017**, so defendant knew of its existence from the inception of this litigation and chose to intentionally withhold this evidence. The letter states the policy was written to John Benton d/b/a Q & M Motors who is listed as their insured. Thereafter, General Star Insurance Company claims that they are denying coverage due to **"[T]he Bill of Lading's is ent (sic) and clearly indicates that the agreement was not between John C. Benton dba Q&M Motors and US Auto Logistics, LLC."** Plaintiff was provided a Bill of Lading between Q&M Motors and Hertz Rental Car on the date of the accident. (**See Plaintiff's Exhibit " F"**). There is and has never been an mention of US Auto Logistics, LLC and how they come into this matter. Defendant has refused to disclose the existence of US Auto Logistics, LLC and consequently, Plaintiff is left to speculate on how US Auto Logistics, LLC relates to this matter in any way shape or form.

Because Defendant did not disclose nor even provide a copy of the policy between John Benton d/b/a Q&M Motors and their excess insurer General Star Management Company, Plaintiff is not afforded the opportunity to conduct proper discovery to Defendant Benton, or anyone else associated with Defendant as Plaintiff could have done in the Rule 30(b)(6) deposition had this information been disclosed as is warranted in Rule 33 and 45 discovery of this Honorable court and to challenge the defenses of General Star Management Company.

As a result of Defendant's dilatory "tactics" Defendant Benton, who does not have any corporate protection is in line for an excess judgment and exposure.  It is not known if Northland's defense counsel who also acts as Benton and Ingle's counsel has informed his client of these potential issues which may conflict defense counsel, but the issues are certainly present and real.

Sadly, Plaintiff alleges that Defendants and their counsel knew and have known of the existence of this excess policy from the inception of this lawsuit.   Without question, Defendants have purposely withheld this evidence.   The information contained in the letter from General Star Insurance Company also exposes other companies to which Plaintiff believes Defendant did not disclose out of potential fear that a claim would be made against them as well and these failures to disclose this information through Rule 33 and Rule 45 has placed Defendant in the unenviable position of being sanctioned for their actions.

For instance, if US Auto Logistics, LLC who appears to be a national company, had a contract with Hertz and US Auto Logistics, LLC hired Defendant Benton to perform the task, then a contract or some type of agreement between the two exists.  Undoubtedly, US Auto Logistics, LLC would have been added as a party to this matter and their negligence would have been an issue as well.

Defendant's answers to discovery clearly show that they purposely did not disclose the existence of US Auto Logistics, LLC and any role they have or did play in the performance of this contractual relationship.

Notwithstanding this upcoming discussion and misrepresentations by Defendants in this matter, this Honorable Court is requested to enlarge the time to add the necessary parties to this lawsuit and to sanction Defendant for what will not be a lengthy discovery process of having to take numerous depositions and work on the issues that could have been done before.

2. **Defendant omits any explanation of US Auto Logistics, LLC from any of its answers or discovery responses in deposition**.

. In preparation for the Rule 30(b)(6) deposition of John Benton d/b/a Q&M Transports, on **September 30, 2019**, *more than nine months past the original request*, Defendant Benton, through his attorney, Mr. Morgan Wells and his associate, Kristina Fonte, answered the following Exhibits which were to be produced pursuant to the 30(b)(6) deposition of Defendant John Benton d/b/a Q&M Motors

Number 47. Any and all computer, electronic, or e-mail messages of any type created in the two (2) days priuor to the collision and the first forty-eioght (48) hours immediately after the collision, by and between the defendant and any agents or third parties, as well as any computer message, which relate to this particular incident, whether generated or received by you or your agents. *We require you to put any vendor which hosts or stores this data for you on notice of the need to preserve this data*.

**Answer:**

John Benton is not in possession of any documents responsive to Request No. 47.

**(See attached as Plaintiff's Exhibit "G").**

Had Defendant informed Plaintiff of the existence of US Auto Logistics, LLC, then Plaintiff would have had the opportunity to know and examine in deposition, John Benton regarding any Bill of Lading or contractual relationship that Defendant Benton had with US Auto Logistics, LLC. Consequently, the deposition of Defendant Benton will have to be done again because of Defendant's purposeful withholding of this information that obviously exists in the letter that General Star Insurance Company relied upon to deny coverage. Defendant, instead only provided a Bill of Lading from Hertz to Q&M Motors, attached as Exhibit "F", above, and nothing was mentioned if Defendant Q&M was acting as an agent or employee of US Auto Logistics, LLC. Indeed US Auto Logistics, LLC is not listed as any additional insured on the Defendant Northland Insurance Company's policy of insurance provided in Rule 33 disclosures so their role in this

accident remains unknown. However, at a minimum they must be named as a party along with their insurance carrier. Defendant should be held responsible and sanctioned for their role in failing to disclose yet another piece of important information in this case.

Nevertheless, the misrepresentations and omissions do not end there.

3. **Evidence also comes to light that Defendant John Benton d/b/a Q& M Motors Transport also misrepresented the status and employer of Defendant Mark Ingle**.

In October 2018, Defendant was asked the following Request for Admission.

**Request for Admission No. 6:**

Admit that Mark Ingle was an employee of John C. Benton d/b/a Q & M Motor Transports on August 9, 2017.

On **November 2, 2018**, more than a year ago, Defendant, Benton answered as follows:

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

Admitted.

Furthermore, the written discovery in this matter the following was asked.

**(See Plaintiff's Exhibit "H").**

Written discovery was also propounded on this issue.

**REQUEST FOR PRODUCTION NO. 39**:

Copies of any and all employment contracts and/or service agreements between MARK INGLE and JOHN C. BENTON D/B/A Q & M TRANSPORTS

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39**:

There are no documents responsive to this request

**(See Plaintiff's Exhibit "I").**

Plaintiff relied on these Admissions by Defendant and written responses to discovery. However, recently, it came to light that Defendant had misrepresented yet another fact which would have allowed another company, owned by Defendant Benton to be added to this litigation

with, upon information and belief, a separate policy of insurance that would have provided coverage to the Plaintiffs. Apparently, Defendant Ingle is an employee of Innovative Transport Solution, Inc. This company was not disclosed and unknown to Plaintiff as Defendant failed to disclose Innovative Transport Solution Inc., in any pleadings, discovery or deposition testimony.

According to the pay stubs which were issued to Defendant Mark Ingle, he was being paid on a weekly basis by Innovative Transport Solution, Inc. (**See attached as Plaintiff Exhibit "J"**). The Mississippi Secretary of State website lists John Benton as the President of Innovative Transport Solution, Inc.. (**See attached as Exhibit "K"**). None of this information was nor has ever been disclosed to Plaintiff despite numerous requests and was not stated in the sworn deposition of John Benton which will also be discussed.

As discussed earlier, in preparation for the Rule 30(b)(6) deposition of John Benton d/b/a Q&M Transports, on **September 30, 2019**, *more than nine months past the original request*, Defendant Benton, through his attorney, Mr. Morgan Wells and his associated, Kristina Fonte, answered the following Exhibits which were to be produced pursuant to the 30(b)(6) deposition of Defendant John Benton d/b/a Q&M Motors :

Plaintiff requested the following:

4. The identity of any person who you believe may have knowledge of any and all relevant facts to this litigation and the substance of their knowledge.

**Answer:**

John Benton is not in possession of documents responsive to Request No. 4.

5. The identity of any employees, agents or contractors or the like of BENTON who have knowledge regarding MARK INGLE'S accident on August 9, 2017.

**Answer:**

John Benton is not in possession of documents responsive to Request No. 5.

17. Any and all contracts, agreement, and memoranda of understanding between BENTON and MARK INGLE.

**Answer:**

John Benton is not in possession of documents responsive to Request No. 17.

**(Attached as Plaintiff's Exhibit "L").**

During the deposition of Defendant Benton, the following question was asked.

Q: Was Mr. Ingle acting within the course and scope of his employment Q & M Motor Transport?

A: In doing what.
Q: The course of his employment. Within the course and scope. Like he was doing something underneath Q&M and what you wanted. He was doing a job, he was –
A: He was employed, yeah.
Q; But him dropping off a load, picking up a load, that's within the course of his employment, correct?
A: It is.

**(Deposition of John Benton pages 69-70, attached as Plaintiff's Exhibit "M").**

The sworn deposition testimony of Defendant Benton was, however, in contrast to the Answers in Defendant's earlier Request for Admissions.

**Request for Admission No. 7**:

Admit that at the time of the subject collision Mark Ingle was acting within the course and scope of his employment with John C. Benton d/b/a Q & M Motor Transports.

On or about **November 2, 2018**, Defendant through its attorney Morgan Wells stated:

**Request for Admission NO. 7**:

Q & M cannot admit or deny this request. Mark Ingle advised that he has no personal knowledge of a motor vehicle collision that occurred on August 9, 2017.

**(See attached Plaintiff's Exhibit "N").**

The pattern of deception and games with Rule 45 discovery and Rule 33 disclosures continued however, in the Request for Admission for Mark Ingle.

**Request for Admission No. 3:**

Admit that Mark Ingle was in the course and scope of his employment at the time of the collision on August 9, 2017.

**Response to Request for Admission No. 3**:

Mark Ingle has no knowledge of any collision that occurred on August 9, 2017. Consequently, he cannot admit or deny that he was in the course and scope of his employment at the time of the alleged collision.
**(See Plaintiff's Exhibit "O").**

Without question, if Defendant Ingle was an employee of Innovative Transport Solution, Inc., then he was at a minimum a "borrowed servant" to Q & M Motor Transport. Neither Q & M Motor Transport nor John Benton has Innovative Transport Solution LLC listed as an additional insured on their policy of insurance with Defendant's policy of insurance with Northland Insurance Company.

Thus, if Innovative Transport Solution, Inc., owned solely by Defendant John Benton, has an additional policy of liability insurance in this matter, then Innovative Transport Solution, Inc., is a party to this claim. Defendant, Benton, however, admits on one hand in the Request for Production of Documents that Ingle was his employee with Q & M Transport, yet he pays Ingle through his other company, Innovative Transport Solution, Inc and does not tell Plaintiff *at any point* of this information. It is abundantly clear that Defendant has either misrepresented the status of Defendant Ingle or has co-mingled his employee status to avoid having a claim made against his other company's liability policy. Following this pattern of deception and blatant disregard for fair play and disclosure, Plaintiff presents to this court that this information was purposely absconded and intentionally not disclosed to Plaintiff in a conscious effort to try to deny Plaintiff a proper recovery of available insurance coverage. This pattern screams for sanctions against the Defendants. However, the list of misrepresentations goes further.

### 4. Plaintiff's Request for Sanctions

Plaintiff has painstakingly showed the Defendant's purposeful misrepresentations in this matter. Defendant has ignored any and all professional exchange of information and completely obliterated the meanings of Rule 33 and Rule 45 in disclosures and discovery.   The evidence is clear in every exhibit that Defendant knew of other insurance, including its own excess policy of insurance from the inception of this lawsuit and purposely withheld the information from Plaintiff until after discovery was complete.

Defendant should be sanctioned severely for their actions.  Plaintiff asks that Defendant be forced to pay any and all costs for any adding of parties, depositions, discovery, experts and costs associated with the pursuit of having to add all of the aforementioned parties to this litigation and pursue this matter to a conclusion.

The actions of Defendants in this matter may also conflict between the Defendants as well depending upon who knew what and who made the decisions to withhold such information which also goes to defense counsel as well.

Plaintiff requests that this court hold an expedited consideration on this matter, or at a minimum on the Pre-Trial date of January 8, 2020 to discuss how the court desires to administer the requested sanctions or any other sanctions that this court deems appropriate.

Plaintiff also asks for all other relief, including such relief for the filing of this Motion which includes all attorneys' fees for Defendant's bad faith in this matter.

Finally, Plaintiff asks for the expansions of the pleadings to bring in the aforementioned Defendants and their insurance companies to this action at the expense of Defendant.

Respectfully Submitted,

By: */s/ Vanessa Motta*
**MOTTA LAW FIRM, LLC**
**VANESSA MOTTA,** Bar No. 36915
3632 Canal Street
New Orleans, LA 70119
Telephone: 504-670-9490
Facsimile: 504-513-3122
Email: Vanessa@mottalaw.com
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that copy of the above and foregoing pleading has been served upon counsel for all parties via CM/ECF Filer System, on this 30th day of December, 2019.

*/s/ Vanessa Motta*
VANESSA MOTTA