## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**WAYLAND COLLINS, et al.**                               **CIVIL ACTION**

**VERSUS**                                                **NO. 18-7465**

**JOHN C. BENTON, et al.**                                **SECTION: "G"(5)**

## ORDER AND REASONS

Before the Court is Plaintiffs Wayland Collins, Candy Kelly, and Alvin Polk's (collectively, "Plaintiffs") "Motion to Exclude or Limit the Testimony Under Daubert Standards of Mr. Richard Baratta."[1] In the instant motion, Plaintiffs seek to exclude Dr. Richard Baratta ("Baratta"), a biomechanical engineer, from providing expert testimony at trial.[2] Defendants John C. Benton d/b/a Q & M Motor Transports, Mark Ingle, and Northland Insurance Company (collectively, "Defendants") oppose the motion.[3] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion in part and denies the motion in part.

## I. Background

On August 7, 2018, Plaintiffs filed a complaint against Defendants in this Court, seeking recovery for injuries and property damages that Plaintiffs allegedly sustained in an automobile

---

[1] Rec. Doc. 99.

[2] *See id.*; Rec. Doc. 99-1.

[3] Rec. Doc. 103.

1

accident.[4] According to the Complaint, on August 9, 2017, Plaintiff Wayland Collins was operating a vehicle on Interstate 10 and, while exiting onto Interstate 510, he collided with an 18-wheeler driven by Defendant Mark Ingle.[5] Plaintiffs allege that Defendant Mark Ingle was turning onto Interstate 510 and negligently misjudged his clearance, resulting in the motor-vehicle incident at issue.[6] Plaintiffs further allege that Defendant Mark Ingle was cited for an "improper lane change."[7] Plaintiffs bring a negligence claim against Defendant Mark Ingle and Defendant Q & M Transport, who is allegedly Defendant Mark Ingle's principal under the doctrine of respondeat superior.[8] Plaintiffs also bring claims against Defendant Northland Insurance Company, who purportedly insured the 18-wheeler operated by Defendant Mark Ingle.[9]

On November 13, 2018, the Court issued a scheduling order setting this case for trial on October 21, 2019.[10] On June 11, 2019, approximately 10 months after the filing of the Complaint, all parties jointly moved to continue the October 21, 2019 trial date and the accompanying deadlines because Plaintiffs had recently underwent surgery and were in the process of being treated by several physicians.[11] On June 17, 2019, this Court granted the parties' motion for a continuance because Plaintiffs appeared to not have reached maximum medical recovery at that

---

[4] Rec. Doc. 1 at 3.

[5] *Id.*

[6] *Id.*

[7] *Id.* at 4.

[8] *Id.* at 5.

[9] *Id.*

[10] Rec. Doc. 17.

[11] Rec. Doc. 23.

time.[12] Thereafter, the Court issued a new scheduling order setting this case for trial on January 27, 2020.[13]

On November 26, 2019, Plaintiffs filed the instant motion seeking to exclude Baratta from providing expert testimony at trial.[14] On November 26, 2019, Defendants filed an opposition to the instant motion.[15] On December 30, 2019, Plaintiffs moved to extend the time to amend pleadings in order to add several defendants to this litigation.[16] On January 9, 2020, the Court granted Plaintiffs' motion to extend the time to amend pleadings in order to add several defendants to this litigation. As a result, all deadlines in this matter were continued.[17] The Court issued a new scheduling order setting this case for trial on April 12, 2021.[18]

## II. Parties' Arguments

### A.   *Plaintiffs' Arguments in Support of the Motion*

Plaintiffs make four principal arguments in support of the instant motion.[19] First, Plaintiffs argue that Baratta relies on insufficient facts and data.[20] Plaintiffs contend that Baratta "almost exclusively relied on documentary evidence to prepare his report."[21] Baratta allegedly "reviewed

---

[12] Rec. Doc. 25.

[13] Rec. Doc. 27.

[14] Rec. Doc. 99.

[15] Rec. Doc. 103.

[16] Rec. Doc. 164.

[17] Rec. Doc. 178.

[18] Rec. Doc. 197.

[19] Rec. Doc. 99-1.

[20] *Id.* at 7.

[21] *Id.* at 8.

the [motor-vehicle] crash reports, officer body camera, photographs of the vehicles, medical records, insurance and appraisal records[,] and MRI films of the Plaintiffs."[22] Yet Plaintiffs provide a list of investigative tasks that Baratta did not conduct.[23] These tasks include, but are not limited to, (1) considering each vehicle's speed when the subject collision occurred and (2) interviewing the relevant 18-wheeler driver.[24] In short, Plaintiffs contend that Baratta did not perform any first-hand investigation with respect to the subject collision.[25]

Second, Plaintiffs argue that Baratta's methodology is unreliable.[26] Plaintiffs contend that Baratta's "entire analysis is based on the forces present in a 'sideswipe.'"[27] Plaintiffs represent that Baratta relies on an unreliable study completed in 2001.[28] The 2001 study allegedly concluded that "the compressive forces on the spine present in a sideswipe accident . . . are less than the compressive forces on the spine from sitting and walking."[29] Plaintiffs represent that Baratta relies upon the 2001 study's conclusion in this case to conclude the subject collision "could not have caused any real physical damage to the occupants of the vehicle."[30] Plaintiffs conclude that Baratta's conclusion is "an intellectual leap that strains credibility." [31]

---

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.* at 9.

[26] *Id.*

[27] *Id.*

[28] *Id.* at 9, 11.

[29] *Id.* at 9.

[30] *Id.*

[31] *Id.* In addition, Plaintiffs argue that Baratta ignores "the lateral forces and ignores the position of the Plaintiffs['] bodies upon impact." *Id.* at 14.

Third, Plaintiffs argue that Baratta is not qualified to provide medical causation testimony.[32] Plaintiffs represent that Baratta reached the following conclusions involving medical causation:

1. During the sideswipe, vehicle dynamics would be limited to rocking on the suspension system with a peak lateral occupant acceleration within the range experience during activities of daily living. There would be no measurable longitudinal delta-V as a result of this accident.

2. The dynamics of the accident would contribute to spinal compressive loading well within the range experienced during routine activities of daily living.

3. The mechanisms associated with the structural disc changes were not present in this accident; therefore, disc bulging and herniation of the cervical or lumbar regions would not be consistent with the dynamics of the Nissan in the subject accident.[33]

Plaintiffs maintain that the conclusions quoted above exit the biomechanical engineering field and enter the medical field.[34] Plaintiffs cite and explain multiple district court opinions stating that biomechanical engineers cannot provide medical causation testimony.[35] Plaintiffs note that another judge in the Eastern District of Louisiana recently excluded Baratta from providing medical causation testimony.[36] For these reasons, Plaintiffs conclude that Baratta "must be precluded from offering any testimony that discusses injuries caused by Plaintiff[s], any testimony or opinion as to the medical causation of [Plaintiffs'] injuries, or any medical reference in general."[37]

---

[32] *Id.* at 7, 11.

[33] *Id.* at 7. Plaintiffs list several other conclusions or statements that supposedly exit the biomechanical engineering field and enter the medical field. *See, e.g.*, Rec. Doc. 99-1 at 10–11. Furthermore, Plaintiffs represent that Baratta's testimony is in direct contrast to Defendants' own IME physician, Dr. Everett Robert, who is an expert Neurosurgeon. *Id.* at 13.

[34] *Id.* at 14. Plaintiffs also note that Baratta is neither a medical doctor nor licensed to practice medicine in any state. *Id.* at 15.

[35] *Id.* at 16–23.

[36] *Id.* at 19.

[37] *Id.* at 17–18. Plaintiffs also state that Baratta has been excluded in other jurisdictions because his

Finally, Plaintiffs argue that Baratta's testimony will not assist the jury in this matter.[38] Plaintiffs maintain that Baratta's testimony will merely confuse the jury because this case entails only a simple motor-vehicle collision.[39]

## B.     *Defendants' Arguments in Opposition to the Motion*

Defendants make three principal arguments in opposition to the instant motion.[40] First, Defendants argue that Baratta is qualified to provide the opinions in his expert report.[41] Defendants contend that Baratta is a "qualified expert in the fields of traffic accident reconstruction and biomedical engineering with an emphasis in the biomechanics of human injury."[42]

In support, Defendants first point to Baratta's academic achievements.[43] Defendants state that Baratta obtained a B.S. and M.S. in biomedical engineering from Tulane University.[44] Defendants additionally state that Baratta is "a Certified Accident Reconstructionist [], a Bosch Certified Crash Data Retrieval Technician and Analyst, and a Registered Professional Engineer in eleven [] states, including Louisiana."[45] Defendants note that Baratta has authored or co-authored 100 scientific journal articles and more than 150 additional publications in "various

---

education and experience do not qualify him to give opinion testimony on medical causation. *Id.* at 23.

[38] *Id.* at 24.

[39] *See id.* at 26.

[40] Rec. Doc. 103.

[41] *Id.* at 5.

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] *Id.*

book chapters, proceedings, and transactions."[46]

Defendants subsequently point to Baratta's work experience as a biomechanical engineer.[47] He worked in the "Bioengineering Laboratory" at the Louisiana State University School of Medicine from 1988 to 2004.[48] Baratta joined Rimkus Consulting Group in 2005 to work as a "consultant in Accident Reconstruction and Injury Biomechanics."[49] There, he applies his "knowledge of physics . . . to help others understand the mechanical behavior of tissues when exposed to external forces as would occur in a vehicle accident."[50] He has "offered expert witness testimony regarding accident reconstruction and injury causation in more than one hundred trials in [his] career."[51] Defendants conclude that the purported facts enumerated above demonstrate that Baratta is qualified to testify as an expert biomechanical engineer.[52]

Second, Defendants argue that Baratta's methodology is reliable for the following reasons.[53] He conducted a "biomechanical analysis of the accident in question, in which he calculated the forces and accelerations exerted on the plaintiffs' bodies in the subject collision and compared those forces to the forces that are experienced in everyday activities."[54] Baratta deemed the subject accident a sideswipe collision—which resulted in "limited rocking on the

---

[46] Id.

[47] Id.

[48] Id. at 5–6.

[49] Id. at 6.

[50] Id.

[51] Id. (internal citation and quotation marks omitted).

[52] Id. at 7.

[53] Id.

[54] Id.

suspension system of plaintiffs' vehicle."[55]  Baratta stated that the impact force to Plaintiffs' spines during the subject collision was less than the impact to one's spine when "plopping into an office chair, bending over, running, or lifting a small child."[56] He then concluded that "any structural damage or aggravation to the condition of plaintiffs' spines was unlikely a result of the subject accident."[57]

Baratta cited approximately 40 biomechanical studies—related to human motion and injury mechanisms—to reach the conclusions in his expert report.[58] Those 40 studies form the basis of Baratta's methodologies, data, calculations, and injury mechanisms within his analysis.[59] His methodologies are "peer-reviewed, repeatable, well-accepted and established within the field of biomechanics."[60] Defendants point to multiple district court opinions finding that Baratta's methodologies are reliable under Rule 702.[61] Pointing to the purported facts listed above, Defendants conclude that Baratta's methodologies are reliable.[62]

Finally, Defendants argue that Baratta's testimony is not medical causation testimony.[63] Defendants contend that Baratta "relied upon the medical findings and diagnoses provided by

---

[55] *Id.* at 8.

[56] *Id.* at 9.

[57] *Id.*

[58] *Id.* at 8.

[59] *Id.* at 9.

[60] *Id.* at 10.

[61] *Id.* at 13–15.

[62] *Id.* at 11.

[63] *Id.* at 12.

[Plaintiffs'] treating physicians as the starting point of [his] biomechanics analysis."[64]

## III. Legal Standard

The district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702.[65] Rule 702 states that a witness "qualified as an expert by knowledge, skill, experience, training or education," may provide expert testimony when "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."[66] For the testimony to be admissible, Rule 702 establishes the following requirements:

(1) the testimony must be based upon sufficient facts or data,

(2) the testimony must be the product of reliable principles and methods, and

(3) the expert must reliably apply the principles and methods to the facts of the case.[67]

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that Rule 702 requires the district court to act as a "gatekeeper" to ensure that "any and all scientific evidence admitted is not only relevant, but reliable."[68] The court's gatekeeping function mostly involves a two-part inquiry.

First, the Court must determine whether the expert testimony is reliable—which requires

---

[64] *Id.* Defendants also argue that "recent rulings and jurisprudential trends support the admission of biomechanical engineer testimony because it is relevant and will assist the jury." *Id.* at 15. Defendants note that Louisiana's state courts have allowed biomechanical testimony. *Id.* Defendants also note that another district judge in the Eastern District of Louisiana recently allowed force of impact testimony. *Id.* at 17.

[65] *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000).

[66] Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

[67] Fed. R. Evid. 702.

[68] *Daubert*, 509 U.S. at 589; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (clarifying that the court's gatekeeping function applies to all forms of expert testimony).

an assessment of whether the expert testimony's underlying reasoning or methodology is valid.[69]

The court's inquiry into the reliability of expert testimony is flexible and fact-specific.[70] The aim

is to exclude expert testimony based merely on subjective belief or unsupported speculation.[71]

Second, the court must determine whether the expert's reasoning or methodology "fits" the facts

of the case and whether it will assist the trier of fact in understanding the evidence.[72] The second

inquiry primarily analyzes whether the expert testimony is relevant.[73]

Yet a court's role as a gatekeeper does not replace the traditional adversary system.[74] A

"review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception

rather than the rule."[75] "Vigorous cross-examination, presentation of contrary evidence, and

careful instruction on the burden of proof are the traditional and appropriate means of attacking

shaky but admissible evidence."[76] "As a general rule, questions relating to the bases and sources

---

[69] *See Daubert*, 509 U.S. at 589. The party offering the testimony has the burden to establish reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994)).

[70] *Seatrax*, 200 F.3d at 372. Furthermore, in *Daubert*, the Court identified a number of factors that are useful in analyzing reliability of an expert's testimony: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) any evaluation of known rates of error; (4) whether standards and controls exist and have been maintained with respect to the technique; and (5) general acceptance within the scientific community. *See Daubert*, 509 U.S. at 592–94. In *Kumho Tire Co. v. Carmichael*, the Supreme Court emphasized that the test of reliability is "flexible" and that Daubert's list of specific factors does not necessarily nor exclusively apply to every expert in every case. *Kumho Tire*, 526 U.S. at 142. The overarching goal "is to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.

[71] *See Daubert*, 509 U.S. at 590.

[72] *See Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.

[73] *See Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.

[74] *See Daubert*, 509 U.S. at 596.

[75] Fed. R. Evid. 702 advisory committee's note, "2000 Amendments."

[76] *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility."[77]

## IV. Analysis

### A.   *Whether Baratta is a Qualified Expert*

Plaintiffs do not appear to argue that Baratta is unqualified to testify as an expert biomechanical engineer.[78] Nor could Plaintiffs seriously contend that Baratta is unqualified to do so.

An expert "need only possess a higher degree of knowledge, skill, experience, training, or education than an ordinary person in the subject matter of [his or her] testimony."[79] Baratta obtained a B.S., M.S., and Ph.D. in biomedical engineering from Tulane University.[80] From 1984 to 2004, Baratta worked in the bioengineering laboratory at the Louisiana State University School of Medicine.[81] He served as a faculty member at that university for approximately sixteen years.[82] Baratta has authored or co-authored 100 scientific journal articles in the biomedical engineering field.[83]

Baratta eventually left the Louisiana State University School of Medicine to join "Rimkus Consulting Group" as a consultant in accident reconstruction and injury biomechanics.[84] He is a

---

[77] *Id.* (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

[78] *See* Rec. Doc. 99-1 at 17 ("Mr. Baratta may be qualified to give his opinion regarding the amount of force he believes was generated by the accident and the observed effect of such force on a hypothetical human body in a comparable accident. . . .").

[79] *See, e.g.*, *Thomas v. Chambers*, No. CV 18-4373, 2019 WL 8888169, at *12 (E.D. La. Apr. 26, 2019) (Vance, J.)

[80] Rec. Doc. 103-3 at 112.

[81] Rec. Doc. 103-4 at 1.

[82] Rec. Doc. 103-3 at 112.

[83] *Id.* at 113.

[84] Rec. Doc. 103-4 at 2.

fully accredited "Traffic Accident Reconstructionist" and "a registered Professional Engineer in the State of Louisiana."[85] Baratta is "regularly called to assist triers of fact and other interested parties with answering questions regarding the speeds, accelerations, and forces present within accidental events, the biomechanics and mechanisms involved in damaging human tissue (i.e. injury) and injury consistency."[86] He has "offered expert witness testimony regarding accident reconstruction and injury causation in more than one hundred trials in [his] career."[87] For these reasons, the Court easily finds that Baratta is qualified to testify as an expert biomechanical engineer.[88]

Multiple federal courts have determined that biomechanical engineering experts are qualified to provide expert opinions on "what injury causation forces are in general" and "how a hypothetical person's body will respond to those forces."[89] On the other hand, multiple federal courts routinely find that biomechanical engineers are "not qualified to render medical opinions regarding the precise cause of a specific injury."[90] This Court likewise finds that a biomechanical engineer is not qualified to provide medical causation testimony. As several federal courts have

---

[85] *Id.*

[86] *Id.*

[87] *Id.*

[88] *See Thomas v. Chambers*, No. CV 18-4373, 2019 WL 1670745, at *3 (E.D. La. Apr. 17, 2019) (Vance, J.); *see also Burgo v. Davis*, No. 15-2430, 2016 WL 3257589, at *1, 3-4 (E.D. La. June 14, 2016) (Zainey, J.) (allowing testimony involving accident reconstruction from an expert registered with the "Accreditation Commission for Traffic Accident Reconstruction"). Baratta is a fully accredited Traffic Accident Reconstructionist and is "registered with the Accreditation Commission for Traffic Accident Reconstruction." Rec. Doc. 103-4 at 1.

[89] *Thomas*, 2019 WL 1670745, at *4; *see also Collett v. GEICO Cas. Co.*, No. 16-15908, 2017 WL 4553525, at *1 (E.D. La. Oct. 11, 2017) (Zainey, J.); *Baxter v. Anderson*, No. CV 16-142-JWD-RLB, 2017 WL 8944175, at *4 (M.D. La. Oct. 4, 2017) (DeGravelles, J.)

[90] *See Thomas*, 2019 WL 1670745, at *4; *Collett*, 2017 WL 4553525 at *1; *Baxter v. Anderson*, 2017 WL 8944175, at *4.

explained, medical causation testimony is reserved for certified medical doctors.[91]

Here, Baratta's expertise is limited to the biomechanical engineering field.[92] He did not obtain a medical degree.[93] Nor did he receive a certification in any medical specialty.[94] Therefore, Baratta may testify only as to "the amount of force he believes was generated by the [subject collision] and the observed effect of such force on a *hypothetical* human body in a *comparable* accident."[95] Baratta may not testify as to whether the amount of force in the subject collision in fact caused Plaintiffs' injuries.[96]

### B.    *Whether Baratta's Expert Testimony is Reliable*

First, Plaintiffs argue that Baratta's expert report relies on insufficient facts and data.[97] Plaintiffs contend that Baratta "almost exclusively relied on documentary evidence to prepare his report."[98] Put another way, Plaintiffs contend that Baratta did not conduct any first-hand investigation.[99]

This Court notes that Baratta reviewed the following facts and data when forming his expert

---

[91] *See Thomas*, 2019 WL 1670745, at *4; *Collett*, 2017 WL 4553525 at *1; *Baxter v. Anderson*, 2017 WL 8944175, at *4.

[92] Rec. Doc. 103-3 at 112.

[93] *Id.*

[94] *Id.*

[95] *Thomas*, 2019 WL 1670745, at *4 (emphasis added).

[96] The Court notes that certain statements in Baratta's expert report appear to drift into medical causation testimony. Plaintiff may raise specific objections at trial. The Court guides the party with the principle explained above—Baratta may testify only as to "the amount of force he believes was generated by the [subject collision] and the observed effect of such force on a *hypothetical* human body in a *comparable* accident." *Thomas*, 2019 WL 1670745, at *4 (emphasis added).

[97] Rec. Doc. 99-1 at 7.

[98] *Id.* at 8.

[99] *Id.* at 9.

opinion: (1) the instant motor-vehicle crash report, (2) more than 80 photographs of the vehicles in the subject collision, (3) index dimensional data for both vehicles, (4) the deposition transcript of Plaintiff Wayland Collins, (5) the deposition transcript of Plaintiff Candy Kelly, (6) medical records for all Plaintiffs, (7) repair estimates for Plaintiffs' vehicle, (8) body camera footage from the responding officer at the motor-vehicle accident scene, and (9) various other documents.[100] In addition, Baratta directed his associate to personally inspect the vehicle that Plaintiffs operated during the subject collision.[101] The associate personally viewed Plaintiffs' vehicle and photographed certain components to assist Baratta in forming his expert opinion.[102]

District court judges in the Eastern District of Louisiana have held that a biomechanical engineer relies on "sufficient facts and data" even when the expert neither personally reviews the crashed vehicle nor visits the accident scene.[103] This Court also finds that Baratta relied on sufficient facts and data when he considered (1) the documents listed above and (2) his associate's in-person review of Plaintiffs' vehicle.[104] Plaintiffs' arguments—that Baratta did not perform an extensive first-hand investigation—only "affect the weight to be assigned [Baratta's] opinion

---

[100] Rec. Doc. 103-3 at 18.

[101] *Id.*

[102] *Id.*

[103] *Thomas*, 2019 WL 1670745, at *4; *see also* Burgo, 2016 WL 3257589, at *1, 4 (stating that an accident reconstruction expert's opinion is reliable when he relied upon photographic evidence of the accident but did not personally inspect the vehicles). Moreover, district court judges outside of the Eastern District Louisiana have held that a biomechanical engineer's testimony is reliable when the expert either fails to directly review the crashed vehicle or fails to visit the accident scene. *See, e.g., Shaw v. United Airlines, Inc.*, No. CV H-17-267, 2018 WL 4362092, at *3 (S.D. Tex. Sept. 13, 2018) (Miller, J.); *Herrera v. Werner Enterprises, Inc.*, No. SA-14-CV-385-XR, 2015 WL 12670443, at *4 (W.D. Tex. Sept. 28, 2015) (Rodriguez, J.).

[104] Baratta did not personally review the accident scene, but he sent his associate to review the Plaintiffs' vehicle—albeit after that vehicle was repaired. Baratta sending his associate to review Plaintiffs' vehicle is more encompassing than the sufficient facts and data in *Thomas* and *Burgo. See Thomas*, 2019 WL 1670745, at *4; *Burgo*, 2016 WL 3257589, at *1, 4.

rather than its admissibility and should be left for the jury's consideration."[105]

Second, Plaintiffs argue that Baratta's methodology is unreliable.[106] Plaintiffs contend that Baratta's "entire analysis is based on the forces present in a 'sideswipe.'"[107] Plaintiffs represent that Baratta relies on an unreliable study completed in 2001.[108] The 2001 study allegedly concluded that "the compressive forces on the spine present in a sideswipe accident . . . are less than the compressive forces on the spine from sitting and walking."[109] Plaintiffs represent that Baratta relies upon the 2001 study's conclusion in this case to conclude the subject collision "could not have caused any real physical damage to the occupants of the vehicle."[110] Plaintiffs contend that Baratta's conclusion is "an intellectual leap that strains credibility."[111]

In Baratta's expert report, he cites approximately 40 peer-reviewed biomechanical studies related to human motion and injury mechanisms.[112] The 40 studies form the basis of Baratta's methodologies, data, calculations, and analyses.[113] Baratta conducts both an "injury causation analysis" and a "traffic accident reconstruction" with the available facts and evidence.[114] These analyses employed "established and undisputed principles of Newtonian physics, dynamics,

---

[105] *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996).

[106] Rec. Doc. 99-1 at 9.

[107] *Id.*

[108] *Id.* at 9, 11.

[109] *Id.* at 9.

[110] *Id.*

[111] *Id.* In addition, Plaintiffs argue that Baratta ignores "the lateral forces and ignores the position of the Plaintiffs['] bodies upon impact." *Id.* at 14.

[112] Rec. Doc. 103-3 at 19–22.

[113] Rec. Doc. 103-4 at 3.

[114] *Id.*

mechanics, materials science, tissue mechanics, anatomy, and physiology."[115] Baratta received "formal educational training to the Ph.D. level" in those established and undisputed principles.[116]

With respect to Baratta's injury consistency analysis, his employed methodologies are "peer-reviewed, repeatable, well-accepted and established within the field of biomechanics."[117] His methodologies have received support by the American Medical Association.[118] Next, with respect to his traffic accident reconstruction, his practices and principles conformed to "common, established, repeatable, and widely-accepted practices within the field of traffic accident reconstruction."[119] These practices and principles are based on "the undisputed laws of Newtonian physics and engineering mechanics."[120]

To summarize, Baratta's methodologies are generally accepted in the scientific community.[121] He relied on approximately 40 peer-reviewed studies to reach the conclusions in his expert report.[122] He employed "established and undisputed principles of Newtonian physics, dynamics, mechanics, materials science, tissue mechanics, anatomy, and physiology."[123] Several federal district court judges—including multiple district court judges in the Eastern District of

---

[115] *Id.*

[116] *Id.*

[117] *Id.*

[118] *Id.*

[119] *Id.* at 3–4.

[120] *Id.*

[121] *Id.*

[122] *Id.* at 3.

[123] *Id.*

Louisiana—have deemed Baratta's methodologies to be reliable.[124] This Court likewise finds that Baratta's methodologies are reliable under Rule 702.

Finally, Plaintiffs' concerns that Baratta's methodologies and conclusion in part hinge on a purportedly unreliable 2001 study "affect the weight to be assigned [Baratta's] opinion rather than its admissibility and should be left for the jury's consideration."[125] Plaintiffs may raise their concerns with Baratta's sources at trial. The jury will decide how much weight to give Baratta's expert testimony.

**C.     *Whether Baratta's Expert Testimony Will Help Assist the Trier of Fact***

Plaintiffs argue that Baratta's testimony will not assist the jury as required under Rule 702.[126] Plaintiffs contend that Baratta's testimony will merely confuse the jury because this case entails a simple motor-vehicle collision.[127] Rule 702 requires this Court to determine whether Baratta's expert testimony will assist the trier of fact in understanding the evidence.[128] That inquiry primarily analyzes whether the expert testimony is relevant.[129]

For the reasons discussed above, Baratta may not testify as to whether the subject collision in fact caused Plaintiffs' injuries because he is not a medical expert. Yet Baratta's opinions on (1) the force of impact experienced by Plaintiffs and (2) how a hypothetical human body usually

---

[124] *Wright v. Selective Ins.*, No. CV 15-3544, 2016 WL 11083337, at *5 (E.D. La. Oct. 4, 2016) (Fallon, J.); *Shaw*, 2018 WL 4362092, at *3; *Herrera*, 2015 WL 12670443, at *4.

[125] *14.38 Acres of Land*, 80 F.3d at 1077. The quoted principle also applies to Plaintiffs' argument that Baratta ignores "the lateral forces and ignores the position of the Plaintiffs['] bodies upon impact." Rec. Doc. 99-1 at 14.

[126] *Id.* at 24.

[127] *Id.* at 26.

[128] *See Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.

[129] *See Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.

responds to such force will assist the jury in evaluating whether the subject collision caused Plaintiffs' purported injuries and, if so, the extent of Plaintiffs' damages.[130] Accordingly, Baratta's expert testimony will assist the jury and thus is admissible under Rule 702.

### V. Conclusion

Considering the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiffs Wayland Collins, Candy Kelly, and Alvin Polk's "Motion to Exclude or Limit the Testimony Under Daubert Standards of Mr. Richard Baratta"[131] is **GRANTED** to the extent it requests that Dr. Richard Baratta be excluded from offering any medical causation testimony at trial. It is **DENIED** in all other respects.

**NEW ORLEANS, LOUISIANA,** this __2nd__ day of July, 2020.

_Nannette Jolivette Brown_
_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[130] *See Thomas*, 2019 WL 1670745, at *4.

[131] Rec. Doc. 99.