# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**WAYLAND COLLINS, et al.**                                    **CIVIL ACTION**

**VERSUS**                                                            **NO. 18-7465**

**JOHN C. BENTON, et al.**                                     **SECTION: "G"(5)**


## ORDER AND REASONS

Before the Court is Plaintiffs Wayland Collins, Candy Kelly, and Alvin Polk's (collectively, "Plaintiffs") "Motion in Limine and Daubert Motion [to] Exclude Nancy Frasier Michalski's Testimony or Limit her Testimony at Trial."[1] In the instant motion, Plaintiffs seek to exclude Nancy Michalski ("Michalski"), a medical bill auditor, from providing expert testimony regarding the reasonable value of Plaintiffs' medical services.[2] Defendants John C. Benton d/b/a Q & M Motor Transports, Mark Ingle, and Northland Insurance Company (collectively, "Defendants") oppose the motion.[3] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion.

## I. Background

On August 7, 2018, Plaintiffs filed a complaint against Defendants in this Court, seeking recovery for injuries and property damages that Plaintiffs allegedly sustained in an automobile

---

[1] Rec. Doc. 81.

[2] *See id.*

[3] Rec. Doc. 105.

1

accident.[4] According to the Complaint, on August 9, 2017, Plaintiff Wayland Collins was operating a vehicle on Interstate 10 and, while exiting onto Interstate 510, he collided with an 18-wheeler driven by Defendant Mark Ingle.[5] Plaintiffs allege that Defendant Mark Ingle was turning onto Interstate 510 and negligently misjudged his clearance, resulting in the motor-vehicle collision at issue.[6] Plaintiffs further allege that Defendant Mark Ingle was cited for an "improper lane change."[7] Plaintiffs bring a negligence claim against Defendant Mark Ingle and Defendant Q & M Transport, who is allegedly Defendant Mark Ingle's principal under the doctrine of respondeat superior.[8] Plaintiffs also bring claims against Defendant Northland Insurance Company, who purportedly insured the 18-wheeler operated by Defendant Mark Ingle.[9]

On November 13, 2018, the Court issued a scheduling order setting this case for trial on October 21, 2019.[10] On June 11, 2019, approximately 10 months after the filing of the Complaint, all parties jointly moved to continue the October 21, 2019 trial date and the accompanying deadlines because Plaintiffs had recently underwent surgery and were in the process of being treated by several physicians.[11] On June 17, 2019, this Court granted the parties' motion for a continuance because Plaintiffs appeared to not have reached maximum medical recovery at that

---

[4] Rec. Doc. 1 at 3.

[5] *Id.*

[6] *Id.*

[7] *Id.* at 4.

[8] *Id.* at 5.

[9] *Id.*

[10] Rec. Doc. 17.

[11] Rec. Doc. 23.

time.[12] Thereafter, the Court issued a new scheduling order setting this case for trial on January 27, 2020.[13]

On November 19, 2019, Plaintiffs filed the instant motion seeking to exclude Michalski from providing expert testimony at trial.[14] On November 26, 2019, Defendants filed an opposition to the instant motion.[15] On December 30, 2019, Plaintiffs moved to extend the time to amend pleadings in order to add several defendants to this litigation.[16] On January 9, 2020, the Court granted Plaintiffs' motion to extend the time to amend pleadings in order to add several defendants to this litigation. As a result, all deadlines in this matter were continued.[17] The Court issued a new scheduling order setting this case for trial on April 12, 2021.[18]

## II. Parties' Arguments

### A.   *Plaintiffs' Arguments in Support of the Motion*

Plaintiffs make three principal arguments in support of the instant motion to exclude Michalski's testimony.[19] First, Plaintiffs argue that Michalski's testimony—concerning whether Plaintiffs' medical bills are reasonable—is irrelevant for the trier of fact.[20] Plaintiffs state that "in the absence of bad faith, it is error for the trier of fact to fail to award the full amount of medical

---

[12] Rec. Doc. 25.

[13] Rec. Doc. 27.

[14] Rec. Doc. 81.

[15] Rec. Doc. 101.

[16] Rec. Doc. 164.

[17] Rec. Doc. 178.

[18] Rec. Doc. 197.

[19] Rec. Doc. 81-1.

[20] *Id.* at 3.

3

expenses that are proven by a preponderance of the evidence."[21] Plaintiffs contend that Michalski has no basis for giving opinions on the reasonable value of medical bills unless she is opining that such medical bills were incurred in bad faith.[22] Because Michalski will not provide any testimony concerning medical expenses incurred in bad faith, Plaintiffs conclude that her testimony is irrelevant and will only confuse the jury.[23]

Second, Plaintiffs argue that Michalski's methodology is not reliable.[24] Plaintiffs contend that Michalski relies on the Physicians Fee Reference data and other aggregates that "compile discounts and write-offs without conducting thorough geographic surveys to see what is actually reasonable in this medical market for privately-owned surgery centers . . . ."[25] Moreover, Plaintiffs argue that Michalski's report erroneously: (1) uses only reimbursement rates; (2) does not opine on reasonable costs but instead merely averages the typical reimbursement; and (3) does not include a geographical survey to see what other physicians charge for their services.[26] In addition to the alleged deficiencies above, Michalski's report also supposedly fails to offer any conclusions.[27]

---

[21] *Id.* at 4 (quoting *Antippas v. Nola Hotel Grp.*, LLC, 2017-0798 (La. App. 4 Cir. 2/27/19), 265 So. 3d 1212, 1218).

[22] *Id.*

[23] *Id.* Plaintiffs also repeat an argument from their omnibus motion in limine. *Id.* at 5. The repetitive argument states that Louisiana's collateral source rule allows Plaintiffs to present the full value of their medical bills at trial because they remain legally responsible for paying the full value to Medport. *Id.* Plaintiffs also argue that Defendants should not be permitted to present Michalski's testimony because it would entail an impermissible attempt to circumvent Louisiana's collateral source rule. *Id.* at 8. The Court has considered these arguments.

[24] *Id.* at 11.

[25] *Id.*

[26] *Id.* Plaintiff also contends that Michalski "fails to explain any of the principles underlying her methodology and fails to provide any facts or date that she relies on in her reports." *Id.* at 12.

[27] *Id.*

4

Finally, if the Court permits Michalski to testify at trial, Plaintiffs request that the Court exclude Michalski from mentioning Medicaid or Medicare write-offs, medical discounts, private health insurance, and any other type of collateral source.[28] Plaintiffs maintain that this limitation is appropriate because Defendants cannot legally argue that Plaintiffs' medical bills are unreasonable by noting healthcare providers often accept discounted payments.[29]

## B.  Defendants' Arguments in Opposition to the Motion

Defendants make four principal arguments in opposition to the instant motion.[30] First, Defendants argue that they may contest whether Plaintiffs' medical bills are reasonable.[31] Defendants contend that Plaintiffs may recover "reasonable and customary" charges under Louisiana law.[32] For that reason, Defendants contend that they "must be allowed to present contradictory evidence at trial regarding the reasonable and customary value of the medical expenses."[33]

Second, Defendants argue that Michalski has the requisite knowledge, skill, and experience to opine on whether Plaintiffs' medical bills are reasonable.[34] Defendants contend that Michalski has more than 30 years of experience "in the health care profession and, in particular, in the billing, collection[,] and pricing areas."[35] Defendants point out that from 1984 to 2001, Michalski

---

[28] *Id.*

[29] *Id.*

[30] Rec. Doc. 101.

[31] *Id.* at 4.

[32] *Id.*

[33] *Id.* at 5.

[34] *Id.*

[35] *Id.* at 7.

directed the medical billing department of an outpatient surgical medical unit.[36] There, Michalski established medical charges, negotiated third-party payer contracts, and took responsibility over medical billing and collections for approximately 2,000 surgeries and 5,000 patients per year.[37] Michalski subsequently founded Elevate Services, Inc., a company that allegedly "provides medical record reviews, medical bill audits, and life care plans to corporate legal departments and law firms."[38] Finally, since 2000, Michalski allegedly has qualified and testified as an expert medical bill auditor in court on 89 occasions and 430 times in depositions.[39]

Third, Defendants argue that Michalski's methodology is reliable.[40] Defendants represent that Michalski used the "Physicians Fee Reference and Optum databases" and "over 20 other sources" when forming her opinion.[41] Defendants explain that the Physicians Fee Reference provides a dollar amount "for the usual and customary fees charged for a procedure in [a] specific geographic area."[42] The Physicians Fee Reference is supposedly "relied on industry wide by healthcare providers (doctors, clinics and hospitals), [and] insurance payors . . . ."[43] Defendants contend that Michalski used the 75th percentile of the Physicians Fee Reference to establish the

---

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id*

[40] *Id.* at 8. Defendants also contend that Plaintiffs "make a number of inaccurate, unsupported assertions to attack [] Michalski's methodology." *Id.*

[41] *Id.*

[42] *Id.* at 9.

[43] *Id.* at 8–9.

customary fees for medical bills in this case.[44]

Defendants represent that Michalski's methodology was "peer-reviewed by Gerard Anderson, Ph.D."—a "faculty member at John Hopkins University and a Professor of Health Policy and Management."[45] He allegedly attests that Michalski's methodology reliably analyzes the reasonable market value of medical services.[46] On these grounds, Defendants conclude that Michalski's methodology is reliable.[47]

Finally, Defendants argue that the collateral source rule is inapplicable and does not preclude expert testimony concerning the reasonable value of medical services.[48] Defendants contend that "the collateral source rule is used when the amounts actually charged by the medical providers are reduced 'because of monies received by the plaintiff from sources independent of the tortfeasor's procuration or contribution.'"[49] Yet, according to Defendants, "the collateral source rule is not used to examine [whether] amounts actually charged by medical providers . . . are 'reasonable and customary' charges."[50]

Defendants maintain that Michalski will not testify that any medical expenses were

---

[44] *Id.* at 9.

[45] *Id.* at 10. Defendants also point out that Judge Vance recently deemed Marilyn Pacheco, a medical billing expert employed by Elevate Services, as "qualified to render her opinions, employed a reliable methodology, and that her opinions were relevant to impeach the credibility of plaintiffs' treating physicians at trial." *Id.* at 10–11.

[46] *Id.* at 10.

[47] *Id.* at 11.

[48] *Id.*

[49] *Id.* (internal citation omitted). Defendants also repeat arguments from their opposition to Plaintiffs' omnibus motion in limine. *Id.* at 14. Such arguments need not be summarized again. The Court has considered these arguments.

[50] *Id.* at 11.

adjusted, discounted, or written-off because of a collateral source.[51] She will instead testify about the usual and customary value of the medical services provided to Plaintiffs.[52] Defendants conclude that "[a]pplication of the collateral source rule to exclude [] Michalski's testimony would swell the collateral source rule far past the boundaries established by Louisiana law."[53]

### III. Legal Standard

The district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702.[54] Rule 702 states that a witness "qualified as an expert by knowledge, skill, experience, training, or education" may provide expert testimony when "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."[55] For the testimony to be admissible, Rule 702 establishes the following requirements:

(1) the testimony must be based upon sufficient facts or data,

(2) the testimony must be the product of reliable principles and methods, and

(3) the expert must reliably apply the principles and methods to the facts of the case.[56]

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that Rule 702 requires the district court to act as a "gatekeeper" to ensure that "any and all scientific evidence admitted is not only relevant, but reliable."[57] The court's gatekeeping function involves a two-

---

[51] *Id.* at 12.

[52] *Id.*

[53] *Id.*

[54] *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000).

[55] Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

[56] Fed. R. Evid. 702.

[57] *Daubert*, 509 U.S. at 589; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (clarifying that

part inquiry.

First, the Court must determine whether the expert testimony is reliable—which requires an assessment of whether the expert testimony's underlying reasoning or methodology is valid.[58] The court's inquiry into the reliability of expert testimony is flexible and fact-specific.[59] The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation.[60] Second, the court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will assist the trier of fact in understanding the evidence.[61] The second inquiry primarily analyzes whether the expert testimony is relevant.[62]

Yet a court's role as a gatekeeper does not replace the traditional adversary system.[63] A "review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule."[64] "Vigorous cross-examination, presentation of contrary evidence, and

---

the court's gatekeeping function applies to all forms of expert testimony).

[58] *See Daubert*, 509 U.S. at 589. The party offering the testimony has the burden to establish reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994)).

[59] *Seatrax*, 200 F.3d at 372. Furthermore, in *Daubert*, the Court identified a number of factors that are useful in analyzing reliability of an expert's testimony: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) any evaluation of known rates of error; (4) whether standards and controls exist and have been maintained with respect to the technique; and (5) general acceptance within the scientific community. *See Daubert*, 509 U.S. at 592–94. In *Kumho Tire Co. v. Carmichael*, the Supreme Court emphasized that the test of reliability is "flexible" and that Daubert's list of specific factors does not necessarily nor exclusively apply to every expert in every case. *Kumho Tire*, 526 U.S. at 142. The overarching goal "is to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.

[60] *See Daubert*, 509 U.S. at 590.

[61] *See Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.

[62] *See Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.

[63] *See Daubert*, 509 U.S. at 596.

[64] Fed. R. Evid. 702 advisory committee's note, "2000 Amendments."

9

careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[65] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility."[66]

## IV. Analysis

### A.   *Whether Michalski is a Qualified Expert*

Plaintiffs do not appear to argue that Michalski is unqualified to testify as a medical billing auditor.[67] Nor could Plaintiffs seriously contend that Michalski is unqualified to do so.

An expert "need only possess a higher degree of knowledge, skill, experience, training, or education than an ordinary person in the subject matter of her testimony."[68] Michalski is a certified legal nurse consultant with more than 30 years of experience "in the health care profession and, in particular, in the billing, collection[,] and pricing areas."[69] She previously directed the medical billing department of an outpatient surgical medical unit.[70] There, she established medical charges, negotiated third-party payer contracts, and took responsibility over the medical billing and collections for approximately 2,000 surgeries and 5,000 patients per

---

[65] *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

[66] *Id.* (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

[67] *See generally* Rec. Doc. 81-1.

[68] *Thomas v. Chambers*, No. CV 18-4373, 2019 WL 8888169, at *12 (E.D. La. Apr. 26, 2019) (Vance, J.); *see also Taylor v. Diamond Offshore Drilling, Inc.*, No. 06-5318, 2009 WL 961273, at *8 (E.D. La. Apr. 7, 2009) (Lemmon, J.) (crediting the expert testimony of a medical bill auditor who owned a company that assesses the reasonableness of medical bills for insurance companies, attorneys, self-insured companies, and insurance adjustors); *Cummins v. BIC USA, Inc.*, No. 08-19, 2011 WL 2633959, at *5-6 (W.D. Ky. July 5, 2011) (McKinley Jr., J.) (crediting a medical bill auditor as qualified to render an opinion when she had been employed as a hospital bill auditor for five years).

[69] Rec. Doc. 101-6 at 1.

[70] *Id.*

10

year.[71] With her experience, she has qualified and testified "as an expert medical bill auditor in state and federal court on 89 occasions and 430 times in depositions for both plaintiffs and defendants" in the past 20 years.[72]

For these reasons, Michalski possesses a "higher degree of knowledge, skill, experience, training, or education than an ordinary person in the subject matter of her testimony."[73] The Court finds that Michalski is qualified to serve as an expert medical bill auditor.

## B.   *Whether Michalski's Methodology is Reliable*

Plaintiffs argue that Michalski's methodology is not reliable.[74] Plaintiffs contend that Michalski relies on the Physicians Fee Reference and other aggregates that "compile discounts and write-offs without conducting thorough geographic surveys to see what is actually reasonable in this medical market for privately-owned surgery centers . . . ."[75] On the other hand, Defendants contend that Michalski's reliance on the Physicians Fee Reference is reliable because it is "relied on industry wide by healthcare providers (doctors, clinics and hospitals), [and] insurance payors . . . ."[76]

Federal courts have deemed an expert opinion's reliance on the Physicians Fee Reference as sufficiently reliable under the Federal Rules of Evidence.[77] Here, Michalski used the 75th

---

[71] *Id.*

[72] *Id.*

[73] *See, e.g.*, *Thomas*, 2019 WL 8888169 at *12.

[74] Rec. Doc. 81-1 at 11.

[75] *Id.*

[76] Rec. Doc. 101 at 8–9.

[77] *See e.g. Thomas*, 2019 WL 8888169 at *12; *Incardone v. Royal Caribbean Cruises, Ltd.*, No. 16-20924, 2018 WL 6520934, at *7 (S.D. Fla. Dec. 11, 2018) (Goodman, J.); *Lee v. Fischer*, No. 08-16, 2009 WL 10678390, at *3 (S.D. Ga. July 10, 2009) (Wood, J.).

percentile of the Physicians Fee Reference—and more than 20 other sources—to establish the national customary fees for medical bills.[78] She used a geographic modifier to arrive at the local value for these services in the New Orleans area.[79] She then compared Plaintiffs' medical bills to the local value in the New Orleans area.[80] Her methodology was peer-reviewed by Gerard Anderson, Ph.D.—a "faculty member at John Hopkins University and a Professor of Health Policy and Management."[81] He attested that Michalski's methodology reliably analyzed the reasonable market value of medical services.[82] Michalski's methodology easily passes the "flexible" reliability test under Federal Rule of Evidence 702.[83]

Lastly, to the extent that Plaintiffs argue that the Physicians Fee Reference is not a reliable source, "questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."[84] It is "the role of the adversarial system, not the court, to highlight weak evidence."[85]

## C.    *Whether Michalski's Methodology Will Assist the Trier of Fact*

Plaintiffs argue that Michalski's testimony—concerning whether Plaintiffs' medical bills

---

[78] Rec. Doc. 106-1 at 2–6.

[79] *Id.*

[80] *Id.*; *see also* Rec. Doc. 101-1; Rec. Doc. 101-2; Rec. Doc. 101-3.

[81] Rec. Doc. 101-6 at 2.

[82] *Id.*

[83] *Seatrax*, 200 F.3d at 372.

[84] *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996).

[85] *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563 (5th Cir. 2004).

are reasonable—is irrelevant for the trier of fact.[86] Plaintiffs state that "in the absence of bad faith, it is error for the trier of fact to fail to award the full amount of medical expenses that are proven by a preponderance of the evidence."[87] Plaintiffs contend that Michalski has no basis for giving opinions on the reasonable value of medical bills unless she is opining that such medical bills were incurred in bad faith.[88] In opposition, Defendants contend that Plaintiffs may recover "reasonable and customary" medical expenses under Louisiana law.[89] Defendants admit that they seek to use Michalski's testimony to contest the reasonableness of Plaintiffs' medical bills.[90]

Louisiana courts have clearly stated that a trier of fact commits reversible error when (1) it finds that a defendant's negligence caused a plaintiff's injury and medical expenses but (2) does not award the plaintiff the full value of their medical expenses.[91] Indeed, in *Gunn v. Robertson*, the Louisiana Fifth Circuit Court of Appeal clearly stated that a "tortfeasor is required to pay for medical treatment of his victim, even over treatment or unnecessary treatment, unless such treatment was incurred by the victim in bad faith."[92] The court in *Gunn* also stated that a "trier of fact is in error for failing to award the full amount of medical expenses" when proved by a preponderance of the evidence.[93]

---

[86] Rec. Doc. 81-1 at 3.

[87] *Id.* at 4 (quoting *Antippas*, 265 So. 3d at 1218).

[88] *Id.*

[89] *Id.*

[90] *Id.*

[91] *See, e.g.*, *Gunn v. Robertson*, 801 So. 2d 555, 564 (La. App. 5 Cir. 2001); *Yee v. Imperial Fire & Cas. Ins. Co.*, 25 So. 3d 872, 877 (La. App. 2 Cir. 2009); *Revel v. Snow*, 664 So. 2d 655, 661 (La. App. 3 Cir. 1995).

[92] *Gunn*, 801 So. 2d at 564.

[93] *Id.*

Recently, in *Thomas v. Chambers*, another judge in the Eastern District of Louisiana addressed a similar situation.[94] In that case, the defendants attempted to introduce a medical bill auditor's expert testimony to assist the jury in determining whether plaintiffs' medical bills were reasonable.[95] The court held that the medical bill auditor's expert testimony—concerning whether the plaintiffs' medical bills were reasonable—was *not* admissible if "used solely to suggest to the jury that plaintiffs' award of past medical expenses should be reduced because the charges are unreasonably high for the treatment plaintiffs received."[96] The court elaborated: "If the jury were to find that plaintiffs' injuries and medical expenses were caused by [the defendant's] negligence, and that plaintiffs did not incur their treatment in bad faith, the jury would be *required* to award plaintiffs the full value of their past medical expenses that can be proved by a preponderance of the evidence."[97] Accordingly, the court held that the medical bill auditor's expert testimony "[did] not assist the trier of fact" if introduced to determine whether the plaintiffs' medical bills were reasonable.[98]

Yet the court in *Thomas* permitted the medical bill auditor to testify for impeachment purposes.[99] In *Thomas*, one treating physician billed a plaintiff $66,750 for cervical injections, but the medical bill auditor stated that the services were worth only $8,641.47.[100] The treating physicians apparently sold that $66,750 medical bill to Medport at a substantially discounted

---

[94] *Thomas*, 2019 WL 8888169 at *12.

[95] *Id.* at *13.

[96] *Id.*

[97] *Id.* (emphasis added).

[98] *Id.*

[99] *Id.* at *14.

[100] *Id.*

price.[101] The court noted that a "jury could [] infer that by overcharging plaintiffs, the physicians were guaranteed to receive a windfall."[102] "Even if [the] plaintiffs' physicians offered . . . Medport a substantial discount on these inflated [medical] bills, the physicians' recovery would still likely be greater than what [the medical bill auditor] states is the reasonable value for their services."[103] This financial arrangement could be "extremely lucrative to the [treating] physicians."[104] Considering that financial incentive, the court held that the medical bill auditor's report was "relevant to impeach the treating physicians' testimony because it suggests the physicians have a *substantial* financial interest in plaintiffs winning their case and receiving more referrals from [Medport]."[105] Thus, "[b]ecause the expert report was relevant to [] impeach the testifying physicians' credibility, it assist[ed] the trier of fact with an issue at trial and [was] admissible."[106]

Here, Michalski's testimony cannot be used to attack the reasonableness of Plaintiffs' medical bills—unless Defendants present evidence that Plaintiffs incurred medical expenses in bad faith. Under Louisiana law, in the absence of bad faith, a trier of fact must award the full amount of medical expenses if the expenses are proved by a preponderance of the evidence.[107] If the Court allowed Michalski's testimony to attack the reasonableness of Plaintiffs' medical bills without any evidence of bad faith, the Court would be inviting the jury to do something that it

---

[101] *See id.*

[102] *Id.*

[103] *Id.*

[104] *Id.*

[105] *Id.*

[106] *Id.*

[107] *See, e.g., Antippas*, 265 So. 3d at 1218. This statement assumes that a defendant's negligence caused the plaintiff's injuries. The jury may find otherwise and refuse to award medical expenses.

clearly cannot do under Louisiana law.

Yet, as in *Thomas*, Plaintiffs' treating physicians may have a *substantial* financial incentive to provide a favorable medical causation analysis.[108] A jury could find that by overcharging Plaintiffs, the treating physicians will undoubtedly receive a windfall. Indeed, even if Plaintiffs' treating physicians offered Medport a substantial discount on the medical bills, the treating physicians' financial recovery may still exceed Michalski's estimate for the reasonable value of such services. That financial arrangement could be "extremely lucrative to the [treating] physicians."[109]

Accordingly, because Michalski's testimony is relevant to impeach the credibility of Plaintiffs' treating physicians, her testimony may assist the trier of fact with an issue at trial and is admissible.[110] Unless evidence that Plaintiffs incurred medical expenses in bad faith is presented at trial, the Court will instruct the jury that Michalski's testimony cannot be used to decrease Plaintiffs' recoverable medical expenses.

### V. Conclusion

Considering the foregoing reasons,

---

[108] Rec. Doc. 101 at 15–17.

[109] *Thomas*, 2019 WL 8888169 at *14.

[110] *United States v. Abel*, 469 U.S. 45, 52 (1984) ("Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony.").

**IT IS HEREBY ORDERED** that Plaintiffs Wayland Collins, Candy Kelly, and Alvin Polk's "Motion in Limine and Daubert Motion [to] Exclude Nancy Frasier Michalski's Testimony or Limit her Testimony at Trial" is **DENIED**.[111]

**NEW ORLEANS, LOUISIANA,** this ___2nd___ day of July, 2020.

*Nannette Jolivette Brown*

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[111] Rec. Doc. 81.