## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**WAYLAND COLLINS, et al.**                                    **CIVIL ACTION**

**VERSUS**                                                                **NO. 18-7465**

**JOHN C. BENTON, et al.**                                    **SECTION: "G"(5)**


### ORDER AND REASONS

Before the Court is Plaintiffs Wayland Collins, Candy Kelly, and Alvin Polk's (collectively, "Plaintiffs") "Omnibus Motion in Limine."[1] Defendants John C. Benton d/b/a Q & M Motor Transports, Mark Ingle, and Northland Insurance Company (collectively, "Defendants") oppose the motion.[2] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion in part and denies the motion in part.

### I. Background

On August 7, 2018, Plaintiffs filed a complaint against Defendants in this Court, seeking recovery for injuries and property damages that Plaintiffs allegedly sustained in an automobile accident.[3] According to the Complaint, on August 9, 2017, Plaintiff Wayland Collins was operating a vehicle on Interstate 10 and, while exiting onto Interstate 510, he collided with an 18-wheeler driven by Defendant Mark Ingle.[4] Plaintiffs allege that Defendant Mark Ingle was turning

---

[1] Rec. Doc. 80.

[2] Rec. Doc. 105.

[3] Rec. Doc. 1 at 3.

[4] *Id.*

1

onto Interstate 510 and negligently misjudged his clearance, resulting in the motor vehicle incident at issue.[5] Plaintiffs additionally allege that Defendant Mark Ingle was cited for an "improper lane change."[6] Plaintiffs bring a negligence claim against Defendant Mark Ingle and Defendant Q & M Transport, who is allegedly Defendant Mark Ingle's principal under the doctrine of respondeat superior.[7] Plaintiffs also bring claims against Defendant Northland Insurance Company, who purportedly insured the 18-wheeler operated by Defendant Mark Ingle.[8]

On November 13, 2018, the Court issued a scheduling order setting this case for trial on October 21, 2019.[9] On June 11, 2019, approximately 10 months after the filing of the Complaint, all parties jointly moved to continue the October 21, 2019 trial date and the accompanying deadlines because Plaintiffs had recently underwent surgery and were in the process of being treated by several physicians.[10] On June 17, 2019, this Court granted the parties' motion for a continuance because Plaintiffs appeared to not have reached maximum medical recovery at that time.[11] Thereafter, the Court issued a new scheduling order setting this case for trial on January 27, 2020.[12]

---

[5] *Id.*

[6] *Id.* at 4.

[7] *Id.* at 5.

[8] *Id.*

[9] Rec. Doc. 17.

[10] Rec. Doc. 23.

[11] Rec. Doc. 25.

[12] Rec. Doc. 27.

On November 19, 2019, Plaintiffs filed the instant motion in limine.[13] On November 26, 2019, Defendants filed an opposition to the instant motion in limine.[14] On December 10, 2019, with leave of court, Plaintiffs filed a reply memorandum in further support of the motion in limine.[15] On December 18, 2019, with leave of court, Defendants filed a supplemental opposition to the motion in limine.[16] On December 30, 2019, with leave of court, Plaintiffs filed a supplemental reply in further support of the motion in limine.[17]

On December 30, 2019, Plaintiffs moved to extend the time to amend pleadings in order to add several defendants to this litigation.[18] On January 9, 2020, the Court granted Plaintiffs' motion to extend the time to amend pleadings in order to permit Plaintiffs to add several defendants to this litigation. As a result, all deadlines in this matter were continued.[19] The Court issued a new scheduling order setting this case for trial on April 12, 2021.[20]

## II. Parties' Arguments

### A.    *Plaintiffs' Arguments in Support of the Motion*

Plaintiffs move the Court to exclude seventeen various categories of evidence.[21] First, Plaintiffs move to exclude any reference or evidence involving their receipt of collateral sources

---

[13] Rec. Doc. 80.

[14] Rec. Doc. 105.

[15] Rec. Doc. 145.

[16] Rec. Doc. 160.

[17] Rec. Doc. 168.

[18] Rec. Doc. 164.

[19] Rec. Doc. 178.

[20] Rec. Doc. 197.

[21] Rec. Doc. 80-1.

of income or funds.[22] Plaintiffs state that the collateral source rule has been applied to income received from "pensions, Social Security disability benefits, insurance benefits, and even Medicare."[23] Citing the collateral source rule, Plaintiffs state that Defendants should be precluded from mentioning or introducing the following evidence: (i) Plaintiffs' benefits from hospitalization, medical, or other collateral insurance coverage; (ii) Plaintiffs' services furnished without charge; and (iii) Plaintiffs' social security and pensions.[24]

Second, Plaintiffs argue that their "prior or subsequent claims, suits, or settlements" should be excluded because the probative value of such evidence is substantially outweighed by its prejudicial effects.[25] Third, Plaintiffs move to exclude any mention of jurors' "insurance rates, premiums[,] or medical bills" potentially increasing because of a damages award in this case.[26] Fourth, Plaintiffs move to exclude any evidence not previously disclosed in discovery.[27]

Fifth, Plaintiffs move to exclude any reference to "[t]he time and circumstances under which plaintiff[s] employed [their] attorneys" because that information is irrelevant.[28] Sixth, Plaintiffs move to exclude any reference involving whether their potential damages award will be considered income under state and federal tax laws.[29] Seventh, Plaintiffs move to exclude all

---

[22] *Id.* at 1.

[23] *Id.* at 2.

[24] *Id.* at 2–4.

[25] *Id.* at 4. Plaintiffs address their prior claims and litigation in both their second request and seventeenth request. *Id.* at 4, 15. The arguments mostly overlap. The Court has considered each in full.

[26] *Id.* at 4.

[27] *Id.* at 5.

[28] *Id.*

[29] *Id.*

undisclosed studies that Defendants' experts either performed or relied on when forming their opinions.[30] Eighth, Plaintiffs move to exclude any discussions between Plaintiffs and their counsel pursuant to the attorney-client privilege.[31] That includes any discussion regarding counsel's referrals for medical treatment.[32]

Ninth, Plaintiffs move to exclude the following inflammatory statements at trial:  reference to "tort reform," "too many lawsuits," "too much ligation in our country," "jackpot justice," or Plaintiffs attempting to "win the lottery" in this matter.[33] Plaintiffs contend that such statements are "inflammatory, irrelevant, unduly prejudicial, and impair [Plaintiffs'] ability to participate in a fair and impartial trial." [34]

Tenth, Plaintiffs move to exclude testimony from any deposition that Plaintiffs did not attend or did not receive a reasonable opportunity to attend.[35] Eleventh, Plaintiffs seek a ruling that no witness "may rely upon or refer to hearsay as the basis for any factual assertion or opinion."[36] Twelfth, Plaintiffs move to exclude any arrest record or questions involving Plaintiffs' criminal history.[37] Thirteenth, Plaintiffs move to exclude any reference to Plaintiffs' counsel

---

[30] *Id.* at 6.

[31] *Id.*

[32] *Id.*

[33] *Id.* at 6–7.

[34] *Id.* at 7.

[35] *Id.* Plaintiffs argue that any deposition testimony must be excluded if deemed hearsay under Louisiana Code of Evidence Article 801. *Id.* at 7–8. Plaintiffs state that no hearsay exception would apply to such deposition testimony. *Id.* at 8.

[36] *Id.* Plaintiffs note that exceptions exist for experts. *Id.*

[37] *Id.* In support, Plaintiffs cite multiple evidence laws under Louisiana law that are not applicable in federal court. *Id.* at 8–11.

advancing court costs or litigation expenses.[38]

Fourteenth, Plaintiffs move to exclude any evidence involving Plaintiffs' cell phone records.[39] Plaintiffs contend that their cell phone records are hearsay and irrelevant to the facts of this case.[40] Plaintiffs additionally contend that Defendants will use the cell phone records to prejudice and confuse the jury.[41]

Fifteenth, Plaintiffs request an order that before Defendants present any evidence related to any motion in limine, Defendants first request an evidentiary ruling from the Court outside of the jury's presence.[42] In support, Plaintiffs cite Federal Rule of Evidence 103(d). Rule 103(d) states that trial proceedings should be conducted, to the extent practicable, to prevent inadmissible evidence from reaching the jury by any means.[43]

Sixteenth, Plaintiffs move to exclude any evidence concerning their prior injuries and motor-vehicle collisions.[44] Plaintiffs note that the following prior injuries are at issue: (i) Alvin Polk's prior nose fracture, (ii) Wayland Collins' prior back injuries, and (iii) Candy Kelly's prior ankle and foot injuries.[45]

---

[38] *Id.* at 11.

[39] *Id.* at 13.

[40] *Id.*

[41] *Id.*

[42] Rec. Doc. 80-1 at 14.

[43] Fed. R. Evid. 103(d).

[44] *Id.*

[45] *Id.* at 14–15.

## B.    *Defendants' Arguments in Opposition to the Motion*

Defendants oppose the Court excluding any evidence mentioned above.[46] First, Defendants request that the Court not exclude evidence regarding certain collateral sources of income or funds.[47] Defendants state that they "should be allowed to present evidence of the third-party funding arrangements, of the discounted payments made to plaintiffs' healthcare providers, and of the reasonableness (or unreasonableness) of the charges made by each of plaintiffs' healthcare providers . . . ."[48]

In support, Defendants first point to the Louisiana Supreme Court's opinion in *Hoffman v. 21st Century North American Insurance Company*.[49] The Court in *Hoffman* stated that "allowing the plaintiff to recover an amount [that] he has not paid, and for which he has no obligation to pay, is at cross purposes with the basic principles of tort recovery."[50] Defendants then point to the Louisiana Supreme Court's opinion in *Simmons v. Cornerstone Investments, LLC*.[51] The Court in *Simmons* stated that medical expenses "written off" by a provider is a "phantom charge that [a] [p]laintiff has not ever paid nor one he will ever be obligated to pay."[52]

Under those authorities, Defendants argue that the collateral source rule is tethered to payments *received* by Plaintiffs.[53] Defendants note that Plaintiffs did not use their own health

---

[46] Rec. Doc. 105.

[47] *Id.* at 1.

[48] *Id.* at 8.

[49] *Id.* at 3 (citing *Hoffman v. 21st Century N. Am. Ins. Co.*, 2014-2279 (La. 10/2/15), 209 So. 3d 702).

[50] *Hoffman*, 209 So. 3d at 704.

[51] Rec. Doc. 105 at 3.

[52] *Simmons v. Cornerstone Investments, LLC*, 2018-0735 (La. 5/8/19), 282 So. 3d 199, 204.

[53] Rec. Doc. 105 at 2.

insurance, Medicare, or Medicaid to pay their medical bills but instead accepted medical treatment from physicians selected by their counsel.[54] Defendants additionally note that Plaintiffs never made any payments directly toward the incurred medical bills.[55] The medical bills were instead sold to a third-party funding company, Medport, at a discount price.[56] Yet Medport seeks to recover the full value of the medical bills.[57] Defendants conclude that the collateral source rule—as described in *Hoffman*, *Simmons*, and other cases—is inapplicable to Medport's financial arrangement with Plaintiffs' treating physicians.[58]

Second, Defendants oppose excluding Plaintiffs' "prior or subsequent claims, suits, or settlements" because such evidence may be admissible for both substantive and impeachment purposes.[59] Defendants contend that Plaintiffs were involved in prior accidents that resulted in medical treatment.[60] Defendants maintain that evidence of Plaintiffs' prior accidents, injuries, claims, suits, or settlements is admissible under Federal Rules of Evidence 401, 402, and 403.[61]

Third, Defendants oppose excluding any suggestion that the jurors' insurance rates,

---

[54] *Id*

[55] *Id.*

[56] *Id.*

[57] *Id.*

[58] *Id.* at 8.

[59] *Id.* at 9.

[60] *Id.* Defendants also argue that evidence of other similar accidents is admissible under Federal Rule of Evidence 404(b). *Id.* at 10.

[61] *Id.* Defendants also argue that they "do not seek to admit evidence of prior accidents, claims and lawsuits as reflective of plaintiffs being claims-minded." *Id.* at 18. Defendants instead "seek to introduce such evidence on the basis that the facts and circumstances of the other accidents or incidents are 'closely similar to the facts and circumstances at issue' in this matter." *Id.*

premiums, or medical bills may increase because of a damages award in this case.[62] Defendants contend that Plaintiffs "do not offer any rule of evidence, statute or jurisprudence supporting their argument."[63]

Fourth, Defendants contend that Plaintiffs' request to exclude evidence not previously disclosed in discovery does not specify any particular witness or exhibit.[64] For that reason, Defendants conclude that they cannot respond to Plaintiffs' request.[65]

Fifth, Defendants oppose excluding evidence involving the circumstances under which Plaintiffs employed their counsel.[66] Defendants represent that Plaintiffs retained their counsel, Ms. Motta, within a day or two of the subject collision.[67] Defendants also represent that Ms. Motta immediately referred each plaintiff to specific healthcare providers.[68] Defendants argue that information is relevant to Plaintiffs' credibility because they initially did not report any injuries at the accident scene.[69]

Sixth, Defendants address excluding whether any potential damages award will be considered income under state and federal tax laws.[70] Defendants simply request an appropriate

---

[62] *Id.* at 10.

[63] *Id.*

[64] *Id.*

[65] *Id.*

[66] *Id.* at 11.

[67] *Id.*

[68] *Id.*

[69] *Id.* Defendants also argue that information is relevant to the treating physicians' biases in this case. *Id.*

[70] *Id.* at 12.

jury instruction on the taxation issue.[71]

Seventh, Defendants oppose excluding any undisclosed studies that Defendants' experts relied on when forming their expert opinions.[72] Defendants argue that Plaintiffs do not cite any law supporting their request.[73] Nevertheless, Defendants note that they have complied with this Court's scheduling order and the Federal Rules of Civil Procedure by timely providing any materials used by Defendants' experts.[74]

Eighth, Defendants oppose excluding certain discussions between Plaintiffs and their counsel.[75] Defendants argue that the attorney-client privilege only protects discussions that facilitate legal advice.[76] Defendants maintain that a counsel's referrals for healthcare, for example, do not involve legal advice.[77]

Ninth, Defendants agree that inflammatory rhetoric should not be used at trial.[78] Yet Defendants oppose excluding specific statements—such as "tort reform," "too many lawsuits," "too much litigation," "jackpot justice," and "win the lottery."[79] Defendants maintain that Plaintiffs do not cite any caselaw showing that these statements are inflammatory.[80]

---

[71] *Id.*

[72] *Id.*

[73] *Id.*

[74] *Id.*

[75] *Id.*

[76] *Id.* at 12–13.

[77] *Id.*

[78] *Id.* at 13.

[79] *Id.*

[80] *Id.*

Tenth, Defendants address excluding testimony from any deposition that Plaintiffs either did not attend or did not receive a reasonable opportunity to attend.[81] Defendants state that they will use any deposition testimony permitted under the Federal Rules of Evidence.[82]

Eleventh, Defendants oppose the Court ruling that "no witness may rely upon or refer to hearsay as the basis for any factual assertion or opinion."[83] Defendants maintain that hearsay objections should be made and ruled upon at trial.[84]

Twelfth, Defendants oppose excluding any arrest record or questions involving Plaintiffs' criminal history.[85] Defendants maintain that Plaintiffs erroneously cite Louisiana's evidence laws.[86] Defendants point out that the applicable rule, Federal Rule of Evidence 609(a), permits certain criminal convictions to be introduced into evidence.[87] Yet, because Plaintiffs do not reference any particular arrest or criminal record, Defendants contend that Plaintiffs' request should be denied.[88]

Thirteenth, Defendants oppose excluding any reference to Plaintiffs' counsel advancing court costs and litigation expenses.[89] Defendants point to their argument above—involving the

---

[81] *Id.*

[82] *Id.*

[83] *Id.* at 13–14

[84] *Id.*

[85] *Id.* at 14.

[86] *Id.*

[87] *Id.*

[88] *Id.*

[89] *Id.*

collateral source rule—to demonstrate why such advances should not be excluded.[90]

Fourteenth, Defendants oppose excluding evidence involving Plaintiffs' cell phone records.[91] Defendants argue that Plaintiffs' cell phone records are relevant to Defendants' fraud defense.[92] Defendants submit that Plaintiffs staged the collision in question.[93] According to Defendants, Plaintiffs' cell phone records "establish connections to multiple other alleged fraud claimants involved in extremely similar accidents in both location and circumstances . . . ."[94]

Fifteenth, Defendants address Plaintiffs' request for evidentiary proceedings pursuant to Federal Rule of Evidence 103(d).[95] Defendants simply state that they will comply with "all Orders to this effect from this Honorable Court."[96]

Sixteenth, Defendants address Plaintiffs' prior motor-vehicle accidents and injuries.[97] Defendants argue that evidence of prior motor-vehicle accidents and injuries may be used to demonstrate that the subject collision did not cause Plaintiffs' injuries.[98]

## C.   *Plaintiffs' Reply Memorandum*

In the reply brief, Plaintiffs make two principal arguments in further support of the request

---

[90] *Id.*

[91] *Id.* at 15.

[92] *Id.*

[93] *Id.*

[94] *Id.*

[95] *Id.* at 16.

[96] *Id.*

[97] *Id.*

[98] *Id.*

to exclude their receipt of collateral sources of income.[99] First, Plaintiffs argue that they owe the full value of their medical bills to Medport because no discounts or write-offs have been procured on their behalf.[100] Plaintiffs contend that their treating physicians sold their medical bills as an account receivable to Medport.[101] Plaintiffs maintain that Medport's liens require Plaintiffs to pay the full value of their medical bills.[102]

Second, Plaintiffs respond to the authority cited in Defendants' opposition.[103] Plaintiffs contend that each authority involved workers compensation or some other irrelevant Louisiana statute.[104] Plaintiffs then point to the recent decision in *Thomas v. Chambers*.[105] In that case, another district judge in the Eastern District of Louisiana decided that the defendants could not introduce evidence—involving Medport's financial arrangement with the plaintiffs' treating physician—to argue that the plaintiffs' recovery should be limited to the discounted rate paid by Medport.[106] The court noted that the plaintiffs did not receive a benefit from the discount that Medport negotiated and remained liable for the full value of the medical bills to Medport.[107] For that reason, the court ruled that the defendants could not subtract the discount from a hypothetical

---

[99] Rec. Doc. 145.

[100] *Id.* at 2–3.

[101] *Id.* at 3.

[102] *Id.* at 2–3. Plaintiffs also argue that the purchase agreements—between Plaintiffs' treating physicians and Medport—are irrelevant and should be excluded at trial. *Id.* at 4.

[103] *Id.* at 5.

[104] *Id.* at 5–6.

[105] *Id.* at 8.

[106] *Thomas v. Chambers*, No. CV 18-4373, 2019 WL 8888169, at *3 (E.D. La. Apr. 26, 2019) (Vance, J.).

[107] *Id.*

damage award to the plaintiffs.[108] Plaintiffs in this case request the same outcome as in *Thomas*.[109]

## D.   *Defendants' Supplemental Opposition*

Defendants filed a supplemental opposition to the instant motion in limine.[110] In the supplemental opposition, Defendants argue that they should be permitted to offer evidence involving the reasonable and customary value of Plaintiffs' medical expenses.[111] Defendants contend that Plaintiffs' medical providers are charging unreasonable prices for medical services.[112] Yet, because Louisiana law limits any medical provider to collecting *reasonable* charges for medical services, the medical providers sell the inflated medical bills to Medport for a discounted price.[113] Medport supposedly then attaches liens against the consumer for the full value of the medical bills.[114] Defendants argue that Medport's financial arrangement permits Medport to circumvent the charging limits on medical providers under Louisiana law.[115]

## E.   *Plaintiffs' Supplemental Reply*

Plaintiffs make two principal arguments in their supplemental reply.[116] Plaintiffs first argue that Louisiana law allows them to recover their medical expenses in full.[117] In support, Plaintiffs

---

[108] *Id.*

[109] *Id.*

[110] Rec. Doc. 160.

[111] *Id.* at 1.

[112] *Id.* at 2–3.

[113] *Id.* at 3.

[114] *Id.* at 2–3

[115] *Id.* at 3.

[116] Rec. Doc. 168.

[117] *Id.* at 5.

quote the Louisiana Fourth Circuit Court of Appeal's language in *Antippas v. Nola Hotel Group, LLC*.[118] In *Antippas*, the court stated that "plaintiffs who have incurred medical expenses in good faith and evidenced by a bill may recover for said expenses even under circumstances when such treatment could be viewed as unnecessary."[119] The court in *Antippas* additionally stated that "it is error for the trier of fact to fail to award the full amount of medical expenses that are proven by a preponderance of the evidence"—unless bad faith is present.[120] Accordingly, because Plaintiffs allegedly did not receive any medical treatment in bad faith, Plaintiffs conclude that they may receive damages for the full value of their medical bills.[121]

Second, Plaintiffs argue that Louisiana's collateral source rule allows them to present the full value of their medical bills at trial because Plaintiffs remain legally responsible for paying the full value to Medport.[122] Plaintiffs contend that the collateral source rule "allows a [p]laintiff to present the full value of treatment[] because barring the total would necessarily inure to the benefit of the accused tortfeasor."[123]

### III. Legal Standard

#### A.    *Relevancy and Prejudice*

Federal Rule of Evidence 401 provides that evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of

---

[118] *Id.*

[119] *Antippas v. Nola Hotel Grp., LLC*, 2017-0798 (La. App. 4 Cir. 2/27/19), 265 So. 3d 1212, 1218.

[120] *Id.*

[121] *See id.*

[122] Rec. Doc. 168 at 6–7.

[123] *Id.* Plaintiffs argue that Hoffman's exception to the collateral source rule is not applicable here. *Id.* Plaintiffs also contend that Defendants' argument—that Plaintiffs could have used their medical insurance—is a red herring. *Id.* at 8.

consequence in determining the action." Under Federal Rule of Evidence 402, relevant evidence is admissible unless the United States Constitution, a federal statute, the Federal Rules of Evidence or other rules prescribed by the Supreme Court provide otherwise. Pursuant to Federal Rule of Evidence 403, "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The Fifth Circuit instructs that "[t]he exclusion of evidence under Rule 403 should occur only sparingly[.]"[124] "Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403."[125]

## B.    Hearsay

Under the Federal Rules of Evidence, hearsay is defined as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."[126] Hearsay is not admissible unless a federal statute, the Federal Rules of Evidence, or "other rules prescribed by the Supreme Court" provide otherwise.[127] After a party properly objects to the admission of evidence as hearsay, the proponent of evidence bears the burden to show that statement is not offered as hearsay or falls within an exception to the hearsay rule.[128]

---

[124] *United States v. Pace*, 10 F.3d 1106, 1115 (5th Cir. 1993), *cert. denied*, 511 U.S. 1149 (1994).

[125] *Id.* at 1115–16 (quoting *United States v. McRae*, 593 F.2d 700, 707 (5th Cir.), *cert. denied*, 444 U.S. 862 (1979)).

[126] Fed. R. Evid. 801(c)(1)–(2). Federal Rule of Evidence 801(d) further provides that opposing party's statements and certain prior statements by declarant-witnesses used to impeach or rebut the witness are not hearsay.

[127] Fed. R. Evid. 802.

[128] *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987) ("The preponderance standard ensures that

## IV. Analysis

### 1.        Collateral Sources of Income

Plaintiffs move to exclude any reference or evidence involving their receipt of collateral sources of income.[129] Plaintiffs state that the collateral source rule is applicable to income received from "pensions, Social Security disability benefits, insurance benefits, and even Medicare."[130] Citing the collateral source rule, Plaintiffs state that Defendants should be precluded from mentioning or introducing the following evidence: (i) Plaintiffs' benefits from hospitalization, medical, or other collateral insurance coverage; (ii) Plaintiffs' services furnished without charge; and (iii) Plaintiffs' social security and pensions.[131]

The collateral source rule provides that "a tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be reduced, because of monies received by the plaintiff from sources independent of the tortfeasor's procuration or contribution."[132] Under this doctrine, "the payments received from the independent source are not deducted from the award the [plaintiff] would otherwise receive from the [tortfeasor]."[133] The collateral source rule allows a plaintiff "to present the full value of treatment" because "barring the total would necessarily inure to the

---

before admitting evidence, the court will have found it more likely than not that the technical issues and policy concerns addressed by the Federal Rules of Evidence have been afforded due consideration."); *Loomis v. Starkville Mississippi Pub. Sch. Dist.*, 150 F. Supp. 3d 730, 742–43 (N.D. Miss. 2015) ("Once a party has 'properly objected to [evidence] as inadmissible hearsay,' the burden shifts to the proponent of the evidence to show, 'by a preponderance of the evidence, that the evidence [falls] within an exclusion or exception to the hearsay rule and was therefore admissible.'" (citations omitted)); *see also Randle v. Tregre*, 147 F. Supp. 3d 581, 596 (E.D. La. 2015) (Africk, J.); *Broad. Music, Inc. v. Tex Border Mgmt., Inc.*, No. 10-2524, 2012 WL 4119111, at *4 (N.D. Tex. Sept. 18, 2012).

[129] Rec. Doc. 80-1 at 1.

[130] *Id.* at 2

[131] *Id.* at 2–4.

[132] *Bozeman v. State*, 03–1016, p. 9 (La.7/2/04), 879 So.2d 692, 698.

[133] *Id.*

benefit of the accused tortfeasor."[134] The underlying rationale is that "a tortfeasor should not benefit by a reduction in damages from outside benefits provided to the plaintiff."[135] The collateral source rule "operates to exclude evidence of collateral benefits because it may unfairly prejudice the jury."[136]

To determine whether the collateral source rule excludes a payment, the Court must analyze the *specific* nature of the payment. For instance, evidence of some insurance payments is excluded by the collateral source rule,[137] but payments concerning "attorney-negotiated write-offs or discounts" are not excluded by the collateral source rule.[138] Plaintiffs broadly seek to exclude the following evidence: (i) Plaintiffs' benefits from hospitalization, medical, or other collateral insurance coverage; (ii) Plaintiffs' services furnished without charge; and (iii) Plaintiffs' social security and pensions.[139] Yet the Court cannot determine whether any exception to the collateral source rule applies here because Plaintiffs' request is too abstract. Accordingly, Plaintiffs' request to exclude the three categories of evidence is denied.[140]

Finally, the Court notes that the parties spend a substantial portion of their briefs discussing Medport purchasing Plaintiffs' medical bills for a discounted price. Yet the instant motion in

---

[134] *Whitley v. Pinnacle Entm't, Inc. of Delaware*, No. CV 15-00595-BAJ-RLB, 2017 WL 1051188, at *2 (M.D. La. Mar. 20, 2017) (Jackson, J.)

[135] *Dupont v. Costco Wholesale Corp.*, No. CV 17-4469, 2019 WL 5959564, at *2 (E.D. La. Nov. 13, 2019) (Lemmon, J.) (citing *Bozeman*, 879 So.2d at 698).

[136] *Thomas*, 2019 WL 8888169, at *3 (internal citation omitted).

[137] *Bozeman*, 879 So.2d at 698.

[138] *Hoffman*, 209 So. 3d at 706.

[139] Rec. Doc. 80-1 at 2–4.

[140] *Sheppard v. Liberty Mut. Ins. Co.*, No. 16-2401, 2017 WL 480601, at *1-2 (E.D. La. Feb. 2, 2017) (Vance, J.) (rejecting a request for a blanket ban on evidence of collateral sources because the motion did not identify any specific evidence that should be excluded).

limine does not specifically seek a ruling on Medport's discounted payments.[141] Instead, the instant motion simply states: "the specific issue with regard to any bills which were purchased by Medport LA, was already ruled upon on November 13, 2019 by the Hon. Judge Mary Ann Lemmon in the matter of *Lisa Dupont v. Costco Wholesale Corp.*"[142] That statement does not specify what Plaintiffs seek to exclude—if anything. If Plaintiffs seek to exclude evidence involving Medport's discounted payments, they must file a motion in limine specifically explaining which payments should be excluded.

## 2.      Reference to Other Litigation Claims

Plaintiffs move to exclude evidence concerning their "prior or subsequent claims, suits, or settlements."[143] Plaintiffs argue that their prior claims should be excluded because (i) it is irrelevant and (ii) any probative value is substantially outweighed by the prejudicial effects.[144] On the other hand, Defendants argue that Plaintiffs' prior claims should not be excluded because they are relevant to the plaintiffs' injury histories and medical causation.[145]

Here, this Court is not inclined to admit evidence of prior litigation simply to show Plaintiffs' purported litigiousness. Yet neither Plaintiffs nor Defendants address this evidentiary issue with specificity.[146] Plaintiffs abstractly discuss prior litigation without mentioning any

---

[141] Rec. Doc. 80; Rec. Doc. 80-1.

[142] Rec. Doc. 80-1 at 4.

[143] *Id.* at 4, 17.

[144] *Id.* at 4. Plaintiffs' seventeenth request—that their prior claims and litigation are irrelevant—is very similar to their second request. *Id.* at 4, 15. The Court addresses both requests in this section.

[145] Rec. Doc. 105 at 9, 18.

[146] Rec. Doc. 80-1 at 4, 17; Rec. Doc. 105 at 9, 18.

specific case or claim.[147] Moreover, Defendants' opposition focuses on evidence related to prior injuries and motor-vehicle collisions, but that argument addresses injuries and collisions—not claims, litigation, and settlements.[148]

Because neither party enumerates any specific prior claim, the Court cannot determine whether any prior claim (1) is relevant under Federal Rule of Evidence 401 and (2) passes the balancing test under Federal Rule of Evidence 403. Plaintiffs' prior claims or litigation may be probative of whether Plaintiffs staged the subject collision. The Court will deny Plaintiffs' abstract request, but Plaintiffs may raise this issue again at trial, if necessary.

### 3.    Impact on Jurors' Insurance Rates, Premiums, and Medical Bills

Plaintiffs move to exclude any suggestion that the jurors' "insurance rates, premiums[,] or medical bills" may increase because of a damages award in this case.[149] Defendants contend that Plaintiffs' request should be denied because they "do not offer any rule of evidence, statute or jurisprudence supporting their argument."[150]

Federal district courts have found that a "juror's beliefs that he or she has a pecuniary interest in the outcome of the case is prejudicial to the issue of damages."[151] Furthermore, such evidence has limited probative value. Therefore, the Court finds that the probative value of this evidence is substantially outweighed by a danger of unfair prejudice. Accordingly, the Court will exclude any suggestion that jurors' "insurance rates, premiums[,] or medical bills" may increase

---

[147] Rec. Doc. 80-1 at 4, 17.

[148] Rec. Doc. 105 at 9, 18.

[149] Rec. Doc. 80-1 at 4.

[150] Rec. Doc. 105 at 10.

[151] *Bourg v. Fireman's Fund Ins. Co*., No. CIV.A. 99-1066, 2000 WL 14681, at *2 (E.D. La. Jan. 6, 2000) (Clement, J.).

because of a damages award in this case.

### 4. Undisclosed Witnesses and Exhibits

Plaintiffs move to prohibit Defendants from mentioning any evidence not previously disclosed in discovery.[152] Defendants contend that they cannot adequately respond because Plaintiffs do not specifically request exclusion of any particular witness or exhibit.[153]

Here, this Court's pretrial notice specifically states that no witness or exhibit may be used at trial unless properly disclosed to the opposing party (excluding impeachment evidence).[154] Both parties must comply with the Court's pretrial notice. In any event, because Plaintiffs do not specifically enumerate any undisclosed evidence or witness that Defendants will use at trial, Plaintiffs' abstract request is denied.

### 5. Employment of Counsel

Plaintiffs move to exclude any reference to the circumstances under which Plaintiffs employed their attorneys.[155] Plaintiffs contend that it is irrelevant when or why Plaintiffs hired their counsel.[156] On the other hand, Defendants argue that Plaintiffs retained their counsel, Ms. Motta, within a day or two of the subject collision.[157] Ms. Motta allegedly then referred Plaintiffs to specific healthcare providers.[158] Defendants contend that this information is relevant to

---

[152] Rec. Doc. 80-1 at 5.

[153] Rec. Doc. 105 at 10.

[154] Rec. Doc. 197-1 at 5.

[155] Rec. Doc. 80-1 at 5.

[156] *Id.*

[157] Rec. Doc. 105 at 11.

[158] *Id.*

Plaintiffs' credibility because they initially did not report any injury at the accident scene.[159]

The Court cannot currently determine whether such information will be relevant at trial. Nor can the Court determine whether the information will be more prejudicial than probative under Federal Rule of Evidence 403. Defendants suggest that this evidence may be relevant for impeachment purposes. Plaintiffs fail to cite any statute, evidence rule, or caselaw to support their motion. Accordingly, Plaintiffs' request is denied. The Court will revisit this issue at trial, if necessary.

### 6. Reference to State and Federal Income Tax

Plaintiffs move to exclude any suggestion whether their potential damages award will be considered income under state and federal tax laws.[160] Defendants request an appropriate jury instruction on the taxation issue.[161] Louisiana's "appellate courts have approved a district court's use of a jury instruction on [taxation], but have also approved a district court's refusal to so instruct the jury."[162] The Court will defer ruling on this request until proposed jury instructions are submitted to the Court.

### 7. Undisclosed Expert Studies

Plaintiffs move to exclude any undisclosed study that Defendants' experts used to form their opinions.[163] Defendants argue that Plaintiffs do not cite any law or jurisprudence supporting

---

[159] *Id.*

[160] Rec. Doc. 80-1 at 5.

[161] Rec. Doc. 105 at 12.

[162] *Bourg*, 2000 WL 14681, at *2 (citing *Croce v. Bromley Corp.*, 623 F.2d 1084, 1096-98 (5th Cir. 1980)).

[163] Rec. Doc. 80-1 at 6.

such a request.[164]

Plaintiffs' request is covered by Federal Rules of Civil Procedure 26(a)(2)(B) and 37(c). Indeed, Rule 26(a)(2)(B)(ii) requires an expert to include in his or her report "the facts or data considered" in forming the expert opinion.[165] Rule 37(c) states that if a party does not disclose that information in accordance with Rule 26(a), the party may not use that information at trial unless that party's failure to disclose was substantially justified or harmless.[166] Nevertheless, because Plaintiffs do not specifically identify any undisclosed study or impermissible expert testimony, Plaintiffs' abstract request is denied. Plaintiffs' request may be reasserted at trial, if necessary.

### 8.   Attorney-Client Privilege

Plaintiffs move to exclude all discussions between Plaintiffs and their counsel.[167] That request includes discussions regarding counsel's referrals for medical treatment.[168] Plaintiffs contend that such discussions may not be introduced at trial because they are protected under the attorney-client privilege.[169] In opposition, Defendants argue that the attorney-client privilege only protects discussions that facilitate legal advice.[170] Defendants contend that counsel's referrals for healthcare do not involve legal advice.[171]

---

[164] Rec. Doc. 105 at 12.

[165] Fed. R. Civ. P. 26(a)(2)(B)(ii).

[166] Fed. R. Civ. P. 37(c).

[167] Rec. Doc. 80-1 at 6.

[168] *Id.*

[169] *Id.*

[170] Rec. Doc. 105 at 13.

[171] *Id.*

In a diversity case, state law provides the applicable law of attorney-client privilege.[172] Louisiana Code of Evidence article 506(B) provides that "[a] client has a privilege to refuse to disclose, and to prevent another person from disclosing, a confidential communication, whether oral, written, or otherwise, made for the purpose of facilitating the rendition of professional legal services to the client." "The purpose of the privilege is to encourage the client to confide fully in his counsel without fear that his disclosures could be used against him by his adversaries."[173] "The party seeking to assert the attorney-client privilege has the burden of proving that the privilege is applicable."[174]

Here, Plaintiffs seek to exclude communications that may not necessarily be protected by the attorney-client privilege. On one hand, if Plaintiffs' communications with their counsel involving healthcare referrals facilitated legal advice, the communications would be protected under Article 506(B). On the other hand, if the communications were not related to legal issues and instead involved only healthcare referrals, the communications would not be protected under Article 506(B). Yet, in either scenario, *the fact* that Plaintiffs' counsel referred them to a healthcare provider is not covered by Article 506(b) because such evidence does not disclose confidential *communications*. Plaintiffs simply fail to enlighten the Court on any specific communication that is privileged. Because the Court cannot determine which specific communications Plaintiffs seek to exclude, their request is denied and may be reasserted at trial if necessary.

---

[172] *Exon Mobil Corp. v. Hill*, 751 F.3d 379, 381 (5th Cir. 2014).

[173] *Bridlington Co., L.L.C. v. S. Disposal Servs., L.L.C.*, 51,138 (La. App. 2 Cir. 2/15/17); 216 So. 3d 219, 223 (internal citations omitted).

[174] *Id.*

### 9.     Inflammatory Rhetoric by Counsel

Plaintiffs move to exclude the following inflammatory statements at trial: reference to "tort reform," "too many lawsuits," "too much ligation in our country," "jackpot justice," and winning "the lottery" in this matter.[175] Plaintiffs argue that such statements are inflammatory, irrelevant, and unduly prejudicial.[176] Defendants contend that Plaintiffs do not cite any caselaw stating that such statements are inflammatory.[177]

The hypothetical statements quoted above—or any variation of them—are not relevant under Federal Rule of Evidence 401. The hypothetical statements could only be used to inflame the jury. Further, even if the hypothetical statements could be deemed relevant, their probative value is substantially outweighed by their prejudicial effects under Federal Rule of Evidence 403. Plaintiffs' request to exclude the above-mentioned hypothetical statements, or any variation, is granted.

### 10.     Deposition Testimony

Plaintiffs move to exclude testimony from any deposition that Plaintiffs did not attend or did not receive a reasonable opportunity to attend.[178] In support, Plaintiffs cite the Louisiana Code of Civil Procedure and the Louisiana Code of Evidence.[179] Defendants note that those laws do not apply in federal court. Defendants intend to use any deposition testimony permitted under the

---

[175] Rec. Doc. 80-1 at 6–7.

[176] *Id.* at 7.

[177] Rec. Doc. 105 at 13.

[178] Rec. Doc. 80-1 at 7.

[179] *Id.*

Federal Rules of Evidence.[180]

Here, the pertinent federal rule is Federal Rule of Civil Procedure 32(a). Rule 32(a)(1) states that a party may not use deposition testimony unless the opposing party was either present when the deposition was conducted or had reasonable notice of the deposition. Yet, under Rule 32(a)(2), "[a]ny party may use a deposition to contradict or impeach the testimony given by the deponent as a witness" at trial. Here, Plaintiffs fail to specify any deposition testimony that violates Rule 32. In fact, Plaintiffs fail to specify any deposition testimony at all. Plaintiffs' abstract request to exclude deposition testimony is denied. Plaintiffs' request may be reasserted at trial if necessary.

### 11. Inadmissible Hearsay

Plaintiffs seek a ruling that "no witness may rely upon or refer to hearsay as the basis for any factual assertion or opinion."[181] Defendants contend that request does not seek to exclude testimony from any particular witness.[182] Defendants maintain that Plaintiffs' request should be denied as premature.[183]

Here, Plaintiffs' request fails to enumerate any specific evidence that constitutes inadmissible hearsay.[184] Plaintiffs basically request a ruling that the Court will correctly apply the Federal Rules of Evidence at trial. The Court is well aware of the Federal Rules of Evidence. Plaintiffs' request for such a ruling is denied.

### 12. Plaintiffs' Criminal History

---

[180] *Id.*

[181] Rec. Doc. 80-1 at 8. Plaintiffs note that exceptions exist for experts. *Id.*

[182] Rec. Doc. 105 at 13.

[183] *Id.* at 14.

[184] Rec. Doc. 80-1 at 8.

Plaintiffs move to exclude any arrest record or questions concerning Plaintiffs' criminal history.[185] In support, Plaintiffs cite multiple Louisiana evidence laws that are not applicable in federal court.[186] Defendants point out that the applicable rule, Federal Rule of Evidence 609(a), permits certain criminal convictions to be introduced into evidence.[187] Defendants argue that Plaintiffs' request should be denied because they do not reference any particular arrest or criminal record.[188]

Federal Rule of Evidence 609(a) permits a party to attack a witness's character for truthfulness with evidence of a criminal conviction.[189] Under Rule 609(a)(1), if a crime was punishable by death or by imprisonment for more than one year, such evidence "must be admitted, subject to Rule 403, in a civil case . . .  in which the witness is not a defendant."[190] Moreover, under Rule 609(b), if a crime involved a dishonest act or false statement, such evidence must be admitted regardless of the punishment.[191]

Here, Plaintiffs request a blanket exclusion of their prior criminal history.[192] Plaintiffs do not mention any specific crime, arrest, or conviction.[193] Consequently, the Court cannot apply Rule 609 to determine whether Plaintiffs' prior criminal history is admissible. Plaintiffs' request

---

[185] *Id.*

[186] *Id.*

[187] Rec. Doc. 105 at 14.

[188] *Id.*

[189] Fed. R. Evid. 609(a).

[190] Fed. R. Evid. 609(a)(1).

[191] Fed. R. Evid. 609(b).

[192] Rec. Doc. 80-1 at 8–9.

[193] *Id.*

is denied. Plaintiffs may re-urge this issue at trial when specific prior criminal history is provided to the Court.

### 13.    Plaintiffs' Counsel Advancing Court Costs

Plaintiffs move to exclude any reference to Plaintiffs' counsel advancing court costs and litigation expenses.[194] Plaintiffs argue that the collateral source rule and Federal Rule of Evidence 403 prohibit any reference to Plaintiffs' counsel advancing court costs and litigation expenses.[195] Defendants oppose that request, but they do not provide a separate argument concerning Plaintiffs' counsel advancing court costs or litigation expenses.[196] Instead, Defendants merely repeat their argument that the collateral source rule does not apply to Medport's purchase of Plaintiffs' medical expenses.[197]

Here, Plaintiffs' instant request addresses their counsel advancing court costs and other litigation expenses—not only medical expenses. Court costs and other litigation expenses cannot be used to assess any potential special damages awarded to Plaintiffs.[198] Defendants neither explain how Plaintiffs' counsel advancing court costs and litigation expenses are relevant under Federal Rule of Evidence 401 nor how such advances pass the balancing test under Federal Rule of Evidence 403. Accordingly, Defendants may not refer to Plaintiffs' counsel advancing court costs or litigation expenses at trial.

Yet the Court notes that this ruling does not apply to attorney-negotiated write-offs of

---

[194] *Id.* at 11.

[195] *Id.* at 11–12.

[196] Rec. Doc. 105 at 14.

[197] *Id.*

[198] *Thomas*, 2019 WL 8888169, at *8.

Plaintiffs' medical expenses. The Louisiana Supreme Court has clearly stated that attorney-negotiated write-offs of medical expenses are not covered by the collateral source rule.[199]

### 14.    Plaintiffs' Cell Phone Records

Plaintiffs move to exclude any evidence involving Plaintiffs' cell phone records.[200] Plaintiffs contend that their cell phone records are hearsay and irrelevant to the facts of this case.[201] Plaintiffs also contend that Defendants will use the cell phone records to confuse and prejudice the jury.[202]

Defendants oppose excluding Plaintiffs' cell phone records.[203] Defendants submit that Plaintiffs staged the subject collision.[204] Defendants assert that Plaintiffs' cell phone records "establish connections to multiple other alleged fraud claimants involved in extremely similar accidents in both location and circumstances."[205]

Plaintiffs' cell phone records are at minimum relevant to Defendants' defense that they are not *at fault* for the subject collision. Plaintiffs' request to exclude all of their cell phone records is denied. The Court will rule on the admissibility of specific cell phone records at trial, if

---

[199] In *Hoffman v. 21st Century North American Insurance Company*, the plaintiff's attorney negotiated a discount on the client's medical bills. *Hoffman*, 209 So. 3d at 706. The court declined to apply the collateral source rule to the attorney-negotiated discount. *Id.* The court reasoned that "allowing the plaintiff to recover an amount for which he has not paid, and for which he has no obligation to pay, is at cross purposes with the basic principles of tort recovery in our Civil Code." *Id.* The court concluded that a defendant cannot be "held responsible for any medical bills or services the plaintiff did not actually incur and which the plaintiff need not repay." *Id.*

[200] Rec. Doc. 80-1 at 13.

[201] *Id.*

[202] *Id.*

[203] Rec. Doc. 105 at 15.

[204] *Id.*

[205] *Id.*

necessary.

### 15.   Evidentiary Proceedings for Contested Evidence

Plaintiffs request an order that before Defendants present any evidence related to any motion in limine, Defendants first request an evidentiary ruling from the Court outside of the jury's presence.[206] Defendants simply respond that they will comply with "all [o]rders to this effect."[207]

Here, the Court requiring Defendants to request an evidentiary ruling on evidence it previously addressed would waste time, delay proceedings, and defeat the purpose of pretrial motions in limine. Plaintiffs' overinclusive request is denied. Yet, if Defendants desire to introduce evidence within a category that the Court has excluded in an order, they must first request a ruling that the evidence is not subject to that order. Then, if necessary, the Court will rule on the evidentiary issue outside of the jury's presence.

### 16.   Plaintiffs' Prior Injuries and Motor-Vehicle Accidents

Plaintiffs move to exclude any evidence concerning their prior injuries and motor-vehicle collisions.[208] Plaintiffs note the following prior injuries are at issue: (i) Alvin Polk's prior nose fracture, (ii) Wayland Collins' prior back injuries, and (iii) Candy Kelly's prior ankle and foot injuries.[209] Plaintiffs contend that these injuries are unrelated to the instant motor-vehicle collision.[210] Plaintiffs also contend that they were asymptomatic before the instant motor-vehicle

---

[206] Rec. Doc. 80-1 at 14.

[207] Rec. Doc. 105 at 16.

[208] Rec. Doc. 80-1 at 14–15.

[209] *Id.*

[210] *Id.*

collision.[211] In opposition, Defendants contend that Plaintiffs have been involved in prior accidents that resulted in medical treatment.[212] Defendants maintain that Plaintiffs' prior injuries and accidents are relevant to medical causation.[213]

Evidence involving a party's similar injuries before the subject collision is relevant because it addresses whether the subject collision in fact caused the injuries in question. Plaintiffs cite *Rodrigue v. Wood Group PSN* to argue that "prior injuries are not a defense if [a] plaintiff was asymptomatic and th[e] incident served to aggravate a pre-existing condition."[214] Plaintiffs assert that their pre-existing injuries were asymptomatic before the subject collision.[215] By contrast, Defendants state that Plaintiff Alvin Polk had a pre-existing disc herniation at the C3-4 level—the same level that Mr. Polk received surgery on after the subject collision.[216]

Neither party presents any evidence nor citations supporting their assertions.[217] As a result, the Court cannot determine whether Plaintiffs' pre-existing similar injuries were asymptomatic. Plaintiffs' motion for a blanket ban on such evidence is denied.

## V. Conclusion

Considering the foregoing reasons,

---

[211] *Id.*

[212] Rec. Doc. 105 at 17.

[213] *Id.* at 17.

[214] Rec. Doc. 80-1 at 14.

[215] *Id.* at 14–15.

[216] Rec. Doc. 105 at 17.

[217] Rec. Doc. 80-1 at 14–15; Rec. Doc. 105 at 17.

**IT IS HEREBY ORDERED** that Plaintiffs Wayland Collins, Candy Kelly, and Alvin Polk's "Omnibus Motion in Limine"[218] is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that the motion is **GRANTED** to the extent it seeks to exclude the following categories of evidence: (1) any suggestion that the jurors' "insurance rates, premiums[,] or medical bills" may increase because of a damages award in this case; (2) inflammatory statements at trial such as reference to "tort reform," "too many lawsuits," "too much ligation in our country," "jackpot justice," and winning "the lottery" in this matter; and (3) Plaintiffs' counsel advancing court costs or litigation expenses.[219] The motion is **DENIED** in all other respects.

**NEW ORLEANS, LOUISIANA,** this __2nd__ day of July, 2020.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[218] Rec. Doc. 80.

[219] This ruling does not apply to attorney-negotiated write-offs of Plaintiffs' medical expenses.