UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WAYLAND COLLINS, et al.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-7465** |
| **JOHN C. BENTON, et al.** | **SECTION: "G"(5)** |

## ORDER AND REASONS

This action arises from an alleged motor vehicle collision in the Parish of Orleans, State of Louisiana.[1] Before the Court is Defendant General Star Indemnity Company's ("General Star") "Motion to Dismiss or, Alternatively, Motion for More Definite Statement."[2] Plaintiffs Wayland Collins, Candy Kelly, and Alvin Polk (collectively, "Plaintiffs") oppose the motion.[3] Also before the Court is General Star's "Unopposed Motion to Extend Certain Pre-trial Deadlines."[4] Considering the motions, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion to dismiss in part and denies the motion to dismiss in part. Additionally, the Court denies the motion to extend certain pre-trial deadlines as moot.

## I. Background

On August 7, 2018, Plaintiffs filed a complaint against Defendants Mark Ingle ("Ingle"), John C. Benton d/b/a/ Q&M Motor Transports ("Q&M Motor"), and Northland Insurance

---

[1] Rec. Doc. 1 at 1.

[2] Rec. Doc. 195.

[3] Rec. Doc. 198.

[4] Rec. Doc. 256.

1

Company ("Northland") in this Court, seeking recovery for injuries and property damage that Plaintiffs allegedly sustained in an automobile accident.[5] According to the Complaint, on August 9, 2017, Plaintiff Wayland Collins was operating a vehicle on Interstate 10 when, while exiting onto Interstate 510, he collided with an 18-wheeler driven by Ingle.[6] Plaintiffs allege that Ingle was turning onto Interstate 510 and negligently misjudged his clearance, resulting in the motor vehicle incident at issue.[7] Plaintiffs additionally allege that Ingle was cited for an "improper lane change."[8] Plaintiffs bring negligence claims against Ingle and Q&M Motor, who Plaintiffs allege is Ingle's principal, under the doctrine of *respondeat superior*.[9] Plaintiffs also bring claims against Northland, who purportedly insured the 18-wheeler operated by Ingle.[10]

On December 30, 2019, Plaintiffs moved to extend the time to amend pleadings in order to add several defendants to this litigation.[11] On January 9, 2020, the Court granted Plaintiffs' motion to extend the time to amend pleadings.[12] On January 15, 2020, Plaintiffs filed a first supplemental and amending complaint (the "Amended Complaint").[13] In the Amended Complaint, Plaintiffs name General Star, Innovative Transport Solution, Inc., ABC Insurance Company, Automotive Transport Services, Inc., Def Insurance Company, US AutoLogistics,

---

[5] Rec. Doc. 1.

[6] *Id.*

[7] *Id.*

[8] *Id.* at 4.

[9] *Id.* at 5.

[10] *Id.*

[11] Rec. Doc. 164.

[12] Rec. Doc. 178.

[13] Rec. Doc. 180.

LLC ("US AutoLogistics"), GHI Insurance Company, The Hertz Corporation d/b/a Hertz Rent-A-Car ("Hertz"), and XYZ Insurance Company as additional defendants.[14]

In the Amended Complaint, Plaintiffs allege the following with respect to General Star:

General Star Indemnity Company, at all times relevant herein, had in full force and effect a policy of liability insurance coverage of excess and/or umbrella coverage in favor of defendants, John Benton, d/b/a Q & M Transport, Defendant Ingle and/or U.S. AutoLogistics, LLC, as the permissive operator of the insured vehicle, for his negligence in connection with the August 9, 2017, motor vehicle collision at issue herein. As a result of the foregoing and as per applicable Louisiana law, General Star Indemnity Company has been named herein as party-defendant and is answerable and/or responsible for the negligence and/or liability.[15]

Plaintiffs subsequently dismissed the claims against US AutoLogistics and Hertz.[16]

On April 13, 2020, General Star filed the instant "Motion to Dismiss or, Alternatively, Motion for More Definite Statement."[17] Plaintiffs filed an opposition on April 27, 2020.[18] On May 7, 2020, with leave of Court, General Star filed a reply memorandum in further support of the instant motion.[19] On September 1, 2020, with leave of Court, General Star filed a supplemental memorandum in support of the instant motion.[20] On September 14, 2020, with leave of Court, Plaintiffs filed a supplemental opposition.[21]

On January 8, 2020, General Star filed an "Unopposed Motion to Extend Certain Pre-Trial

---

[14] *Id.* at 1–4.

[15] *Id.* at 7.

[16] Rec. Doc. 219; Rec. Doc. 221.

[17] Rec. Doc. 195.

[18] Rec. Doc. 198.

[19] Rec. Doc. 203.

[20] Rec. Doc. 235.

[21] Rec. Doc. 250.

Deadlines."[22] In that motion, General Star requests a two-week continuance of the deadline for General Star to submit written expert reports and a two-week continuance of the deadline for all parties to file witness and exhibit lists.[23] General Star requests a continuance of these deadlines pending ruling on the instant motion to dismiss.[24]

## II. Parties' Arguments

### A. *General Star's Arguments in Support of the Motion to Dismiss*

General Star urges the Court to dismiss Plaintiffs' claims against General Star pursuant to Federal Rule of Civil Procedure 12(b)(6) for three reasons.[25] First, General Star argues that the allegations set forth in the Amended Complaint are "insufficient to state a claim against General Star."[26] Specifically, General Star contends that Plaintiffs do not "specify the insurance policy that General Star allegedly issued that purportedly provides coverage, nor do Plaintiffs identify an actual alleged insured."[27] In addition, General Star asserts that the Amended Complaint "does not contain any allegations as to why General Star may be liable to Plaintiffs under the unspecified insurance policy."[28]

Second, General Star argues that there are "insufficient facts to support a procedural right to sue General Star."[29] Specifically, General Star avers that "Plaintiffs do not claim to be insureds

---

[22] Rec. Doc. 256.

[23] *Id.*

[24] *Id.* at 2.

[25] Rec. Doc. 195-1 at 4–13.

[26] *Id.* at 5.

[27] *Id.* at 6.

[28] *Id.*

[29] *Id.*

under any policy issued by General Star" and "therefore cannot assert a contractual claim against General Star."[30] General Star also contends that "Plaintiffs cannot assert a plausible tort claim against General Star."[31] In addition, General Star asserts that "[t]he only possible procedural vehicle arguably available to Plaintiffs to sue General Star is [the] Louisiana Direct Action Statute" but General Star claims that "the factual allegations are insufficient to support a direct-action claim against General Star."[32]

Third, General Star argues that the "Excess Automobile Liability Insurance Policy" issued by General Star to Q&M Motor for the period of May 20, 2017 to May 20, 2018 (the "Excess Policy") "does not apply to the facts of this case."[33] General Star contends that the Excess Policy "is implicated only if the claimed damages exceed the $1,000,000 attachment point."[34] General Star then asserts that Plaintiffs "fail to state a plausible claim against General Star under the [Excess Policy]" because the Excess Policy "applies only to 'occurrences' arising from the Contract between [Q&M Motor] and [US AutoLogistics]" and Plaintiffs do not allege that the collision occurred in connection with that contract.[35]

In the alternative, General Star argues that the Court should order Plaintiffs to provide a more definite statement of their claims pursuant to Federal Rule of Civil Procedure 12(e).[36] General Star asserts that "Plaintiffs must clarify the nature of the contracts and the parties thereto

---

[30] *Id.*

[31] *Id.* at 8.

[32] *Id.* at 6–7.

[33] *Id*. at 7–8.

[34] *Id.* at 8.

[35] *Id.* at 9–10.

[36] *Id.* at 13–14.

before General Star can answer the Amended Complaint and plead affirmative defenses."[37]

### B.     *Plaintiffs' Arguments in Opposition to the Motion to Dismiss*

In opposition, Plaintiffs contend that the instant motion to dismiss should be denied because the Amended Complaint "clearly describe[s] [Plaintiffs'] theory of liability against the Defendant, General Star Indemnity Company."[38] First, Plaintiffs argue that the Excess Policy issued by General Star identifies Q&M Motor as a named insured.[39] Plaintiffs further argue that the Louisiana Direct Action Statute enables Plaintiffs to bring tort claims against General Star as insurer for Q&M Motor.[40]

Second, Plaintiffs contend that the factual allegations set forth in the Amended Complaint "are far beyond a speculative level."[41] Plaintiffs further contend that the allegations "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[42]

Third, Plaintiffs oppose General Star's argument that Plaintiffs fail to adequately plead that the Excess Policy applies to the facts of this case.[43] Plaintiffs argue that they have alleged facts to show that the collision occurred in connection with a contractual relationship between US AutoLogistics and Q&M Motor.[44] Specifically, Plaintiffs allege that Ingle was "performing duties on behalf of [Q&M Motor] and/or [US AutoLogistics] and/or [Hertz]" when the collision

---

[37] *Id.* at 14.

[38] Rec. Doc. 198 at 3.

[39] *Id.* at 5–7.

[40] *Id.* at 8.

[41] *Id.* at 9–10.

[42] *Id.* at 10.

[43] *Id.* at 10–13.

[44] *Id.*

occurred.[45] Additionally, Plaintiffs contend that General Star "knew that Plaintiffs' claims will exceed $1,000,000.00," the point at which the Excess Policy is implicated, from emails and letters transmitted in connection with the instant lawsuit.[46]

C.  **General Star's Arguments in Further Support of the Motion to Dismiss**

In the reply brief, General Star offers two principal arguments in further support of the motion to dismiss. First, General Star argues that "Plaintiffs impermissibly ask this Court to look beyond the four corners" of the Amended Complaint to consider "unpled allegations," "multiple references to e-mail communications," "record documents," and "statements in Opposition that damages exceed the $1,000,000 policy limits of the Northland policy."[47] General Star contends that the "vague allegations" in the Amended Complaint fail to identify, among other things, who was insured under the Excess Policy.[48]

Second, General Star reiterates that Plaintiffs have not alleged that the purported collision at issue in this litigation occurred in connection with the Excess Policy issued by General Star.[49] In support of this argument, General Star points to the "Bill of Lading" between Hertz and Q&M Motor, which General Star claims shows that the Excess Policy did not provide coverage for the alleged collision.[50]

---

[45] *Id.* at 11.

[46] *Id.* at 13–14.

[47] Rec. Doc. 203 at 2.

[48] *Id.* at 3.

[49] *Id.* at 4.

[50] *Id.* at 5.

**D.** *General Star's Supplemental Arguments in Further Support of the Motion to Dismiss*

In the supplemental memorandum in support of the motion to dismiss, General Star argues that "there is no legal basis for General Star to remain in this lawsuit" because Hertz and US AutoLogistics have been dismissed from the instant action.[51] General Star contends that the dismissal of US AutoLogistics "further evidence[s]" that US AutoLogistics was not involved in the alleged accident and there was no coverage under the Excess Policy issued by General Star.[52] General Star also contends that it has "repeatedly attempted to obtain a voluntary dismissal" from the instant action to no avail, and General Star requests that this Court "award it any and all remedies" in light of "Plaintiffs' unreasonable and meritless refusal to voluntarily dismiss General Star."[53]

**E.** *Plaintiffs' Arguments in Further Opposition to the Motion to Dismiss*

In the supplemental opposition brief, Plaintiffs argue that in the Amended Complaint, Plaintiffs allege that Q&M Motor is a named insured under the Excess Policy issued by General Star.[54] Plaintiffs contend that "the dismissal of Hertz and US AutoLogistics has nothing to do with the instant claims" against General Star.[55]

### III. Legal Standard

**A.** *Legal Standard for 12(b)(6) Motion to Dismiss*

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for

---

[51] Rec. Doc. 235 at 1.

[52] *Id.* at 2.

[53] *Id.* at 3–4.

[54] Rec. Doc. 250 at 1.

[55] *Id.* at 2. Plaintiffs assert that Hertz and US AutoLogistics were dismissed because the evidence indicated that Hertz "never had any agreement" with US AutoLogistics for this specific job. *Id.*

failure to state a claim upon which relief can be granted."[56] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[57] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[58] "Factual allegations must be enough to raise a right to relief above the speculative level."[59] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[60]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[61] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[62] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[63] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[64] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of

---

[56] Fed. R. Civ. P. 12(b)(6).

[57] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[58] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

[59] *Twombly*, 550 U.S. at 556.

[60] *Id.* at 570.

[61] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[62] *Iqbal*, 556 U.S. at 677–78.

[63] *Id.* at 679.

[64] *Id.* at 678.

the elements of a cause of action.[65] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[66] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[67] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[68]

B.     *Legal Standard for Rule 12(e) Motion for a More Definite Statement*

Rule 12(e) entitles a party to a more definite statement when a portion of a pleading "is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading."[69] The motion must state the defects in the pleading and the details desired.[70] A party may not use a Rule 12(e) motion as a substitute for discovery.[71] However, the Supreme Court has held that "[i]f a pleading fails to specify the allegations in a manner that provides sufficient notice," then a Rule 12(e) motion may be appropriate.[72] In deciding whether to grant a Rule 12(e) motion for a more definite statement, the trial judge is given considerable discretion.[73]

---

[65] *Id.*

[66] *Id.*

[67] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[68] *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, C.J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)); *Carbe v. Lappin*, 492 F.3d 325, 328 n. 9 (5th Cir. 2007).

[69] Fed. R. Civ. P. 12(e). *See Cole v. JEBF Holdings, LLC*, No. 14-0298, 2014 WL 6327088, at *2 (E.D. La. Nov. 13, 2014) (Brown, J.).

[70] *See* Fed. R. Civ. P. 12(e).

[71] *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 132 (5th Cir. 1959).

[72] *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

[73] *See Mitchell*, 269 F.2d at 129. *See also Cole*, 2014 WL 6327088, at *2 (internal citation omitted) ("A

C.  **_The Louisiana Direct Action Statute_**

Louisiana Revised Statute 22:1269(B)(1), known as the Louisiana Direct Action Statute, "affords a victim the right to sue the insurer directly when the liability policy covers a certain risk."[74] The statute pertinently provides: "The injured person . . . shall have a right of direct action against the insurer within the terms and limits of the policy; and, such action may be brought against the insurer alone, or against both the insured and insurer jointly and in solido . . . ."[75] Additionally, the statute provides that such action may be brought against the insurer alone under certain enumerated conditions.[76]

## IV. Analysis

General Star urges the Court to dismiss Plaintiffs' claims against General Star pursuant to Federal Rule of Civil Procedure 12(b)(6).[77] In the alternative, General Star moves the Court to order Plaintiffs to provide a more definite statement of the claims against General Star pursuant to Federal Rule of Civil Procedure 12(e).[78] General Star contends that "the factual allegations are insufficient to support a direct-action claim against General Star."[79] General Star also contends that dismissal of General Star is appropriate in light of Plaintiffs' dismissal of US AutoLogistics

---

district court's order pursuant to Rule 12(e) will not be reversed absent an abuse of discretion.").

[74] _Soileau v. Smith True Value & Rental_, 2012-1711 (La. 8/30/2013); 144 So. 3d 771, 780; _see also_ La. Rev. Stat. § 22:1269.

[75] La. Rev. Stat. § 22:1269(B)(1).

[76] _Id._

[77] Rec. Doc. 195.

[78] _Id._

[79] Rec. Doc. 195-1 at 6–7.

11

and Hertz as parties to the instant action.[80] In opposition, Plaintiffs argue that the instant motion should be denied because the Amended Complaint "clearly describe[s] [Plaintiffs'] theory of liability" against General Star under the Louisiana Direct Action Statute.[81] Plaintiffs also argue that dismissal of Plaintiffs' claims against US AutoLogistics and Hertz has no bearing on Plaintiffs' allegations against General Star.[82]

As an initial matter, both parties urge the Court to consider evidence in the record obtained through discovery.[83] In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto.[84] In addition, the Fifth Circuit has held that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."[85] Accordingly, the Court limits its review of this matter to the contents of the pleadings and the "Excess Automobile Liability Policy" attached by General Star to the instant motion[86] because the Excess Policy is referenced in the Amended Complaint and is central to Plaintiffs' allegation that General Star provided insurance coverage to Q&M Motor for the alleged collision.[87]

---

[80] Rec. Doc. 235.

[81] Rec. Doc. 198 at 3, 8.

[82] Rec. Doc. 250 at 2.

[83] *See, e.g.*, Rec. Doc. 198 at 13 (discussing excerpts of emails); Rec. Doc. 203 at 5 (referencing "Bill of Lading").

[84] Fed. R. Civ. P 12(b)(6).

[85] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir.1993)).

[86] Rec. Doc. 195-2.

[87] Rec. Doc. 180 at 7.

This tort action arises out of a motor vehicle collision that Plaintiffs allege was caused by the negligent operation of an 18-wheeler driven by Ingle.[88] Plaintiffs name Q&M Motor as a defendant in the instant action under the doctrine of *respondeat superior*.[89] In the Amended Complaint, Plaintiffs set forth the following allegations against General Star:

> Paragraph 2(A): **GENERAL STAR INDEMNITY COMPANY**, a foreign corporation upon information and belief, incorporated in a State other than the State of Louisiana, who **upon information and belief at all times relevant herein provided excess and/or umbrella coverage to [Q&M Motor] and/or [US AutoLogistics] for the August 9, 2017 motor vehicle collision at issue**.[90]
> . . .
> Paragraph 14(A): **General Star Indemnity Company, at all times relevant herein, had in full force and effect a policy of liability insurance coverage of excess and/or umbrella coverage in favor of defendants, [Q&M Motor], Defendant Ingle and/or [US AutoLogistics]**, as the permissive operator of the insured vehicle, for his negligence in connection with the August 9, 2017, motor vehicle collision at issue herein. As a result of the foregoing and as per applicable Louisiana law, General Star Indemnity Company has been named herein as party-defendant and is answerable and/or responsible for the negligence and/or liability.[91]

In opposition to the instant motion, Plaintiffs clarify that the cause of action against General Star arises under the Louisiana Direct Action Statute.[92] Pursuant to the statute, Plaintiffs may sue General Star as insurer "within the terms and limits of the policy."[93]

The Excess Policy issued by General Star names Q&M Motor as the "first named insured" under the policy.[94] However, the terms of the Excess Policy state that the policy applies only in

---

[88] Rec. Doc. 1.

[89] *Id.* at 5.

[90] Rec. Doc. 180 at 1–2 (emphasis added).

[91] *Id.* at 7 (emphasis added).

[92] Rec. Doc. 198 at 8.

[93] La. R.S. 22:1269(B)(1).

[94] Rec. Doc. 195-2 at 3.

the following circumstances:

> The insurance provided by this policy applies only to ultimate net loss in excess of underlying insurance for damages for which the insured is legally liable, or costs or expenses, arising out of, resulting from, caused or contributed to by:
> a.     An occurrence which is covered by the controlling underlying policy; and
> b.     The designated contract in the Schedule above.[95]

The "underlying insurance" referenced in this clause of the Excess Policy is the insurance policy issued by Northland to Q&M Motor which provides up to $1,000,000 in liability coverage.[96] In addition, the "designated contract" referenced in this clause of the Excess Policy is a "Master Transporter Agreement" between Q&M Motor and US AutoLogistics.[97] Therefore, the clear terms of the Excess Policy indicate that the policy applies only to incidents "arising out of, resulting from, caused or contributed to by" the specified contract between Q&M Motor and US AutoLogistics where liability exceeds $1,000,000.

It is unclear from Plaintiffs' allegations whether the alleged collision occurred in connection with a contract between Q&M Motor and US AutoLogistics. In the Amended Complaint, Plaintiffs allege that "[Hertz] had contracted with [US AutoLogistics] and/or [Q&M Motor] to perform duties on its behalf of returning return vehicles to one of its affiliate offices."[98] Plaintiffs' allegations suggest that the motor vehicle collision at issue occurred in connection with

---

[95] Rec. Doc. 195-2 at 21 .

[96] *Id.* at 4.

[97] *Id.* at 21.

[98] Rec. Doc. 180 at 4; *see also* Rec. Doc. 180 at 6 ("Upon further information and belief, a contract, agreement or understanding between Hertz Rent-A-Car, US AutoLogistics, LLC, John Benton d/b/a Q&M Motor Transport exists whereupon each of the parties were operating in furtherance of each of their individual interests in the transportation of vehicles to the benefit of Hertz Rent-A-Car rendering each of the named Defendants liable as this accident occurred in the course and scope of transporting The Hertz Corporation d/b/a Hertz Rent-A-Car vehicles.").

that alleged contract.[99] Moreover, in opposition to the instant motion, Plaintiffs rely on this alleged contract to argue that Plaintiffs sufficiently allege that the Excess Policy applies in the instant action.[100] Yet Plaintiffs subsequently dismissed their claims against Hertz and US AutoLogistics and now contend that the dismissal of these parties from the instant action does not bear on the applicability of the Excess Policy.[101] Given that the Excess Policy, by its terms, applies only to occurrences in connection with a contract between Q&M Motor and US AutoLogistics, it is unclear how the Excess Policy is implicated in the instant action following dismissal of Plaintiffs' claims against US AutoLogistics and Hertz.[102]

Plaintiffs' allegations are too vague and ambiguous for the Court to decipher how Plaintiffs assert that the Excess Policy applies to the accident at issue in this litigation—especially considering that Plaintiffs voluntarily dismissed their claims against US AutoLogistics and Hertz. Accordingly, the Court grants General Star's request for a more definite statement pursuant to Rule 12(e). Plaintiffs must provide a more definite statement setting forth allegations regarding how the Excess Policy—which by its terms only applies to occurrences "arising out of, resulting from, caused or contributed to by" a contract between Q&M Motor and US AutoLogistics—applies to the instant action.

### V. Conclusion

Considering the foregoing reasons, the Court finds that Plaintiffs' ambiguous allegations

---

[99] *Id.*

[100] Rec. Doc. 198 at 11.

[101] Rec. Doc. 250 at 2.

[102] In addition, it is unclear from Plaintiffs' allegations whether liability exceeds the $1,000,000 threshold below which the Excess Policy does not apply. In the Amended Complaint, Plaintiffs do not allege damages in excess of $1,000,000. *See* Rec. Doc. 180.

leave uncertainty surrounding the applicability of the Excess Policy issued by General Star to Q&M Motor in this action. Therefore, the Court will allow Plaintiffs to provide a more definite statement to allege how the Excess Policy is implicated in this action following the dismissal of Plaintiffs' claims against US AutoLogistics and Hertz.

Additionally, the Court finds that General Star's "Unopposed Motion to Extend Pre-trial Deadlines" is moot.[103] General Star sought a two-week continuance of the deadline for General Star to submit written expert reports and a two-week continuance of the deadline for all parties to file witness and exhibit lists pending ruling on the instant motion to dismiss.[104] The parties have already filed witness and exhibit list in accordance with the deadlines set by the Court.[105]

Accordingly,

**IT IS HEREBY ORDERED** that "Defendant General Star Indemnity Company's Motion to Dismiss or, Alternatively, Motion for More Definite Statement"[106] is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** to the extent that General Star requests a more definite statement of Plaintiffs' claims against General Star pursuant to Federal Rule of Civil Procedure 12(e). The Motion is **DENIED** in all other respects.

---

[103] Rec. Doc. 256.

[104] *Id.*

[105] Rec. Docs. 260, 261, 262.

[106] Rec. Doc. 195.

**IT IS FURTHER ORDERED** that Plaintiffs shall file a more definite statement alleging how the Excess Policy issued by General Star to Q&M Motor is implicated in this action within fourteen days of this Order.

**IT IS FURTHER ORDERED** that General Star's "Unopposed Motion to Extend Certain Pre-trial Deadlines"[107] is **DENIED AS MOOT**.

**NEW ORLEANS, LOUISIANA,** this 26th day of January, 2021.

_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[107] Rec. Doc. 256.