## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**WAYLAND COLLINS, et al.**                                         **CIVIL ACTION**

**VERSUS**                                                          **NO. 18-7465**

**JOHN C. BENTON, et al.**                                          **SECTION: "G"(5)**

## ORDER AND REASONS

This action arises from an alleged motor vehicle collision in the Parish of Orleans, State of Louisiana.[1] Before the Court is Plaintiffs Wayland Collins, Candy Kelly, and Alvin Polk (collectively, "Plaintiffs") "Re-Urged Motion in Limine."[2] Defendants Mark Ingle, John C. Benton d/b/a Q&M Motor Transports, Innovative Transport Solution, Inc., Automotive Transport Services, Inc., and Northland Insurance Company (collectively, "Defendants") oppose the motion.[3] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion.

## I. Background

On August 7, 2018, Plaintiffs filed a complaint against Defendants Mark Ingle ("Ingle"), John C. Benton d/b/a/ Q&M Motor Transports ("Q&M Motor"), and Northland Insurance Company ("Northland") in this Court, seeking recovery for injuries and property damage that

---

[1] Rec. Doc. 1 at 1.

[2] Rec. Doc. 232.

[3] Rec. Doc. 236.

Plaintiffs allegedly sustained in an automobile accident.[4] According to the Complaint, on August 9, 2017, Plaintiff Wayland Collins was operating a vehicle on Interstate 10 when, while exiting onto Interstate 510, he collided with an 18-wheeler driven by Ingle.[5] Plaintiffs allege that Ingle was turning onto Interstate 510 and negligently misjudged his clearance, resulting in the motor vehicle incident at issue.[6] Plaintiffs additionally allege that Ingle was cited for an "improper lane change."[7] Plaintiffs bring negligence claims against Ingle and Q&M Motor, who is allegedly Ingle's principal, under the doctrine of *respondeat superior*.[8] Plaintiffs also bring claims against Northland, who purportedly insured the 18-wheeler operated by Ingle.[9]

On December 30, 2019, Plaintiffs moved to extend the time to amend pleadings in order to add several defendants to this litigation.[10] On January 9, 2020, the Court granted Plaintiffs' motion to extend the time to amend pleadings.[11] On January 15, 2020, Plaintiffs filed a first supplemental and amending complaint (the "Amended Complaint").[12] In the Amended Complaint, Plaintiffs name General Star, Innovative Transport Solution, Inc., ABC Insurance Company, Automotive Transport Services, Inc., Def Insurance Company, US AutoLogistics, LLC ("US AutoLogistics"), GHI Insurance Company, The Hertz Corporation d/b/a Hertz Rent-

---

[4] Rec. Doc. 1.

[5] *Id.*

[6] *Id.*

[7] *Id.* at 4.

[8] *Id.* at 5.

[9] *Id.*

[10] Rec. Doc. 164.

[11] Rec. Doc. 178.

[12] Rec. Doc. 180.

A-Car ("Hertz"), and XYZ Insurance Company as additional defendants.[13] Plaintiffs subsequently dismissed their claims against US AutoLogistics and Hertz.[14]

On November 19, 2019, Plaintiffs filed an Omnibus Motion in Limine.[15] In the briefs submitted on that motion, the parties discussed payments made by a third-party litigation funding company, Medport LA, LLC ("Medport").[16] However, Plaintiffs did not include any specifics as to the information that Plaintiffs sought to be excluded.[17] Accordingly, the Court denied the motion to the extent it sought to exclude payments made by Medport, stating that "[i]f Plaintiffs seek to exclude evidence involving Medport's discounted payments, they must file a motion in limine specifically explaining which payments should be excluded."[18]

On August 25, 2020, Plaintiffs filed the instant "Re-Urged Motion in Limine."[19] In the motion, Plaintiffs seek to exclude any evidence (1) reflecting payments that Medport made to Plaintiffs' healthcare providers and (2) the Master Purchase Agreement and un-redacted Bill of Sale between Medport and Plaintiffs' healthcare providers.[20] Defendants filed an opposition on September 1, 2020.[21] On September 14, 2020, with leave of Court, Plaintiffs filed a reply brief in

---

[13] *Id.* at 1–4.

[14] Rec. Doc. 219; Rec. Doc. 221.

[15] Rec. Doc. 80.

[16] *See* Rec. Doc. 224 at 18–19.

[17] *Id*. at 19.

[18] *Id*.

[19] Rec. Doc. 232.

[20] *Id*. at 1.

[21] Rec. Doc. 236.

further support of the motion.[22]

## II. Parties' Arguments

### A.    *Plaintiffs' Arguments in Support of the Motion in Limine*

Plaintiffs move the Court to exclude any evidence (1) reflecting payments that Medport made to Plaintiffs' healthcare providers and (2) the Master Purchase Agreement and un-redacted Bill of Sale between Medport and Plaintiffs' healthcare providers.[23] Plaintiffs assert that Medport is a medical "factoring" company that purchases medical accounts receivables from healthcare providers in personal injury cases.[24] According to Plaintiffs, Medport buys the receivables at a discounted rate, but Medport is assigned the rights to payment on the full amount billed.[25] Therefore, Plaintiffs assert that they still owe the full amount of the medical bills to Medport.[26]

Plaintiffs submit a declaration of Kenneth Fust, a principal of Medport, in support of the motion.[27] Mr. Fust's declaration states that Medport holds $207,113.62 in accounts receivables related to treatment, care, testing, and/or medications provided to Plaintiff Alvin Polk;[28] $510,969.95 in accounts receivables related to treatment, care, testing, and/or medications provided to Plaintiff Wayland Collins;[29] and $157,219.80 in accounts receivables related to

---

[22] Rec. Doc. 247.

[23] Rec. Doc. 232 at 1.

[24] Rec. Doc. 232-1 at 1.

[25] *Id*. at 1–2.

[26] *Id*. at 2.

[27] Rec. Doc. 232-4 at 2.

[28] *Id*. at ¶ 9.

[29] *Id*. at ¶ 10.

4

treatment, care, testing, and/or medications provided to Plaintiff Candy Kelly.[30] According to Mr. Fust, no payments have been made toward Plaintiffs' respective balances to date.[31]

Plaintiffs cite a decision by another district judge in the Eastern District of Louisiana allowing a plaintiff to produce the full amount of the medical bills because the Medport agreement did not provide a discount to the plaintiff.[32] Similarly, Plaintiffs note that a district judge in the Middle District of Louisiana found that evidence of the full amount of the medical bills was admissible because the plaintiff would owe the full amount to the financing company.[33] Additionally, Plaintiffs contend that the Louisiana Fourth Circuit Court of Appeal has held that it is reversible error to prevent the plaintiff from introducing the full amount of her medical expenses.[34] Therefore, Plaintiffs assert that evidence reflecting payments that Medport made to Plaintiffs' healthcare providers is irrelevant.[35]

Finally, Plaintiffs argue that the agreements and payments between Medport and Plaintiffs' medical providers are not relevant to show bias.[36] Plaintiffs assert that this case is distinguishable from *ML Healthcare Services, LLC v. Publix Super Markets, Inc.*, where the Eleventh Circuit upheld the admissibility of a referral agreement between a third-party funding

---

[30] *Id*. at ¶ 11.

[31] *Id*. at ¶¶ 9–11.

[32] Rec. Doc. 232-1 at 6–8 (citing *Dupont v. Costco Wholesale Corp.*, No. 17-4469, 2019 WL 5959564 (E.D. La. Nov. 13, 2019)).

[33] *Id*. at 8–9 (citing *Whitley v. Pinnacle Entm't, Inc. of Delaware*, No. 15-595, 2017 WL 1051188, at *2 (M.D. La. Mar. 20, 2017)).

[34] *Id*. at 10–11 (citing *McCloskey v. Higman Barge Lines, Inc.*, 2018-1008 (La. App. 4 Cir. 4/10/2019); 269 So. 3d 1173; *Green v. Hollywood Trucks, LLC*, No. 2015-765 (La. App. 4 Cir. 7/24/15)).

[35] *Id*. at 13.

[36] *Id*.

company and the plaintiff's medical provider.[37] Plaintiffs cite the declaration of Mr. Fust, stating that Medport does not "direct any medical care or treatment on any of the accounts that it purchases from medical providers nor does it refer any patients to any medical providers for treatment and care."[38] Therefore, Plaintiff argues that the agreements and payments are not relevant to show bias.[39]

**B.      _Defendants' Arguments in Opposition to the Motion in Limine_**

Defendants raise three principal arguments in opposition to the instant motion.[40] First, Defendants assert that the Medport documents are not barred by the collateral source rule.[41] Second, Defendants contend that the evidence is admissible to show bias, bad faith, or the reasonability of charges.[42] Third, Defendants assert that Medport does direct the medical treatment of Plaintiffs.[43]

First, Defendants argue that the payments made by Medport do not fall under the collateral source rule.[44] Despite having health insurance coverage, Defendants submit that "each plaintiff has had medical treatment provided by physicians selected by their attorney, without Plaintiffs making any payments whatsoever toward the medical bills they have incurred."[45] Moreover,

---

[37] _Id_. at 13–14 (citing 881 F.3d 1293, 1296 (11th Cir. 2018)).

[38] _Id_. at 13–14 (citing Rec. Doc. 232-4 at ¶ 7).

[39] _Id_. at 15.

[40] Rec. Doc. 236.

[41] _Id_. at 6–11.

[42] _Id_. at 11–14.

[43] _Id_. at 14–15.

[44] _Id_. at 6.

[45] _Id._

Defendants assert that Medport purchased the accounts receivables of various healthcare providers of Plaintiffs at a significant discount, "and now Medport purportedly seeks to recover the amounts of the bills . . . indirectly through this litigation."[46] If Plaintiffs are actually subject to liens asserted by third-party medical factoring companies for the entire "inflated amounts charged," Defendants submit that "Plaintiffs are prevented from benefitting from the reduced rates they would have been charged or owed had they utilized their available health insurance or negotiated a reasonable, reduced rate for the medical treatment."[47] For these reasons, Defendants contend that "the collateral source rule does not apply to the amounts of each plaintiff's medical expenses which exceed the discounted amounts which Plaintiffs' respective healthcare providers have received in payment of their medical bills."[48]

Second, Defendants argue that third-party litigation funding is an investment in a lawsuit and admissible as evidence for various purposes.[49] Defendants cite *ML Healthcare Services, LLC v. Publix Supermarkets, Inc.*, an Eleventh Circuit case upholding the admissibility of a third-party litigation funding agreement as evidence of potential bias of the plaintiff's healthcare providers and as evidence of the healthcare providers' potential interest in continued referrals of patients.[50] Defendants assert that the holding of *ML Healthcare* is relevant here because Plaintiffs' healthcare providers and Medport have an incentive for Plaintiffs to win this lawsuit.[51]

---

[46] *Id*. at 6–7.

[47] *Id*. at 5.

[48] *Id*. at 11.

[49] *Id*.

[50] *Id*. (citing 881 F.3d at 1299).

[51] *Id*. at 13.

Defendants acknowledge that under Louisiana law a tortfeasor is required to pay for the medical treatment of his victim, even the over treatment or the unnecessary treatment, unless the treatment was incurred in bad faith.[52] Defendants state that they intend to introduce evidence and testimony that all of Plaintiffs' medical treatment was incurred in bad faith.[53]

Finally, Defendants assert that Medport does direct the medical treatment of Plaintiffs.[54] Defendants cite an email from Loy Ernst (who Defendants assert is purportedly as a representative of MedPort based on his e-mail address) approving a request for authorization for medical equipment related to Wayland Collins's surgery with Dr. Peter Leichty on September 10, 2018.[55] For these reasons, Defendants assert that they "should be permitted to offer evidence regarding the actual amounts paid by MedPort to Plaintiffs' medical providers, evidence regarding the reasonable and customary value of the medical expenses submitted by Plaintiffs in this matter, and the nature of the contractual agreements between MedPort and Plaintiffs' medical providers."[56]

## C.   *Plaintiffs' Arguments in Further Support of the Motion in Limine*

Plaintiffs make two principal arguments in the reply brief.[57] First, Plaintiffs argue that Defendants cannot reduce the total amount of Plaintiffs' medical expenses based on the amounts Medport paid to Plaintiffs' healthcare providers.[58] Second, Plaintiffs contend that Defendants

---

[52] *Id.* (citing *Gunn v. Robertson*, 801 So. 2d 555, 564 (La. App. 5 Cir. 2001)).

[53] *Id.*

[54] *Id.* at 14.

[55] *Id.* (citing Rec. Doc. 263-9)

[56] *Id.* at 16.

[57] Rec. Doc. 247 at 1.

[58] *Id.*

may not introduce the Medport sales agreements to prove bias of Plaintiffs' medical providers.[59]

First, Plaintiffs argue that Defendants cannot reduce the total amount of Plaintiffs' medical expenses based on the amounts Medport paid to Plaintiffs' healthcare providers because Plaintiffs are still responsible to Medport for the full amount billed.[60] Plaintiffs acknowledge that the payments by Medport do not fall under the collateral source rule.[61] To support their assertion that they are responsible to Medport for the full amount of the medical bills, Plaintiffs attach portions of the master purchase agreements and bill of sale, filed into the record under seal.[62] Plaintiffs contend that the cases cited by Defendants are inapposite because in those cases the plaintiffs were not responsible for the medical expenses or the expenses were not recoverable.[63]

Second, Plaintiffs contend that Defendants may not introduce the Medport sales agreements to prove bias of Plaintiffs' medical providers.[64] Plaintiffs repeat their prior argument that this case distinguishable from *ML Healthcare Services, LLC v. Publix Super Markets, Inc.*, because there is no referral agreement between Medport and Plaintiffs' medical providers.[65] Plaintiffs contest Defendants' assertion that the email from Loy Ernst, a Medport representative, was directing medical care.[66] Instead, Plaintiffs submit that Mr. Ernst was "simply responding to

---

[59] *Id*.

[60] *Id*. at 2.

[61] *Id*. at 4.

[62] *Id*. (citing Rec. Doc. 247-3).

[63] *Id*. at 5.

[64] *Id*. at 8.

[65] *Id*. (citing 881 F.3d at 1296).

[66] *Id*. at 9 (citing Rec. Doc. 236-9).

a healthcare provider's request for approval of purchase of this receivable."[67] Finally, Plaintiffs contend that Defendants cannot rely on the Medport documentation to show bad faith.[68] According to Plaintiffs, "Defendants erroneously assume that an assertion of bad faith ipso facto means that the Medport documentation could be used to lessen Plaintiffs' medical expenses, when there is no correlation between the two things."[69] Absent any evidence of bad faith by Medport, Plaintiffs contend that Defendants cannot use the confidential Medport documentation to lessen Plaintiffs' medical expenses.[70]

### III. Legal Standard

*A.    Relevancy and Prejudice*

Federal Rule of Evidence 401 provides that evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Under Federal Rule of Evidence 402, relevant evidence is admissible unless the United States Constitution, a federal statute, the Federal Rules of Evidence or other rules prescribed by the Supreme Court provide otherwise. Pursuant to Federal Rule of Evidence 403, "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The Fifth Circuit instructs that "[t]he exclusion of evidence under Rule 403 should

---

[67] *Id*. (citing Rec. Doc. 236-9).

[68] *Id*.

[69] *Id*.

[70] *Id*.

occur only sparingly[.]"[71] "Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403."[72]

**B.      The Collateral Source Rule**

Pursuant to Federal Rule of Evidence 409, "[e]vidence of furnishing, promising to pay, or offering to pay medical, hospital, or similar expenses resulting from an injury is not admissible to prove liability for the injury." Under Louisiana law, the collateral source rule provides that "an injured plaintiff's tort recovery may not be reduced[] because of monies received by the plaintiff from sources independent of the tortfeasor's procuration or contribution."[73] Under this doctrine, "the payments received from the independent source are not deducted from the award the [plaintiff] would otherwise receive from the [tortfeasor]."[74] The underlying rationale is that "a tortfeasor should not benefit by a reduction in damages from outside benefits provided to the plaintiff."[75] The collateral source rule "operates to exclude evidence of collateral benefits because it may unfairly prejudice the jury."[76]

The Louisiana Supreme Court articulated an exception to the collateral source rule in *Hoffman v. 21st Century North American Insurance Co*.[77] In that case, the plaintiff's attorney

---

[71] *United States v. Pace*, 10 F.3d 1106, 1115 (5th Cir. 1993), *cert. denied*, 511 U.S. 1149 (1994).

[72] *Id*. at 1115–16 (quoting *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979)).

[73] *Bozeman v. State*, 03–1016, p. 9 (La.7/2/04); 879 So. 2d 692, 698.

[74] *Id.*

[75] *Dupont v. Costco Wholesale Corp*., No. CV 17-4469, 2019 WL 5959564, at *2 (E.D. La. Nov. 13, 2019) (Lemmon, J.) (citing *Bozeman*, 879 So. 2d at 698).

[76] *Trico Marine Assets Inc. v. Diamond B Marine Servs. Inc.*, 332 F.3d 779, 794 n.7 (5th Cir. 2003).

[77] *Hoffman v. 21st Century N. Am. Ins. Co*., 2014-2279 (La. 10/2/15); 209 So. 3d 702, 704.

negotiated a discount on the client's medical bills.[78] The court declined to apply the collateral source rule to the attorney-negotiated discount.[79] Indeed, the court reasoned that "allowing the plaintiff to recover an amount for which he has not paid, and for which he has no obligation to pay, is at cross purposes with the basic principles of tort recovery in our Civil Code."[80] The court concluded that a defendant cannot be "held responsible for any medical bills or services the plaintiff did not actually incur and which the plaintiff need not repay."[81]

The Louisiana Supreme Court articulated another exception to the collateral source rule in *Simmons v. Cornerstone Investments, LLC*.[82] In that case, the plaintiff suffered an injury while working for Cintas Corporation.[83] The plaintiff's medical expenses totaled $24,435, but that amount was reduced to $18,435 (a $6,000 reduction) under the Louisiana Workers' Compensation Act.[84] The legal issue was whether the plaintiff could recover the "written off" amount of $6,000.[85] The court held that the $6,000 reduction entailed a "phantom charge" that the plaintiff never needed to pay back.[86] For that reason, the Court held that the collateral source rule was inapplicable to the $6,000 phantom charge.[87]

---

[78] *Id.* at 706.

[79] *Id.*

[80] *Id.*

[81] *Id.*

[82] *Simmons v. Cornerstone Investments, LLC*, 2018-0735 (La. 5/8/19); 282 So. 3d 199.

[83] *Id.* at 200.

[84] *Id.*

[85] *Id.* at 204.

[86] *Id.*

[87] *Id.*

## IV. Analysis

Plaintiffs moves the Court to exclude any evidence (1) reflecting payments that Medport made to Plaintiffs' healthcare providers and (2) the Master Purchase Agreement and un-redacted Bill of Sale between Medport and Plaintiffs' healthcare providers.[88] Both parties appear to agree that the payments made by Medport do not fall under the collateral source rule.[89] Nevertheless, Plaintiffs assert that the evidence should be excluded on relevancy grounds.[90] Plaintiffs contend that the evidence is irrelevant because, even though Medport bought the accounts receivables at a discounted rate, Plaintiffs still owe Medport the full amounts billed.[91] Additionally, Plaintiffs argue that the agreements and payments between Medport and Plaintiffs' medical providers are not relevant to show bias.[92] In opposition, Defendants contend that the evidence is admissible to show bias, bad faith, or the reasonability of charges.[93]

Louisiana courts have found that a trier of fact commits reversible error when (1) it finds that a defendant's negligence caused a plaintiff's injury and medical expenses but (2) does not award the plaintiff the full value of their medical expenses.[94] Indeed, in *Gunn v. Robertson*, the

---

[88] Rec. Doc. 232 at 1.

[89] Rec. Doc. 236 at 6–11; Rec. Doc. 247 at 4.

[90] Rec. Doc. 232-1.

[91] Rec. Doc. 232-1 at 13.

[92] *Id*.

[93] Rec. Doc. 236.

[94] *See, e.g.*, *McCloskey v. Higman Barge Lines, Inc.*, 2018-1008 (La. App. 4 Cir. 4/10/19); 269 So. 3d 1173, 1178; *Watson v. Hicks*, 2015-46 (La. App. 4 Cir. 5/27/15); 172 So. 3d 655; *Gunn v. Robertson*, 01-347 (La. App. 5 Cir. 11/14/01); 801 So. 2d 555, 564; *Yee v. Imperial Fire & Cas. Ins. Co.*, 44.802 (La. App. 2 Cir. 10/28/09); 25 So. 3d 872, 877.

Louisiana Fifth Circuit Court of Appeal stated that a "tortfeasor is required to pay for medical treatment of his victim, even over treatment or unnecessary treatment, unless such treatment was incurred by the victim in bad faith."[95] The court in *Gunn* also stated that a "trier of fact is in error for failing to award the full amount of medical expenses" when proved by a preponderance of the evidence.[96]

In this case, Defendants plan to present evidence at trial to establish that the medical treatment of Plaintiffs was incurred in bad faith.[97] The issue of whether the medical treatment was incurred in bad faith is an issue of fact to be resolved by the jury. The purchase agreements and payments Medport made to Plaintiffs' medical providers may be relevant to a determination of the appropriate damages award if the jury concludes that the medical expenses were incurred in bad faith. The Court will instruct the jury not to decrease Plaintiffs' recoverable medical expenses without a finding of bad faith.

The purchase agreements and payments that Medport made to Plaintiffs' healthcare providers may also be relevant to the credibility of Plaintiffs' treating physicians. In *ML Healthcare Services, LLC v. Publix Super Markets, Inc.*, the Eleventh Circuit upheld the admissibility of a referral agreement between a third-party funding company and the plaintiff's medical provider.[98] The Eleventh Circuit reasoned that "to continue to receive referrals from [the funding company]—and the guaranteed income stream they generate—the treating doctors have an incentive to provide analyses that help these patients—and, by extension, [the funding

---

[95] *Gunn*, 801 So. 2d at 564.

[96] *Id.*

[97] Rec. Doc. 236 at 13.

[98] Rec. Doc. 232-1 at 13–14 (citing 881 F.3d 1293, 1296 (11th Cir. 2018)).

company]—win their cases."[99]

In *Thomas v. Chambers*, a district judge in the Eastern District of Louisiana found that a financial arrangement between the plaintiffs' healthcare providers and Medport was admissible for the purpose of impeaching the credibility of the plaintiffs' treating physicians who would testify at trial.[100] The court reasoned that the financial arrangement between the plaintiffs' healthcare providers and the third-party funding companies could create an incentive for the plaintiffs' treating physicians to want the plaintiffs to win their case, because a victory could result in more referrals from Medport.[101] The court found that such an incentive could lead a jury to question the treating physicians' testimony regarding causation.[102] Accordingly, the court determined that the evidence was admissible for the purpose of impeaching the credibility of the plaintiff's treating physicians, but the court stated that it would include an instruction to the jury that the evidence could not be used to reduce the amount of plaintiffs' recoverable medical expenses.[103]

Plaintiffs assert that this case is distinguishable from *ML Healthcare Services* and *Thomas* because Medport does not have a referral agreement with Plaintiffs' healthcare providers.[104] Plaintiffs cite the declaration of Mr. Fust, a principal of Medport, stating that Medport does not "direct any medical care or treatment on any of the accounts that it purchases from medical

---

[99] 881 F.3d at 1302.

[100] No. 18-4373, 2019 WL 8888169, at *4 (E.D. La. Apr. 26, 2019) (Vance, J.).

[101] *Id.*

[102] *Id.*

[103] *Id.* at *5.

[104] *Id.* at 14.

providers nor does it refer any patients to any medical providers for treatment and care."[105] Notably, Mr. Fust's declaration is silent regarding any referral agreements with Plaintiffs' counsel.

In their depositions, Plaintiffs testified that their attorney had arranged the funding of their medical treatment.[106] Mr. Fust's declaration states that Medport holds $207,113.62 in accounts receivables related to treatment, care, testing, and/or medications provided to Plaintiff Alvin Polk,[107] $510,969.95 in accounts receivables related to treatment, care, testing, and/or medications provided to Plaintiff Wayland Collins,[108] and $157,219.80 in accounts receivables related to treatment, care, testing, and/or medications provided to Plaintiff Candy Kelly.[109] Additionally, in the instant motion in limine, Plaintiffs acknowledge that Medport has bought the accounts receivables of at least fourteen healthcare providers who provided treatment to Plaintiffs.[110] The fact that Medport bought almost $1,000,000 the accounts receivables from 14

---

[105] *Id.* at 13–14 (citing Rec. Doc. 232-4 at ¶ 7).

[106] During his depositions, Plaintiff Alvin Polk admitted that he had health insurance through Aetna at the time of the accident at issue in this litigation, but Polk did not submit any medical bills to Aetna for payment because his "lawyer was taking care of all that business." Rec. Doc. 236-6 at 3–4. During her deposition, Plaintiff Candy Kelly admitted that she was insured through Medicaid at the time of the accident at issue in this litigation, but Kelly did not submit any medical bills to Medicaid because her attorney was "handling" it. Rec. Doc. 236-5 at 2–3. During his deposition, Plaintiff Wayland Collins testified that his attorney was paying his medical bills. Rec. Doc. 236-4 at 4.

[107] *Id.* at ¶ 9.

[108] *Id.* at ¶ 10.

[109] *Id.* at ¶ 11.

[110] Rec. Doc. 232-1 at 3–4 ("Plaintiffs now file this motion seeking to exclude evidence of all contracts or agreements between Medport and Plaintiffs' healthcare providers in addition to all payments by Medport to those healthcare providers, including, without limitation: LA Pain Specialist; Crescent View Surgery Center; LA Rehab Products; Northshore Anesthesiologist; Magnolia Physical Therapy; MD Medical Billing Services c/o Dr. Eric Lonseth; Diagnostic Imaging Service; Freedom Spine; Injury Meds, L.L.C.; Intraoperative Neurophysiological Monitoring, LLC; One Spine Institute; Schnell Surgical Services; Southern Surgical Hospital; Northshore Pathology.").

different providers who provided treatment to Plaintiffs in this case suggests that there may have been some referral arrangement between Medport, Plaintiffs' counsel, and/or the medical providers.

Defendants also rely on an email exchange between Loy Ernst (loy@medport.com) and Jana Siles (jnamer@larehab.net). In an email to Mr. Ernst dated September 5, 2018, Ms. Siles stated that she "received another prescription for patient Wayland Collins because he is having cervical lumbar surgery on 9/10/18 and will need more equipment. Please advise if all equipment is approved."[111] Mr. Ernst responded, "Approved."[112] Plaintiffs contest Defendants' assertion that Medport directed any medical care. Plaintiffs cite Mr. Fust's attestation that Medport does not "direct any medical care or treatment on any of the accounts that it purchases from medical providers."[113] Plaintiffs contend that Mr. Ernst was not directing medical care in the email, asserting that he was "simply responding to a healthcare provider's request for approval of purchase of this receivable."[114] This is an issue of fact that must be resolved by the jury. Defendants should have the opportunity to question the medical providers about their relationships with Medport so that the jury can consider that information in assessing the credibility of the healthcare providers.

Based on the foregoing, Defendants have demonstrated that the third-party funding agreements are relevant to issues of bias and credibility of Plaintiffs' healthcare providers. Plaintiffs have not shown that the probative value of the evidence is substantially outweighed by

---

[111] Rec. Doc. 263-9.

[112] *Id.*

[113] Rec. Doc. 232-4 at ¶ 7.

[114] Rec. Doc. 247 at 9 (citing Rec. Doc. 236-9).

a danger of unfair prejudice.

### V. Conclusion

As discussed above, the parties agree that the collateral source rule does not apply to the third-party medical funding agreements at issue in this case. At trial, Defendants intend to present evidence to show that Plaintiffs' medical expenses were incurred in bad faith. The purchase agreements and payments Medport made to Plaintiffs' medical providers may be relevant to a determination of the appropriate damages award if the jury concludes that the medical expenses were incurred in bad faith. Additionally, the financial arrangement between Plaintiff's healthcare providers and Medport are admissible for the purpose of impeaching the credibility of Plaintiff's healthcare providers who testify at trial. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs Wayland Collins, Candy Kelly, and Alvin Polk's (collectively, "Plaintiffs") "Re-Urged Motion in Limine"[115] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this ___17th___ day of February, 2021.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[115] Rec. Doc. 232.