UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WAYLAND COLLINS, et al.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-7465** |
| **JOHN C. BENTON, et al.** | **SECTION: "G"(5)** |

### ORDER AND REASONS

This action arises from an alleged motor vehicle collision in the Parish of Orleans, State of Louisiana.[1] Before the Court is Defendants Mark Ingle, John C. Benton d/b/a Q&M Motor Transports, Innovative Transport Solution, Inc., Automotive Transport Services, Inc., and Northland Insurance Co.'s (collectively, "Defendants") "Motion in Limine to Exclude Evidence of Certain Medical Expenses."[2] Plaintiffs Wayland Collins and Alvin Polk (collectively, "Plaintiffs") oppose the motion.[3] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion.

### I. Background

On August 7, 2018, Plaintiffs filed a complaint against Defendants Mark Ingle ("Ingle"), John C. Benton d/b/a Q&M Motor Transports ("Q&M Motor"), and Northland Insurance Co. ("Northland") in this Court, seeking recovery for injuries and property damage that Plaintiffs

---

[1] Rec. Doc. 1 at 1.

[2] Rec. Doc. 396.

[3] Rec. Doc. 423.

1

allegedly sustained in an automobile accident.[4] According to the Complaint, on August 9, 2017, Plaintiff Wayland Collins was operating a vehicle on Interstate 10 when, while exiting onto Interstate 510, he collided with an 18-wheeler driven by Ingle.[5] Plaintiffs allege that Ingle was turning onto Interstate 510 and negligently misjudged his clearance, resulting in the motor vehicle incident at issue.[6] Plaintiffs additionally allege that Ingle was cited for an "improper lane change."[7] Plaintiffs bring negligence claims against Ingle and Q&M Motor, who is allegedly Ingle's principal, under the doctrine of *respondeat superior*.[8] Plaintiffs also bring claims against Northland, who purportedly insured the 18-wheeler operated by Ingle.[9]

On November 19, 2019, Plaintiffs filed an Omnibus Motion in Limine.[10] In the briefs submitted on that motion, the parties discussed payments made by a third-party litigation funding company, Medport LA, LLC ("Medport").[11] However, Plaintiffs did not include any specifics as to the information that Plaintiffs sought to be excluded.[12] Accordingly, the Court denied the motion to the extent it sought to exclude payments made by Medport, stating that "[i]f Plaintiffs seek to exclude evidence involving Medport's discounted payments, they must file a motion in

---

[4] Rec. Doc. 1. Candy Kelly was also originally named as a Plaintiff in this litigation. *Id.* On September 24, 2021, the Court granted a joint motion to dismiss Candy Kelly's claims. Rec. Doc. 357.

[5] Rec. Doc. 1.

[6] *Id.*

[7] *Id.* at 4.

[8] *Id.* at 5.

[9] *Id.*

[10] Rec. Doc. 80.

[11] *See* Rec. Doc. 224 at 18–19.

[12] *Id.* at 19.

2

limine specifically explaining which payments should be excluded."[13]

On August 25, 2020, Plaintiffs filed a "Re-Urged Motion in Limine."[14] In the motion, Plaintiffs sought to exclude any evidence (1) reflecting payments that Medport made to Plaintiffs' healthcare providers and (2) the Master Purchase Agreement and un-redacted Bill of Sale between Medport and Plaintiffs' healthcare providers.[15] Defendants opposed the motion.[16] Both parties agreed that the payments made by Medport do not fall under the collateral source rule.[17] Nevertheless, Plaintiffs asserted that the evidence should be excluded on relevancy grounds.[18] Plaintiffs argued that the evidence is irrelevant because, even though Medport bought the accounts receivables at a discounted rate, Plaintiffs still owe Medport the full amounts billed.[19] Additionally, Plaintiffs argued that the agreements and payments between Medport and Plaintiffs' medical providers are not relevant to show bias.[20] In opposition, Defendants asserted that the evidence is admissible to show bias, bad faith, or the reasonableness of charges.[21]

On February 18, 2021, the Court denied the re-urged motion in limine.[22] The Court found that the purchase agreements and payments Medport made to Plaintiffs' medical providers may

---

[13] *Id*.

[14] Rec. Doc. 232.

[15] *Id*. at 1.

[16] Rec. Doc. 236.

[17] *Id.* at 6–11; Rec. Doc. 247 at 4.

[18] Rec. Doc. 232-1.

[19] *Id.* at 13.

[20] *Id*.

[21] Rec. Doc. 236.

[22] Rec. Doc. 285.

be relevant to a determination of the appropriate damages award if the jury concludes that the medical expenses were incurred in bad faith.[23] In accordance with Louisiana law, the Court stated that it would instruct the jury not to decrease Plaintiffs' recoverable medical expenses without a finding of bad faith.[24]

The Court also found that the purchase agreements and payments that Medport made to Plaintiffs' healthcare providers may be relevant to the credibility of Plaintiffs' treating physicians.[25] Plaintiffs argued that the purchase agreements and payments by Medport were not relevant to this issue because Medport did not have a referral agreement with Plaintiffs' healthcare providers.[26] However, the Court noted that the record reflected that Medport bought almost $1,000,000 of the accounts receivables from fourteen different providers who provided treatment to Plaintiffs in this case, suggesting that there may have been some referral arrangement between Medport, Plaintiffs' counsel, and/or the medical providers.[27] The Court reasoned that Defendants should have the opportunity to question the medical providers about their relationships with Medport so that the jury can consider that information in assessing the credibility of the healthcare providers.[28]

On November 5, 2021, Defendants filed the instant "Motion in Limine to Exclude

---

[23] *Id.* at 14.

[24] *Id.*

[25] *Id.*

[26] Rec. Doc. 232-1 at 14.

[27] Rec. Doc. 285 at 16–17.

[28] *Id.* at 17.

Evidence of Certain Medical Expenses."[29] Plaintiffs filed an opposition on November 9, 2021.[30]

## II. Parties' Arguments

*A.   Defendants' Arguments in Support of the Motion in Limine*

Defendants request that the Court issue an Order excluding the introduction of medical billing records identifying the amounts charged, but not paid, by MedPort.[31] Defendants contend that Plaintiffs should be limited to submitting into evidence only (1) those bills for which either Plaintiff has agreed in writing to be personally responsible, or (2) those medical expenses which have actually been paid to Plaintiffs' healthcare providers.[32] Defendants assert that Plaintiffs may not submit into evidence the amounts charged by the healthcare providers or the amounts of the accounts receivable in the possession of Medport.[33] Since Plaintiffs previously conceded that the payments made by Medport do not qualify as a collateral source, Defendants assert that Plaintiffs may only recover the actual amounts paid by Medport, absent proof that Plaintiffs remain obligated to repay the full amount charged by their medical providers.[34]

According to Defendants, Plaintiffs, Medport, and the healthcare providers have only provided evidence indicating that Plaintiffs agreed to remain responsible for the full amounts charged by Dr. Peter Liechty of One Spine Institute (Collins and Polk) and Dr. Suneil Jolly of Louisiana Pain Specialists (Collins only) following the sale of those accounts receivable to

---

[29] Rec. Doc. 396.

[30] Rec. Doc. 423.

[31] Rec. Doc. 396 at 1.

[32] *Id.*

[33] *Id.*

[34] *Id.* at 1–2.

Medport.[35] Defendants argue that Plaintiffs have presented no evidence to support their claim that they remain responsible for the full amounts charged by the following providers: (1) Crescent View Surgery Center; (2) Diagnostic Imaging Services; (3) InjuryMeds; (4) Louisiana Rehab Products, Inc.; (5) Magnolia Physical Therapy; and (6) MD Medical Services.[36] Defendants assert that the charges by these healthcare providers, whose accounts receivable were purchased by Medport, are only recoverable up to the amounts actually paid by Medport because Plaintiffs have not presented any evidence to show that they agreed to remain responsible for the total amounts charged.[37]

B.    *Plaintiffs' Arguments in Opposition to the Motion in Limine*

Plaintiffs argue that "Medport, through its contract with numerous physicians and/or facilities, is subrogated by an assignment of rights, under Louisiana Revised Statute § 9:4751, *et seq.*, to recover the full amount of the medical expenses from any proceeds received in the litigation against the tortfeasor and or insurance company.[38] Plaintiffs state that they are legally obligated to pay Medport the full amount of the medical receivable.[39] Plaintiffs assert that there has not been any "write off" or discount to Plaintiffs.[40] Plaintiffs contend that "Medport assumes the full risk of collection and has to wait until the case settles or a final judgment has been rendered in order to collect on the full amount of the medical bill it has purchased."[41]

---

[35] *Id.* at 2.

[36] *Id.*

[37] *Id.*

[38] Rec. Doc. 423 at 2.

[39] *Id.*

[40] *Id.*

[41] *Id.*

### III. Legal Standard

Pursuant to Federal Rule of Evidence 409, "[e]vidence of furnishing, promising to pay, or offering to pay medical, hospital, or similar expenses resulting from an injury is not admissible to prove liability for the injury." Under Louisiana law, the collateral source rule provides that "an injured plaintiff's tort recovery may not be reduced[] because of monies received by the plaintiff from sources independent of the tortfeasor's procuration or contribution."[42] Under this doctrine, "the payments received from the independent source are not deducted from the award the [plaintiff] would otherwise receive from the [tortfeasor]."[43] The underlying rationale is that "a tortfeasor should not benefit by a reduction in damages from outside benefits provided to the plaintiff."[44] The collateral source rule "operates to exclude evidence of collateral benefits because it may unfairly prejudice the jury."[45]

The Louisiana Supreme Court articulated an exception to the collateral source rule in *Hoffman v. 21st Century North American Insurance Co.*[46] In that case, the plaintiff's attorney negotiated a discount on the client's medical bills.[47] The court declined to apply the collateral source rule to the attorney-negotiated discount.[48] Indeed, the court reasoned that "allowing the plaintiff to recover an amount for which he has not paid, and for which he has no obligation to

---

[42] *Bozeman v. State*, 2003-1016, p. 9 (La. 7/2/04); 879 So. 2d 692, 698.

[43] *Id.*

[44] *Dupont v. Costco Wholesale Corp.*, No. 17-4469, 2019 WL 5959564, at *2 (E.D. La. Nov. 13, 2019) (Lemmon, J.) (citing *Bozeman*, 03-1016 at p. 9; 879 So. 2d at 698).

[45] *Trico Marine Assets Inc. v. Diamond B Marine Servs. Inc.*, 332 F.3d 779, 794 n.7 (5th Cir. 2003).

[46] *Hoffman v. 21st Century N. Am. Ins. Co.*, 2014-2279, p. 3–4 (La. 10/2/15); 209 So. 3d 702, 704–05.

[47] *Id.* at p. 6; 209 So. 3d at 706.

[48] *Id.*

pay, is at cross purposes with the basic principles of tort recovery in our Civil Code."[49] The court concluded that a defendant cannot be "held responsible for any medical bills or services the plaintiff did not actually incur and which the plaintiff need not repay."[50]

The Louisiana Supreme Court articulated another exception to the collateral source rule in *Simmons v. Cornerstone Investments, LLC*.[51] In that case, the plaintiff suffered an injury while working for Cintas Corporation.[52] The plaintiff's medical expenses totaled $24,435, but that amount was reduced to $18,435 (a $6,000 reduction) under the Louisiana Workers' Compensation Act.[53] The legal issue was whether the plaintiff could recover the "written off" amount of $6,000.[54] The court held that the $6,000 reduction entailed a "phantom charge" that the plaintiff never needed to pay back.[55] For that reason, the Court held that the collateral source rule was inapplicable to the $6,000 phantom charge.[56]

### IV. Analysis

Defendants request that the Court exclude evidence of medical billing records identifying the amounts charged, but not paid, by Medport.[57] Since Plaintiffs previously conceded that the payments made by Medport do not qualify as a collateral source, Defendants assert that Plaintiffs

---

[49] *Id.*

[50] *Id.*

[51] *Simmons v. Cornerstone Invs., LLC*, 2018-0735 (La. 5/8/19); 282 So. 3d 199.

[52] *Id.* at p. 1; 282 So. 3d at 200.

[53] *Id.*

[54] *Id.* at p. 7; 282 So. 3d at 204.

[55] *Id.*

[56] *Id.*

[57] Rec. Doc. 396 at 1.

may only recover the actual amounts paid by Medport, absent proof that Plaintiffs remain obligated to repay the full amount charged by their medical providers.[58] Defendants argue that Plaintiffs have presented no evidence to support their claim that they remain responsible for the full amounts charged by the following providers: (1) Crescent View Surgery Center; (2) Diagnostic Imaging Services; (3) InjuryMeds; (4) Louisiana Rehab Products, Inc.; (5) Magnolia Physical Therapy; and (6) MD Medical Services.[59] Therefore, Defendants assert that that the charges by these healthcare providers are only recoverable up to the amounts actually paid by Medport.[60]

In prior briefing submitted in this litigation, both parties agreed that the payments made by Medport do not fall under the collateral source rule.[61] Nevertheless, Plaintiffs asserted that the evidence should be excluded on relevancy grounds.[62] Plaintiffs argued that the evidence is irrelevant because, even though Medport bought the accounts receivables at a discounted rate, Plaintiffs still owe Medport the full amounts billed.[63] Defendants now argue that Plaintiffs' prior assertion is only partially accurate.[64]

Defendants point to Section 1.10 of the Master Purchase Agreement between Medport and the medical providers. Section 1.10 is in the "Definitions" section of the Master Purchase Agreement and defines the term "Assignment of Interests" as:

---

[58] *Id.* at 1–2.

[59] *Id.* at 2.

[60] *Id.*

[61] Rec. Doc. 236 at 6–11; Rec. Doc. 247 at 4.

[62] Rec. Doc. 232-1.

[63] *Id.* at 13.

[64] Rec. Doc. 396-1 at 3.

> a written contract, in the form of the attached Exhibit B, which is incorporated by this reference, between the Qualifying Patient and Provider, whereby Qualifying Patient contractually agrees to accept Healthcare Services from Provider and, in addition to Qualifying Patient being personally responsible for the Billed Charges for the rendered Healthcare Services, permits Provider (and Provider's assignees) to collect payment for the Healthcare Services directly from the Qualifying Patient and/or out of any proceeds that Qualifying Patient may be awarded or otherwise receive in connection with one or more Claims, which payment obligations to Provider shall be senior to any and all rights that such Qualifying Patient has to the same. Such Assignment of Interest shall also give "lien" rights to Provider (and Provider's assignees) in any proceeds that the Qualifying Patient may be awarded or otherwise receive in connection with the Claim.[65]

The document referred to as "Exhibit B" in the Master Purchase Agreement is titled "Assignment of Interests/Attorney Letter of Protection."[66] The Assignment of Interest provides that the patient is "directly and fully responsible to the above named provider for all medical bills associated with the services provided to [him] and this agreement is made solely for additional protection and in consideration of the provider agreeing to awaiting payment."[67] The Assignment of Interest further provides that the patient "authorize[s] the provider to assign [his] account receivable" and "understand[s] and agree[s] that any assignee of the provider is entitled to all of the rights and privileges provided to the provider."[68]

Defendants present two Assignments of Interest executed by Collins for his treatment by Dr. Peter Liechty of One Spine Institute and Dr. Suneil Jolly of Louisiana Pain Specialists.[69] Defendants present one Assignment of Interest executed by Polk for his treatment with Dr. Peter

---

[65] Rec. Doc. 396-11 at 3.

[66] *Id.* at 12.

[67] *Id.*

[68] *Id.*

[69] Rec. Doc. 396-4; Rec. Doc. 396-5.

10

Liechty of One Spine Institute.[70] According to Defendants, there is no evidence to show that Plaintiffs executed Assignments of Interest with their other medical providers.

Defendants appear to argue that the medical providers breached their agreements with Medport by failing to have Plaintiffs execute Assignments of Interest. Defendants have not shown how an alleged breach by the medical providers of their contracts with Medport (to which Plaintiffs are not parties) would result in Plaintiffs owing the less than the full amount of the medical bills. Regardless of whether Plaintiffs executed Assignments of Interest with their other medical providers, the Master Purchase Agreement makes clear that by purchasing the accounts receivable from the medical providers Medport was also purchasing "all of Provider's legal and equitable rights, title, interest, estate, and remedies in and to the same, including without limitation, the right to collect the same."[71] The clear terms of the Master Purchase Agreement show that Medport is subrogated to the rights of the medical provider and maintains the right to recover the full amount of the medical bills from Plaintiffs.

Accordingly,

---

[70] Rec. Doc. 396-6.

[71] Rec. Doc. 396-11 at 3.

**IT IS HEREBY ORDERED** that Defendants Mark Ingle, John C. Benton d/b/a Q&M Motor Transports, Innovative Transport Solution, Inc., Automotive Transport Services, Inc., and Northland Insurance Co.'s (collectively, "Defendants") "Motion in Limine to Exclude Evidence of Certain Medical Expenses"[72] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this 12th day of November, 2021.

_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[72] Rec. Doc. 396.