## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**WAYLAND COLLINS, et al.**                          **CIVIL ACTION**

**VERSUS**                                           **NO. 18-7465**

**JOHN C. BENTON, et al.**                           **SECTION: "G"(5)**


## ORDER AND REASONS

This action arises from an alleged motor vehicle collision in the Parish of Orleans, State of Louisiana.[1] Before the Court is Plaintiffs Wayland Collins and Alvin Polk (collectively, "Plaintiffs") "Motion for Adverse Inference on Spoliation of Evidence."[2] Defendants Mark Ingle, John C. Benton d/b/a Q&M Motor Transports, Innovative Transport Solution, Inc., Automotive Transport Services, Inc., and Northland Insurance Co.'s (collectively, "Defendants") oppose the motion.[3] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion.

## I. Background

On August 7, 2018, Plaintiffs filed a complaint against Defendants Mark Ingle ("Ingle"), John C. Benton d/b/a Q&M Motor Transports ("Q&M"), and Northland Insurance Co. ("Northland") in this Court, seeking recovery for injuries and property damage that Plaintiffs

---

[1] Rec. Doc. 1 at 1.

[2] Rec. Doc. 408.

[3] Rec. Doc. 422.

1

allegedly sustained in an automobile accident.[4] According to the Complaint, on August 9, 2017, Plaintiff Wayland Collins was operating a vehicle on Interstate 10 when, while exiting onto Interstate 510, he collided with an 18-wheeler driven by Ingle.[5] Plaintiffs allege that Ingle was turning onto Interstate 510 and negligently misjudged his clearance, resulting in the motor vehicle incident at issue.[6] Plaintiffs additionally allege that Ingle was cited for an "improper lane change."[7] Plaintiffs bring negligence claims against Ingle and Q&M, who is allegedly Ingle's principal, under the doctrine of *respondeat superior*.[8] Plaintiffs also bring claims against Northland, who purportedly insured the 18-wheeler operated by Ingle.[9]

On November 8, 2021, Plaintiffs filed the instant "Motion for Adverse Inference on Spoilation of Evidence."[10] Defendants filed an opposition on November 9, 2021.[11]

## II. Parties' Arguments

### A.   *Plaintiffs' Arguments in Support of the Motion*

Plaintiffs move the Court to find that they are entitled to an adverse inference against Defendants and to instruct the jury that they can presume Ingle was intoxicated at the time of the

---

[4] Rec. Doc. 1. Candy Kelly was also originally named as a Plaintiff in this litigation. *Id.* On September 24, 2021, the Court granted a joint motion to dismiss Candy Kelly's claims. Rec. Doc. 357.

[5] Rec. Doc. 1.

[6] *Id.*

[7] *Id.* at 4.

[8] *Id.* at 5.

[9] *Id.*

[10] Rec. Doc. 408.

[11] Rec. Doc. 422.

accident.[12] In support, Plaintiffs aver that § 382.303 of the Federal Motor Carrier Safety Administration Regulations ("FMCSA") require a commercial trucking company to "perform an alcohol test within (2) hours of [a] collision and a drug test within (32) hours of [a] collision."[13] Plaintiffs assert that these tests are required "when a driver was given a citation at the scene and a party went to the hospital from the scene."[14] Plaintiffs contend that, because Ingle was given a citation and Candy Kelly was taken to the hospital, Ingle was required to submit to alcohol and drug testing.[15]

Plaintiffs also assert that Defendants incorporated these requirements into their policies and procedures.[16] Plaintiffs aver that Defendants' policy states that "any employee who does not undergo the mandatory drug testing will be presumed [to have produced] a positive result and will be terminated from their employment."[17] Plaintiffs assert that Q&M terminated Ingle's employment because he was allegedly "no longer insurable."[18]

Plaintiffs assert that Ingle did not submit to a drug or alcohol test.[19] Plaintiffs assert that "Ingle lied and withheld information about the facts and circumstances of this accident in order to avoid having to undergo drug and alcohol testing."[20] Specifically, Plaintiffs allege that Ingle lied

---

[12] Rec. Doc. 408.

[13] Rec. Doc. 408-1 at 2.

[14] *Id.*

[15] *Id.*

[16] *Id.* at 2. More particularly, Plaintiffs assert that non-party Transafe, LLC, an organization that administers federal compliance for commercial trucking companies, incorporated this requirement into its policies, which Defendants adopted. *Id.* at 2.

[17] *Id.*

[18] *Id.* at 2–3.

[19] *Id.* at 6.

[20] *Id.* at 2. Plaintiffs also re-raise their argument that Ingle lied about his prior conviction during his

to his supervisor by not telling him that Ingle received a citation or that Candy Kelly was transported to the hospital.[21] As a result, according to Plaintiffs, they are "robbed of the opportunity to present to the jury evidence of the findings shortly after this accident."[22] Plaintiffs cite several Louisiana state court cases that an adverse-inference instruction is the appropriate remedy.[23] Therefore, Plaintiffs request an adverse inference against Defendants.[24]

### B.    *Defendants' Arguments in Opposition to the Motion*

In opposition, Defendants argue that Plaintiffs' request lacks any legal basis.[25] As an initial matter, Defendants assert that federal law, not state law governs this evidentiary issue.[26] On the merits, Defendants contend that Plaintiffs have failed to show an essential element for an adverse-inference instruction—namely, that evidence was destroyed.[27] Instead, Defendants assert that the evidence never existed.[28]

Moreover, Defendants aver that Fifth Circuit precedent requires a showing of bad faith to impose an adverse inference.[29] Defendants argue that Plaintiffs have not made the requisite

---

deposition. *Id.* As explained in this Court's Order granting Defendants' motion in limine to exclude Ingle's prior conviction, the Court disagrees with Plaintiffs' characterization of Ingle's deposition testimony. *See* Rec. Doc. 436.

[21] Rec. Doc. 408-1 at 10.

[22] *Id.* at 6–7.

[23] *Id.* at 4–6.

[24] *Id.* at 6–7.

[25] Rec. Doc. 422 at 1–3.

[26] *Id.* at 2–3.

[27] *Id.* at 3.

[28] *Id.* at 3.

[29] *Id.*

showing of bad faith.[30] Defendants cite to a case from the Western District of Louisiana with similar facts.[31] In *Roberts v. CRST Van Expedited, Inc.*, the district court denied the plaintiff's request for an adverse inference.[32] There, the plaintiff argued that a commercial trucking company failed to comply with its internal policy mandating drug and alcohol drug testing following vehicle accidents.[33] The plaintiff requested an adverse inference based on the company's failure to comply.[34] The district court denied that request, reasoning that the plaintiff failed to show that the evidence was intentionally destroyed or that the driver was tested by the investigating officer.[35]

Here, Defendants contend that Plaintiffs have not carried their burden to show bad faith on the part of Defendants.[36] Defendants assert that Plaintiffs have not produced any evidence that Ingle lied to anyone, that he refused a test, or that he was asked by anyone to take a test.[37]

Defendants also assert that Plaintiffs' argument is based on a misreading of Defendants' policy.[38] Specifically, Defendants contend that the policy's provision that a driver will be presumed to have tested positive applies only when a driver refuses a random drug test.[39]

---

[30] *Id.* at 3–4.

[31] *Id.* at 4.

[32] *Id.* at 5–6 (discussing *Roberts v. CRST Van Expedited, Inc.*, No. 14-3430, 2016 WL 3648276 (W.D. La. June 30, 2016)).

[33] *Roberts*, 2016 WL 3648276, at *1, *3–4.

[34] *Id.* at *3.

[35] *Id.* at *3–4.

[36] Rec. Doc. 422 at 5–6.

[37] *Id.* at 6.

[38] *Id.*

[39] *Id.*

Defendants aver that no such presumption applies to post-accident tests.[40] Accordingly, Defendants urge the Court to deny Plaintiffs' motion.[41]

### III. Legal Standard

Federal district courts have the inherent power to issue sanctions, but such power "must be exercised 'with restraint and discretion.'"[5] As the Fifth Circuit explained in *NASCO, Inc. v. Calcasieu Television and Radio, Inc.*, a court's inherent power "is not a broad reservoir of power, ready at an imperial hand, but a limited source; and implied power squeezed from the need to make the court function."[6] Under the spoliation of evidence doctrine, if evidence is intentionally destroyed, the trial court may exercise its discretion to impose sanctions on the responsible party.[7] The preferred sanction in such a situation is "the well-established and long-standing principle of law that a party's intentional destruction of evidence relevant to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction."[8] This adverse inference rule "derives from the common sense notion that a party's

---

[40] *Id.* Defendants also aver that, even if the policy did apply to post-accident tests, "[that] presumption would not have any conclusory effect in this litigation." *Id.*

[41] *Id.* at 7.

[5] *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1406 (5th Cir. 1993) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)).

[6] *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 894 F.2d 696, 702 (5th Cir. 1990), *quoted with approval and aff'd*, 501 U.S. 32 (1991).

[7] *See Vodusek v. Bayline Marine Corp.*, 71 F.3d 148, 155–56 (4th Cir. 1995); *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78 (3rd Cir. 1994) (reviewing the historical development of the spoilation of evidence doctrine).

[8] *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998), *cert. denied*, 531 U.S. 1078 (2001); *see also*, *Vodusek*, 71 F.3d at 155 ("Under the spoliation of evidence rule, an adverse inference may be drawn against a party who destroys relevant evidence."); *Schmid*, 13 F.3d at 78 (holding that showing evidence had been destroyed "permitted an inference, the 'spoliation inference,' that the destroyed evidence would have been unfavorable to the position of the offending party."); *Nation-Wide Check Corp. v. Forest Hills Distribs.*, 692 F.2d 214, 217–18 (1st Cir. 1982) ("When the contents of a document are relevant to an issue in a case, the trier of fact generally may receive the fact of the document's nonproduction or destruction as evidence that the party which has prevented production did so

destruction of evidence which it has reason to believe may be used against it in litigation suggests that the evidence was harmful to the party responsible for its destruction."[9] Accordingly, to restore the prejudiced party, an adverse inference "plac[es] the risk of an erroneous judgment on the party that wrongfully created the risk."[10]

Before a court may provide for an adverse inference in light of the destruction of evidence, "the party having control over the evidence must have had an obligation to preserve it at the time it was destroyed."[11] Such a duty "arises when the party has notice that the evidence is relevant to litigation."[12] Once a court concludes that a party was obliged to preserve the evidence, it must then consider whether the evidence was intentionally destroyed.[13] The adverse-inference sanction may not be imposed unless there is evidence of bad faith,[14] and "mere negligence is not enough" to warrant the invocation of the spoliation of evidence doctrine.[15] Finally, the court must consider the likely contents of the destroyed evidence.[16] That is, before a court permits the drawing of an

---

out of the well-founded fear that the contents would harm him.").

[9] *Kronisch*, 150 F.3d at 126.

[10] *Id.* (quoting *Nation-Wide Check*, 692 F.2d at 218).

[11] *Id.*; *see also Menges v. Cliffs Drilling Co.*, No. 99-2159, 2000 WL 765082, *2 (E.D. La. June 12, 2000) (Vance, J.) (citing *Kronisch*, 150 F.3d at 126).

[12] *Kronisch*, 150 F.3d at 126.

[13] *Id.*

[14] *See e.g.*, *Condrey v. SunTrust Bank of Ga.*, 431 F.3d 191, 203 (5th Cir. 2005) ("The Fifth Circuit permits an adverse inference against the destroyer of evidence only upon a showing of 'bad faith' or 'bad conduct.'"); *Caparotta v. Entergy Corp.*, 168 F.3d 754, 756 (5th Cir. 1999) ("[A]n adverse inference drawn from the destruction of records is predicated on bad conduct by the defendant."); *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1417 (5th Cir. 1995) ("This Court has held that such sanctions should be confined to instances of 'bad faith or willful abuse of the judicial process.'").

[15] *Russell v. Univ. of Tex. of Permian Basin*, 234 F. App'x 195, 208 (5th Cir. 2007) (quoting *Vick v. Tex. Emp. Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975)).

[16] *Kronisch*, 150 F.3d at 126.

adverse inference, there must be "some showing indicating that the destroyed evidence would have been relevant to the contested issue."[17]

## IV. Analysis

Plaintiffs move the Court to find that they are entitled to an adverse inference against Defendants and to instruct the jury that they can presume Ingle was intoxicated at the time of the accident.[42] Defendants argue that Plaintiffs have not shown bad faith and that their request should be denied.[43]

Plaintiffs argue that "a negligent act" is sufficient to find spoliation under Louisiana law.[44] However, a federal court sitting in diversity applies federal rather than state spoliation laws.[45] Under federal law, "mere negligence is not enough" to warrant the invocation of the spoliation of evidence doctrine.[46] "The Fifth Circuit permits an adverse inference against the destroyer of evidence only  upon a showing of 'bad faith' or 'bad conduct.'"[47]

Here, the Court finds that Plaintiffs have not carried their burden to show bad faith. Plaintiffs have not shown that the results of a drug or alcohol test ever existed, let alone that they were destroyed. Plaintiffs do not produce any evidence that Ingle was ever asked to submit to a drug test. Although Defendants' policies and federal law may require Ingle to submit to a drug test, without showing that Ingle refused to submit to a test, Plaintiffs have not shown bad faith on

---

[17] *Id.* at 127.

[42] Rec. Doc. 408.

[43] Rec. Doc. 422.

[44] Rec. Doc. 408-1 at 4–6.

[45] *Condrey*, 431 F.3d at 203.

[46] *Russell*, 234 F. App'x at 208 (quoting *Vick*, 514 F.3d at 737).

[47] *Condrey*, 431 F.3d at 203.

the part of Defendants. Relatedly, Plaintiffs point to no authority that Q&M's failure to request that Ingle submit to a drug test constitutes bad faith. Additionally, Plaintiffs allege that the deposition testimony of John Benton reveals that "Ingle lied to his supervisor and did not inform him that Ingle received a citation in this accident or that Plaintiff Kelly was taken by ambulance to the hospital."[48] However, Plaintiffs do not support this claim by providing the Court with this deposition testimony. Even if Plaintiffs had provided this deposition, the Court is not convinced that Ingle's alleged omission amounts to bad faith. Therefore, the Court finds that Plaintiffs have not shown bad faith. Plaintiffs may argue that Ingle failed to take a drug or alcohol test as required; however, the Court will not instruct the jury to infer Ingle was intoxicated. Accordingly, the Court denies Plaintiffs' motion.

## V. Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiffs Wayland Collins and Alvin Polk's Motion for Adverse Inference[49] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this _12th_ day of November, 2021.

_Nannette Jolivette Brown_
_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[48] Rec. Doc. 408-1 at 10.

[49] Rec. Doc. 408.