## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**WAYLAND COLLINS, et al.**                                    **CIVIL ACTION**

**VERSUS**                                                     **NO. 18-7465**

**JOHN C. BENTON, et al.**                                     **SECTION: "G"(5)**


## <u>ORDER AND REASONS</u>

Before the Court is Plaintiffs Wayland Collins and Alvin Polk's (collectively, "Plaintiffs") "Motion in Limine and *Daubert* Motion to Further Exclude Louis G. Fey's Testimony or Limit his Testimony at Trial Due to Unpled Affirmative Defenses by Defendants."[1] On August 5, 2020, this Court granted in part and denied in part Plaintiffs' prior motion seeking to exclude the testimony of Louis G. Fey ("Fey").[2] The Court granted the motion to the extent it requested that Fey be precluded from providing expert testimony about (1) medical causation, (2) the reasonable value of medical bills, and (3) accident reconstruction. The Court also granted the motion to the extent it requested that Fey be precluded from (4) stating the word "fraud" in any instance and (5) providing any legal conclusions.[3] The Court denied the motion to the extent it sought to further limit or preclude Fey's testimony.[4]

---

[1] Rec. Doc. 368.

[2] Rec. Doc. 231.

[3] *Id.* at 4.

[4] *Id.*

1

Plaintiffs filed the instant motion on October 29, 2021.[5] Although the motion is stylized as a motion in limine, Plaintiffs' main argument is that Fey should not be permitted to testify because there are no insurance industry standards for determining whether an accident was staged or intentional, which is not proper for a motion in limine; rather, that is an argument for a *Daubert* motion.[6] The Scheduling Order provides that *Daubert* motions must be filed in time to permit hearing no later than February 24, 2021.[7] Therefore, the *Daubert* deadline has passed, Plaintiffs already filed a *Daubert* motion regarding Fey, and so the Court will construe the instant motion as a motion for reconsideration.[8]

Defendants John C. Benton d/b/a Q&M Motor Transports, Mark Ingle, Innovative Transport Solution, Inc., Automotive Transport Services, Inc., and Northland Insurance Co. (collectively, "Defendants") oppose the motion.[9] The Court has considered the motion, the memoranda in support and in opposition, the record, and the applicable law. With those considerations in mind, the Court denies the motion.

## I. Background

### A.    *Factual Background*

On August 7, 2018, Plaintiffs filed a complaint against Defendants in this Court, seeking recovery for injuries and property damages that Plaintiffs allegedly sustained in an automobile

---

[5] Rec. Doc. 368.

[6] *See generally id.*

[7] Rec. Doc. 197 at 2.

[8] Plaintiffs acknowledge that this is a motion to reconsider because they assert that "[t]his Court has recognized it has the discretion to reconsider interlocutory opinions, including those related to [motions in limine]." Rec. Doc. 368-1 at 5.

[9] Rec. Doc. 376.

accident.[10] According to the Complaint, on August 9, 2017, Plaintiff Wayland Collins was operating a vehicle on Interstate 10 and, while exiting onto Interstate 510, he collided with an 18-wheeler driven by Defendant Mark Ingle.[11] Plaintiffs allege that Defendant Mark Ingle was turning onto Interstate 510 and negligently misjudged his clearance, resulting in the motor-vehicle incident at issue.[12] Plaintiffs further allege that Defendant Mark Ingle was cited for an "improper lane change."[13] Plaintiffs bring a negligence claim against Defendant Mark Ingle and Defendant Q & M Transport, who is allegedly Defendant Mark Ingle's principal under the doctrine of respondeat superior.[14] Plaintiffs also bring claims against Defendant Northland Insurance Company, who purportedly insured the 18-wheeler operated by Defendant Mark Ingle.[15]

**B.    *Procedural Background***

On December 30, 2019, Plaintiffs moved to extend the time to amend pleadings in order to add several defendants to this litigation.[16] On January 9, 2020, the Court granted that motion.[17] As a result, all deadlines in this matter were continued, and, on April 14, 2020, the Court issued an updated Scheduling Order.[18] That Scheduling Order set the deadline for filing *Daubert*

---

[10] Rec. Doc. 1. Candy Kelly was also originally named as a Plaintiff in this litigation. On September 24, 2021, the Court granted a joint motion to dismiss Candy Kelly's claims. Rec. Doc. 357.

[11] *Id.*

[12] *Id.*

[13] *Id.* at 4.

[14] *Id.* at 5.

[15] *Id.*

[16] Rec. Doc. 164.

[17] Rec. Doc. 178.

[18] Rec. Doc. 197. The first Scheduling Order was issued on November 18, 2018. Rec. Doc. 17. The Court granted a joint motion to continue because the Plaintiffs had not reached maximum medical recovery. Rec. Docs. 23, 25.

motions in order to be heard no later than February 24, 2021, and set trial for April 12, 2021.[19]

The Court continued the trial two more times, but did not extend the *Daubert* deadline.[20]

On November 26, 2019, Plaintiffs filed a *Daubert* motion to exclude Fey's expert testimony at trial.[21] This Court granted in part and denied in part Plaintiffs' motion.[22] In the Order, this Court held that Fey may not testify about (1) medical causation, (2) the reasonable value of medical bills, (3) accident reconstruction, (4) "fraud" in any instance, and (5) legal conclusions.[23] The Court denied the motion to the extent it sought to further limit or preclude Fey's testimony.[24] The Court specifically found that Fey may offer expert testimony regarding "red flags in the insurance industry—to the extent such flags . . . indicate that an automobile accident was staged or intentionally caused."[25] Finally, the Court explained that "Plaintiffs' remaining objections to Fey's testimony affect the weight to be assigned to the testimony—not whether the testimony is admissible."[26]

On October 28, 2021, Plaintiffs filed the instant motion seeking to further exclude Fey's

---

[19] Rec. Doc. 197 at 2, 5.

[20] *See* Rec. Docs. 304, 354.

[21] Rec. Doc. 96.

[22] Rec. Doc. 231.

[23] *Id.* at 5.

[24] *Id.* at 4.

[25] *Id.* at 3.

[26] *Id.* at 5. For example, in Plaintiffs' first motion challenging Fey's testimony, Plaintiffs note that Fey omits from his curriculum vitae certain cases where he was not admitted as an expert, that Fey has never had his work published, and that he relies only on his experience as a claims adjuster. Rec. Doc. 96-1 at 29–32.

testimony.[27] Defendants oppose the motion.[28]

## II. Parties' Arguments

### A.    *Plaintiffs' Arguments in Support of the Motion*

Plaintiffs' main argument is that Fey should not be permitted to testify in light of this Court's August 5, 2020 Order (the "August 5 Order") limiting his testimony.[29] Specifically, Plaintiffs contend that because Fey's report refers almost exclusively to "fraud," Fey cannot testify to the bulk of his report.[30]

As to the portions of Fey's report that do refer to "staged" or "intentional" accidents, Plaintiffs argue that these, too, should be excluded.[31] Plaintiffs assert that the "indicia of a staged accident or intentional act" that Fey will testify to are merely "fraud indicators" about which this Court has prohibited Fey from testifying.[32] First, Plaintiffs aver that Fey discusses "staged" accidents twice in his report.[33] In the first instance, Fey concludes that "it is more probable than not that this accident was staged" because of the number of red flags.[34] Plaintiffs argue Fey should be precluded from testifying on this issue because Plaintiffs assert Fey does not point to objective

---

[27] Rec. Doc. 368.

[28] Rec. Doc. 376.

[29] Rec. Doc. 368-1 at 1–4.

[30] *Id.* at 8–11.

[31] *Id.* at 8–15.

[32] *Id.* at 8–9.

[33] *Id.* at 11.

[34] *Id.* The Court notes that, although Plaintiffs describe this as the "first" instance, this reference comes at the end of Fey's report. *See* Rec. Doc. 368-4 at 36 (Rep. of Fey).

evidence or "discuss any specific red flags."[35] In the second instance, Fey explains that the point of impact in this case—the right rear side of the truck's trailer—is the area targeted in staged accidents.[36] Plaintiffs argue that testimony on this issues is inadmissible because Plaintiffs assert that Fey is testifying about accident reconstruction, which this Court prohibited in its August 5 Order.[37]

Second, Plaintiffs assert that Fey uses the word "intentional" only once in his report.[38] In this instance, Fey opines that "[i]f any of these claimants were actually injured in this accident (which is in doubt), it is more probable than not that it was intentional."[39] Plaintiffs argue this portion is inadmissible because this offers opinion testimony on medical causation, which is prohibited by this Court's August 5 Order.[40]

Plaintiffs advance five other arguments as to why Fey's testimony should be excluded. First, Plaintiffs assert that Fey must be prohibited from testifying because Defendants did not update Fey's report under Federal Rule of Civil Procedure 26 after the August 5 Order.[41] Second, Plaintiffs argue that Fey should not be permitted to testify because his use of similar accidents as comparators is not an insurance industry standard.[42] Similarly, Plaintiffs argue that Fey's

---

[35] Rec. Doc. 368-1 at 11.

[36] *Id.* at 12.

[37] Rec. Doc. 368-1 at 12–13.

[38] *Id.* at 14

[39] *Id. See also* Rec. Doc. 368-4 at 36.

[40] Rec. Doc. 368-1 at 14.

[41] *Id.* at 2–4, 5–8 (discussing *LaShip v. Hayward Baker, Inc.*, 296 F.R.D. 475 (E.D La. Nov. 13, 2013) (Brown, C.J.)).

[42] *Id.* at 15–18.

testimony about whether the accident was intentional impermissibly offers testimony regarding Plaintiffs' mental state and is not an insurance industry standard.[43]

Third, Plaintiffs contend that the portions of Fey's report that do not refer to "fraud" must be excluded because they rely on hearsay.[44] Fourth, Plaintiffs argue that, even if Fey is an expert, his testimony is unduly prejudicial.[45] Fifth, Plaintiffs assert that Fey's testimony usurps the fact-finding mission of the jury.[46] Plaintiffs contend that this is a case of "credibility," which is reserved for the jury to decide.[47]

Finally, at various points throughout Plaintiffs memorandum, Plaintiffs argue that Fey is not qualified to be an expert.[48] Plaintiffs cite to cases in other courts where Fey was not admitted as an expert in fraud.[49] Plaintiffs use these other cases to further critique Fey's methodology.[50] Plaintiffs reference rulings by other courts where *different* experts were precluded from testifying about fraud.[51] Plaintiffs assert that there are no industry standards for "red flags."[52] And Plaintiffs

---

[43] *Id.* at 18–22.

[44] *Id.* at 22–27.

[45] *Id.* at 27–29.

[46] *Id.* at 29–32.

[47] *Id.* at 29.

[48] *Id.* at

[49] *Id.* at 22 (discussing *Harris v. U.S. Express*, No. 2016-12685 (Orl. Par. Civ. Dist. Ct.)), 31 (discussing *Guideone Mut. Ins. Co. v. Daniel*, No. 13-126, 2015 WL 1590853 (M.D. Ga. Sept. 4, 2015)), 32 (discussing *Gade v. State Farm Mut. Auto. Ins. Co.*, No. 14-48, 2015 WL 7306433 (D. Vt. Nov. 19, 2015)).

[50] *Id.* at 9–10, 12 (discussing Fey's deposition testimony from an Orleans Parish Civil District Court case *Harris v. U.S. Express* (no citation provided)); 10 (asserting Fey relies upon a "blogger"); 11 (asserting Fey relies on Google searches).

[51] *Id.* at 19–20 (discussing *Baham v. Lovorn & Lovorn Trucking*, No. 18-8881, 2020 WL 2310390, at *8 (E.D. La. Mar. 11, 2020) and *Baham v. Lovorn & Lovorn Trucking*, No. 18-8881, Rec. Doc. 178)); 20 (discussing *Lloyd v. Wal-Mart Transp., Inc.*, No. 2018-3237 (Orl. Par. Civ. Dist. Ct.)).

[52] Rec. Doc. 638-1 at 3, 7, 10, 11, 15, 17, 22, 23, 24.

re-urge their earlier argument that Fey has never published any works on indicia of intentional or staged accidents.[53]

## B.    *Defendants' Arguments in Opposition*

In opposition, Defendants argue that the motion should be denied as untimely.[54] Defendants note that the Scheduling Order set the deadline for filing *Daubert* motions in time to be heard no later than February 24, 2021.[55] Defendants assert that the Court never extended that deadline, and that Plaintiffs failed to seek leave to file this motion out of time.[56] Therefore, Defendants contend that the motion should be denied as untimely.

Alternatively, if the Court considers the merits, Defendants argue the motion should be denied because this Court has already ruled that Fey is a qualified expert.[57] Defendants assert this Court should not reconsider its earlier ruling because Plaintiffs offer "no new information" to merit reconsideration.[58] Defendants contend that "[P]laintiffs' arguments against Fey go to the weight of his testimony, not to the admissibility of his testimony."[59] Defendants assert that, if Plaintiffs had questions about Fey's testimony after the August 5 Order, Plaintiffs could have deposed him.[60] However, Defendants note that Plaintiffs chose not to depose Fey or "conduct any

---

[53] *Id.* at 32. *See also* Rec. Doc. 96-1 at 32.

[54] Rec. Doc. 376 at 1–2.

[55] *Id.* at 1 (citing Rec. Doc. 197 at 2).

[56] *Id.* Defendants note that Plaintiffs only sought leave to file in excess of the page limit. *Id. See also* Rec. Doc. 363.

[57] Rec. Doc. 376 at 2.

[58] *Id.* at 5, 7.

[59] *Id.* at 5.

[60] *Id.* at 5–6.

discovery regarding Fey, his report, his reliance documents, or his opinions."[61]

Regarding Fey's qualifications, Defendants argue "this Court has already conducted a *Daubert* analysis" and "rejected [P]laintiffs' challenge."[62] Defendants assert that Plaintiffs "again attack Fey on the very same bases which they attempted the first time."[63] Defendants contend that Fey has testified as an expert in insurance "red flags" in cases throughout Louisiana.[64] Defendants aver that Plaintiffs misconstrue the holdings of the cases where Fey's testimony was limited or excluded.[65] Defendants assert that, contrary to Plaintiffs' assertions that Fey does not rely on industry sources, those sources are listed in paragraph ten of Fey's report.[66]

Defendants submit that Plaintiffs' argument that it was required to update Fey's report under Federal Rule of Civil Procedure 26 "simply lacks a valid legal basis."[67] Defendants aver that, after the Court's August 5 Order, all parties had "fair notice of the scope of Fey's testimony."[68]

Defendants assert that this motion "seeks the same relief" as Plaintiffs' first motion.[69] Defendants further assert that the motion contains "false statements previously addressed by

---

[61] *Id.* at 7.

[62] *Id.*

[63] *Id.*

[64] *Id.* at 7–8 (citing *Mascorro v. Schultz*, No. 2014-12140 (La. 22d Jud. Dist. Ct.); *Am. Ins. Co. v. Haynes*, No. 15-6232 (E.D. La.); *Smith v. Shelter Ins. Co.*, No. 15-351 (M.D. La.); *Saacks v. Privilege Underwriters Reciprocal Exchange*, No. 15-1149 (E.D. La.)).

[65] *Id.* at 8–9, 11.

[66] *Id.* at 10–11.

[67] *Id.* at 5–6.

[68] *Id.* at 6.

[69] *Id.* at 2.

[D]efendants."[70] Defendants request "costs and fees associated with responding to these arguments for a second time."[71]

## III. Legal Standards

### A.  Legal Standard for Reconsideration

Although the Fifth Circuit has noted that the Federal Rules "do not recognize a 'motion for reconsideration' *in haec verba*,"[72] it has consistently recognized that such a motion may challenge a judgment or order under Federal Rules of Civil Procedure 54(b), 59(e), or 60(b).[73] Federal Rule of Civil Procedure 59(e) also allows courts to alter or amend judgments after entry. Federal Rule of Civil Procedure 54(b) allows for reconsideration of interlocutory orders.[74]

The Court has "considerable discretion" in deciding whether to grant a motion for reconsideration, but must "strike the proper balance between two competing imperatives: (1) finality and (2) the need to render just decisions on the basis of all the facts."[75] This Court's discretion is further bounded by the Fifth Circuit's instruction that reconsideration is "an extraordinary remedy that should be used sparingly,"[76] with relief being warranted only when the

---

[70] *Id.*

[71] *Id.*

[72] *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990).

[73] *Id.* (Rules 59 and 60); *Castrillo v. Am. Home Mortg. Servicing, Inc.*, No. 09-4369, 2010 WL 1424398, at *3–4 (E.D. La. Apr. 5, 2010) (Rule 54).

[74] The general practice of courts in the Eastern District of Louisiana has been to evaluate Rule 54(b) motions to reconsider interlocutory orders under the same standards that govern Rule 59(e) motions to alter or amend a final judgment. *See, e.g., Castrillo v. Am. Home Mortg. Servicing, Inc*, No. 09-4369, 2010 WL 1424398, at *3 (E.D. La. Apr. 5, 2010) (Vance, J.); *Rosemond v. AIG Ins.*, No. 08-1145, 2009 WL 1211020, at *2 (E.D. La. May 4, 2009) (Barbier, J.); *In re Katrina Canal Breaches*, No. 05-4182, 2009 WL 1046016, at *1 (E.D. La. Apr. 16, 2009) (Duval, J.).

[75] *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993).

[76] *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).

basis for relief is "clearly establish[ed]."[77] Courts in the Eastern District of Louisiana have generally considered four factors in deciding motions for reconsideration:

(1)     the motion is necessary to correct a manifest error of law or fact upon which the judgment is based;

(2)     the movant presents newly discovered or previously unavailable evidence;

(3)     the motion is necessary in order to prevent manifest injustice; or

(4)     the motion is justified by an intervening change in controlling law.[78]

A motion for reconsideration, "'[is] not the proper vehicle for rehashing evidence, legal theories, or arguments . . . .'"[79] Instead, such motions "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence."[80] "It is well settled that motions for reconsideration should not be used . . .  to re-urge matters that have already been advanced by a party."[81] When there exists no independent reason for reconsideration other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and should not be granted.[82]

---

[77] *Schiller v. Physicians Res. Grp, Inc.*, 342 F.3d 563, 567 (5th Cir. 2003); *Castrillo v. Am. Home Mortg. Servicing, Inc.*, No. 09-4369, 2010 WL 1424398, at *3 (E.D. La. Apr. 5, 2010) (Vance, J.).

[78] *See, e.g.*, *Castrillo*, 2010 WL 1424398, at *4 (citations omitted).

[79] *Id.* (quoting *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004)).

[80] *See Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989) (citation and internal quotation marks omitted).

[81] *Helena Laboratories Corp. v. Alpha Sci. Corp.*, 483 F. Supp. 2d 538, 539 (E.D. Tex. 2007) (citing *Browning v. Navarro*, 894 F.2d 99, 100 (5th Cir. 1990)).

[82] *Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 481 (M.D. La. 2002). *See also Mata v. Schoch*, 337 B.R. 138, 145 (S.D. Tex. 2005) (refusing reconsideration where no new evidence was presented); *FDIC v. Cage*, 810 F. Supp. 745, 747 (S.D. Miss. 1993) (refusing reconsideration where the motion merely disagreed with the court and did not demonstrate clear error of law or manifest injustice).

### B.    *Rule 702 and* **Daubert**

The district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702.[83] Rule 702 states that a witness "qualified as an expert by knowledge, skill, experience, training or education," may provide expert testimony when "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."[84] For the testimony to be admissible, Rule 702 establishes the following requirements:

(1) the testimony must be based upon sufficient facts or data,

(2) the testimony must be the product of reliable principles and methods, and

(3) the expert must reliably apply the principles and methods to the facts of the case.[85]

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that Rule 702 requires the district court to act as a "gatekeeper" to ensure that "any and all scientific evidence admitted is not only relevant, but reliable."[86] The court's gatekeeping function mostly involves a two-part inquiry.

First, the Court must determine whether the expert testimony is reliable—which requires an assessment of whether the expert testimony's underlying reasoning or methodology is valid.[87]

---

[83] *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000).

[84] Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

[85] Fed. R. Evid. 702.

[86] *Daubert*, 509 U.S. at 589; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (clarifying that the court's gatekeeping function applies to all forms of expert testimony).

[87] *See Daubert*, 509 U.S. at 589. The party offering the testimony has the burden to establish reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994)).

The court's inquiry into the reliability of expert testimony is flexible and fact-specific.[88] The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation.[89] Second, the court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will assist the trier of fact in understanding the evidence.[90] The second inquiry primarily analyzes whether the expert testimony is relevant.[91]

Yet a court's role as a gatekeeper does not replace the traditional adversary system.[92] A "review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule."[93] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[94] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility."[95]

---

[88] *Seatrax*, 200 F.3d at 372. Furthermore, in *Daubert*, the Court identified a number of factors that are useful in analyzing reliability of an expert's testimony: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) any evaluation of known rates of error; (4) whether standards and controls exist and have been maintained with respect to the technique; and (5) general acceptance within the scientific community. *See Daubert*, 509 U.S. at 592–94. In *Kumho Tire Co. v. Carmichael*, the Supreme Court emphasized that the test of reliability is "flexible" and that *Daubert*'s list of specific factors does not necessarily nor exclusively apply to every expert in every case. *Kumho Tire*, 526 U.S. at 142. The overarching goal "is to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.

[89] *See Daubert*, 509 U.S. at 590.

[90] *See id.* at 591; Fed. R. Evid. 702.

[91] *See Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.

[92] *See Daubert*, 509 U.S. at 596.

[93] Fed. R. Evid. 702 advisory committee's note to 2000 amendments.

[94] *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

[95] *Id.* (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

## C.     *Relevancy and Prejudice*

Federal Rule of Evidence 401 provides that evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Under Federal Rule of Evidence 402, relevant evidence is admissible unless the United States Constitution, a federal statute, the Federal Rules of Evidence or other rules prescribed by the Supreme Court provide otherwise. Pursuant to Federal Rule of Evidence 403, "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The Fifth Circuit instructs that "[t]he exclusion of evidence under Rule 403 should occur only sparingly[.]"[96] "Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403."[97]

## IV. Analysis

Plaintiffs argue that Fey should be prohibited from testifying for three reasons. First, Defendants failed to update Fey's report after the Court's August 5 Order in violation of Federal Rule of Civil Procedure 26.[98] Plaintiffs assert this requires Fey's report to be excluded.[99] Second, Fey's report primarily concerns fraud, which this Court's August 5 Order held he could not testify

---

[96] *United States v. Pace*, 10 F.3d 1106, 1115 (5th Cir. 1993), *cert. denied*, 511 U.S. 1149 (1994).

[97] *Id.* at 1115–16 (quoting *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979)).

[98] Rec. Doc. 368-1 at 2–5.

[99] *Id.* at 5–8.

to.[100] Plaintiffs contend that the portions of Fey's report that refer to "staged" or "intentional" accidents are merely discussions of "fraud indicators" in disguise.[101] Third, Plaintiffs reassert their earlier *Daubert* and evidentiary arguments: Plaintiffs argue Fey's methods are not insurance industry standards, that Fey's report relies on impermissible hearsay, that Fey's testimony is unduly prejudicial, and that Fey's testimony usurps the fact-finding mission of the jury.[102] The Court addresses each argument in turn.

### A. *Whether Defendants Were Required to Update Fey's Report Under Federal Rule of Civil Procedure 26*

Plaintiff argues that under Rule 26 Defendants were required to update Fey's expert disclosure after the Court's August 5 Order.[103] Defendants respond that the August 5 Order did not require Defendants to update their disclosure because Plaintiffs were on notice of the scope of Fey's testimony.[104]

"Federal Rule of Civil Procedure 26 addresses the broad boundaries of discovery."[105] Rule 26(a)(2) sets forth the requirements for disclosing experts. When an expert is disclosed under 26(a)(2), the disclosing party must "supplement or correct its disclosure" when that party "learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties . . .

---

[100] *Id.* at 8–15.

[101] *Id.*

[102] *Id.* at 15–32.

[103] *Id.* at 5–8.

[104] Rec. Doc. 376 at 4.

[105] *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 515 (5th Cir. 1993).

in writing" or as ordered by the Court.[106]

Here, Plaintiffs provide no authority, and this Court can locate none, that Defendants were obligated to update Fey's report after the August 5 Order.[107] Additionally, from the plain text of Rule 26(e), a party must only update its expert disclosure if the "corrective information has not otherwise been made known . . . in writing."[108] Plaintiffs contend that Defendants were obligated to update their expert disclosure to specify that Fey would testify only to indicia of staged or intentional accidents. However, the August 5 Order put all parties on notice that Fey's testimony would be limited. There was no "additional or corrective information" for Defendants to provide.[109] Additionally, expert reports are not evidence and are not admitted as evidence. Therefore, the Court finds Plaintiffs' argument to be without merit.

**B.    *Whether Fey Can Testify to His Report Because It Concerns Fraud Indicators***

Plaintiffs object to Fey testifying to the contents of his report because it primarily discusses fraud and not "industry standards as to whether this accident was staged or intentional."[110] In opposition, Defendants argue that Plaintiffs present "no new information . . . to warrant re-consideration."[111] Defendants further assert that Plaintiffs did not depose Fey, and "did not conduct any discovery regarding Fey, his report, his reliance documents, or his opinions."[112]

---

[106] Fed. R. Civ. P. 26(e).

[107] *See* Rec. Doc. 368-1 at 5–8.

[108] Fed. R. Civ. P. 26(e)(1)(A).

[109] *Id.*

[110] Rec. Doc. 368-1 at 8.

[111] Rec. Doc. 376 at 7.

[112] *Id.*

It is difficult for the Court to determine what additional relief Plaintiffs are requesting. As this Court already held, Fey may not testify regarding fraud in any instance.[113] To the extent Plaintiffs move the Court to prohibit Fey from testifying regarding fraud indicators, the Court has already decided that issue. However, the Court has also already decided that Fey may testify to indicators that an accident was staged or intentional.[114] Although Fey's report discusses "fraud red flags" generally, these red flags cover a variety of indicators.[115] Some red flags may indicate that an accident was staged or intentional. For example, when "the point of impact . . . [is on] the right rear (blind side) of the trailer," it may be *one indicia* that an accident was staged.[116] Other red flags that Fey discusses may not indicate an accident was staged. For example, "attorney directed treatment" may more strongly signal fraud.[117]

The Court has excised a specific subset of red flags that Fey may testify to.[118] In so doing, the Court has already determined that this information is relevant and will aid the finder of fact.[119] Plaintiffs' concern seems to be that Fey's report does not focus on the indicia of staged or intentional accidents. Fey's report makes clear that the list of "fraud indicators" that he describes is not exhaustive and that "each claim has its own unique circumstances and facts that create its

---

[113] Rec. Doc. 231 at 4.

[114] *Id.* at 3.

[115] *See* Rec. Doc. 368-4 at 2, 6.

[116] *Id.* at 34. The Court notes that Plaintiffs argue that this portion of Fey's report constitutes "accident reconstruction," about which Fey may not testify. Rec. Doc. 368-1 at 12. While it is true that Fey may not testify about accident reconstruction, Defendants' expert Richard Baratta will testify separately regarding accident reconstruction. Rec. Doc. 222 at 12–18.

[117] Rec. Doc. 368-4 at 6.

[118] Rec. Doc. 231 at 4.

[119] *Id.* at 3.

own red flags."[120] However, Plaintiffs never deposed Fey in order to probe the limits of his expertise on the indicia of staged or intentional accidents. Additionally, Plaintiffs have had Fey's report since before November 26, 2019 and this Court's Order limiting his testimony since August 5, 2020.[121] Over a year has passed during which Plaintiffs could have questioned Fey about the specifics of his opinions. Moreover, Plaintiffs can question Fey at trial—vigorous cross-examination is the appropriate means for Plaintiffs to attack Fey's testimony.

Finally, the Court finds that Plaintiffs have not "clearly establish[ed]"[122] that they are entitled to the "extraordinary remedy"[123] of reconsideration. Plaintiffs do not present any "newly discovered or previously unavailable evidence" to convince this Court to reconsider its earlier ruling.[124] Nor do Plaintiffs establish a "manifest error of law," "manifest injustice," or "an intervening change in controlling law."[125] Plaintiffs present no issue for the Court to reconsider that they could not have raised in their original motion. Plaintiffs merely seek a second bite at the apple. Therefore, to the extent that Plaintiffs move the Court to reconsider excludnig Fey's discussion of indicators of a staged or intentional accident because they are simply "fraud" indicators, that request is denied.

**C.    *Whether Fey's Methods are Insurance Industry Standards, Are Unduly Prejudicial, or Usurp the Role of the Jury***

Plaintiffs' remaining arguments reiterate their arguments from their first *Daubert*

---

[120] Rec. Doc. 368-4 at 6.

[121] Rec. Docs. 96, 231.

[122] *Schiller*, 342 F.3d at 567. *See also Castrillo*, 2010 WL 1424398, at *3.

[123] *Templet*, 367 F.3d at 479.

[124] *See, e.g.*, *Castrillo*, 2010 WL 1424398, at *4 (citations omitted).

[125] *Id.*

motion.[126] Plaintiffs argue that Fey's use of similar accidents as comparators is not an insurance industry standard, and, therefore, he may not present that testimony to the jury.[127] Plaintiffs contend that Fey relies on hearsay, which Plaintiffs assert is not an insurance industry standard.[128] Alternatively, if Fey is permitted to testify as an expert, Plaintiffs argue that his testimony is unduly prejudicial and should be excluded under Federal Rule of Evidence 403.[129] Finally, Plaintiffs aver that Fey's testimony usurps the fact-finding mission of the jury.[130]

Each of these arguments were raised in Plaintiffs' first motion challenging Fey and were rejected by the Court in its August 5 Order.[131] As the Court explained there, "Plaintiffs' remaining objections to Fey's testimony affect the weight to be assigned to the testimony—not whether the testimony is admissible. 'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'"[132]

To the extent Plaintiffs argue that indicia of staged or intentional accidents are not based on an insurance industry standard, that argument fails for two reasons. First, the Court already

---

[126] *Compare* Rec. Doc. 96-1 at 2 ("Fey's theories have no standards and controls, and are not in any way, generally accepted in the scientific community . . . ."), 20 ("[Fey's] testimony is irrelevant, inflammatory and prejudicial."), 25 ("[Fey's testimony] is not expert testimony but invades or usurps the province of the jury.") *with* Rec. Doc. 378-1 at 10 ("Fey is going to substitute his own conclusions which are not based on methodology or industry standard because no such standard exists!"), 16 ("Fey's 'spoon-fed' presumptions to try and put before the jury is an inadmissible attempt to put before the jury inadmissible and prejudicial evidence."), 30 ("Fey's remaining testimony does nothing but try to usurp the fact-finding mission of the jury.").

[127] Rec. Doc. 368-1 at 15–18.

[128] *Id.* at 22–27.

[129] *Id.* at 27–29.

[130] *Id.* at 29–33.

[131] *See supra* note 126; *see also* Rec. Doc. 231 at 2–4.

[132] Rec. Doc. 231 at 4 (quoting *Daubert*, 509 U.S. at 596).

decided in the August 5 Order that Fey could testify about red flags in the insurance industry "to the extent such flags . . . indicate that an automobile accident was staged or intentionally caused."[133] Second, as explained above, Plaintiffs produce no new evidence, argument, or information to merit reconsideration.[134] Plaintiffs' reliance on *Baham v. Lovorn & Lovorn Trucking* and *Lloyd v. Wal-Mart Transportation, Inc.* is unavailing.[135] Plaintiffs discuss these cases to support their argument that Fey should not be allowed to testify about similar accidents.[136] However, both of these cases are plainly distinguishable. In those cases, the respective judges precluded another individual, Wayne Winkler, from testifying regarding other similar accidents and whether they were intentionally caused.[137] However, unlike Fey, Winkler was offered as an expert in accident reconstruction. The *Baham* and *Lloyd* courts found that opining on whether an accident was intentional was beyond Winkler's expertise. Therefore, the courts prohibited Winkler from offering testimony about similar accidents.

Not so, here. This Court has already decided that Fey may not offer testimony about

---

[133] *Id.*

[134] *See, e.g.*, *Castrillo*, 2010 WL 1424398, at *4 (citations omitted). Plaintiffs rely on the same cases to challenge Fey that the Court has already considered. *Compare* Rec. Doc. 96-1 at 9 (discussing *Harris v. U.S. Express, Inc.*), 31 (discussing *Gade v. State Farm Mut. Auto. Ins. Co.*) *with* Rec. Doc. 368-1 at 9 (discussing *Harris v. U.S. Express, Inc.*), 32 (discussing *Gade v. State Farm Mut. Auto. Ins. Co.*).

[135] *See* Rec. Doc. 368-1 at 19–21.

[136] *Id.*

[137] *Id. See also Baham*, 2020 WL 2310390, at *6–7. Plaintiffs extensively discuss and quote from the unpublished trial court orders from Orleans Parish Civil District Court in *Lloyd v. Wal-Mart Transportation, Inc.* Rec. Doc. 368-1 at 20–21. However, Plaintiffs do not provide a copy of these orders for the Court to review, and no copy is available on any legal research database. The Court notes that the only available information is that Winkler is an expert in accident reconstruction. *See Gleber v. Mayfield*, No. 2009-10232, 2010 WL 4391723 (La. 22d Dist. Ct. Sept. 13, 2010); *Henderson-Burkhalter v. Nat'l Union Fire Ins. Co.*, 18-928, 2019 WL 6456398 (E.D. La. June 14, 2019) (Rep. of Wayne Winkler); *Antippas v. NOLA hotel Group, LLC*, No. 15-1072, 2015 WL 13673735 (Orl. Par. Civ. Dist. Ct. Dec. 7, 2015) (Aff. of Wayne Winkler).

accident reconstruction.[138] The Court has also already decided that Fey may testify regarding red flags in the insurance industry that an accident was staged or intentionally caused.[139] Similarities to other accidents may be one such indicia. If Plaintiffs wanted more information about the particularities of Fey's opinions before the start of trial, they could have deposed Fey. Therefore, the Court denies Plaintiffs' request to reconsider its earlier *Daubert* ruling.

**IT IS HEREBY ORDERED** that Plaintiffs Wayland Collins and Alvin Polk's Motion in Limine and *Daubert* Motion to Further Exclude Louis G. Fey's Testimony[140] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this ___12th___ day of November, 2021.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[138] Rec. Doc. 231.

[139] *Id.*

[140] Rec. Doc. 368.