**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**WAYLAND COLLINS, et al.**                                    **CIVIL ACTION**

**VERSUS**                                                              **NO. 18-7465**

**JOHN C. BENTON, et al.**                                    **SECTION: "G"(5)**

## ORDER AND REASONS

    This action arises from a motor vehicle collision in the Parish of Orleans, State of Louisiana.[1] Before the Court is Plaintiffs Wayland Collins ("Collins") and Alvin Polk's ("Polk") (collectively, "Plaintiffs") "Motion for Judgment Notwithstanding the Verdict, Motion to Alter or Amend Judgment, [or] in the Alternative Motion for a New Trial."[2] Defendants Mark Ingle, John C. Benton d/b/a Q&M Motor Transports, Innovative Transport Solution, Inc., Automotive Transport Services, Inc., and Northland Insurance Co.'s (collectively, "Defendants") oppose the motion.[3]

    At the conclusion of five days of trial, the jury returned a verdict in favor of Plaintiffs.[4] However, the jury found Collins 50% at fault for the accident, and the damages awarded were substantially less than those requested by Plaintiffs.[5] Apparently displeased with the jury's award,

---

[1] Rec. Doc. 1 at 1.

[2] Rec. Doc. 469.

[3] Rec. Doc. 470.

[4] Rec. Doc. 465.

[5] Rec. Doc. 465.

Plaintiffs now move the Court to enter a judgment notwithstanding the verdict awarding them the total amount of their alleged past medical expenses, arguing that the jury verdict was "clearly erroneous" for failing to award past medical expenses.[6] Alternatively, Plaintiffs move for a new trial on the issue of damages for the same reason.[7] Finally, Plaintiffs move the Court to amend the judgment to reflect that Defendant Mark Ingle was 100% at fault for the accident because: (1) Plaintiffs argue that Defendants put forth "no evidence" that Collins had any comparative fault;[8] (2) Plaintiffs contend that the Court's evidentiary rulings prevented them from establishing that Ingle was fully at fault for the accident.[9]

Federal Rule of Civil Procedure 50 permits a party to move for judgment notwithstanding the verdict. However, a party waives its right to move for judgment notwithstanding the verdict if that party fails to first move for judgment as a matter of law on the same issue.[10] As explained in more detail below, Plaintiffs did not move for judgment as a matter of law on the issue of past medical expenses, therefore, Plaintiffs waived their right to move for a judgment notwithstanding the verdict.

Under Rule 59, a party may move for a new trial. In granting a new trial, a district court may not disturb a jury's verdict if it is "clearly within the universe of possible awards which are supported by the evidence."[11] Where a jury's award appears inconsistent, a reviewing court must

---

[6] Rec. Doc. 469-1 at 5.

[7] *Id.* at 9–10.

[8] *Id.* at 18.

[9] *Id.* at 19.

[10] *Alonso v. Westcoast Corp.*, 920 F.3d 878, 883–84 (5th Cir. 2019) (quoting *Flowers v. S. Reg'l Physician Servs., Inc.*, 247 F.3d at 238).

[11] *Narcisse v. Ill. Cent. Gulf R.R. Co.*, 620 F.2d 544, 547 (5th Cir. 1980) (quoting *Bonura v. Sea Land Serv. Inc.*, 505 F.2d 665, 670 (5th Cir. 1974)).

examine the record to "determine if there [is] a reasonable basis discernible in the record for the apparent inconsistencies in [a] jury's verdict."[12] Here, as detailed below, the Court finds that the jury's award is supportable by a reasonable interpretation of the evidence.

Finally, Rule 59 also concerns altering or amending judgments. Alteration or amendment under Rule 59 is not to be lightly granted, as "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly" and the motion must "clearly establish" that alteration or amendment is warranted.[13] Additionally, Motions for New Trials or to Amend Judgments are "'not the proper vehicle for rehashing evidence, legal theories, or arguments.'"[14] As discussed below, Plaintiffs have not "clearly established" that the jury's apportionment of fault is erroneous, nor is this the proper vehicle for challenging the Court's evidentiary rulings.[15] Therefore, for the reasons more fully explained below, the Court denies the motion.

## I. Background

On August 7, 2018, Plaintiffs filed a complaint against Defendants Mark Ingle ("Ingle"), John C. Benton d/b/a Q&M Motor Transports ("Q&M"), and Northland Insurance Co. ("Northland") in this Court, seeking recovery for injuries and property damage that Plaintiffs allegedly sustained in an automobile accident.[16] According to the Complaint, on August 9, 2017,

---

[12] *Weir v. Kilpatrick's Rose-Neath Funeral Homes, Crematorium, & Cemetaries, Inc.*, No. 54,030, p. 9 (La. App. 2 Cir. 9/22/21); 327 So. 3d 618, 624 (discussing *Cormier v. Colston*, 05-0507 (La. App. 3 Cir. 12/30/05); 918 So. 2d 541).

[13] *See Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004); *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).

[14] *Castrillo v. Am. Home Mortg. Servicing, Inc.*, 2010 WL 1424398, at *4 (E.D. La. Apr. 5, 2010) (Vance, J.) (quoting *Templet*, 367 F.3d at 478-79).

[15] *Id.*

[16] Rec. Doc. 1. Candy Kelly was also originally named as a Plaintiff in this litigation. *Id.* On September 24, 2021, the Court granted a joint motion to dismiss Candy Kelly's claims. Rec. Doc. 357.

Plaintiff Wayland Collins was driving on Interstate 10 when, while exiting onto Interstate 510, he collided with an 18-wheeler driven by Ingle.[17] Plaintiffs alleged that Ingle was turning onto Interstate 510 and negligently misjudged his clearance, resulting in the motor vehicle incident at issue.[18] Plaintiffs additionally alleged that Ingle was cited for an "improper lane change."[19] Plaintiffs brought negligence claims against Ingle and Q&M, who was allegedly Ingle's principal, under the doctrine of *respondeat superior*.[20] Plaintiffs also brought claims against Northland, who purportedly insured the 18-wheeler operated by Ingle.[21]

On September 10, 2018, Defendants filed an answer to the Complaint.[22] On October 10, 2019, Defendants filed an amended answer to the Complaint.[23] In the Amended Answer, Defendants asserted the following additional affirmative defense:

> Defendants plead the affirmative defense that Plaintiffs conspired to stage the alleged subject accident and that the alleged subject accident in this case was intentionally [caused] and/or staged by the Plaintiffs, and that Plaintiffs suffered no injury due to the fault of the Defendants.[24]

In support of this defense, Defendants pled that: "[w]ithin hours following the accident on August 9, 2017, Collins was in contact with Cornelius Garrison, Raphus Adams and Ryan Harris, who were also involved in alleged accidents similar to the alleged subject accident and are also current

---

[17] Rec. Doc. 1.

[18] *Id.*

[19] *Id.* at 4.

[20] *Id.* at 5.

[21] *Id.*

[22] Rec. Doc. 7.

[23] Rec. Doc. 54.

[24] *Id.* at 2.

and/or former clients of Plaintiffs' counsel Vanessa Motta."[25] Defendants cite to twenty-seven phone calls between Collins and these third-parties.[26] Defendants similarly pled that Polk was in contact with Cornelius Garrison within hours of the accident, as well as "with Plaintiffs' counsel's fiancé, Sean Alfortish."[27]

A jury trial in this matter commenced on November 15, 2021.[28] After deliberating, the jury returned a verdict in favor of Plaintiffs.[29] The jury awarded Collins $10,000 in future medical expenses (special damages) and $50,000 in disability (general damages), and awarded Polk $4,000 in future medical expenses and $76,000 in disability.[30] The jury did not award Plaintiffs any damages for: past medical expenses, past and present physical pain and suffering, future physical pain and suffering, past and present mental pain and suffering, future mental pain and suffering, or loss of enjoyment of life.[31] The jury apportioned 50% fault to the drivers, Collins and Ingle, and 0% to the passenger, Polk.[32] On November 24, 2021, the Court entered judgment on the verdict in

---

[25] *Id.*

[26] *Id.*

[27] *Id.* at 3.

[28] Rec. Doc. 455.

[29] Rec. Doc. 465.

[30] *Id.* at 4. "General damages are those which are inherently speculative in nature and cannot be fixed with mathematical certainty." *Weir*, No. 54,030 at p. 14; 327 So. 3d at 626 (citing *Wainwright v. Fontenot*, 00-0492 (La. 10/17/00); 774 So. 2d 70). "Disability is awardable as an element of general damages." *Cormier v. Rep. Ins. Co.*, 11-632, p. 5 (La. App. 3 Cir. 1/18/12); 118 So. 3d 16, 20 (citing *Wood v. Am. Nat'l Prop. & Cas. Ins. Co.*, 07-1589 (La. App. 3 Cir. 12/23/08); 1 So. 3d 764). "Special damages are those damages that can be determined with some degree of certainty and include past and future medical expenses." *Weir*, at p. 9; 327 So. 3d at 624 (citing *Richardson v. Christus Schumpert Health Sys.*, 47,776 (La. App. 2 Cir. 2/27/13); 110 So. 3d 264).

[31] Rec. Doc. 465 at 4.

[32] *Id.*

5

favor of Plaintiffs and against Defendants.[33] Considering that the jury had allocated 50% fault to Collins, the Court entered judgment in favor of Collins and against Defendants in the amount of $30,000, and the Court entered judgment in favor of Polk and against Defendants in the amount of $40,000.[34]

On December 7, 2021, Plaintiffs filed the instant motion.[35] Defendants filed their opposition on January 4, 2022.[36]

## II. Parties' Arguments

### A.   *Plaintiffs' Arguments in Support of the Motion*

In the motion, Plaintiffs request three forms of relief. First, Plaintiffs move for judgment notwithstanding the verdict ("JNOV") on the issue of past medical expenses.[37] Second, Plaintiffs move for a new trial under Federal Rule of Civil Procedure 59(a) on the issue of damages.[38] Third, Plaintiffs move to alter or amend the judgment to reflect that Ingle was 100% at fault.[39] The Court outlines each request for relief separately.

#### 1.   Motion for Judgment Notwithstanding the Verdict

Plaintiffs move for a JNOV, arguing that the jury verdict was "clearly erroneous" for failing to award past medical expenses.[40] In support, Plaintiffs argue that Louisiana law, not federal law,

---

[33] Rec. Doc. 468.

[34] *Id.*

[35] Rec. Doc. 469.

[36] Rec. Doc. 470.

[37] Rec. Doc. 469-1 at 3–9.

[38] *Id.* at 9–16.

[39] *Id.* at 16–24.

[40] *Id.* at 5.

is controlling on this issue.[41] Plaintiffs assert that Louisiana circuit courts reverse jury findings when a jury awards general damages and future medical expenses but not past medical expenses.[42] In this case, Plaintiffs argue that the jury's award was internally inconsistent, contrary to law, and abusively low.[43] Plaintiffs assert that the jury was "required" to award past medical expenses because it found that the accident caused Plaintiffs' injuries.[44]

Plaintiffs also argue that the Court can grant a JNOV on the issue of past medical expenses without ordering a new trial.[45] Plaintiffs note that under the Seventh Amendment of the United States Constitution, a federal district court sitting in diversity may not enter an additur.[46] However, Plaintiffs contend that an exception applies when damages have been "conclusively established as a matter of law."[47] Plaintiffs assert that their past medical expenses "are established, were introduced[,] and are concrete numbers."[48] Thus, Plaintiffs submit that the Court may grant a JNOV awarding past medical damages without ordering a new trial.[49]

---

[41] *Id.* at 3–5. However, Plaintiffs address both the state and federal standards for a JNVO. *Id.* The Court notes that the standards are identical. *Compare Bellows v. Amoco Oil Co.*, 118 F.3d 268, 273 (5th Cir. 1997) ("A motion for judgment as a matter of law should be granted by the trial court if, after considering all the evidence in the light and with all reasonable inferences most favorable to the party opposed to the motion, the facts and inferences point so strongly and overwhelmingly in favor of one party that the court concludes that reasonable jurors could not arrive at a contrary verdict.") *with Joseph v. Broussard Rice Mill, Inc.*, 2000-0628, p. 4 (La. 10/30/00); 772 So. 2d 94, 99 ("[A] JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable persons could not arrive at a contrary verdict.").

[42] Rec. Doc. 469-1 at 5, 7.

[43] *Id.* at 5–6.

[44] *Id.* at 7.

[45] *Id.* at 8.

[46] *Id.* (citing *Jones v. Wal-Mart Stores, Inc.*, 870 F.2d 982, 985 (5th Cir. 1989)).

[47] *Id.* (citing *Matheny v. Chavez*, 593 Fed. App'x 306, 309 (5th Cir. 2014)).

[48] *Id.*

[49] *Id.*

### 2. Motion for New Trial

Alternatively, if the Court does not grant a JNOV, Plaintiffs move the Court to order a new trial on the issue of damages.[50] Plaintiffs assert that the Court may grant a new trial if it "finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course."[51] Plaintiffs contend that the jury's "failure to award past medical expenses constitutes an abuse of discretion" because the jury found that the accident caused Plaintiffs' injuries.[52] Plaintiffs also contend that the jury erred when it awarded future medical expenses, but not future pain and suffering.[53]

Next, Plaintiffs argue that the jury's general damages award was "unreasonabl[e] and abusively low" because it failed to award damages for past, present, and future pain and suffering, mental anguish, or loss of enjoyment of life.[54] Plaintiffs assert that the jury's award was "abusively low" because of the nature of the medical procedures they underwent.[55]

### 3. Motion to Alter or Amend Judgment

Finally, Plaintiffs move the Court to amend the Judgment to reflect that Ingle was 100% at fault.[56] Plaintiffs argue that the jury's finding that Ingle was only 50% at fault "contains 'manifest errors' and would result in 'manifest injustice.'"[57] Specifically, Plaintiffs argue that Defendants

---

[50] *Id.* at 9.

[51] *Id.* (quoting *Smith v. Transworld Co.*, 773 F.2d 610, 613 (5th Cir. 1985)).

[52] *Id.* at 10, 12.

[53] *Id.* at 12.

[54] *Id.*

[55] *Id.* at 14–16.

[56] *Id.* at 16–17.

[57] *Id.* at 17.

"failed to overcome their burden that Ingle made a safe lane change," and thus the jury erred in finding that Collins had any comparative fault.[58] Plaintiffs assert that Defendants offered no evidence "that Collins did anything which would have warranted a finding of comparative fault."[59] Conversely, Plaintiffs contend that they consistently testified that they were not at fault in causing the accident.[60]

Next, Plaintiffs offer a series of arguments that the Court's evidentiary rulings prevented them from establishing Ingle's fault.[61] First, Plaintiffs argue that they should have been allowed to question Ingle about the traffic citation he was issued.[62] Plaintiffs assert this would have established that Ingle was in violation of federal regulations requiring him to take a field sobriety test after the accident.[63] Second, Plaintiffs contend that they should have been able to ask about Ingle's prior conviction and license suspension because they assert it demonstrates his character for untruthfulness.[64] Third, Plaintiffs argue that defense's expert Louis Fey offered prejudicial testimony.[65] Plaintiffs contend that the jury was "clearly . . . confused" because Plaintiffs insist

---

[58] *Id.*

[59] *Id.* at 18.

[60] *Id.* at 18–19.

[61] *Id.* at 19–23.

[62] *Id.* at 19. In their opposition, Defendants object to Exhibit 1 to Plaintiffs' motion. Rec. Doc. 470 at 3. Exhibit 1 is a copy of the traffic citation issued to Ingle after the accident. *See* Rec. Doc. 469-4. Defendants assert that "Plaintiffs are again attempting to collaterally attack and relitigate a prior evidentiary ruling . . . without arguing how or why its exclusion was improper and without citing any law in support of their argument." Rec. Doc. 470 at 3. The Court agrees. The Court excluded this citation on November 12, 2021. Rec. Doc. 444. Plaintiffs have offered no basis for reconsideration of this ruling; therefore, the Court will not consider this exhibit.

[63] Rec. Doc. 469-1 at 19–20.

[64] *Id.* at 20.

[65] *Id.* at 20–21. The Court notes this is the *third* time Plaintiffs have advanced these arguments about Fey. *See* Rec. Docs. 231, 445.

that "there was no evidence that the Plaintiffs did anything but properly and legally travel in their lane."[66] Thus, Plaintiffs move the Court to alter the judgment to reflect that Ingle was 100% at fault.

**B.   *Defendants' Arguments in Opposition to the Motion***

In opposition, Defendants argue that Plaintiffs' motion should be denied in its entirety for three reasons. First, Defendants argue that the motion for JNOV is procedurally deficient under both state and federal law.[67] Second, Defendants contend that Plaintiffs are not entitled to a new trial because the jury's verdict is supported by the evidence.[68] Finally, Defendants assert that the judgment should not be altered because "the jury's apportionment of fault is supported by the record."[69]

**1.   Motion for Judgment Notwithstanding the Verdict**

Defendants argue that Plaintiffs' motion for a JNOV is procedurally deficient under both Louisiana and federal law.[70] Defendants assert that Plaintiffs' motion is "unclear" as to what legal standard they want the Court to apply.[71] However, under either state or federal law, Defendants submit that Plaintiffs' motion fails.[72] Defendants contend that under Louisiana law, Plaintiffs'

---

[66] Rec. Doc. 469-1 at 22. Plaintiffs also discuss instances where the other district courts granted summary judgment on the issue of liability in allegedly "identical situations." *Id.* at 23–24. In this case, the Court denied Plaintiffs' motion for summary judgment on the issue of liability on May 17, 2021. Rec. Doc. 342. As Plaintiffs themselves note, "Rule 59(e) is not the proper vehicle for rehashing . . . legal theories." Rec. Doc. 469-1 at 17 (citing *Templet v. HydroChem, Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004)). Therefore, the Court will not entertain this argument.

[67] Rec. Doc. 470 at 4–5.

[68] *Id.* at 7–21.

[69] *Id.* at 21–23.

[70] *Id.* at 4.

[71] *Id.*

[72] *Id.*

motion is untimely because Louisiana Code of Civil Procedure article 1811 requires that motions for a JNOV be filed within seven days of the judgment.[73] Here, Defendants note that Plaintiffs' motion was filed thirteen days after the Court entered judgment.[74]

Nevertheless, Defendants argue that Federal Rule of Civil Procedure 50(b) is the correct standard to apply, because "federal courts sitting in diversity apply state substantive law and federal procedural law."[75] Defendants aver that Plaintiffs' motion is procedurally barred because "a district court may not review a motion for JNOV unless the movant has first sought a directed verdict."[76] Additionally, Defendants assert that a "motion for JNOV 'cannot assert a ground that was not included in the motion for directed verdict.'"[77] Defendants note that at trial Plaintiffs moved for judgment as a matter of law seeking dismissal of Defendants' affirmative defense that the accident was staged or intentionally caused.[78] Therefore, Defendants contend that Plaintiffs are precluded from raising a new ground in their motion for JNOV.[79]

### 2. Motion for New Trial

Next, Defendants argue that Plaintiffs' only remedy is for a new trial or an amended judgment under Federal Rule of Civil Procedure 59.[80] Under Rule 59, Defendants aver that the

---

[73] *Id.*

[74] *Id.*

[75] *Id.* (quoting *Gasperini v. Ctr. for Hmans., Inc.*, 518 U.S. 415, 427 (1996)).

[76] *Id.* at 4–5 (quoting *Allied Bank-W., N.A. v. Stein*, 996 F.2d 111, 115 (5th Cir. 1993) (discussing Fed. R. Civ. P. 50(b)).

[77] *Id.* (quoting *Allied Bank*, 996 F.2d at 115).

[78] *Id.* at 4.

[79] *Id.* at 4–5.

[80] *Id.* at 5.

moving party must establish "(1) that the judgment is based upon a manifest error of law or fact; (2) the existence of newly discovered or previously unavailable evidence; (3) manifest injustice would otherwise result; or (4) an intervening change in controlling law."[81] Defendants contend that Plaintiff has failed to establish any of these factors.[82] Additionally, Defendants assert that "Rule 59 should not be used to relitigate old matters, raise new arguments, or submit evidence that could have been presented earlier in the proceedings."[83]

To determine whether to grant a new trial on the merits, Defendants submit that Louisiana substantive law controls.[84] According to Defendants, Louisiana law provides that a court must order a new trial when the verdict is "clearly contrary to the law and the evidence."[85] However, Defendants assert that "[t]he Court should not set aside the jury's verdict if it is supportable by 'any fair interpretation of the evidence.'"[86] Additionally, Defendants argue that "the scales are 'clearly tilted in favor of the survival of the jury's verdict,'" and that the Court must give "great deference" to the jury's damage award.[87]

Defendants argue that a new trial is not warranted because "[t]he jury's damage award . . . is not internally inconsistent or abusively low."[88] Defendants distinguish the cases relied upon by

---

[81] *Id.* at 5–6 (citing *Karim v. Finch Shipping Co.*, 111 F. Supp. 2d 783, 784 (E.D. La. 2000) (Fallon, J.)).

[82] *Id.* at 6.

[83] *Id.* (quoting *Karim*, 111 F. Supp. 2d at 784) (emphasis omitted).

[84] *Id.*

[85] *Id.* (quoting La. Code Civ. Proc. art. 1972(1)).

[86] *Id.* (quoting *Davis*, 00-0445 at p. 10; 774 So. 2d at 93).

[87] *Id.* at 6–7 (first quoting *Davis*, 00-0445 at p. 11; 774 So. 2d at 94, and then quoting *Wainwright v. Fontenot*, 00-0492, p. 6 (La. 10/17/00); 774 So. 2d 70, 74).

[88] *Id.* at 7.

Plaintiffs for the proposition that the Court must order a new trial because the jury failed to award past medical expenses.[89] Defendants assert that those cases all concerned jury awards where the jury awarded special damages but *not* general damages.[90] In contrast, Defendants note that "[t]he jury in this matter awarded both general damages (disability) and special damages (future medical expenses)."[91] Therefore, Defendants contend that the verdict is not internally inconsistent.[92]

Defendants submit that the jury's verdict is supported by the evidence.[93] Defendants dispute Plaintiffs' contention that the jury concluded that the accident required Plaintiffs to undergo their respective surgeries.[94] Instead, Defendants argue the jury verdict specifically reflects that the jury credited Defendants' experts over Plaintiffs' experts.[95] Defendants note that the jury's award of future medical expenses in the amount of $10,000 to Collins and $4,000 to Polk "was based directly on the testimony of [D]efendants' expert Life Care Planner, Ronnie Ducote."[96] Further, Defendants note that their expert, Dr. Robert, conducted independent medical exams of Plaintiffs and testified that "if [P]laintiffs were injured in the accident, then those injuries were limited in nature to soft tissue injuries that did not require surgery (past or future)."[97] Defendants assert that the evidence at trial "supports the jury's conclusion that [Plaintiffs'] injuries were soft-

---

[89] *Id.* at 10.

[90] *Id.*

[91] *Id.*

[92] *Id.*

[93] *Id.* at 10–15.

[94] *Id.* at 10.

[95] *Id.* at 10–11.

[96] *Id.* at 11.

[97] *Id.*

tissue in nature only [and] did not warrant surgery."[98]

Additionally, Defendants argue that "an award of past medical expenses is only appropriate if those expenses were not incurred in bad faith."[99] Defendants assert that they presented evidence that Plaintiffs "were not injured to the extent that medical treatment was required."[100] Defendants contend that the evidence supports the jury's conclusion that "although [P]laintiffs may have sustained an aggravation of pre-existing injuries, they underwent unnecessary medical treatment for such injuries in bad faith."[101]

Finally, Defendants argue that the jury's general damages award was not abusively low.[102] As an initial matter, Defendants assert that the Court cannot amend the judgment to award past medical expenses because that would violate the Seventh Amendment.[103] Moreover, Defendants emphasize that the Court may not grant a new trial if the jury's damage award is "clearly within the universe of possible awards which are supported by the evidence."[104] Defendants assert that the Louisiana Supreme Court has held that, "before a jury award may be questioned as inadequate, 'the court must look first, not to prior awards, but to the individual circumstances of the present case.'"[105] Defendants note that Collins and Dr. Lonseth both testified that Collins' non-surgical

---

[98] *Id.* at 16.

[99] *Id.*

[100] *Id.*

[101] *Id.*

[102] *Id.* at 18.

[103] *Id.* at 16. Defendants assert the exception to this rule does not apply here because there is a valid dispute as to the amount of damages. *Id.* at 16–17.

[104] *Id.* at 18 (quoting *Brun-Jacobo v. Pan Am. World Airways, Inc.*, 847 F.2d 242, 246 (5th Cir. 1988)).

[105] *Id.* at 19 (quoting *Reck v. Stevens*, 373 So. 2d 498, 501 (La. 1979)).

interventions "were performed after Collins was involved in a subsequent motor vehicle accident in January of 2018."[106] Further, Defendants note that Dr. Lonseth testified that when he related Collins' non-surgical interventions to the accident underlying this case, "he had not been advised of Collins' subsequent accident."[107] Similarly, Defendants note that the jury heard evidence that Polk was involved in a subsequent accident before he underwent any surgery.[108] Thus, Defendants contend that the jury's general damages awards are "within the universe of possible awards which are supported by the evidence."[109]

### 3.   Motion to Alter or Amend Judgment

Lastly, Defendants argue that Plaintiffs are not entitled to an amended judgment on the issue of liability.[110] Defendants assert that there are three grounds for altering or amending a judgment: "(1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice."[111] Defendants aver that Plaintiffs have shown no change in controlling law, presented no new evidence, identified no error of law, and identified no manifest injustice to them.[112] Additionally, although Defendants dispute Ingle contributed to the accident, Defendants aver that the jury's apportionment of fault is not "manifestly erroneous" considering the evidence presented at trial.[113]

---

[106] *Id.*

[107] *Id.*

[108] *Id.* at 20.

[109] *Id.* at 20–21.

[110] *Id.* at 21.

[111] *Id.* (quoting *Heck v. Buhler*, No. 07-21, 2012 WL 4482460, at *1 (M.D. La. Sept. 27, 2021)).

[112] *Id.*

[113] *Id.* at 22.

Therefore, Defendants assert the Court should deny Plaintiffs' motion in its entirety.[114]

### III. Legal Standard

**A.    *Judgment as a Matter of Law Under Federal Rule of Civil Procedure 50(b)***

Federal Rule of Civil Procedure 50(a) governs motions for judgment as a matter of law.

Under Rule 50(a)(1):

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on the issue, the court may:
>
> > (A) resolve the issue against the party; and
> >
> > (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Motions under Rule 50(a)(1) may be renewed after trial pursuant to Rule 50(b), which states:

> If the court does not grant a motion as a matter of law under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the motion, the court may:
>
> > (1) allow judgment on the verdict, if the jury returned a verdict;
> >
> > (2) order a new trial; or
> >
> > (3) direct the entry of judgment as a matter of law.

The Fifth Circuit has emphasized that "the two basic purposes of this rule are to enable the trial court to re-examine the question of evidentiary sufficiency as a matter of law if the jury returns a verdict contrary to the movant, and to alert the opposing party to the insufficiency before the case

---

[114] *Id.* at 23.

is submitted to the jury."[115]

A motion pursuant to Rule 50(b) "in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict."[116] Therefore, under Rule 50(b), "judgment as a matter of law is proper after a party has been fully heard by the jury on a given issue, and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue."[117] In evaluating a Rule 50(b) motion, a court must "consider all of the evidence, drawing all reasonable inferences and resolving all credibility determinations in the light most favorable to the non-moving party."[118] Because all reasonable inferences and credibility determinations should be resolved in favor of the non-movant in a Rule 50(b) motion for judgment as a matter of law, "judgment as a matter of law should not be granted unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion."[119]

## B.   *Alter Judgment or New Trial Under Federal Rule of Civil Procedure 59*

Federal Rule of Civil Procedure 59 governs motions for a new trial or to alter or amend judgment brought within 28 days after the entry of judgment.[120] Rule 59(a) provides:

> The court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows:
>     (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; or

---

[115] *Scottish Heritable Tr., PLC v. Peat Marwick Main & Co.*, 81 F.3d 606, 610 (5th Cir. 1996) (internal citation and quotation marks omitted).

[116] *Flowers v. S. Reg'l Phys. Servs., Inc.*, 247 F.3d 229, 235 (5th Cir. 2001) (quoting *Ford v. Cimarron Ins. Co.*, 230 F.3d 828, 830 (5th Cir. 2000)).

[117] *Id.* (internal citation and quotation marks omitted).

[118] *Id.* (internal citation and quotation marks omitted).

[119] *Id.* (internal citation and quotation marks omitted).

[120] Fed. R. Civ. P. 59.

(B) after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.

A renewed motion for judgment as a matter of law may be joined in the alternative with a motion for new trial under Rule 59, but the motions have distinct functions and are governed by different standards. "The trial court's power to grant a new trial [under Rule 59(a)] on the basis of the court's firm belief that the verdict is clearly contrary to the weight of the evidence has . . . long been regarded as an integral part of trial by jury."[121] "In making this determination, the district court weighs all the evidence, but need not view it in the light most favorable to the nonmoving party."[122] The Fifth Circuit has instructed that the district courts should "respect the jury's collective wisdom and must not simply substitute its opinion for the jury's," but "if the trial judge is not satisfied with the verdict of a jury, he has the right—and indeed the duty—to set the verdict aside and order a new trial."[123]

A motion under Rule 59(e) calls into question the correctness of a judgment,[124] and courts have considerable discretion in deciding whether to grant such a motion.[125] In exercising this discretion, courts must carefully balance the interests of justice with the need for finality.[126] "Rule 59(e) is properly invoked to correct manifest errors of law or fact or to present newly discovered evidence."[127]

---

[121] *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985).

[122] *Id.*

[123] *Id.* (internal quotations omitted).

[124] *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002).

[125] *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993).

[126] *Id.* at 355–56.

[127] *In re Transtexas Gas Corp.*, 303 F.3d at 581.

18

Courts in the Eastern District of Louisiana have generally considered four factors in deciding a motion under the Rule 59(e) standard:

> (1) the motion is necessary to correct a manifest error of law or fact upon which the judgment is based;
> (2) the movant presents newly discovered or previously unavailable evidence;
> (3) the motion is necessary in order to prevent manifest injustice; or
> (4) the motion is justified by an intervening change in controlling law.[128]

Rule 59(e) is "'not the proper vehicle for rehashing evidence, legal theories, or arguments.'"[129] Instead, such motions "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence."[130] "It is well settled that [such motions] should not be used . . . to re-urge matters that have already been advanced by a party."[131]

Alteration or amendment under Rule 59, therefore, is not to be lightly granted, as "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly"[132] and the motion must "clearly establish" that alteration or amendment is warranted.[133] When there exists no independent reason for alteration or amendment other than mere disagreement with a prior order, alteration or amendment is a waste of judicial time and resources and should not be granted.[134]

---

[128] *See, e.g., Gulf Fleet Tiger Acquisition, L.L.C. v. Thoma–Sea Ship Builders, L.L.C.*, Nos. 10-1440, 10-1802, 2012 WL 1150128, at *3–4 (E.D. La. Apr. 5, 2012) (Brown, J.) (citing *Castrillo*, 2010 WL 1424398, at *4).

[129] *Castrillo*, 2010 WL 1424398, at *4 (quoting *Templet*, 367 F.3d at 478-79).

[130] *See Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989).

[131] *Helena Labs. v. Alpha Sci. Corp.*, 483 F. Supp. 2d 538, 539 (E.D. Tex. 2007) (citing *Browning v. Navarro*, 894 F.2d 99, 100 (5th Cir. 1990)).

[132] *Templet*, 367 F.3d at 478–79.

[133] *Schiller*, 342 F.3d at 567.

[134] *Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 481 (M.D. La. 2002). *See also Mata v. Schoch*, 337 B.R. 138, 145 (S.D. Tex. 2005) (refusing reconsideration where no new evidence was presented). *See also FDIC v. Cage*, 810 F. Supp. 745, 747 (S.D. Miss. 1993) (refusing reconsideration where the motion merely disagreed with the court and did not demonstrate clear error of law or manifest injustice).

**IV. Analysis**

Plaintiffs move the Court for a JNOV, a new trial, and to amend the judgment.[135] Defendants oppose the motion in all respects.[136] The Court considers each request for relief in turn.

*A.*     ***Motion for Judgment Notwithstanding the Verdict***

Plaintiffs move the Court to grant a JNOV on the issue of past medical expenses, arguing that the jury's damages award was clearly erroneous for failing to award past medical expenses.[137] Defendants argue that Plaintiffs' motion is procedurally barred, because Plaintiffs did not move for judgment as a matter of law on that issue at trial.[138]

Federal Rule of Civil Procedure 50 concerns "Judgment[s] as a Matter of Law." From 1963 to 1991, the caption of Rule 50(b) expressly referred to "Judgment[s] Notwithstanding the Verdict."[139] In 1991, Rule 50(b) was amended to read "Renewing the Motion After Trial."[140] "In effect, the motion for judgment notwithstanding the verdict simply was recharacterized as a renewed motion for judgment as a matter of law."[141] Although this amendment changed the verbiage, it did not affect the substance of the motion.[142] Thus, Plaintiffs' motion for a JNOV is properly analyzed under Rule 50(b).

---

[135] Rec. Doc. 469.

[136] Rec. Doc. 470.

[137] Rec. Doc. 469-1 at 4–9. Plaintiffs state that they "bring[] this Motion pursuant to Louisiana statute, La. C.C.P. art 1811 (sic) and under Federal Law under Fed. R. Civ. Pro. 50(b) (sic)." *Id.* at 3. A federal court sitting in diversity applies "state substantive law and federal procedural law." *Gasperini*, 518 U.S. at 427. Therefore, article 1811 of the Louisiana Code of Civil Procedure is inapplicable in this action.

[138] Rec. Doc. 470 at 4.

[139] *See* Fed. R. Civ. P. 50(b) (1963) (amended 1991).

[140] Fed. R. Civ. P. 50(b).

[141] Wright & Miller, Federal Practice and Procedure § 2537 (3d ed. 2021).

[142] *Id.*

"The standard for granting a renewed motion for judgment as a matter of law under Rule 50(b) is precisely the same as the standard for granting . . . [a] motion under Rule 50(a)."[143] However, because a Rule 50(b) motion is a renewal of an earlier motion, "[i]f a party fails to move for [judgment as a matter of law] under Rule 50(a) after all the evidence has been presented, then 'that party waives . . . its right to file a renewed post-verdict Rule 50(b) motion.'"[144] The Fifth Circuit applies a narrow exception to this rule where "a party makes a Rule 50(a) motion on a substantially similar issue adequate to give notice of the perceived insufficiency [of evidence]."[145]

During trial, at the close of evidence, Plaintiffs moved for judgment as a matter of law seeking dismissal of Defendants' affirmative defense that the accident was staged or intentionally caused, which the Court denied.[146] In the instant motion, Plaintiffs seek a JNOV on the issue of past medical expenses.[147] Thus, Plaintiffs' motion at trial pertained to an issue of liability, while the instant motion concerns damages. Therefore, Plaintiffs' motion for JNOV is not "on a substantially similar issue adequate to give notice" to Defendants. Accordingly, because Plaintiffs "fail[ed] to move" for judgment as a matter of law on the issue of past medical expenses, Plaintiffs have waived their right to file a renewed post-verdict Rule 50(b) motion.[148] Accordingly, the Court denies Plaintiffs' motion for a JNOV.

---

[143] *Id. See also Foradori v. Harris*, 523 F.3d 477, 487 n.8 (5th Cir. 2008).

[144] *Alonso*, 920 F.3d at 883–84 (quoting *Flowers*, 247 F.3d at 238).

[145] *Foreman v. Acceptance Indem. Co.*, 730 F. App'x 191, 195 (5th Cir. 2018) (citing *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 288–89 (5th Cir. 2007); *Bay Colony, Ltd. v. Trendmaker, Inc.*, 121 F.3d 998, 1003 (5th Cir. 1997)).

[146] Rec. Doc. 461.

[147] *See* Rec. Doc. 469-1 at 3.

[148] *Foreman*, 730 F. App'x at 195.

### B.      Motion for a New Trial

Next, Plaintiffs move the Court to order a new trial on the issue of damages.[149] Plaintiffs argue that the jury's award is internally inconsistent because the jury awarded future medical expenses, but not past medical expenses.[150] Defendants argue the jury's award is consistent with and supported by the evidence.[151]

A court's power to grant a new trial under Rule 59(a) must be based on "the court's firm belief that the verdict is clearly contrary to the weight of the evidence."[152] A district court has considerable discretion in deciding whether to grant a motion under Rule 59.[153] However, a district court may not disturb a jury's verdict if it is "clearly within the universe of possible awards which are supported by the evidence."[154] The Fifth Circuit has explained that it will not interfere with a jury's determination of damages unless the award is "so 'inadequate as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial.'"[155] To determine if a jury award is inadequate, a federal court sitting in diversity applies state law.[156] Under Louisiana law, "[w]hen the verdict . . . appears

---

[149] Rec. Doc. 469-1 at 9.

[150] *See id.* at 10.

[151] *See* Rec. Doc. 470 at 7–8.

[152] *Smith*, 773 F.2d at 613.

[153] *See Edward H. Bohlin Co.*, 6 F.3d at 355.

[154] *Narcisse*, 620 F.2d at 547 (quoting *Bonura*, 505 F.2d at 670).

[155] *Munn v. Algee*, 924 F.2d 568, 578 (5th Cir. 1991) (quoting *Taylor v. Green*, 868 F.2d 162, 164 (5th Cir. 1989)).

[156] *Gasperini*, 518 U.S. at 419. *See also Fair v. Allen*, 669 F.3d 601, 604 (5th Cir. 2012).

clearly contrary to the law and the evidence," the court "shall" grant a new trial.[157]

Plaintiffs' main contention is that it is contrary to law for a jury to fail to award past medical expenses when it finds that a plaintiff's injuries are causally related to another's fault.[158] In support, Plaintiffs rely principally on the United States Court of Appeals for the Fifth Circuit's opinion in *Matheny v. Chavez*.[159] In that case, the Fifth Circuit, applying Louisiana law, explained that "Louisiana jurisprudence has long held that where there is a factual finding that a plaintiff was injured and incurred medical expenses as a result of another's fault, the failure to award *general damages* is legal error."[160] In this case, the jury did not commit that legal error because it awarded general damages. "General damages are those which are inherently speculative in nature and cannot be fixed with mathematical certainty."[161] In the verdict form agreed upon by the parties, the jury was asked to award "disability" damages.[162] In fact, Plaintiffs specifically requested that "disability" be included as an item of damages on their proposed verdict form.[163] "Disability is awardable as an element of general damages."[164] Here, the jury awarded Collins $50,000 in disability and awarded Polk $76,000 in disability. Therefore, the jury's verdict does not violate the rule explained in *Matheny* because the jury found that Plaintiffs' injuries were causally related to

---

[157] La. Code Civ. Proc. art. 1972(1).

[158] *See, e.g.*, Rec. Doc. 469-1 at 10.

[159] *Id.* (discussing *Matheny*, 593 F. App'x 306 (5th Cir. 2014)).

[160] 593 F. App'x at 310. The Court notes that *Matheny* was not selected for publication and is, therefore, non-precedential under 5th Cir. Fed. R. App. P. 47.5.4.

[161] *Weir*, No. 54,030 at p. 14; 327 So. 3d at 626 (citing *Wainwright*, 00-0492; 774 So. 2d 70).

[162] *See* Exhibit A (Jury Verdict Form). *See also* Rec. Doc. 465 at 3–4.

[163] Rec. Doc. 393 at 2–3.

[164] *Cormier*, 11-632 at p. 5; 118 So. 3d at 20 (citing *Wood*, 07-1589; 1 So. 3d 764).

23

the accident and awarded general damages.

Furthermore, Plaintiffs' proposed reading of the law is incomplete. Rather, the *Matheny* court went on to explain that a jury verdict awarding medical expenses but simultaneously denying general damages "will most often be inconsistent *in light of the record*."[165] Additionally, the Louisiana Supreme Court has explained that "there is no bright line rule" in determining whether a jury's award is internally inconsistent.[166] Instead, "the particular facts of each case are ultimately determinative."[167] Indeed, the very cases relied upon by Plaintiffs confirm that a court must "determine if there [is] a reasonable basis discernible in the record for the apparent inconsistencies in [a] jury's verdict."[168] For example, in *Weir v. Kilpatrick's Rose-Neath Funeral Homes, Crematorium & Cemetaries, Inc.*, the Louisiana Second Circuit Court of Appeal found that a jury's verdict was internally inconsistent for awarding future medical expenses but denying past medical expenses.[169] However, the appellate court did not stop there. Instead, after finding that the award was internally inconsistent, the court explained that it "must determine whether there is a reasonable basis for this apparent inconsistency in the record."[170]

---

[165] 593 F. App'x at 310 (acknowledging that some jury awards that award special but not general damages are consistent in light of the record) (emphasis added). *Matheny* was decided after the Louisiana Supreme Court's decision in *Wainwright v. Fontenot*. In *Wainwright*, the Louisiana Supreme Court addressed a split in authority among the Louisiana appellate courts. 2000-0496, p. 7–9; 774 So. 2d at 75–77. Prior to *Wainwright*, some courts held that it was legal error for a jury to award medical expenses but not general damages, while other courts held that this apparent inconsistency could be supported by the record. *Id.* The Louisiana Supreme Court reasoned that these cases "reveal[ed] that the particular facts of each case are ultimately determinative" and that courts must examine the record on a case by case basis to determine if a jury's award is supportable. *Id.* at p. 10–11; 774 So. 2d at 77–78.

[166] *Wainwright*, 2000-0492 at p. 9; 774 So. 2d at 76.

[167] *Id.* at p. 8; 774 So. 2d at 76.

[168] *Weir*, No. 54,030 at p. 9 ; 327 So. 3d at 624 (discussing *Cormier*, 05-0507; 918 So. 2d 541).

[169] *Id.* at p. 9–10; 327 So. 3d at 624.

[170] *Id.* at p. 10; 327 So. 3d at 624. So, too, with the remaining cases relied upon by Plaintiffs. *See Cormier*, 2005-0507 at p. 10; 918 So. 2d at 548 (noting that the court must "determine if there is a reasonable basis discernable in the record for these apparent inconsistencies in the jury's verdict"); *Matheny*, 593 F. App'x at 310 (applying

The Louisiana First Circuit Court of Appeal addressed a nearly identical inconsistency in *Use v. Use*.[171] In that case, the plaintiffs were injured in a late-night boating accident.[172] One plaintiff "[sought] medical treatment from two orthopedic surgeons and a neurosurgeon."[173] After a bench trial, the trial court declined to award certain past medical expenses, finding that they were incurred in bad faith.[174] The appellate court reversed, ruling that "[t]he trial court committed legal error in denying plaintiff past medical expenses" because the appellate court expressly found that "[t]here was no evidence plaintiff was in bad faith."[175] Thus, the appellate court acknowledged that a plaintiff may be awarded future medical expenses without an accompanying award of past medical expenses when the past medical expenses were incurred in bad faith.[176] Accordingly, in this case, the Court must examine the record to determine if there is a reasonable basis for the jury's award.

The Court finds that, in light of the trial record, the jury's award is "supportable by [a] fair interpretation of the evidence."[177] Plaintiffs' version of events at trial was contradictory. For example, Collins' wife, Candy Kelly, testified that she was present at the scene when Officer

---

Louisiana law and noting that a jury's verdict may be inconsistent "in light of the record").

[171] 94-972 (La. App. 1 Cir. 4/7/95); 654 So. 2d 1355.

[172] *Id.* at p. 2; 654 So. 2d at 1358.

[173] *Id.* at p. 11; 654 So. 2d at 1362.

[174] *Id.* at p. 11–12; 654 So. 2d at 1362–63.

[175] *Id.* at p. 13; 654 So. 2d at 1365.

[176] *See id.* at p. 11–13; 654 So. 2d at 1362–65.

[177] *Davis*, 2000-0445 at p. 11; 774 So. 2d at 93 (quoting *Gibson v. Bossier City Gen. Hosp.*, 594 So. 2d 1332, 1336 (La. App. 2 Cir. 1991)).

Kounlavong arrived, and that the officer asked her if she needed medical attention.[178] Officer Kounlavong's testimony and body camera footage directly contradict this account and shows that Kelly was not at the scene when Officer Kounlavong arrived.[179] Collins testified that, after the accident, he chased down Ingle to have him pull over.[180] Collins testified that when he caught up with Ingle's truck, the truck was still moving.[181] Candy Kelly testified differently, stating that Ingle's truck was stopped when Plaintiffs caught up with him.[182] In contrast, Officer Kounlavong testified that Ingle reported that a different vehicle flagged Ingle down after the accident.[183]

Additionally, both Plaintiffs testified that they were involved in accidents before the August 2017 accident at issue herein. Collins testified that he had been involved in two previous accidents—one in 2014 and one in 2015.[184] Collins testified that those accidents each resulted in neck and back pain.[185] At his sworn deposition, Collins denied being involved in any prior accident or injuring his neck and back.[186] Collins was impeached at trial on these inconsistent statements.[187] Collins further testified that he did not disclose the 2014 accident to the physician treating him for

---

[178] *Id.* at 295–96.

[179] *Id.* at 261–62. *See also* Plaintiffs' Exhibit 9.

[180] Rec. Doc. 472 at 136–37.

[181] *Id.*

[182] *Id.* 295.

[183] *Id.* at 262.

[184] *Id.* at 111–12, 119–20.

[185] *Id.*

[186] *Id.* at 107–13.

[187] *Id.*

the 2015 accident.[188] Similarly, Polk testified that he was involved in four prior accidents.[189] Polk further testified that he was involved in four subsequent accidents.[190] The jury also heard testimony that at Polk's sworn deposition Polk testified that he had never injured his neck or back prior to the accident at issue herein.[191] Polk was impeached at trial on these inconsistent statements.[192] Additionally, Polk testified that he reported neck and back pain to his treating physician on the night of the accident.[193] Again, Polk was impeached on these inconsistent statements at trial.[194]

Further, the jury heard evidence that Plaintiffs were referred to specific physicians by their attorney, that Plaintiffs did not use their medical insurance to pay these physicians, and that Plaintiffs never paid out of pocket for their treatment.[195] The jury heard evidence that Plaintiffs' treating physicians did not ask about, and Plaintiffs did not disclose, their full accident history.[196] The jury also heard testimony that, although this accident occurred in 2017, Plaintiffs' treating physicians have not received any payment for Plaintiffs' treatment. Dr. Leblanc specifically testified that her payment for treating Plaintiffs is dependent on Plaintiffs receiving money from this lawsuit.[197] Dr. Leblanc also testified that she kept separate billing files for different accidents

---

[188] *Id.* at 119–20.

[189] *Id.* at 365–77.

[190] *Id.* at 384–87.

[191] *Id.* at 366–69.

[192] *Id.*

[193] *Id.* at 358–59.

[194] *Id.*

[195] *Id.* at 124–25, 136, 382–83.

[196] *Id.* at 189–94.

[197] *Id.* at 188.

that Plaintiffs were involved in. Dr. Leblanc further testified that, although she treated Plaintiffs for injuries stemming from multiple accidents, she segregated the billing by date of accident rather than date of treatment.[198] Moreover, Dr. Liechty testified that his medical practice does not accept medical insurance and sells its accounts receivables to third party vendors.[199]

At the close of trial, as agreed to by the parties, the Court instructed the jury not to award past medical expenses if the jury found those expenses were incurred in bad faith.[200] Here, the jury did not award past medical expenses. Therefore, a "fair interpretation of the evidence" is that the jury was suspicious of these peculiar payment schemes and concluded that all of Plaintiffs' past medical expenses incurred through these physicians were in bad faith. Additionally, the specific amount of medical expenses the jury awarded indicates that it credited Defendants' experts over Plaintiffs' experts. At trial, Plaintiffs and Defendants presented testimony from competing life care experts. Plaintiffs' life care expert, Lacy Sapp, estimated that Collins' future medical expenses could range from $302,455.87 to $499,442.21 and that Polk's future medical expenses could range from $195,272.87 to $230,354.55.[201] This estimation was based on Plaintiffs' expert Dr. Liechty's opinion that Plaintiffs would require additional surgeries in the future. In contrast, Defendants' life care expert, Ronnie Ducote, estimated that Collins' future medical expenses would range from $10,000 to $10,141.88 and that Polk's future medical expenses would total "$3,903.38." These

---

[198] *Id.* at 199.

[199] *Id.* at 230–32. Defendants also produced evidence that they alleged demonstrated that Sean Alfortish, an employee of Medport, approved treatment from Plaintiffs' physicians. *See* Rec. Doc. 448 at 18. Although Defendants did not seek to introduce this evidence at trial, this is other record evidence to support the jury's finding. *See also* Rec. Doc. 38-5 (Alfortish Decl.); Rec. Doc. 285; Rec. Doc. 385.

[200] Rec. Doc. 462-2 at 26. This is a correct statement of law. *See Gunn v. Robertson*, 2001-347, p. 13 (La. App. 5 Cir. 11/14/01); 801 So. 2d 555, 564. *See also* Louisiana Civil Law Treatise, Louisiana Civil Jury Instruction § 18:5 (3d ed. 1994).

[201] At trial, Dr. Lacy Sapp's life care plan was presented by Michelle LeBlanc due to a serious medical issue preventing Dr. Sapp from testifying. *See* Rec. Doc. 451 (granting motion to substitute life care planner).

estimations were based on defense expert Dr. Robert's opinion that the accident caused only soft tissue injuries that would not have required surgery.

The jury awarded Collins $10,000 in future medical expenses and awarded Polk $4,000 in future medical expenses.[202] The jury did not award Collins or Polk any past medical expenses.[203] This Court must give the jury's award "great deference" and "should not set aside the jury's verdict if it is supportable by any fair interpretation of the evidence."[204] The Court finds this award is supportable by a fair interpretation of the evidence. Here, the jury could have concluded that the accident caused injury to Plaintiffs, but that their injuries did not require surgery. Indeed, it seems likely that is precisely what the jury found because the jury awarded the specific amounts of future medical expenses that Defendants' life care planner testified to. Those estimates were based on Dr. Robert's opinion that the injuries sustained by Plaintiffs were soft tissue in nature and did not require surgery. As explained above, the jury could also have concluded that Plaintiffs' past medical expenses were incurred in bad faith. Thus, a reasonable interpretation of the jury's award is that the jury determined that Plaintiffs' past medical expenses were incurred in bad faith, that their injuries were soft tissue in nature, and that those injuries would require conservative future medical treatment. This outcome is not "clearly contrary to the law and the evidence."[205]

Plaintiffs also argue that the jury's award is abusively low.[206] A court "may disturb a damage award only when the record clearly reveals that the jury abused its discretion in making

---

[202] Rec. Doc. 465 at 4–5.

[203] *Id.*

[204] *Davis*, 00-0445 at p. 10–11; 774 So. 2d at 93 (internal quotation omitted).

[205] La. Code Civ. Proc. art. 1972(1).

[206] *See* Rec. Doc. 469 at 12.

the award, based on the facts and circumstances peculiar to the case and the individual under consideration."[207] For the reasons discussed above, it is not clear that the jury abused its discretion in making its award. Accordingly, the Court denies Plaintiffs' motion for a new trial on the issue of damages.

**C.      Motion to Alter or Amend the Judgment**

Finally, Plaintiffs move the Court to amend the judgment to reflect that Ingle was 100% at fault.[208] Plaintiffs argue that the jury's apportionment of fault contains "manifest errors" that the Court should correct.[209] Plaintiffs contend that Defendants presented "no evidence . . . which would have warranted a finding of comparative fault."[210] Defendants argue that Plaintiffs have not identified any error on the part of the jury and that the verdict is supported by the evidence.[211]

"Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly."[212] Given this high standard, the motion must "clearly establish" that amending the judgment is warranted.[213] Plaintiffs' main contention is that Defendants offered "no evidence" to support a finding of comparative fault.[214] The Court disagrees. Defendants presented evidence

---

[207] *Weir*, 54,030 at p. 15; 327 So. 3d at 626 (citing *Goldsby v. Blocker ex rel. Dep't of Transp. & Dev.*, 51,584 (La. App. 2 Cir. 9/27/17), 244 So. 3d 703).

[208] Rec. Doc. 469 at 17.

[209] *Id.*

[210] *Id.* (emphasis omitted).

[211] Rec. Doc. 470 at 21.

[212] *Templet*, 367 F.3d at 478–79.

[213] *Schiller*, 342 F.3d at 567.

[214] Plaintiffs assert that their argument in support of amending the judgment "is based solely on . . . the weight of the evidence." Rec. Doc. 469-1 at 17. Nevertheless, Plaintiffs advance a series of arguments that this Court's evidentiary rulings prevented them from fully establishing Ingle's fault at trial. *Id.* at 20–24. As Plaintiffs themselves note, Rule 59(e) is "'not the proper vehicle for rehashing evidence, legal theories, or arguments.'" *Castrillo*, 2010 WL 1424398, at *4 (quoting *Templet*, 367 F.3d at 478-79). *See also* Rec. Doc. 469-1 at 17 (citing *Templet*, 367 F.3d at 478–79). Instead, "[i]t is well settled that [such motions] should not be used . . .  to re-urge matters that have already

from Dr. Richard Baratta that Plaintiffs' vehicle was travelling faster than Ingle's vehicle at the time of the accident, suggesting that Plaintiffs sped up to intentionally collide with Ingle's vehicle as it was changing lanes. Defendants also vigorously cross-examined both Plaintiffs about their version of the accident. The jury, as finder of fact, was tasked with weighing the credibility of these witnesses and determining comparative fault. For this Court to disturb a jury's factual findings, Plaintiffs must "clearly establish" that amendment is warranted.[215] Plaintiffs have not clearly established that the jury's finding of fact was manifestly erroneous.

Plaintiffs also argue that the Court's evidentiary rulings prevented them from establishing that Ingle was 100% at fault for the accident.[216] Plaintiffs assert that the Court's exclusion of a traffic citation issued to Ingle prevented them from establishing that Ingle was required by federal law to undergo mandatory drug testing after the accident.[217] Additionally, Plaintiffs argue that the Court's exclusion of Ingle's prior marijuana conviction prevented them from attacking Ingle's credibility.[218] Finally, Plaintiffs contend that Defendants' expert Louis Fey presented prejudicial testimony that Plaintiffs staged the accident.[219]

Each of these arguments were the subject of motions in limine. Prior to trial, the Court provided thorough and detailed Orders and Reasons explaining the basis for each ruling. Regarding the traffic citation, the Court excluded this evidence because Louisiana law prohibits the use of a

---

been advanced by a party." *Helena Labs.*, 483 F. Supp. 2d at 539 (citing *Browning*, 894 F.2d at 100). A Rule 59 motion is not the proper vehicle for rehashing these arguments, therefore, the Court will not consider them.

[215] *Schiller*, 342 F.3d at 567.

[216] Rec. Doc. 469-1 at 19–20.

[217] *Id.* at 20.

[218] *Id.* at 20.

[219] *Id.* at 21.

traffic conviction in a trial arising from the same underlying facts.[220] As to the marijuana conviction, the Court excluded this evidence under Federal Rule of Evidence 609 because the crime was not punishable by imprisonment for more than one year and did not involve a dishonest act or false statement.[221] Additionally, the Court explained not once but twice that Fey's testimony was not unduly prejudicial.[222] Moreover, in both orders, the Court strictly limited Fey's testimony to insurance industry indicia that an accident was staged or intentionally caused.[223] These evidentiary rulings were clearly supported by the governing law. And, in any event, Rule 59(e) is "'not the proper vehicle for rehashing evidence, legal theories, or arguments.'"[224] Additionally, with the approval of counsel, when the Court heard Fey's testimony, the Court specifically instructed the jury that any statements he may have made about indictments were to be disregarded.[225] Finally, and most importantly, it appears the jury gave no weight to Fey's testimony that the accident was staged considering the jury decided in favor of Plaintiffs. Given that the jury found both drivers 50% at fault, they clearly did not believe the accident was staged. Therefore, even if admitting this testimony was error, it was clearly harmless. Accordingly, the Court denies Plaintiffs' motion to amend the judgment.

---

[220] Rec. Doc. 444 at 13.

[221] Rec. Doc. 436 at 6. The Court also found that this evidence was not impeachment evidence, because Plaintiffs did not establish that Ingle made a prior inconsistent statement. *Id.*

[222] Rec. Doc. 231 at 2–4; Rec. Doc. 445 at 16–21.

[223] Rec. Doc. 231 at 2–4; Rec. Doc. 445 at 16–21.

[224] *Castrillo*, 2010 WL 1424398, at *4 (quoting *Templet*, 367 F.3d at 478-79).

[225] Rec. Doc. 463.

### V. Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiffs' "Motion for Judgment Notwithstanding the Verdict, Motion to Alter or Amend Judgment, [or] in the Alternative Motion for a New Trial"[226] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this __3rd__ day of March, 2022.

*Nannette Jolivette Brown*

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[226] Rec. Doc. 469.

33